# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

JOSEPH J. FREEBERY               :
        **Plaintiff**                 :
                                    :

        **v.**                        :     **C.A. No.**
                                      :

**CHRISTOPER COONS, in his official capacity** :
**as County Executive of New Castle County** :
**and in his individual capacity; and NEW**  :
**CASTLE COUNTY, a municipal corporation;** :
**and  JOHN DOES 1-25**                  :
             **Defendants.**

## COMPLAINT

Plaintiff Joseph J. Freebery ("Mr. Freebery" / "Joe Freebery") brings this action for compensatory and punitive damages against all defendants, jointly and severally, for their actions which violated those rights secured him under the First, Fifth, Ninth and Fourteenth Amendments to the Constitution of the United States of America, 42 U.S.C. § 1983, his rights to freedom of speech, political and familial association, which deprived him of his constitutionally protected property and liberty interests without due process of law and which also breached his express and/or implied contract of employment, in violation of state law.

### PARTIES

1.      Plaintiff Joseph J. Freebery ("Mr. Freebery"/"Joe Freebery") is an adult individual and citizen of the United States and State of Delaware.

2.      Defendant Christopher A. Coons ("Mr. Coons"/"Coons") is an adult individual, a citizen of the United States of America and the State of Delaware.  He is currently the County Executive of New Castle County, Delaware, which is located in the District of Delaware.

Defendant Coons is being sued in his individual capacity as well as his official capacity because at all times relevant to this Complaint, he was a final policymaker responsible for his own actions and the actions of his subordinate employees of New Castle County and was acting in an administrative capacity with respect to certain matters contained herein.

3.      Defendant New Castle County ("NCCo") is a municipal corporation organized under the laws of Delaware and is located in the District of Delaware.

4.      Defendants John Doe 1-25 are yet unknown individuals who, upon information and belief, participated in or are responsible for the actions that are subject to this lawsuit.  To the extent any of them can be said to be policymaking authorities whose actions represent the official policy of the government entities they represent, they are sued in their official capacities.

5.      At all times relevant hereto, Defendants Coons, NCCo and John and Jane Does 1-25 were acting under color of state law.

## JURISDICTION and VENUE

6.      This court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1342 (civil rights).  Supplemental jurisdiction of the Court over the claims arising under state law is invoked pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction).

7.      Venue in the District of Delaware is proper pursuant to 28 U.S.C. § 1391(b) because it is the district in which the plaintiff and defendants reside and because the events giving rise to the claims set forth herein occurred within the District of Delaware.

PHLEGAL: #1813613 v1 (12V#501!.DOC)

## INTRODUCTION

8.      Plaintiff Joe Freebery was an employee of New Castle County, Delaware for twenty-three years.  He had an exemplary record of performance for his entire tenure with NCCo, until he was wrongfully, maliciously and illegally fired from his merit system protected position of General Manager of the Department of Special Services.

9.      Joe Freebery is a lifelong Delaware resident who attended and graduated from St. Peter's School in New Castle and Salesianum School in Wilmington.

10.     In 1965, Mr. Freebery entered the University of Notre Dame in South Bend, Indiana where he pursued a double major in Business Economics and Sociology.  He graduated with his class and received a Bachelor of Arts Degree in 1969.

11.     At the same time he was fulfilling the requirements of a double major, Mr. Freebery played linebacker for the Notre Dame football team (1965-69) and was a member of the legendary 1966 National Championship team.

12.     Following graduation, Mr. Freebery worked at various managerial positions with Delaware Contractors, Incorporated, in and around New Castle County, Delaware. During the period of 1972–1973, he was employed as a Building Inspector and Zoning Code Compliance Officer for New Castle County.

13.     In 1984, Mr. Freebery was hired as Superintendent of Parks for New Castle County.  In that capacity, Mr. Freebery was required to:

>       *       supervise capital projects from design to completion;
>
>       *       supervise Construction, Forestry, Maintenance, Operations and Planning
>               Sections of Parks Division (up to 150 employees);

* prepare the Parks Division Operating Budget ($4.5 million) and Parks Department capital budgets (balance of $5.5 million);

* review and evaluate Parks Division and capital programs for economies;

* review park development with comprehensive planning developed for future and present park needs;

* supervise selection of consultants for design, development and planning;

* recruit, select and train professional and technical and personnel;

* require adherence to the policies and procedures of New Castle County;

* make field inspections and to review division program results;

* assign work to staff of Planning and supervisors of Maintenance, Forestry, Construction and Operations;

* deal with requests and questions from legislators and citizen groups; and

* evaluate employees work performance.

14.    During the same period Mr. Freebery became employed by New Castle County, his sister, Sherry Freebery ("Ms. Freebery") had already begun her service as a New Castle County police officer.

15.    In 1967, the structure of New Castle County Government was changed from the old Levy Court system to a County Executive / County Council form of Government.  In order to affect this change in NCCo government, the State of Delaware amended Chapter 9 of the Delaware Code.

16.    The 1967 change created the legislative branch of County government, which consisted of seven elected council members (the New Castle County Council), and the

-4-

executive branch, which contained the operating departments of NCCo government, with an elected County Executive.

17.     By state law, the County departments were headed by the political appointees of the County Executive, called Directors, all of whom served at the pleasure of the County Executive.

18.     In and during 1996, Thomas Gordon was elected County Executive of New Castle County.  Shortly thereafter, Mr. Gordon appointed plaintiff's sister Sherry Freebery – who by this time had become the NCCo Chief of Police - Chief Administrative Officer of New Castle County.

19.     In 1997, the newly-elected County Executive sought to reform the structure of operations of County government and to eliminate the political interference and problems often caused within it departments by the politically appointed, non-permanent Directors.

20.     The County Executive also proposed the merger of all ten County departments into five departments and the creation of the position, General Manager, to head each department.

21.     The position of General Manager was to be created as a classified position within the county-wide merit system, with full merit system protection and the same job security as all other merit system, county employees in the classified service.

22.     The underlying rationale for the creation of the position of a merit protected General Manager was that, with job security and immunity from political retaliation, each General Manager could professionally manage his/her respective department based upon the needs of citizens and without political interference.

23.     Under the proposed restructuring, the General Managers of each department could only be terminated for just cause, in accordance with merit system law. The professional independence and career security of each General Manager were critical components to achieve the reform within each department that was envisioned, and ultimately occurred.

24.     The restructuring of County Government to remove the earlier, state law requirement that only political appointees could head the county departments required a change in the existing state and county laws.

25.     Following extensive public debate, two different deliberations by the House of Representatives and the Senate of the State of Delaware, the proposed changes to restructure the New Castle County government and permit merit system protected General Managers to head the County Departments were enacted into law.

26.     In 1997, New Castle County Council unanimously approved the proposed restructuring of County government, including the adoption of merit system protected General Managers to head future County Departments.

27.     The 1997 change in state law removed the requirement that politically-appointed Directors be named by the County Executive to serve at his/her pleasure. This change was carefully crafted and did not eliminate the Director position from county government. The change in law eliminated the requirement that county departments be headed by politically appointed Directors and instead, named General Managers as heads of the Departments. State law removed the "at will" requirement which had accompanied the position of Director, who had previously served at the pleasure of the County Executive.

28.    The New Castle County Council then codified the classified position of General Manager into the Merit System Law. The position of General Manager was given the same job stability, the same legal protection, the same immunity from political interference and the same standards of "progressive discipline" and termination for only "just cause" as all of the other approximately 1400 County employees whose jobs were classified as merit system jobs.

29.    The 1997 change in state law enabled the New Castle County Council to effectively choose its form of management in the departments, since the Council could have continued with the politically appointed Directors, if it so desired, in addition to the classified positions of General Manger. County Council chose to leave the position of director intact but did not budget for any Director positions until 2004.

30.    As a result of the legislative reforms creating the merit protected position of General Manager, those individuals who applied for and were hired as General Managers obtained a constitutionally protected property right and interest in continued employment with the County, such that the State and/or County could not deprive them of that property right and interest without due process of law.

31.    As a result of the legislative reforms which created the merit protected position of General Manager, those county employees who applied for such positions (most of whom were already, in their current positions, merit system protected) were assured by and on behalf of New Castle County government that, if they were promoted to and accepted those positions, their pension benefits would remain secure, their seniority within the merit system would remain secure and that their employment status under standards of "progressive discipline" and "just cause" standards would remain secure.

## FACTUAL ALLEGATIONS

32.    In 1997, Mr. Freebery applied for and was promoted to the merit system protected position of General Manager of the New Castle County Department of Special Services.

33.    At the time Mr. Freebery applied for the position of General Manager of the Department of Special Services, he had been a classified employee for fifteen years and was fully protected under the merit system of New Castle County.

34.    Mr. Freebery accepted the promotion to General Manager of the New Castle County Department of Special Services in reliance upon the representations that the position would be classified under the merit system (and that he would, therefore, *continue* to be merit system protected) and of, *inter alia,* job security, continued employment, removal only for just cause made to him and all other county employees who applied for General Manger positions, as set forth in ¶¶ 21-28; 30-33, above.

35.    Several years later, in November, 2003, the promises and representations made to the County employees who applied for and were promoted to General Manager positions were reiterated to each of them by written memorandum from the County Executive which stated:

> Lest some forget the promises that were made to you when you accepted the promotion to General Manager, these same promises are hereby re-stated to you so that you may rely upon them legally.  The politically-appointed position of "director" was intentionally deleted from state law as the head of each department.  In its place, a merit system title of "General Manger" was used to denote the head of each department.

> Of course, someone could change state law, or even without a change, could re-hire political appointees as department directors, as in the days of old.  Thus, a political appointee could direct you and your subordinates.  We eliminated those costly positions

to save money, and to induce you to accept a leadership role in your department, immune from political pressure, and still secure in a merit system position. You accepted your position as general manager based on that understanding.

Today, it is again re-stated. You may rely on your position as general manager remaining as a merit system position, devoid of political whims and pressures. No threat of termination may affect you, except for just cause or non-performance. You are entitled to the same job security as all other merit system employees and should fully enjoy your career as a government professional.

This letter is meant to be retained by you, and a copy retained in your personnel file. It is intended that you may legally rely upon the representations in this letter as a binding contract of employment.

If, in the future, someone "wants you out" of your position, this government must be prepared to buy you out fully, salary, benefits and all your time toward pension, and all attendant pension benefits. As with all merit positions, you can not be politically removed. Any attempt to do so would equate to unlawful discharge, for which you must be fully compensated.

36.     By accepting the position of General Manager of the Department of Special Services under the circumstances outlined above, Mr. Freebery obtained a property interest in continued employment protected by the Constitution of the United States and the Constitution and laws of the State of Delaware, from which employment he could not be removed without due process of law and that process accorded him as a merit system employee.

37.     By accepting the position of General Manager of the Department of Special Services under the circumstances outlined above, Mr. Freebery entered into an express contract of employment with NCCo.

38.     By accepting the position of General Manager of the Department of Special Services under the circumstances outlined above, Mr. Freebery entered into an implied contract of employment with NCCo.

39.    The contract of employment between Mr. Freebery and NCCo was subject to a duty of good faith and fair dealing by both parties thereto.

40.    Mr. Freebery held the position of General Manager of the Department of Special Services with distinction until he was wrongfully terminated by the defendants, as set forth below.

41.    Over the twenty-three year history of his employment by New Castle County, including the period within which he served as General Manager of the Department of Special Services, Mr. Freebery successfully:

* performed and supervised all building construction projects, paving, storm and sanitary sewers, excavation and landscaping for his department;

* determined labor, equipment, material, profit/overhead and lump sum prices for complete bids;

* negotiated and secured contracts with client companies, union locals, engineering and construction firms and researched zoning codes and obtained permits;

* designed/layout construction sight operations and prepared and interpreted blueprint and topographic drawings;

* established grades, determined drainage specs, performed excavation and performed source/destination flow studies to improve foundational capabilities;

* calculated quarterly requirements for tilling, fertilizing, mulching and mowing;

* devised/implemented monthly predictive/preventative grounds maintenance schedules;

* coordinated workforces of up to 475 men including union/non-union employees and inspected work (in progress and upon completion) to ensure job specification compliance;

-10-

    *       managed an operating budget of approximately $70,000,000.00;

    *       managed a six year capital budget of $500,000,000.00;

       *       calculated projections of expenditures for operating capital budget units;

    *       devised fiscal budget and established cost controls by accurate forecasting, scheduling and selecting priorities to remain within budgetary limitations;

    *       interfaced with equipment vendors, distributors and material dealers and controlled purchasing, inventory, distribution, and maintenance of all construction equipment; and

    *       observed federal and state safety regulations while identifying, isolating and resolving violations.

42.     In 2000, defendant Christopher Coons was elected President of the New Castle County Council.   Both Coons and Sherry Freebery were members of the Democratic Party.

43.     During the period of time that Coons served on New Castle County Council, he was a vocal, political opponent of sitting County Executive Gordon and Gordon's Chief Administrative Officer Sherry Freebery.

44.     In and during September, 2002, it became public knowledge that Gordon and Freebery were the subjects and/or targets of a federal grand jury investigation in the District of Delaware.

45.     In February 2004, Sherry Freebery announced her candidacy for the Democratic nomination for County Executive.

46.     On April 19, 2004, defendant Coons announced his candidacy for the same position, the Democratic nomination for County Executive.

47.     On May 27, 2004, Tom Gordon and Sherry Freebery were indicted on various charges allegedly arising out of their tenure in county government.

48.     Despite the fact that she was under indictment, Ms. Freebery continued to seek and actively campaign for the Democrat nomination for County Executive.

49.     The primary campaign for the Democratic nomination for County Executive was bitter and hotly contested.

50.     During the primary campaign for the Democratic nomination for County Executive, defendant Coons and Ms. Freebery personally attacked each others competence and integrity in office.

51.     After it became public knowledge that Ms. Freebery was a target of the grand jury, and after her eventual indictment, plaintiff Joe Freebery, in the proper exercise of his First Amendment rights to freedom of speech and familial association, was privately supportive of his sister and publicly supportive of her, as her brother and friend, to the extent he was permitted to do so as an employee of New Castle County.

52.     Between September 2002 and Ms. Freebery's indictment, Mr. Freebery, in the proper exercise of his First Amendment rights to freedom of speech and familial association and to the extent appropriate as an employee of New Castle County, made truthful public statements which were supportive of his sister and which contradicted what appeared to be the government's theory of the criminal liability of his sister.

53.     During the primary campaign, Joe Freebery, in the exercise of the rights secured him under the First, Ninth and Fourteenth Amendments to the Constitution of the United States and to the extent he was permitted to do so as an employee of New Castle County, publicly

supported his sister's candidacy for the Democratic nomination for New Castle County
Executive and voted for her in that election.

54.     On September 11, 2004, Defendant Coons won the Democratic nomination to
run as that party's candidate for County Executive.

55.     During the primary campaign and the general election which followed, plaintiff
Joe Freebery continued to perform his role as General Manager of the Department of Special
Services in an exemplary and professional manner.

56.     Upon information and belief, despite the fact that Joe Freebery was and had
been serving in a merit system protected position, defendant Coons publicly and privately
stated during both the primary and general election campaigns that, should he be elected, there
would be "no room" for Joe Freebery in his administration.  Upon information and belief,
defendant Coons made similar statements about Joe Freebery after he was elected and assumed
the office of County Executive.

57.     Upon information and belief, despite the fact that Joe Freebery was and had
been serving in a merit system protected position, defendant Coons and/or authorized agents/
representatives of defendant Coons' stated publicly and privately, during both the primary and
general election campaigns, that Coons intended to run an administration "free of corruption"
and that there would be "no room" for "someone like Joe Freebery" in any Coons
administration.  Upon information and belief, defendant Coons' authorized agents and
representatives made similar statements about Mr. Freebery on behalf of Coons after Coons
was elected and after he assumed the office of County Executive.

58.     The public and private statements made by and on behalf of defendant Coons regarding Joe Freebery, even prior to his receiving the Democratic nomination and eventual election as County Executive, clearly demonstrated his intention to remove Mr. Freebery from his merit system protected position as General Manager of the Department of Special Services in retaliation for Mr. Freebery's exercise of his constitutional rights and/or for the reasons set forth herein.

59.     At all times relevant hereto, plaintiff Joe Freebery never took any action nor made any public or private statements which were in any way antithetical to his continuing in his merit system protected position of General Manager of the Department of Special Services, regardless of who was eventually elected County Executive of New Castle County.

60.     In November, 2004, Defendant Coons was elected County Executive of New Castle County.  He took office as County Executive on January 4, 2005.

61.     Upon information and belief, almost immediately after his election as County Executive, defendant Coons began the process of doing whatever had to be done to remove plaintiff Joe Freebery from his merit system protected position as General Manager of the Department of Special Services, in retaliation for his public and private support of his sister and/or her candidacy and because he was Sherry Freebery's brother, which conduct by Coons and/or his agents was in violation of those rights secured Mr. Freebery pursuant to the First, Fifth, Ninth and Fourteenth Amendments to the Constitution of the United States of America, 42, U.S.C. § 1983, the laws of the State of Delaware and Mr. Freebery's express and/or implied contract of employment with New Castle County.

-14-

62.    Upon information and belief, defendant Coons realized and concluded that there was no basis to remove Mr. Freebery from his merit system protected position for "just cause" and no basis to discipline or demote him within that system.

63.    On or about January 25, 2005, at the direct request of defendant Coons and without the advice or consent of County Council, defendant Coons caused House Bill #29 to be introduced in the Delaware House of Representatives, in order to undue the legislative changes made as outlined in ¶¶ 19-31 above and "reinstate" the position of politically appointed Department Directors who served at the pleasure of the County Executive (which had never really been eliminated under the 1997 legislative reforms).

64.    Upon information and belief, Coons sought the introduction and passage of House Bill #29 to remove Joe Freebery from his merit system protected position.

65.    The following provision was included as part of the amendment package to House Bill #29 and eventually enacted into law:

> (c) Notwithstanding any other provision of State or County law, upon the effective date of this Section, any persons then serving in any of the positions enumerated in this Section shall cease to be classified service members of the New Castle County Merit System, but may thereafter continue to serve at the pleasure of the County Executive.

66.    Upon information and belief, defendant Coons personally appeared before at least one session of a legislative body and testified in support of this statute and this specific provision of this statute.

67.    The foregoing provision of House Bill #29 which was eventually enacted into law improperly interfered with, impaired and divested the established and vested constitutional rights of Mr. Freebery.

68.    The foregoing provision of House Bill #29 which was eventually enacted into law improperly impaired and violated the express and implied contractual rights of Mr. Freebery.

69.    House Bill #29 and the specific, foregoing provision thereof, which was eventually enacted into law providing for its retroactive application, was not in furtherance of the general police powers for concerns of public health, morals, safety or general welfare.

70.    House Bill #29 and the specific, foregoing provision thereof, which was eventually enacted into law providing for its retroactive application was introduced and enacted at the request of defendant Coons to deprive Mr. Freebery and those other merit system protected General Managers of their constitutionally protected property right to continued employment without due process of law.

71.    House Bill #29 was enacted into law and signed by the Governor of Delaware on or February 9, 2005.

72.    On or about February 28, 2005, Mr. Freebery was notified that his position as General Manager of the Department of Special Services had been removed from Merit System protection and that he was now serving ". . . at the pleasure of the County Executive", defendant Coons.

73.    On April 6, 2005, after twenty-three years of exemplary and loyal service to New Castle County, Mr. Freebery was handed a two sentence letter from defendant Coons firing him as General Manager of the Department of Special Services as of 3:30 p.m. that same day.

74.     Joe Freebery was fired by the defendants in retaliation for being Sherry Freebery's brother; and/or because during the period of time when Ms. Freebery was under investigation and indictment, and in the proper exercise of his First Amendment right to Freedom of Speech, Joe Freebery was privately supportive of his sister and publicly supportive of her as her brother, to the extent he was permitted to do so as an employee of New Castle County; and/or because he made truthful public statements which were supportive of his sister and which contradicted what appeared to be the government's theory of criminal liability of his sister.

75.     Joe Freebery was fired by the defendants because of his exercise of his First, Fifth, Ninth and Fourteenth Amendment rights in supporting and voting for Sherry Freebery, his sister and a political candidate running against defendant Coons.

76.     Joe Freebery was fired by the defendants as retaliation for the nature of the campaign conducted by Sherry Freebery against defendant Christopher Coons.

77.     As a direct and proximate result of the actions of the defendant, Mr. Freebery will suffer lost wages, earnings and benefits, he will suffer diminished earning capacity and receive less pension and other benefits now and upon his retirement, decreased employment and earnings opportunities, and other pecuniary losses, emotional pain and suffering, disappointment, anger, inconvenience, mental anguish, loss of enjoyment of life, mental and physical pain, anguish, humiliation, embarrassment, injury to reputation and other non pecuniary losses and injury.

78.     The individual defendants conduct violated clearly established federal constitutional rights of which any official would have known, including, but not limited to,

established Third Circuit case law prohibiting retaliation against public employees for protected speech.

79.     At all times material hereto, the individual defendants participated in, authorized and sanctioned the federal constitutional deprivations described above.

80.     At all times material hereto, the individual defendants and their agents were acting under color of law. The federal constitutional deprivations described herein are fairly attributable to the State and to New Castle County.

81.     The actions of the defendants and their agents and employees were deliberately, intentionally, willfully, purposefully and knowingly done in violation of federal constitutional rights and because of the exercise of those rights.

82.     The defendants either knew or showed a negligent or reckless disregard for the matter of whether their conduct violated federal constitutional rights.

83.     The defendants' actions were outrageous and taken with evil motive, in bad faith, out of personal animus and without any reasonable grounds to support them.

84.     The defendants' actions were wanton and malicious or taken with reckless indifference to federal constitutional rights.

85.     The exercise of these rights was a motivating, substantial or determinative factor in all actions adverse to Mr. Freebery.

86.     The defendants did not reasonably believe that the actions they took were necessary to accomplish any legitimate governmental purpose.

87.     The defendants' actions were motivated by bias, bad faith and improper motive.

88.     The defendants' actions constitute an abuse of governmental power.

89.     The defendants' actions are not so reasonable as to further any governmental interest asserted and do not closely fit the goal of serving those governmental interests.

90.     The actions of the defendants, jointly and severally, deprived Mr. Freebery of his constitutional and civil rights guaranteed under the First, Fifth, Ninth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983 and the Constitution of the State of Delaware.

**Count I**
**Violation of Fifth and Fourteenth Amendments – Deprivation of Property Interests –**
**42 U.S.C. § 1983**

91.     The allegations of ¶¶ 1–90 are incorporated by reference herein as though fully set forth.

92.     At the time Mr. Freebery applied for the position of General Manager of the Department of Special Services, he was a merit system protected employee of New Castle County.

93.     Mr. Freebery accepted the promotion to General Manager of the New Castle County Department of Special Services in reliance upon the representations of, *inter alia,* job security, continued employment, removal only for just cause made to him and all other county employees who applied for General Manager as set forth in ¶¶ 21-28; 30-34, above.

94.     By accepting the position of General Manager of the Department of Special Services under the circumstances outlined above, Mr. Freebery obtained a property interest in continued employment protected by the Constitution of the United States, from which employment he could not be removed without due process of law, which necessarily includes notice, opportunity to be heard and that process accorded him as a merit system employee.

95.     In initiating and carrying out the process of doing whatever had to be done to remove plaintiff from his merit system protected position as General Manager of the Department of Special Services for the reasons set forth herein, in contravention of Mr. Freebery's constitutionally protected property interests, the defendants violated those rights guaranteed to Mr. Freebery pursuant to the First, Fifth, Ninth and Fourteenth Amendments to the Constitution of the United States of America, 42, U.S.C. § 1983, the laws of the State of Delaware and Mr. Freebery's express and implied contract of employment with New Castle County.

96.     By requesting, authorizing and otherwise initiating the process of introducing House Bill #29 in the Delaware House of Representatives, in order to undue the legislative changes made as outlined in ¶¶ 18-31, above and "reinstate" the position of politically appointed Department Directors who served at the pleasure of the County Executive, defendant Coons and the other individual defendants participated in, authorized and sanctioned the federal constitutional deprivations described herein.

97.     The actions of defendant Coons and the other individual defendants and their agents and employees were deliberately, intentionally, willfully, purposefully and knowingly done in violation of federal constitutional rights and/or because of Mr. Freebery's exercise of those rights.

98.     The actions and conduct of defendant Coons and the other individual defendants improperly interfered with, impaired and divested the established and vested constitutional, contractual and legal rights of Mr. Freebery.

99.    House Bill #29 and the specific, retroactive provision thereof was not in furtherance of the general police powers for concerns of public health, morals, safety or general welfare.

100.    House Bill #29 and the specific, foregoing provision noted above was introduced and enacted at the request of defendant Coons to deprive Mr. Freebery and those other merit system protected General Managers of their constitutionally protected property right to continued employment without due process of law.

101.    By taking the actions described herein, defendant Coons and the other defendants knowingly, intentionally, willfully, maliciously and purposefully deprived Mr. Freebery of his constitutionally protected property and liberty interests without due process of law.

102.    As a direct and proximate result of the conduct of the defendants as outlined above, Mr. Freebery was damaged as set forth herein.

**Count II**
**Violation of First Amendment – Free Speech – Public Employee Retaliation –**
**42 U.S.C. § 1983**

103.    The allegations of ¶¶ 1–102 are incorporated by reference herein as though fully set forth.

104.    Plaintiff in his private capacity spoke out on issues of public concern under the First Amendment.

105.    By its content, form and context, at all times plaintiff spoke out on matters of public concern.

106.    All of plaintiff's speech was non-disruptive of any interest of his employer and it was on matters of concern to the public at large.  His speech related to matters of political concern to the community.

107.    Defendant Coons and the other individual defendants were aware of plaintiff's protected speech and it antagonized them.

108.    There is a causal link between the First Amendment protected activity on matters of public concern and the adverse action of wrongfully removing plaintiff from his merit system protected position without due process of law, including but not limited to the temporal proximity of events; the personal knowledge and awareness of the protected activity by the defendants; and direct evidence establishing the defendants' retaliatory motive.

109.    The First Amendment protected activity was a substantial or motivating factor in plaintiff's termination.  The natural probative force of the evidence demonstrates causation.

110.    The defendants cannot prove by a preponderance of the evidence that absent a constitutional violation they would have had any grounds to terminate plaintiff.

111.    The total retaliatory adverse action taken by defendants against plaintiff is sufficient to deter any person of ordinary firmness from exercising their First Amendment right to freedom of speech.

112.    The defendants took action adverse to plaintiff as a direct and proximate result of and in retaliation for plaintiff's First Amendment speech on matters of public concern. There is a temporal and causal relationship between plaintiff's aforementioned protected speech and conduct and the adverse employment action.  First Amendment protected activity was a substantial or motivating factor in the adverse employment action.  The defendants

cannot prove by a preponderance of the evidence that absent a constitutional violation they would have had grounds to terminate plaintiff.

113.    Plaintiff's constitutional right to freedom of speech has been denied under the First Amendment to the United States Constitution and 42 U.S.C. § 1983.

114.    As a direct and proximate result of the conduct of the defendants as outlined above, Mr. Freebery was damaged as set forth herein.

**Count III**
**Violation of First Amendment – Political Association or Belief Retaliation –**
**Familial Association - 42 U.S.C. § 1983**

115.    The allegations of ¶¶ 1–114 are incorporated by reference herein as though fully set forth.

116.    Mr. Freebery was employed in a merit protected position by NCCo, a public employer, and then wrongfully terminated.

117.    Defendants are unable to prove that political association or belief are appropriate requirements for the position of General Manager of the Department of Special Services.

118.    During the primary campaign and the general election which followed, Joe Freebery, in the exercise of the rights secured him under the First, Fifth, Ninth and Fourteenth Amendments to the Constitution of the United States and to the extent he was permitted to do so as an employee of New Castle County, publicly supported his sister's candidacy for the Democratic nomination for New Castle County Executive.

119.    During the period of time when Sherry Freebery was under investigation and indictment, and in the proper exercise of his First Amendment right to Freedom of Speech,

plaintiff Joe Freebery was privately supportive of his sister and publicly supportive of her as her brother, to the extent he was permitted to do so as an employee of New Castle County in that he made truthful public statements which were supportive of his sister and which contradicted what appeared to be the government's theory of criminal liability of his sister.

120.    The defendants were aware of plaintiff's political and familial association and it antagonized them.

121.    There is a causal link between the First Amendment protected activity on matters of public concern and the adverse action of wrongfully removing plaintiff from his merit system protected position without due process of law, including but not limited to the temporal proximity of events; the personal knowledge and awareness of the protected activity by the defendants; and direct evidence establishing the defendants' retaliatory motive.

122.    The First Amendment protected activity was a substantial or motivating factor in plaintiff's termination. The natural probative force of the evidence demonstrates causation.

123.    The defendants cannot prove by a preponderance of the evidence that absent a constitutional violation they would have had any grounds to terminate plaintiff.

124.    The total retaliatory adverse action taken by defendants against plaintiff is sufficient to deter any person of ordinary firmness from exercising their First Amendment right to freedom of speech and First Amendment right of Familial Association.

125.    The defendants took action adverse to plaintiff as a direct and proximate result of and in retaliation for plaintiff's First Amendment rights to freedom of political and familial association. There is a temporal and causal relationship between plaintiff's aforementioned protected activity and status and the adverse employment action. First Amendment protected

activity was a substantial or motivating factor in the adverse employment action. The defendants cannot prove by a preponderance of the evidence that absent a constitutional violation they would have had grounds to terminate plaintiff.

126.    The actions of the defendants have violated plaintiffs constitutional rights to freedom of association, of political association and/or familial association, protected by the First Amendment to the Constitution of the United States and 42 U.S.C. § 1983.

127.    As a direct and proximate result of the conduct of the defendants as outlined above, Mr. Freebery was damaged as set forth herein.

**Count IV**
**Violation of Fifth and Fourteenth Amendments – Deprivation of Liberty Interest-**
**42 U.S.C. § 1983**

128.    The allegations of ¶¶ 1-127 are incorporated by reference herein as though fully set forth.

129.    Before and after his election and after he took office, defendant Coons and the other individual defendants, acting individually and/or on Coons' behalf, made public and private statements about Joe Freebery as described above, stating and/or implying that he was incompetent and/or dishonest and/or corrupt, in order to justify defendant Coons' decision to wrongfully terminate Mr. Freebery.

130.    The public and/or private statements made by and/or on behalf of defendant Coons stating and/or implying that Joe Freebery was incompetent and/or dishonest and/or corrupt were false and were known by those who made them to be false.

131.    The public and/or private statements made by and/or on behalf of defendant Coons about Joe Freebery were defamatory and/or libelous *per se* and were intended to injure Mr. Freebery in name and reputation.

132.    The public and/or private statements made by and/or on behalf of defendant Coons about Mr. Freebery which were defamatory and/or libelous *per se* and which were intended to and/did injure Mr. Freebery in name and reputation placed upon him a continuing stigma and disability which forecloses Mr. Freebery's freedom to take advantage of other employment opportunities and were intended to block him from pursuing employment in his chosen fields of interest.

133.    The conduct of the defendants as described herein has so severely impaired Mr. Freebery's ability and/or right to be considered for other employment that it can and must be concluded that the defendants deprived Mr. Freebery of a constitutionally protected liberty interest.

134.    The combination of the defendants' adverse employment action in wrongfully firing Mr. Freebery and the stigma they intentionally imposed upon him by the manner in which such action was taken constitutes a violation of Mr. Freebery's constitutionally protected liberty interest.

135.    The actions of the defendants have violated plaintiffs constitutional rights to property, liberty and due process of law, protected by the Fifth and Fourteenth Amendments to the Constitution of the United States and 42 U.S.C. § 1983.

136.    As a direct and proximate result of the conduct of the defendants as outlined above, Mr. Freebery was damaged as set forth herein.

**Count V**
**Violation of First, Ninth and Fourteenth Amendments – Fundamental Right to Vote –**
**42 U.S.C. § 1983**

137.    The allegations of ¶¶ 1–136 are incorporated by reference herein as though fully set forth.

138.    Plaintiff voted for and politically supported his sister, Sherry Freebery, who was the candidate opposing defendant Christopher Coons for New Castle County Executive.

139.    The individual defendants were aware of plaintiff's exercise of his right to vote, it antagonized them and it was either the sole, motivating, substantial, or determinative cause of their termination of plaintiff.

140.    Defendants retaliated against plaintiff for following his conscience and exercising his fundamental right to vote for a candidate which his conscience dictated.

141.    Defendants retaliated against plaintiff and fired him from a job for which he was well qualified because he chose to exercise his fundamental right to vote.

142.    The plaintiff's fundamental right to vote is absolute and it was illegally and unconstitutionally infringed upon by the defendants' actions and conduct.

143.    Plaintiff's fundamental right to vote has been denied under the First, Ninth and Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

144.    As a direct and proximate result of the conduct of the defendants as outlined above, Mr. Freebery was damaged as set forth herein.

**Count VI**
**Breach of Contract – State Law**

145.    The allegations of ¶¶ 1–144 are incorporated by reference herein as though fully set forth.

146.    Mr. Freebery accepted the promotion to General Manager of the New Castle County Department of Special Services in reliance upon the representations of, *inter alia,* job security, continued employment, removal only for just cause made to him and all other county employees who applied for General Manger as set forth above and relied upon those promises to his detriment.

147.    In November, 2003, the promises and representations made to all employees who applied for and were promoted to General Manager positions were reiterated to each of them, writing, by memorandum which stated, *inter alia;:*

> Lest some forget the promises that were made to you when you accepted the promotion to General Manager, these same promises are hereby re-stated to you so that you may rely upon them legally.  The politically-appointed position of "director" was intentionally deleted from state law as the head of each department.  In its place, a merit system title of "General Manger" was used to denote the head of each department.

> Of course, someone could change state law, or even without a change, could re-hire political appointees as department directors, as in the days of old.  Thus, a political appointee could direct you and your subordinates.  We eliminated those costly positions to save money, and to induce you to accept a leadership role in your department, immune from political pressure, and still secure in a merit system position.  You accepted your position as general manager based on that understanding.

> Today, it is again re-stated.  You may rely on your position as general manager remaining as a merit system position, devoid of political whims and pressures.  No threat of termination may affect you, except for just cause or non-performance.  You are entitled to the same job security as all other merit system employees and should fully enjoy your career as a government professional.

This letter is meant to be retained by you, and a copy retained in your personnel file. It is intended that you may legally rely upon the representations in this letter as a binding contract of employment.

If, in the future, someone "wants you out" of your position, this government must be prepared to buy you out fully, salary, benefits and all your time toward pension, and all attendant pension benefits. As with all merit positions, you can not be politically removed. Any attempt to do so would equate to unlawful discharge, for which you must be fully compensated.

148.    By accepting the position of General Manager of the Department of Special Services under the circumstances outlined above, Mr. Freebery not only obtained the constitutionally protected property interest outlined herein, he also entered into an express and/or implied contract of employment with New Castle County.

149.    By wrongfully terminating Mr. Freebery and acting as set forth above, the defendants breached Mr. Freebery's contract of employment.

150.    As a direct and proximate result of the conduct of the defendants as outlined above, Mr. Freebery was damaged as set forth herein.

### Count VII
### Breach of Contract – State Law
### Breach of Duty of Good Faith and Fair Dealing

151.    The allegations of ¶¶ 1–150 are incorporated by reference herein as though fully set forth.

152.    The contract of employment between Mr. Freebery and NCCo was subject to a duty of good faith and fair dealing by both parties thereto.

153.    By their actions and conduct as set forth herein, the defendants' breached the duty of good faith and fair dealing arising from and accompanying Mr. Freebery's contract of employment with New Castle County.

-29-

154.    As a direct and proximate result of the conduct of the defendants as outlined above, Mr. Freebery was damaged as set forth herein.

**Count VIII**
**State Law – Defamation**

155.    The allegations of ¶¶ 1–154 are incorporated by reference herein as though fully set forth.

156.    The statements made by and/or on behalf of defendant Coons and/or his authorized agents/ representatives of defendant Coons' campaign that Coons intended to run an administration "free of corruption" and that there would be "no room" for "someone like Joe Freebery" in any Coons administration were and/are defamatory *per se*.

157.    The statements made and published by and/or on behalf of defendant Coons and/or his authorized agents/ representatives of defendant Coons' campaign expressly stated and/or implied that Mr. Freebery was a corrupt individual when, in fact, the defendants knew that he was an honest, hardworking employee of the County.

158.    The statements made by and/or on behalf of defendant Coons and/or his authorized agents/ representatives of defendant Coons' campaign were intended to and/or did cause harm and injury to Joe Freebery and Joe Freebery's reputation.

159.    As a direct and proximate result of the conduct of the defendants as outlined above, Mr. Freebery was damaged as set forth herein.

**Count IX**
**State Law – Civil Conspiracy**

160.    The allegations of ¶¶ 1–159 are incorporated by reference herein as though fully set forth.

161.    Defendants Coons and John Does acted in combination, concert and conspiracy, intentionally, maliciously and with reckless disregard for and indifference to plaintiff's constitutional rights under the First, Ninth, Fifth and Fourteenth Amendments to the United States Constitution, his rights to freedom of speech, political and familial association and his contractual rights, to deprive him of those rights.

162.    In furtherance of this combination and conspiracy, defendants Coons and John Does 1-25 performed the specific overt acts described above and incorporated by reference herein.

163.    Defendants' conspiracy amongst themselves proximately and directly caused the injuries to plaintiff described herein, including lost wages, earnings and benefits, diminished earning capacity, less pension and other benefits now and upon his retirement, decreased employment and earnings opportunities, and other pecuniary losses, emotional pain and suffering, disappointment, anger, inconvenience mental anguish, loss of enjoyment of life, mental and physical pain, anguish, humiliation, embarrassment, injury to reputation and other non pecuniary losses and injury.

### Count X
### State Law – Violation of § 26.01.018 of New Castle County Code

164.    The allegations of ¶¶ 1–163 are incorporated by reference herein as though fully set forth.

165.    Section 026.01.08 (A) of the New Castle County Code provides, in pertinent part, that:

No person shall be . . . removed from or in any way discriminated against with respect to any County position or appointed County administrative office because of race, color, national origin, gender, age, physical disability, political or religious opinions or affiliations or other non-merit factors.

166.    Section 26.01.018 (B) of the New Castle County Code states that a County employee who violates Section 26.01.018 (A) shall immediately forfeit his or her office or position and shall be ineligible to hold any County office or position for a period of five (5) years thereafter.

167.    The conduct of the individual defendants as described above constitutes a violation of Section 26.01.018(A).

**WHEREFORE,** plaintiff requests the following relief:

a) an award of compensatory damages in favor of Joe Freebery and against all defendants, jointly and severally in an amount to be determined at trial;

b) an award of punitive damages in favor of Joe Freebery and against all defendants, jointly and severally, in an amount to be determined at trial;

c) an award in favor of Joe Freebery and against all defendants, jointly and severally for lost wages, back pay, pension and other benefits, for future or front pay, loss of earning capacity, emotional distress, humiliation, embarrassment and injury to reputation;

d) an award of reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable law;

e) a finding that the individual defendants who are County employees and who engaged in the conduct described herein have violated Section 26.01.018 of the New Castle County Code and enter an Order ruling that their position with the County be forfeited and direct that they immediately be removed from such position and, further, Order that they be ineligible to hold any County office or position for a period of five (5) years from the date of such finding by the Court; and

f)  any such other relief which the Court deems appropriate.

KNEPPER & STRATTON

**OF COUNSEL:**

Joseph F. Lawless, Esq.
PA Id. No. 23691
6 Harvey Lane
Newtown Square, PA 19083
610.356.0875
Jlaw6@comcast.net
Counsel for Joseph J. Freebery

Barbara H. Stratton, Esq.
P.O. Box 1795
1228 North King Street
Wilmington, Delaware 19801
302.658.1717
Delaware Bar ID # 2785
bhs@knepperstratton.net
Counsel for Joseph J. Freebery

Dated: October 26, 2005

-33-