UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JOSEPH J. FREEBERY,                              )
                                                 )        C. A. No. 05-748-GMS
                    Plaintiff,                   )
                                                 )
                                                 )
            v.                                   )
                                                 )
CHRISTOPHER COONS, in his official capacity      )
as County Executive of New Castle County         )
and NEW CASTLE COUNTY, a municipal               )
corporation; and JANE AND JOHN DOES 1-25         )
                                                 )
                    Defendants.                  )

## **DEFENDANTS' MOTION TO DISQUALIFY JOSEPH F. LAWLESS AND OPPOSE HIS**

## **ADMISSION _PRO HAC VICE_**

Gregg E. Wilson, County Attorney
Delaware Bar I.D. No. 85
New Castle County Law Department
87 Reads Way
Wilmington, Delaware 19720
(302) 395-5130
*Attorney for Defendants, Christopher Coons, in his*
*official capacity as County Executive of New Castle*
*County and New Castle County, a municipal*
*corporation; and Jane and John Does 1-25*

DATED:  November 15, 2005

## TABLE OF CONTENTS

**PAGE**

Table of Citations..................................................................................ii

Introduction.......................................................................................1

Standard of Review.............................................................................2

Argument ...........................................................................................2

I.    Lawless' Motion for Admission Pro Hac Vice should be denied and he
      Should be disqualified as Plaintiff's Attorney in the instant case.. ...............2

    A.    The County Should Be Considered a Client of Lawless in the *Maloney*
        Case For Conflict Purposes..................................................3

    B.    Lawless' Concurrent Representation of Plaintiff in the Instant Case
        and Ms. Freebery in the *Maloney* Case Violates ABA Model
        Rule 1.7...........................................................................4

    C.    The County's Payment of Lawless' Legal Fees in the *Maloney* case
        Presents a Potential Violation of ABA Model Rule 1.8. ...................6

    D.    Concurrent Representation of Plaintiff in the Instant Case and
        Ms. Freebery in the *Maloney* Case Could Result in a Violation
        of ABA Model Rule 1.6....................................................7

II.   The Conflict of Interest Presented in the Instant Case Should Not be
      Waived        ...........................................................................8

Conclusion .........................................................................................9

# TABLE OF CITATIONS

| CASES | PAGE |
|---|---|
| *Bowman v. Bank of Delaware*<br>1998 WL 54669 (D.Del.) | 2 |
| *Eisenberg v. Gagnon,*<br>766 F.2d 770, 787-777 (3d Cir. 1985) | 7 |
| *End of Road Trust v. Terex Corporation*<br>2002 WL 242464 (D.Del) | 2 |
| *Maloney and Rendina v. Gordon, Freebery and New Castle County,*<br>C.A. No. 03-999-KAJ (U.S.D.C. DE) | 2, 3, 4, 5, 6 |
| *Nemours Foundation v. Gilbane, Aetna, Federal Insurance Company*<br>632 F.Supp. 418, 422-425 (1986) | 3 |
| *United States v. Gordon,*<br>334 F.Supp. 2d 581, 594 (D.Del 2004) | 4 |
| *United States v. Miller,*<br>624 F.2d 1198, 1201 (3d Cir. 1980) | 2 |
| *United States v. Moscony,*<br>927 F.2d 742 (3d Cir. 1991) | 4, 7 |

## TABLE OF CITATIONS (cont'd)

| STATUTES AND AUTHORITIES | PAGE |
|---|---|
| 42 U.S.C. §1983 | 1 |
| Del. L.R. 83.6(d)(2) | 2 |
| ABA Model Rules of Professional Conduct 1.6 | 3, 6, 7 |
| ABA Model Rules of Professional Conduct 1.7 | 3, 4, 5, 7, 8 |
| ABA Model Rules of Professional Conduct 1.8 | 3, 6, 7 |
| N.C.C. *Code* §2.03.201 | 3 |

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JOSEPH J. FREEBERY, | ) | |
| | ) | C. A. No. 05-748-GMS |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CHRISTOPHER COONS, in his official capacity | ) | |
| as County Executive of New Castle County | ) | |
| and NEW CASTLE COUNTY, a municipal | ) | |
| corporation; and JANE AND JOHN DOES 1-25 | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' MOTION TO DISQUALIFY JOSEPH F. LAWLESS AND OPPOSE HIS ADMISSION *PRO HAC VICE*

Defendants, Christopher Coons (hereinafter "Coons"), in his official capacity, and New Castle County, (hereinafter "the County"), by and through the undersigned counsel, respectfully oppose Plaintiff's Motion for Admission *Pro Hac Vice* of Joseph F. Lawless (hereinafter "Lawless") and move to disqualify Lawless as the attorney for Plaintiff on the grounds that he possesses a conflict of interest in representing Plaintiff, Joseph J. Freebery (hereinafter "Plaintiff") in the instant matter.

### Introduction

Plaintiff brought suit against Defendants Coons, the County and 25 unnamed Jane and John Does alleging that Defendants' actions violated Plaintiff's constitutional rights secured under the First, Fifth, Ninth and Fourteenth Amendments to the United States Constitution, 42 U.S.C § 1983. More specifically, Plaintiff claims that he had a protected property interest in his employment with New Castle County and that his property interest was taken without due

1

process of law because of his political and familial association and the exercise of his right to free speech.

Lawless currently represents Plaintiff's sister, Sherry L. Freebery, former Chief Administrative Officer of New Castle County, in her individual capacity in the case of *Maloney and Rendina v. Gordon, Freebery and New Castle County*, C.A. No. 03-999-KAJ, currently stayed in this Court. The two cases are similar in that they both allege wrongful termination in retaliation for the exercise of the right to free speech. In the instant case, Lawless represents the Plaintiff against the County and the County Executive as well as twenty five (25) John and Jane Does, while in the *Maloney* case Lawless represents Ms. Freebery in her individual capacity as a named defendant.

## Standard of Review

This Court is vested with the power to supervise the professional conduct of attorneys and can therefore disqualify an attorney. *United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir.1980). The party moving for disqualification "must clearly demonstrate that continued representation would be impermissible." *End of Road Trust v. Terex Corporation*, 2002 WL 242464 (D. Del) (citing *Cohen v. Oasin*, 844 F.Supp.1965, 1067 (E.D.Pa.1994)) (Attached as Exhibit 1) "Vague and unsupported allegations are not sufficient to meet this standard." *Id.*

## ARGUMENT

## I.      LAWLESS' MOTION FOR ADMISION *PRO HAC VICE* SHOULD BE DENIED AND HE SHOULD BE DISQUALIFIED AS PLAINTIFF'S ATTORNEY IN THE INSTANT CASE.

A Court may disqualify an attorney for acting unethically or for failing to avoid the appearance of impropriety. *Bowman v. Bank of Delaware*, 1998 WL 54669 (D. Del.), (Attached as Exhibit 2) *citing Richardson v. Hamilton Int'l Corp.*, 469 F.2d 1382, 1385-86 (3d Cir.1972). Pursuant to Rule 83.6(d)(2) of the Local Rules of Civil Procedure of the District of Delaware,

2

this Court shall use the American Bar Association's ("ABA") Model Rules of Professional Conduct ("Model Rules") to set the standards for professional conduct of attorneys practicing before it. Lawless' concurrent representation of Plaintiff in the instant case and Ms. Freebery in the *Maloney* case presents a conflict of interest in violation of ABA Model Rules of Professional Conduct 1.6, 1.7 and 1.8 and he should therefore be disqualified.

A.    **The County Should Be Considered a Client of Lawless in the *Maloney* Case For Conflict Purposes.**

For purposes of determining whether Lawless has a conflict of interest in concurrently representing Plaintiff and Ms. Freebery, the Court should consider the County as a client of Lawless in the *Maloney* case. *See Nemours Foundation v. Gilbane, Aenta, Federal Insurance Company,* 632 F. Supp. 418, 422-425 (Attorney represented defendant in a case and later went to work for a firm that represented plaintiff in same case. Upon co-defendant's motion to disqualify, the Court considered co-defendant to be a client of the attorney. The attorney was disqualified, but the firm was not, based on its screening procedures). In the *Maloney* litigation, the County and Ms. Freebery share a "commonality of interest" in that a key factor will be to show that there was no constructive termination of either plaintiff for retaliatory reasons. Due to the fact that the parties are working toward the same goal, there may be a necessity to share work product, attorney-client privileges and other confidential information related to the County's employment practices. *Id.* at 422. In conformity with *Nemours Foundation v. Gilbane, Aenta, Federal Insurance Company,* the County, as a co-defendant with Ms. Freebery in the *Maloney* litigation, must also be considered a client of Lawless. Even though there is no express attorney-client relationship, Lawless is acting as the County Attorney's designee pursuant to New Castle County Code Section 2.03.201 in his representation of Ms. Freebery. Therefore, there is an "implied professional relation[ship]" which is tantamount to the attorney-client relationship. *Id.* at 424. Further, there is an expectation that any and all information provided to and shared with

3

Lawless in the furtherance of the *Maloney* case will be of a confidential nature. Consequently, it is clear that Lawless owes the County the same professional duty as he does to Ms. Freebery and he therefore must be precluded from representing the Plaintiff in the instant case.

**B.    Lawless' Concurrent Representation of Plaintiff In The Instant Case and Ms. Freebery in the Maloney Case Violates ABA Model Rule 1.7.**

Lawless' concurrent representation of Plaintiff and Ms. Freebery also poses a conflict of interest as it would violate ABA Model Rule 1.7 which states, in pertinent part, that;

> a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if: (1) the representation of one client will be directly adverse to another client; or (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or a personal interest of the lawyer." However, a lawyer may represent a client with a concurrent conflict of interest if "(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client; (2) the representation in not prohibited by law; (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and (4) each affected client gives informed consent, confirmed in writing."

ABA Model Rule 1.7(b). Due to the fact that Ms. Freebery was Chief Administrative Officer and therefore supervised the Plaintiff during a large portion of the time referenced in the Complaint it is highly probable that she will be called as a witness. Comment 6 to ABA Model Rule 1.7 states: "a directly adverse conflict may arise when a lawyer is required to cross-examine a client who appears as a witness in a lawsuit involving another client, as when the testimony will be damaging to the client who is represented in the lawsuit." Lawless' cross-examine of his current client, Ms. Freebery, would pose a direct conflict. "Conflicts of interest arise whenever an attorney's loyalties are divided and an attorney who cross-examines former clients inherently encounters divided loyalties." *United States v. Gordon,* 334 F.Supp. 2d 581, 594 (D.Del)(2004) *citing United States v. Moscony,* 927 F.2d 742 (3d Cir. 1991). Therefore, based on the fact that there is a likelihood that Ms. Freebery will be a witness in the instant case, it is prudent to avoid

any conflict of interest and immediately disqualify Lawless from representing the Plaintiff in the instant suit. Failure to rectify the conflict at the earliest possible stage could later prejudice a particular party by forcing them to retain new counsel in the middle of litigation.

Moreover, as stated *supra,* the County shall be considered a client of Lawless in the *Maloney* case for conflict of interest purposes. The representation of the Plaintiff in the instant suit would therefore be directly adverse to his representation of the County in the *Maloney* case which presents an actual conflict of interest. An attorney can not sue and represent the same client in substantially similar matters as their interests are directly adverse and violate ABA Model Rule 1.7.

Ms. Freebery's representation could also be materially affected if Lawless is allowed to concurrently represent her in the *Maloney* case and Plaintiff in the instant case. Comment 8 to ABA Model Rule 1.7 states: "[e]ven where there is no direct adverseness, a conflict of interest exists if there is a significant risk that a lawyer's ability to consider, recommend or carry out an appropriate course of action for the client will be materially limited as a result of the lawyer's other responsibilities or interests." The claims against the County and Ms. Freebery in the *Maloney* case are closely related. The parties share a common interest in successfully arguing that there was no wrongful termination. Therefore, it is in the interest of all parties to jointly work together toward a successful outcome. Should Lawless continue to represent Plaintiff in an adverse action against the County, it is unlikely that the relationship between the County and Lawless could continue to be amicable or productive. The County will have to closely scrutinize all of Lawless' requests and proposals. Based on the fact that the continued representation of Plaintiff in the instant case will cause an adversarial relationship between the County and Lawless, it is clear that there is a significant risk that Ms. Freebery's representation would be materially limited.

**C.    The County's Payment of Lawless' Legal Fees in the *Maloney* Case Presents a Potential Violation of ABA Model Rule 1.8.**

As previously stated, Lawless is acting as the County Attorney's designee during his representation of Ms. Freebery in the *Maloney* case.   Therefore, his representation of Ms. Freebery is paid for by New Castle County.  ABA Model Rule 1.8(f) states: "a lawyer shall not accept compensation for representing a client from one other than the client unless: (1) the client gives informed consent; (2) there is no interference with the lawyer's independence of professional judgment or with the client-lawyer relationship; and (3) information relating to representation of a client is protected as required by Rule 1.6."  Lawless' own interest in the fee arrangement with the County could substantially limit his representation of Ms. Freebery. The adversarial relationship that will be created if Lawless is permitted to remain counsel for Plaintiff could interfere with his professional judgment in representing Ms. Freebery.  Lawless should be disqualified from representing Plaintiff in the instant case to protect the interest of Ms. Freebery and avoid the potential for violation of ABA Model Rule 1.8(f).

**D.    Concurrent Representation of Plaintiff in the Instant Case and Ms. Freebery in the *Maloney* Case Could Result in a Violation of ABA Model Rule 1.6.**

The County has a right to expect that any confidential information which has been disclosed or will be disclosed will not be used to its detriment in the future.  Lawless is prohibited from disclosing any information obtained during his representation of Ms. Freebery in accordance with ABA Model Rule 1.6 which states, in pertinent part, that, "A lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation . . . ." Comment 3 to the rule states: "the confidentiality rule, . . . , applies not only to matters communicated in confidence by the client but also to all information relating to the representation, whatever its source."  Comment 3 ABA Model Rule 1.6.  This includes any

6

information Lawless learned or learns as a result of his representation, including information obtained during interviews. Although the two cases being discussed are not part of the same litigation, they are substantially related in the fact that they are both employment cases which allege wrongful termination as a retaliatory act for exercising their right to free speech. The discovery and investigation of each case may not be identical but it is presumed that there will be overlapping documents and witnesses. "Communications to an attorney to establish a common defense strategy are privileged even though the attorney represents another client with some adverse interest." *Eisenberg v. Gagnon,* 766 F.2d 770, 787-777 (3d Cir.1985). A violation of ABA Model Rule 1.8(b) arises whenever Lawless uses or discloses information he learned from the County to the potential disadvantage of the County. In order for Lawless to comply with his ethical obligation he would have to mentally juggle each fact to determine whether he gained that information through his representation of the County and Ms. Freebery or through Plaintiff. He would have to continually make sure that the facts learned in one case were not used in the other case.[1] This poses a significant risk of materially limiting his representation of both Ms. Freebery and Plaintiff.

## II. THE CONFLICT OF INTEREST PRESENTED IN THE INSTANT CASE SHOULD NOT BE WAIVED.

A trial Court may reject a waiver of conflict by a client and disqualify an attorney when there is an actual conflict or "a showing of a serious potential for conflict." *United States v. Moscony,* 927 F.2d 742 (3d Cir.1991) *citing Wheat v. United States,* 486 U.S. 153, 164 (1988). ABA Model Rules 1.6, 1.7 and 1.8 may be waived upon the informed consent of the client. However, as stated *supra,* for purposes of determining whether a conflict exists the County

---

[1] The difficulty in keeping the two cases separate has already presented itself. See Exhibit 3 in which the original Motion for Admission *Pro Hac Vice* erroneously contained the caption of the Maloney case.

would be considered a client of Lawless. The County does not waive any conflict of interest and does not consent to the representation of Plaintiff by Lawless.

Assuming *arguendo* that the County is not considered a client for waiver purposes, the Court should still disqualify Lawless from representing Plaintiff based upon the fact that the County has shown that there is an actual conflict or, at a minimum, a serious potential for conflict. Therefore, a waiver would be impermissible. Additionally, as stated *supra,* because there are twenty-five (25) John and Jane Does named in the instant Complaint there is a great likelihood that Ms. Freebery may be named as one of those defendants. Consequently, in accordance with ABA Model Rule 1.7(b)(3), the representation of both Plaintiff and Ms. Freebery would be prohibited.

### Conclusion

For the foregoing reasons, Lawless' Motion for Admission *Pro Hac Vice* should be denied and he should be disqualified from representing Plaintiff in the instant case.

Respectfully submitted,

___/s/___ *Gregg E. Wilson*
GREGG E. WILSON, County Attorney
Delaware Bar I.D. No. 2585
New Castle County Law Department
87 Reads Way, Wilmington, Delaware 19720
Telephone: (302) 395-5130
*Attorney for Defendants, Christopher Coons, in his official capacity as County Executive of New Castle County and New Castle County, a municipal corporation; and Jane and John Does 1-25*

Dated: November 10, 2005

## CERTIFICATE OF SERVICE

I, Gregg E. Wilson, Esq., hereby certify that on the 10th day of November I electronically filed the foregoing Entry of Appearance with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

> Barbara H. Stratton, Esquire
> Knepper & Stratton
> P.O. Box 1795
> 1228 North King Street
> Wilmington, DE 19801

I, Gregg E. Wilson, Esq., hereby certify that on the 10th day of November I caused two (2) copies of the foregoing Defendants' Motion to Disqualify Joseph F. Lawless and Oppose His Admission *Pro Hac Vice* to be served via U.S. Mail postage prepaid to counsel as follows:

> Joseph F. Lawless, Esquire
> 6 Harvey Lane
> Newtown Square, PA  19803

> NEW CASTLE COUNTY – LAW DEPARTMENT

> _/s/   Gregg E. Wilson_
> Gregg E. Wilson, County Attorney
> Delaware Bar I.D. No. 85
> 87 Reads Way
> New Castle, DE 19720
> Telephone:  (302)395-5130

DATED:  November 10, 2005

Not Reported in F.Supp.2d, 2002 WL 242464 (D.Del.), 27 Employee Benefits Cas. 2295
(Cite as: 2002 WL 242464 (D.Del.))

United States District Court, D. Delaware.
END OF ROAD TRUST., et al., Plaintiffs,
v.
TEREX CORPORATION, Randolph W. Lenz and
Marvin Rosenberg, Defendants.
No. 99-477 (GMS).

Feb. 20, 2002.

MEMORANDUM AND ORDER

SLEET, District J.

I. INTRODUCTION

*1 On September 22, 1999, plaintiff End of the Road Trust ("ETR") filed its complaint in this court. Discovery began in November 2000, but was stayed for 90 days after defendants were required to obtain new counsel due to a conflict. The defendants are now represented by Weil, Gotshal, and Manges. The plaintiffs are represented by Greenberg Traurig. The case is set for trial before this court on June 3, 2002.

Presently before the court is defendant Randolph Lenz's Motion to Disqualify Greenberg and Traurig. Lenz argues that Greenberg Traurig violated Rule 1.7(a) of the Model Rules of Professional Conduct by simultaneously representing Lenz in a Florida proceeding while representing ETR in this action. In its reply, ETR argues that the simultaneous representation was the result of an oversight as a result of the merging of Greenberg Traurig with the firm that initially represented Lenz. ETR further states that the Florida matter is ended and that the attorney who represented Lenz has been screened from this representation. Finally, ETR argues that Lenz will suffer no prejudice as a result of Greenberg Traurig's continued representation, but that ETR may suffer prejudice if forced to find new counsel due to the complexity and age of the case. The court agrees with ETR and will, therefore, deny Lenz's motion for disqualification.

II. FACTS

ETR filed this complaint on behalf of Fruehauf Trailer Corporation, a bankrupt debtor. Defendant Lenz served as chair of Fruehauf's board of directors during the relevant period. ETF alleges that Lenz operated Fruehauf for his own interests and is asserting several causes of action against him. Most important for the present motion, ETR alleges that Lenz breached his fiduciary duties under the Employee Retirement and Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(2).

When this action commenced, ETR was represented by Camhy, Karlinsky & Stein ("Camhy"). By July 2000, Greenberg Traurig and Camhy had entered into negotiations to discuss the possibility of merger. The firms agreed to merge on August 21, 2000. Camhy began winding up its affairs and both firms began a computerized conflicts check to determine any potential conflicts of interest between Greenberg Traurig and Camhy clients.

On July 12, 2000, prior to the Greenberg Traurig/Camhy merger, Lenz was sued by Equity Merchant Banking Corporation and the Connecticut Bank of Commerce in Florida state court ("the Florida action"). Lenz hired the Miami office of Greenberg Traurig to represent him. On August 15, 2000, the Greenberg Traurig attorneys filed motions to dismiss the Florida action. Greenberg Traurig's Miami office continued to represent Lenz until he terminated the representation on October 12, 2000. Lenz was never aware--and Greenberg Traurig never notified him--that there was a potential conflict of interest in his continued representation.

Lenz allegedly learned of the conflict when his former counsel--Skadden, Arps, Slate, Meagher & Flom--notified him on March 14, 2001. Lenz's personal attorney, Thomas Gallagher, wrote Greenberg Traurig on that same day regarding the conflict. Greenberg Traurig responded that there had been no simultaneous representation, and that it did not seek a waiver from Lenz because he had terminated the representation. Greenberg Traurig asserts that the conflict was inadvertently overlooked in the conflicts check process.

III. DISCUSSION

A. The Ethical Standard & The Court's Disciplinary Power

*2 An attorney's conduct is measured by the ethical standards of the court before which the attorney appears. *See In re Corn Derivatives Antitrust Litig.*,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Ex. 1

Not Reported in F.Supp.2d
(Cite as: 2002 WL 242464, *2 (D.Del.))

748 F.2d 157, 160 (3d Cir.1984). Pursuant to Local Rule 83.6(d)(2), the District of Delaware has adopted the Model Rules of Professional Conduct. Model Rule 1.7(a) provides that an attorney may not represent two clients when representation of one would be "directly adverse" to or would "materially limit" representation of the other, unless the attorney "reasonably believes" that the representation of the other would not be "adversely affected" and both clients consent to the representation. *See Elonex I.P. Holdings v. Apple Computer,* 142 F.Supp.2d 579, 582 (D. Del 2001) (citing *Lease v. Rubacky,* 987 F.Supp. 406, 407 (E.D.Pa.1997)).

The court has the power to supervise the professional conduct of attorneys appearing before it. *See United States v. Miller,* 624 F.2d 1198, 1201 (3d Cir.1980). This includes the power to disqualify an attorney. *Id.* Nevertheless, motions to disqualify are generally disfavored. *See Cohen v. Oasin,* 844 F.Supp.1965, 1067 (E.D.Pa.1994). The party seeking disqualification must clearly demonstrate that "continued representation would be impermissible." *Id.* Thus, "[v]ague and unsupported allegations are not sufficient to meet this standard." *Id.*

Greenberg Traurig does not argue that its conduct was appropriate under Rule 1.7(a). Rather, the firm argues that "[d]isqualification is not an appropriate sanction for what, at most, was a brief, harmless, and unintended oversight of the rules of professional responsibility." (D.I. 91 at 2.) Thus, the court's inquiry is limited to whether disqualification is appropriate in this case.

## B. Greenberg Traurig Should not be Disqualified

Although Greenberg Traurig admits that it violated Rule 1.7(a), this alone will not warrant disqualification. Contrary to Lenz's arguments, disqualification is not automatic. *See Elonex,* 142 F.Supp.2d at 583 ("Although disqualification is ordinarily the result of a finding that an ethical rule has been violated, disqualification is never automatic.") (quoting Miller, 624 F.2d at 1201.) Indeed, the court has "wide discretion in framing its sanctions to be just and fair to all parties involved." Id.

In *In re Corn Derivatives Antitrust Litigation,* the Third Circuit indicated that it had "often employed

a balancing test in determining the appropriateness of disqualification of an attorney." *Corn Derivatives,* 748 F.2d at 162. In the Miller case, the Third Circuit noted that:

> [T]he court should disqualify an attorney only when it determines, on the facts of a particular case, that disqualification is an appropriate means of enforcing the applicable disciplinary rule. It should consider the ends that the disciplinary rule is designed to serve and any countervailing policies, such as permitting a litigant to retain counsel of his choice and enabling attorneys to practice without excessive restrictions.

**\*3** *Miller,* 624 F.2d at 1201.

Rule 1.7(a) was enacted to prevent divided loyalties and to protect against the disclosure of client confidences. *See IBM v. Levin,* 579 F.2d 271, 280 (3d Cir.1978). Neither policy is implicated here. Lenz alleges that Greenberg Traurig's loyalty was divided during the simultaneous representation. Although this is arguably true, Greenberg Traurig has not represented Lenz since October 2000. If Greenberg Traurig currently represented both clients, its loyalty might be more questionable. Since Lenz is no longer represented by Greenberg Traurig, however, the danger of divided loyalty is not as great, if it is present at all.

Lenz also argues that there is a danger that confidential information will be exchanged between the attorneys that represented him in the Florida action and ETR's attorneys. His concern arises from his assertion that the Florida action is connected to the ERISA claims in this case. Nevertheless, the court finds that the potential for breached confidences is minimal. First, the attorneys that represented Lenz worked in Greenberg Traurig's Miami office, whereas ETR is represented by attorneys in the New York office. The geographic separation militates against a finding that confidential information will be shared. *See Elonex,* 142 F.Supp.2d at 584 (noting that work was "done out of different offices in different cities"). Second, although Lenz argues that the ethical screen employed by Greenberg Traurig will be ineffective, a party seeking disqualification cannot rest on "[v]ague and unsupported allegations." *Id.* In this case, Lenz has not alleged sufficient facts that would permit the court to find that there is a specific or immediate danger that confidential information will be released, or that it has been released in the past. In the absence of such

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

allegations, the court gives Lenz's arguments little weight.

The court further finds that strong countervailing policies weigh against disqualification. First, although Greenberg Traurig arguably did violate Rule 1.7(a), the violation was of an extremely short duration, and was, apparently, inadvertent. Moreover, Lenz has not put forward a single fact or argument that would permit the court to find that he would be prejudiced by Greenberg Traurig's continued representation of ETR. Conversely, great prejudice will result to ETR if Lenz's motion is granted. This is a complex case. It is over two years old, and Greenberg Traurig has invested a substantial amount of time and effort. Moreover, the trial date is imminent. At this point, disqualifying Greenberg Traurig would further delay this case because new counsel will incur great difficulty in reviewing the case, completing discovery, writing any dispositive motions, and preparing for trial by June 3, 2002. This difficulty

implicates the interests of both fairness and judicial economy. On balance, therefore, even if the policy concerns raised by Rule 1.7(a) were implicated, the countervailing policy arguments weigh heavily against disqualification.

IV. CONCLUSION

**\*4** For the foregoing reasons, the court concludes that disqualification is inappropriate and unnecessary. The court will, therefore, deny Lenz's Motion to Disqualify Greenberg Traurig.

NOW, THEREFORE, IT IS HEREBY ORDERED that:
   1. Defendant Lenz's Motion to Disqualify Greenberg Traurig (D.I.81) is DENIED.

Not Reported in F.Supp.2d, 2002 WL 242464 (D.Del.), 27 Employee Benefits Cas. 2295

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1988 WL 54669
Not Reported in F.Supp., 1988 WL 54669 (D.Del.)
(Cite as: 1988 WL 54669 (D.Del.))

**H**

Only the Westlaw citation is currently available.

United States District Court, D. Delaware.
Cyril BOWMAN, Plaintiff,
v.
BANK OF DELAWARE, Defendant.
CIV.A. No. 87-44-CMW.

May 24, 1988.
Leo John Ramunno, Wilmington, Del., for plaintiff.

Sheldon N. Sandler, Young, Conaway, Stargatt & Taylor of Wilmington, Del. and Lydia C. Blancato, Bank of Delaware, Wilmington, Del., for defendant.

*OPINION*

CALEB M. WRIGHT, Senior District Judge.

*1 This motion to disqualify one of defendant's attorneys arises out of an employment discrimination suit in which plaintiff Cyril Bowman alleges that defendant Bank of Delaware unlawfully terminated his employment because of his national origin. Bowman contends that Sheldon Sandler should be disqualified as counsel for defendant because of a potential conflict of interest created by a telephone conversation Bowman allegedly had with Sandler.

Bowman claims that he called Sheldon Sandler on March 4, 1986, after being referred by two acquaintances, to inquire whether Sandler would represent him in a suit against defendant. Bowman alleges that he spoke to Sandler for 25 to 30 minutes about the details of his case, and that Sandler asked him several questions concerning the length of his employment, the circumstances of his dismissal, and the people involved with his termination. Bowman further alleges that Sandler said that he would take the case but that it would cost plaintiff $30,000 plus costs. Bowman claims that he then ended the conversation because he did not have that much money. He contends that he had assumed throughout the conversation that the content was confidential between attorney and client.

Sandler tells quite a different story, however. He does not recall any contact with Bowman during March of 1986, nor at any time before he was retained by defendant on March 13, 1987. His memory has not been jogged despite having worked on the case for fourteen months, during which time he briefed defendant's motion to dismiss and prepared for two depositions of Bowman, each of which was cancelled by Bowman. Sandler found no record of the alleged telephone call, which Bowman claims was 25 to 30 minutes long, in his time sheets for that day or for the surrounding days, even though he did find records of telephone conversations with other people who sought his services during the same period of time.

Sandler does recall, however, a telephone call he received during May or June of 1987, from a person with a Caribbean accent who called about an employment problem. After Sandler asked who the caller's employer was and learned that it was the Bank of Delaware, he ended the conversation by telling the caller, who never identified himself, that he could not represent him because he already represented the Bank. Sandler believes that the call could have been from Bowman because he does have an accent, although Bowman denies having made such a call.

The possibility of a conflict of interest was first broached in a letter from Sheryl Rush-Milstead, plaintiff's first attorney, to Sandler on July 8, 1987. Sandler responded by letter with his version of the facts. Rush-Milstead replied by letter on July 13, 1987, that "I accept your statement that you had no telephonic conversation with Bowman prior to his retaining my services. I will add that Bowman was quite emphatic in that he did have said consultation with you." Raymond Radulski, another attorney contacted by Bowman, later discussed the possibility of a conflict with Lydia Blancato, Sandler's co-counsel, who replied that the matter had been resolved. Consequently, no motion to disqualify was filed at that time. Bowman's current attorney, Leo John Ramunno, entered his appearance in this case on December 11, 1987. On January 20, 1988, Bowman filed this Motion to Disqualify Sandler on the basis that, because Sandler had received confidences during the alleged telephone conversation, it would be unfair and unethical for Sandler to continue his involvement in the case.

The Court has a duty to examine all charges of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EX. 2

ethical violations in cases before it, and may disqualify an attorney for acting unethically or for failing to avoid the appearance of impropriety. *Richardson v. Hamilton Int'l Corp.,* 469 F.2d 1382, 1385-86 (3d Cir.1972), *cert. denied,* 411 U.S. 986 (1973). Although Bowman has not relied on any particular authority in his motion, the most applicable rule is Delaware Lawyer's Rule of Professional Conduct 1.9, which states:

**\*2 RULE 1.9.    CONFLICT OF INTEREST: FORMER CLIENT.**

A lawyer who has formerly represented a client in a matter shall not thereafter:

(a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; or

(b) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 would permit with respect to a client or when the information has become generally known.

Rule 1.9 is designed to protect a client from having his attorney reveal confidences obtained during his representation to his disadvantage in a later proceeding. Under the substantial relationship test adopted by this Court, *Satellite Fin. Planning v. First Nat'l Bank,* 652 F.Supp. 1281, 1293 (D.Del.1987) ("Disqualification is appropriate when the subject of the new litigation is substantially related to the subject matter of the past representation."); *Nemours Found. v. Gilbane, Aetna, Fed. Ins. Co.,* 632 F.Supp. 418, 422 (D.Del.1986), it is clear that if Bowman were indeed a former client of Sandler, the Court should disqualify Sandler because the matter involved is the same litigation, and Sandler's conduct would amount to the serial representation of two parties on opposite sides of the same lawsuit. The question the Court must answer is thus whether Bowman was ever a client of Sandler.

The only contact Bowman alleges to have had with Sandler was a single disputed telephone call during which he claims to have sought Sandler's representation. If this contact established an attorney-client relationship, then the Court would be required to disqualify Sandler because the Court

must presume that confidences are communicated to an attorney during the representation of a client. *Satellite,* 652 F.Supp. at 1283. Although a fiduciary relationship in which client confidences must be protected may arise from a "preliminary consultation by a prospective client with a view to retention of the lawyer, although actual employment does not result," *Westinghouse Elec. Corp. v. Kerr-McGee Corp.,* 580 F.2d 1311, 1319 (7th Cir.) , *cert. denied,* 439 U.S. 955 (1978), it is not clear whether such a consultation occurred in this case. Therefore, the Court will take a practical approach and examine the facts of this case along with the policies behind the rules of professional conduct. *See Nemours,* 632 F.Supp. at 423 ("Resolving the question of whether to disqualify counsel cannot be accomplished through mechanical means, but requires a careful balancing of the goals and objectives of professional conduct.").

Sandler does not recall such a conversation ever occurring and he does not recall any information that may have been communicated by Bowman. He has been deeply involved in the case for fourteen months, has not yet had any recollection of such a telephone conversation, and believes it to be extremely unlikely that he would remember it in the future. Consequently, there is no chance that confidences might be revealed during Sandler's representation of defendant and there would be no detriment to Bowman if Sandler were to remain in the case.

**\*3** The fact that there is a dispute concerning whether the telephone conversation ever occurred, combined with the facts that the case has been progressing for fifteen months and Bowman's prior attorney did not previously file a motion to disqualify, lead the Court to deny Bowman's motion. Although the Court must protect against the appearance of impropriety, the Court must also be cautious when deciding motions to disqualify when the facts are not clear. A litigant should, absent a genuine conflict of interest, be able to choose his counsel. The Court must be wary so as to prevent motions to disqualify from being used as just another weapon in the litigation arsenal. Motions to disqualify are subject to abuse because they can greatly delay an action and can cause great expense and inconvenience to a client whose counsel has been disqualified. The integrity of the legal system could be damaged if attorneys could be disqualified on the basis of a single, disputed,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1988 WL 54669                                                    **Page 3**
**(Cite as: 1988 WL 54669, \*3 (D.Del.))**

undocumented telephone call.

 Under the circumstances of this case as presented in the affidavits of Bowman and Sandler, plaintiff did not make a sufficient showing that the alleged conversation took place to warrant disqualifying Sandler under Rule 1.9.

 An Order will issue in conformity with this Opinion.

 Not Reported in F.Supp., 1988 WL 54669 (D.Del.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JOSEPH J. FREEBERY,                           :

  Plaintiff,                                  :

                                              :        CIVIL ACTION NO.

v.                                            :                    0 5 -    7 4 8

                                              :

                                              :

CHRISTOPER COONS, in his official capacity as :
County Executive of New Castle County and in his
individual capacity; and NEW CASTLE COUNTY, a :
municipal corporation; and JOHN AND JANE DOES :
1-25                                          :

        Defendants.                           :

## MOTION AND ORDER FOR ADMISSION PRO HAC VICE

## OF JOSEPH F. LAWLESS

        Pursuant to Local Rule 83.5 and the attached certification, counsel moves the admission
pro hac vice of Joseph F. Lawless, Esquire, to represent Defendant Joseph Freebery, in his
individual capacity, in this matter.  The Certification of Joseph F. Lawless is attached in support
of this motion.


Dated: October 26, 2005                        KNEPPER & STRATTON


                                               *Barbara H. Stratton*
                                               Barbara H. Stratton, Esq.
                                               P.O. Box 1795
                                               1228 N. King Street
                                               P.O. Box 1795
                                               Wilmington, DE 19899
                                               (302) 658 -1717
                                               Delaware Bar ID # 2785
                                               bhs@knepperstratton.net
                                               Attorney for Plaintiff Joseph J. Freebery


EX 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

LYNDA MALONEY and MARIA
RENDINA,

                           Plaintiffs,

        v.

THOMAS P. GORDON and SHERRY L.
FREEBERY, both individually and in their
official capacities, and NEW CASTLE
COUNTY, a municipal corporation,
Defendants.

:
:
:
:
:

CIVIL ACTION NO. 03-999-KAJ

## CERTIFICATION OF JOSEPH F. LAWLESS, ESQUIRE
## TO BE ADMITTED PRO HAC VICE

Pursuant to Local Rule 83.5, I certify that I am eligible for admission to this

Court, am admitted, practicing and in good standing as a member of the Bar of each of the

following Courts:

        Supreme Court of the United States

        United States Court of Appeals for the Third Circuit

        United States Court of Appeals for the Sixth Circuit

        United States District Court for the Eastern District of
        Pennsylvania

        United States Tax Court

        Supreme Court of Pennsylvania

I further certify that I do not reside in Delaware, I am not regularly employed in

Delaware, nor am I regularly engaged in business, professional, or other similar activities in

Delaware.

Pursuant to Local rule 83.6, I submit to the disciplinary jurisdiction of this Court for any alleged misconduct which occurs in the preparation or course of this action.  I also certify that I am generally familiar with this Court's Local Rules.

Dated:  10/25/05

JOSEPH F. LAWLESS
PA Bar Id. No. 23691
6 Harvey Lane
Newtown Square, PA 19073
610.356.0987
610.356.9173 (fax)