12/15/2005 18:21

EFiled: Dec 1 2005 12:38PM EST
Transaction ID 7551690

## COURT OF CHANCERY
### OF THE
### STATE OF DELAWARE

DONALD F. PARSONS, JR.
VICE CHANCELLOR

New Castle County CourtHouse
500 N. King Street, Suite 11400
Wilmington, Delaware 19801-3734

Submitted: September 29, 2005
Decided: December 1, 2005

Jason C. Powell, Esquire
Ferry, Joseph & Pearce, P.A.
824 Market Street
P.O. Box 1351
Wilmington, DE 19899

Mr. Gordon G. Hendry
8 Hayden Way
Newark, DE 19711

Re:    *Marie S. Hendry v. Gordon G. Hendry, et al.*,
       Civil Action No. 18625-NC

Dear Counsel and Mr. Hendry:

Presently before the Court are three motions, two by Defendant and the third by Plaintiff. Defendant Gordon Hendry, who is proceeding pro se, first requests the Court to remove Jason Powell from representing Plaintiff, Marie Hendry, Administratrix of the Estate of David J. Hendry, in this action. The Court will treat that request as a motion to disqualify Plaintiff's counsel. Defendant's second motion challenges the format of Plaintiff's subpoenas for the depositions of various witnesses, pursuant to Court of Chancery Rule 45. For the reasons stated below, the Court denies Defendant's motions.

Plaintiff Marie Hendry has moved for leave to file a second amended complaint. She filed the first amended complaint in 2001. Plaintiff now seeks to add Gordon

*Marie S. Hendry v. Gordon G. Hendry, et al.*
Civil Action No. 18625-NC
December 1, 2005
Page 2

Hendry's wife, Maryann Hendry as a defendant. For the reasons stated below, the Court

grants that motion.

### A.    Background

This litigation is one of at least two cases in this Court stemming from a long-
standing dispute over the respective parties' interests in a parcel of land located at the
intersection of Telegraph Road and Old Capital Trail in New Castle County, Delaware.
The first such case, C.A. No. 12236, involved a dispute over land that was initially owned
by David J. Hendry, Gordon Hendry's father.  In 1985, David J. Hendry purportedly
executed a deed that conveyed the property to himself and Gordon Hendry.  In 1991,
David J. Hendry instituted an action to challenge the validity of that deed.  Although trial
was scheduled, the parties avoided it by entering into a settlement agreement.[1]  The
parties agreed that the land would be partitioned: David J. Hendry would retain Parcel A
and Gordon Hendry would retain Parcel B.  Neither party had signed the settlement
agreement, however, before David J. Hendry died in 1996.  Marie Hendry then filed a
motion in C.A. No. 12236 to enforce the settlement agreement, which was granted by the
Court of Chancery.[2]  The Delaware Supreme Court affirmed that decision on
December 27, 1999.[3]

---

[1]    *See generally Hendry v. Hendry,* 1998 WL 294009 (Del. Ch. June 3, 1998).

[2]    *Id.*

[3]    *Hendry v. Hendry,* 1999 WL 1425004 (Del. Dec. 27, 1999).

*Marie S. Hendry v. Gordon G. Hendry, et al.*
Civil Action No. 18625-NC
December 1, 2005
Page 3

In 2001, Marie Hendry, as Administratrix of the Estate of David J. Hendry, filed this action (C.A. No. 18625). The complaint asserts numerous claims against Gordon Hendry including misappropriation of funds, interference with contracts and unjust enrichment. Gordon filed a number of counterclaims alleging, among other things, that a 1986 lease agreement that he, David J. Hendry and D. Hendry (Gordon's son who is now deceased) entered into with Dave's Shopping Center is still valid.[4] Plaintiff's first amended complaint in this action also names as Defendants "Dave's Shopping Center", "DSC", and STS Services, Inc.

Defendant Gordon Hendry seeks an order disqualifying Jason Powell and his law firm from representing Plaintiff in this litigation. Gordon Hendry alleges that Ferry, Joseph & Pearce, Powell's firm, represented his son D. Hendry and that Powell "could have obtained information from old files."[5] Powell has confirmed that a former attorney of Ferry, Joseph & Pearce, Kenneth Fink, did represent D. Hendry or his estate in a previous matter.

---

[4]    Defs.' Answer ¶ 78.

[5]    Letter from Gordon Hendry to Court dated August 28, 2005.

Marie S. Hendry v. Gordon G. Hendry, et al.
Civil Action No. 18625-NC
December 1, 2005
Page 4

Gordon Hendry is still involved in a business known as Dave's Shopping Center.[6]
In 1985, David J. Hendry, Gordon Hendry and D. Hendry formed a corporation known as
Dave's Shopping Center, Inc.[7] In 1986, they entered into an agreement to lease part of
the disputed property to Dave's Shopping Center, Inc.[8] Thereafter, the corporation was
converted into a partnership (the "Partnership").[9] D. Hendry passed away in 1989 and
the Partnership dissolved.[10] Gordon Hendry, David J. Hendry and the estate of
D. Hendry then began maintaining the Partnership assets as tenants in common.[11]
Gordon Hendry and his wife, Maryann Hendry, are the sole beneficiaries of D. Hendry's
estate.[12]

In a September 29, 2005 status conference, the Court requested supplemental
information regarding the nature of any relationship Ferry, Joseph & Pearce had with
Gordon Hendry's deceased son, D. Hendry. In a letter dated October 17, 2005, Powell

---

[6]    Defs.' Answer ¶ 3. The source of some of the background information recited in
this letter opinion is Defendants' Answer. To the extent that Plaintiff denies
certain allegations in Defendants' Answer, the Court assumes the truth of those
allegations solely for purposes of the pending motions.

[7]    Id. ¶ 67.

[8]    Id. ¶ 69.

[9]    Id. ¶ 71.

[10]    Defs.' Answer ¶ 74.

[11]    Id.

[12]    Id. ¶ 75.

*Marie S. Hendry v. Gordon G. Hendry, et al.*
Civil Action No. 18625-NC
December 1, 2005
Page 5

reported that Fink left the firm of Ferry, Joseph & Pearce in January 1997. Although
Fink recalled being contacted by an attorney to open the estate of D. Hendry and thought
he had minimal contact with D. Hendry's widow, Fink did not recall doing any other
work for the Hendry family. Gordon Hendry questioned Fink's memory of the
representation of D. Hendry or his estate, noting that D. Hendry was single at the time of
his death.[13]

### B. Defendant's Motion to Disqualify Plaintiff's Attorney

The Court has the power to supervise the conduct of a party or counsel that
appears before it, including the power to disqualify an attorney.[14] In general, courts
disfavor disqualification motions because they often are filed for tactical reasons rather
than to ensure the integrity of the proceedings.[15] Nevertheless, a court may disqualify an
attorney if the representation frustrates the fairness of the proceedings.[16]

---

[13]    Letter from Gordon Hendry to Court dated October 23, 2005.

[14]    *Acierno v. Hayward*, C.A. No. 19729, mem. op. at 10 (Del. Ch. July 1, 2004)
(Parsons, V.C.).

[15]    *Id.*

[16]    *Sanchez-Caza ex rel. Sanchez v. Estate of Whetstone*, 2004 WL 2087922 (Del.
Super. Sept. 16, 2004).

Marie S. Hendry v. Gordon G. Hendry, et al.
Civil Action No. 1862S-NC
December 1, 2005
Page 6

The party moving for disqualification bears the burden of proof.[17] "A movant for disqualification must have evidence to buttress his claim of conflict because a litigant should, as much as possible, be able to use the counsel of his choice."[18]

The rules of professional responsibility guide the Court's analysis of a disqualification motion. The Court first must determine if a conflict of interest exists under the Delaware Lawyer's Rules of Professional Conduct ("DLRPC"). If a conflict is identified, the Court then must determine whether continued representation by the conflicted attorney would so undermine the integrity of the proceedings that the attorney must be disqualified.[19]

1.    Is there a conflict of interest?

Gordon Hendry urges disqualification of Powell because Powell's firm formerly represented Gordon's son D. Hendry. It is unclear what precise relationship Gordon contends creates a conflict. He appears to question Powell's representation based on Dave's Shopping Center's involvement in this litigation and the fact that at one time D. Hendry was a partner in the Partnership that held an interest in Dave's Shopping Center.

---

[17]    *Kanaga v. Gannett Co.*, 1993 WL 485926, at *2 (Del. Super. Oct. 21, 1993).

[18]    *Acierno*, C.A. No. 19729, mem. op. at 9; *see also Kanaga*, 1993 WL 485926, at *2.

[19]    *Acierno*, C.A. No. 19729, mem. op. at 11; *see also In re Infotechnology, Inc.*, 582 A.2d 215, 216-17 (Del. 1990).

*Marie S. Hendry v. Gordon G. Hendry, et al.*
Civil Action No. 18625-NC
December 1, 2005
Page 7

The rules of professional conduct require continued loyalty to a former client.[20]

Rule 1.9(a) of the DLRPC states:

> A lawyer who has formerly represented a client in a matter
> shall not thereafter represent another person in the same or a
> substantially related matter in which that person's interests
> are materially adverse to the interests of the former client
> unless the former client gives informed consent, confirmed in
> writing.

As a threshold matter, the Court must determine whether Powell's firm's
representation of Marie Hendry in this case can be said to be materially adverse to the
interests of a former client. The only former clients alleged are D. Hendry and his estate.
As discussed *infra*, it is not clear whether Powell's firm ever represented D. Hendry
himself, as opposed to his estate. Gordon Hendry suggests that because D. Hendry was a
member of the now dissolved Partnership, Marie Hendry's interests are materially
adverse to the interests of a former client whether that client was D. Hendry or his estate
or both.

Powell's firm apparently did represent the estate of D. Hendry at some point.
Because the evidence presented is very limited, the Court is not convinced that Gordon
Hendry has established that an attorney-client relationship also existed between Powell's
firm and D. Hendry that would create a potential conflict in this litigation. The Court
need not decide that issue, however, because the motion to disqualify can be resolved on

---

[20]    *Sanchez-Caza*, 2004 WL 2087922, at *2.

*Marte S. Hendry v. Gordon G. Hendry, et al.*
Civil Action No. 18625-NC
December 1, 2005
Page 8

other grounds. Thus, I will assume, without deciding, that Powell's participation in this litigation could be materially adverse to his firm's former client. The issue remains whether the matter in which Powell's firm represented D. Hendry or his estate is "substantially related" to the current litigation, such that it would give rise to a conflict of interest.

To determine whether matters are "substantially related" for purposes of a conflict of interest with a former client the Court must evaluate: the nature and scope of the prior representation at issue; the nature and scope of the present lawsuit against the former client; and whether during the course of the previous representation the client may have disclosed confidential information that could be used against the former client in the current lawsuit.[21] Matters may be substantially related if they involve the same transaction or legal dispute or there is substantial risk that confidential information obtained in the former representation could materially advance the client's position in the current matter.[22] The former client is not required to reveal specific details of the information shared with the attorney, rather the Court may determine whether information regularly shared in that type of representation creates an unavoidable conflict with the current case.[23]

---

[21]     *Sanchez-Caza*, 2004 WL 2087922, at *3; *see also* DLRPC 1.9 cmt. 3.

[22]     DLRPC 1.9 cmt. 3.

[23]     *Id.*; *see also Sanchez-Caza*, 2004 WL 2087922, at *3.

12/15/2005 16:21

*Marie S. Hendry v. Gordon G. Hendry, et al.*
Civil Action No. 18625-NC
December 1, 2005
Page 9

A former attorney at the firm of Ferry, Joseph & Pearce, Kenneth Fink, represented the estate of D. Hendry in a prior matter. D. Hendry died in 1989, and there is no indication in the record that Fink had any involvement with D. Hendry before that time. Therefore, the Court assumes that a representative for D. Hendry's estate provided Fink with information of the type regularly shared in estate matters. To the extent Fink also may have represented D. Hendry before he passed away, there is no evidence of the nature of any such representation.      Therefore, it cannot provide a basis for disqualification.

In these circumstances, it is unlikely that Powell could have obtained confidential information that materially could advance Marie Hendry's position in the current litigation. Fink left Ferry, Joseph & Pearce in January 1997. The information that Powell and Fink provided regarding the representation of D. Hendry's estate indicates that the firm has few, if any, records on file for D. Hendry's estate. Thus, I find it highly unlikely that any information Powell's firm obtained during the representation of D. Hendry's estate or D. Hendry could be "substantially related to" or "materially advance" Marie's claims in this litigation.

Dave's Shopping Center became a party to the current litigation when Plaintiff filed an amended complaint in 2001. In the amended complaint, Plaintiff asserted claims based on actions Dave's Shopping Center took during the period from March 25, 1996 to the present, years after D. Hendry passed away. Gordon Hendry has failed to produce

3/15/2005 18:21

*Marie S. Hendry v. Gordon G. Hendry, et al.*
Civil Action No. 18625-NC
December 1, 2005
Page 10

sufficient evidence to support a reasonable inference that D. Hendry's previous role in
Dave's Shopping Center and the relationship he or his estate had with Fink are such that
they would cause a conflict of interest for Powell in this litigation.

Similarly, there is no evidence that Fink's prior representation and the current
litigation involve the same transactions or legal disputes. Without any common issues,
there is no basis to conclude that D. Hendry, who died in 1989, or his estate could have
disclosed information that could be used against Gordon Hendry or Dave's Shopping
Center in the current litigation.[24] Thus, the Court concludes that there is no conflict of
interest in violation of Rule 1.9 arising from Powell's representation of Marie Hendry in
this case.

### 2.    The integrity and fairness of this proceeding

Even if Powell's representation of Marie Hendry did violate Rule 1.9,
disqualification would not be warranted. A violation of Rule 1.9 does not necessarily
require disqualification as a remedy.[25] The Court must "weigh the effect of any conflict

---

[24]    The fact that none of the parties to this litigation was ever a client of Powell or his firm undermines Gordon Hendry's argument. As a principal beneficiary of D. Hendry's estate, however, Gordon Hendry arguably might stand in D. Hendry's or the Estate's shoes for purposes of a conflicts analysis. For purposes of the pending motions, I have assumed that Gordon Hendry and Dave's Shopping Center have a sufficient commonality of interest with D. Hendry's estate to assert their conflict argument.

[25]    *Sanchez-Caza*, 2004 WL 2087922, at *4.

*Marie S. Hendry v. Gordon G. Hendry, et al.*
Civil Action No. 18625-NC
December 1, 2005
Page 11

on the fairness and integrity of the proceedings before disqualifying the challenged counsel."[26]

The limited evidence available suggests that the relationship between the matters handled by Ferry, Joseph & Pearce for D. Hendry or his estate and the current litigation were, at most, incidental. Given the nature of advising an estate in comparison to litigating the disputed issues here, it is doubtful that any significant information obtained in the representation of D. Hendry or his estate would be relevant to this litigation involving Gordon Hendry and Dave's Shopping Center. The representation of D. Hendry's estate occurred years before the pending litigation and it has not been shown that D. Hendry or the representatives of his estate had knowledge of any issues relevant to this litigation.

The disqualification of Powell could adversely affect the fairness of this proceeding, however. In particular, disqualifying Powell would prejudice Plaintiff by denying Marie Hendry her choice of counsel and delaying the adjudication of this matter. Accordingly, the Court denies Defendant's motion to disqualify and will permit Powell to continue his representation of Marie Hendry.

### C.    Defendant's Motion to Quash Plaintiff's Subpoenas

Gordon Hendry also contends that a number of subpoenas issued at the request of Plaintiff are invalid. He argues that the format of the subpoenas did not meet the

---

[26]    *Id.*

*Marie S. Hendry v. Gordon G. Hendry, et al.*
Civil Action No. 18625-NC
December 1, 2005
Page 12

requirements of Court of Chancery Rule 45. Specifically, Defendant alleges that
Plaintiff's subpoenas were not properly signed or sealed and that Plaintiff's counsel
defrauded the Court of the processing fee.[27]

Court of Chancery Rule 45 addresses the form and issuance of subpoenas. The
rule states: "[E]very subpoena shall be issued by the Register in Chancery under the seal
of the Court."[28] A subpoena must state the name of the court and the title of the action.[29]
The Register in Chancery may issue a subpoena to a party that requests it and the party
may complete the subpoena before service.[30] Delivering a copy of a subpoena to a
person named therein constitutes service of the subpoena.[31]

In appropriate circumstances, the Court has the discretion to quash or modify a
subpoena.[32] For example, the Court may quash or modify a subpoena if it does not
provide a reasonable time for compliance or imposes an undue burden.[33] The party or
attorney issuing and serving a subpoena shall take reasonable care to avoid undue burden

---

[27]     Letter from Gordon Hendry to the Court dated October 5, 2005.

[28]     Ch. Ct. R. 45(a).

[29]     *Id.*

[30]     Ch. Ct. Rule 45(a)(1)(D).

[31]     Ch. Ct. Rule 45(b).

[32]     Ch. Ct. Rule 45(c)(3)(A).

[33]     *Id.*

Marie S. Hendry v. Gordon G. Hendry, et al.
Civil Action No. 18625-NC
December 1, 2005
Page 13

or expense on the persons subject to the subpoena.[34] The Court may impose sanctions
upon a party or attorney that breaches this duty.[35]

A subpoena must provide notice to the individual to whom it is directed and be
properly served.[36] "A subpoena is not rendered ineffective merely because of a technical
error or irregularity in the form of the subpoena which does not prevent adequate notice
and which does not prejudice, mislead, or deceive a party to whom it is directed."[37]

Gordon Hendry has not demonstrated any basis for quashing Plaintiff's subpoenas
under Court of Chancery Rule 45. The form Plaintiff used was proper, except that the
subpoenas bore the signature of the previous Register in Chancery, who left office in
December 2004. Plaintiff's counsel mistakenly used the subpoenas with the former
Register's signature on them in July 2005. Rule 45 authorizes the Register in Chancery
to issue blank subpoenas to a requesting party, who then may fill out the subpoena before
service. Technically, the subpoenas at issue here were defective in that they were not
signed by the current Register in Chancery.

---

[34]    Ch. Ct. R. 45(c)(1).

[35]    *Id.*

[36]    *Bob's Discount Adult Books v. Attorney General*, 1983 WL 471443, at *1 (Del. Super. May 24, 1983).

[37]    *Id.*

*Marie S. Hendry v. Gordon G. Hendry, et al.*
Civil Action No. 18625-NC
December 1, 2005
Page 14

Absent a showing of bad faith or prejudice, however, technical errors do not justify quashing a subpoena. Defendant has not shown that Marie Hendry or her attorney acted in bad faith or deceptively in issuing the subpoenas or that he was prejudiced in any way. The Court examined by way of example a subpoena Plaintiff served on Gordon Hendry. Except for the technical deficiency noted above, it appeared to satisfy Rule 45 and provided appropriate notice of the deposition date. Although Gordon Hendry's name was misspelled on the proof of service for the subpoena, it was issued to him properly.

Further, Rule 45 authorizes the Court to quash or modify a subpoena upon a *timely* motion by the objecting party.[38] Although Plaintiff served the subpoenas in late July and August 2005, Defendant did not object to the use of those subpoenas until October. It is not timely to file a motion to quash a subpoena more than two months after the subpoena has been served.

Having considered all the circumstances, I conclude that the technical and somewhat belated objections Defendant has raised do not justify quashing the subpoenas in question. Accordingly, Defendant's motion to invalidate the subpoenas is denied.

### D.    Plaintiff's Motion to File a Second Amended Complaint

On November 1, 2005, Plaintiff filed a motion for leave to file a second amended complaint pursuant to Court of Chancery Rule 15(a). Rule 15(a) provides that a party may amend their pleading once as a matter of course in the early stages of an action

---

[38]    Ch. Ct. R. 45(c)(3)(A)(emphasis added).

*Marie S. Hendry v. Gordon G. Hendry, et al.*
Civil Action No. 18625-NC
December 1, 2005
Page 15

subject to conditions that no longer exist in this case. Otherwise, a party may amend only by leave of the Court, but leave is to be freely given.[39] Motions to amend often are granted at the discretion of the court unless there is serious prejudice to a party opposing the motion.[40]

Marie Hendry filed the first amended complaint in May 2001. Plaintiff moved for leave to file a second amended complaint in November 2005. Plaintiff seeks to add Gordon Hendry's wife, Maryann Hendry, as a Defendant. The proposed second amended complaint asserts that certain assets that are part of this litigation may have been misappropriated into accounts held by Maryann Hendry.

Defendant Gordon Hendry did not object to Plaintiff's motion to amend. He did state, however, that the amendment could cause a delay in this litigation, which currently is scheduled for a two (2) day trial beginning on January 17, 2006. Defendant's wife, Maryann Hendry, does oppose becoming a party to this litigation. She submitted a letter stating that she has no knowledge of the business dealings that occurred between family members.[41]

---

[39]    *Id.*

[40]    *Brunswick Corp. v. Colt Realty, Inc.*, 253 A.2d 216, 219 (Del. Ch. 1969).

[41]    Letter from Maryann Hendry to the Court and Jason Powell dated November 12, 2005.

*Marie S. Hendry v. Gordon G. Hendry, et al.*
Civil Action No. 18625-NC
December 1, 2005
Page 16

The Court recognizes that this motion, filed four and a half years after the first amended complaint, is untimely. Other considerations, however, support granting the motion. The amended complaint alleged that Defendant Gordon Hendry misappropriated certain assets from the estate of David J. Hendry for his own benefit. Plaintiff claims to have learned in discovery that some of those assets were deposited into accounts owned by not only Gordon Hendry, but also his wife, Maryann Hendry. By her motion to file a second amended complaint, Marie Hendry seeks to add Maryann Hendry as a defendant and to assert an unjust enrichment claim against her.

The proposed amendment would not materially change the nature or scope of this litigation. Furthermore, neither Maryann Hendry nor her husband have identified any undue prejudice they would suffer as a result of the amendment. If as the proposed second amended complaint alleges, certain assets in dispute are held by both Gordon and Maryann Hendry, or by Maryann Hendry alone, the Court concludes that it would promote fairness and judicial economy to allow the amendment. The convoluted procedural history of this action and the related action C.A. No. 12236, for which both sides have some responsibility, has contributed to the delay in bringing this matter to trial. This fact does not absolve the belatedness of the motion to amend, but does lessen its importance. Accordingly, the Court will grant Plaintiff's motion for leave to file a second amended complaint.

*Marie S. Hendry v. Gordon G. Hendry, et al.*
Civil Action No. 18625-NC
December 1, 2005
Page 17

### E.    Conclusion

For the reasons stated, the Court denies Defendant's motion to disqualify Plaintiff's attorney and Defendant's motion to quash Plaintiff's subpoenas, and grants Plaintiff's motion for leave to file a second amended complaint. Plaintiff shall file and serve the amended complaint. After all Defendants have responded to the second amended complaint, the Court will schedule a conference to determine whether any changes need to be made to the case schedule.

**IT IS SO ORDERED.**

Sincerely,

/s/Donald F. Parsons, Jr.

Vice Chancellor

lef