# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

JOSEPH J. FREEBERY,                          :
                                             :
          Plaintiff,                       :
                                             :
    v.                                       :   Civil Action No. 05-748-KAJ
                                             :
CHRISTOPHER COONS, in his official           :
capacity as County Executive of New Castle   :
County and in his Individual capacity; and   :
NEW CASTLE COUNTY, a municipal               :
corporation; and JOHN DOES 1-25,             :
                                             :
          Defendants.                      :

## APPENDIX TO
## OPENING BRIEF IN SUPPORT OF UNITED STATES'
## MOTION TO INTERVENE, UNDER RULE 24 OF THE
## FEDERAL RULES OF CIVIL PROCEDURE, FOR THE
## LIMITED PURPOSE OF SEEKING A STAY OF DISCOVERY

COLM F. CONNOLLY
United States Attorney

Patricia C. Hannigan,
Assistant United States Attorney
Delaware Bar I.D. No. 2145
The Nemours Building
1007 Orange Street, Suite 700
P. O. Box 2046
Wilmington, Delaware 19801
(302) 673-6277

Dated: **October 27, 2006**

## TABLE OF CONTENTS

PAGE

EXCERPTS OF DEPOSITION TRANSCRIPT OF JENNIFER RICH FARRELL . . . . . .  A-001

EXCERPTS OF DEPOSITION TRANSCRIPT OF TRACY SURLES . . . . . . . . . . . . . .  A-012

EXCERPTS OF DEPOSITION TRANSCRIPT OF JONATHAN HUSBAND . . . . . . . . .  A-024

Jennifer Farrell

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

— — —

JOSEPH J. FREEBERY,                    :
                                       : Civil Action
          Plaintiff,                   : No. 05-748 KAJ
                                       :
          vs.                          :
                                       : TRIAL BY JURY OF 12
CHRISTOPHER COONS, in his              :
official capacity as County            :
Executive of New Castle County:
and in his individual capacity:
and NEW CASTLE COUNTY, a               :
municipal corporation; and            :
JOHN DOES 1-25,                        :
                                       :
          Defendants.                  :

— — —

Deposition of JENNIFER RICH
FARRELL, taken pursuant to subpoena before Gail
Inghram Verbano, CSR, RMR, in the law offices of
Knepper & Stratton, 1228 King Street, Wilmington,
Delaware 19899, on Monday, August 14, 2006, beginning
at approximately 2:00 p.m., there being present:

APPEARANCES:

          JOSEPH F. LAWLESS, ESQ.
          6 Harvey Lane
          Newtown Square, Pennsylvania 19083
             Attorney for Plaintiff

CORBETT & WILCOX
Registered Professional Reporters
230 North Market Street, Wilmington, DE 19801
(302) 571-0510
www.corbettreporting.com

Jennifer Farrell

Page 11

1      A    I don't know.  I'm assuming so.  There
2 was one every Thursday or every Tuesday.  But I
3 couldn't tell you, because they have their own
4 entrance.  So I don't know.

5      Q    Did you attend the meetings?

6      A    No.  There was a point in time I did.
7 About four years ago, the whole Office of Community
8 Governing did for -- three or four years ago for a
9 while.  But nothing recently.

10     Q    Did you ever prepare any minutes or notes
11 or memoranda relating to the GM meetings?

12     A    No.

13     Q    Did you have anything to do with the --
14 the physical preparation of the budget or anything
15 like that?

16     A    No, huh-uh.

17     Q    While you were at the executive offices,
18 were you involved at all in responding to any
19 subpoenas that were served on the executive office in
20 connection with the Grand Jury investigation of Tom
21 Gordon or Sherry Freebery?

22     A    Huh-uh.  You mean subpoenas that were
23 served to the executive office?

24     Q    To the executive office or to the County.

Corbett & Wilcox

A-002

Jennifer Farrell

Page 12

1 Were you involved at all in responding to any records

2 or document subpoenas?

3       A    I was subpoenaed by the Grand Jury, if

4 that's what you mean.  I was.

5       Q    That was my next question.  Okay.

6       A    Yes, I was.

7       Q    Okay.  And I assume then you've

8 testified?

9       A    I did.

10      Q    More than once?

11      A    No.

12      Q    And am I correct that you testified

13 before Tom Gordon or Sherry Freebery were indicted?

14                  MR. WIER:  Let me stop for a

15 moment, because the questions to Charlie Baker raised

16 my antennae about this, because I didn't represent

17 him.

18                  It's my position that questions to

19 this witness about what she said or did not say in

20 any investigation relating to Sherry Freebery, Tom

21 Gordon is not relevant to this lawsuit and is

22 potentially being used indirectly to benefit her in

23 some other litigation; I don't know.

24                  MR. LAWLESS:  Benefit -- when you

Corbett & Wilcox

Jennifer Farrell

Page 13

1 say "her" --

2            MR. WIER:  Sherry Freebery or Tom
3 Gordon.  I mean, I don't know what the
4 interconnection is.

5            But if you're going to ask her
6 questions about what she testified to, et cetera, I'm
7 going to object, and we're going to probably instruct
8 her not to answer until I have an opportunity to find
9 out --

10           MR. LAWLESS:  If you're going to
11 instruct -- well, let me ask you one other question.

12           MR. WIER:  -- the relevance of any
13 of this stuff.

14 BY MR. LAWLESS:

15    Q    Did you receive any kind of an immunity
16 agreement from the Grand Jury?

17           MR. WIER:  Objection.

18           MR. LAWLESS:  Then we're going to
19 have to get the judge on the phone, because I don't
20 think you can instruct this witness not to answer a
21 question, particularly a question about anything that
22 she was asked in front of the Grand Jury.

23           You don't even know what I'm going
24 to ask her.

Corbett & Wilcox

A-004

Jennifer Farrell

Page 14

1                    MR. WIER:  I think I can instruct

2 her, and I think I can argue it.  And I think, in

3 fact, there's a -- apparently there's a ruling in

4 another lawsuit, that you may or may not have been

5 aware of, where the Chancellor ruled that a witness,

6 in a civil case, who was questioned in front of the

7 Grand Jury would not have to testify as to what the

8 contents were.

9                    MR. LAWLESS:  I'm going to have

10 Judge Gordon instruct me not to do that.

11                   MR. WIER:  You're going to have to

12 at some point.

13                   MR. LAWLESS:  We're going to do it

14 now.  We're going to stop and we're going to call

15 him.

16                   MR. WIER:  No, we're not,

17 because --

18                   MR. LAWLESS:  Yes, we are.

19                   MR. WIER:  She's entitled to talk

20 to her lawyer who represented her in the Grand Jury

21 proceedings, if you're going to question her.

22                   MR. LAWLESS:  Who was your lawyer

23 who represented you in connection with the Grand Jury

24 proceedings?

Corbett & Wilcox

Jennifer Farrell

Page 15

1                     THE WITNESS:  Charlie Oberly.

2                     MR. WIER:  Okay.  So until she's

3 able to talk or I'm able to talk to her with her

4 lawyer and find out is there a problem or not a

5 problem, I'm not comfortable having her answer

6 questions that clearly, in my view, are totally

7 irrelevant to Joe Freebery's lawsuit.  They can have

8 no other purpose other than to find out what

9 witnesses testified against Sherry or Tom Gordon in

10 the Grand Jury federal prosecution.

11                     MR. LAWLESS:  And you think they

12 don't know that already?

13                     MR. WIER:  Who doesn't know what?

14                     MR. LAWLESS:  Tom Gordon or Sherry

15 Freebery's lawyers don't already know who the

16 witnesses were that testified against them?  Because,

17 quite frankly, I'd be astounded if they didn't.

18                     MR. WIER:  I'm not saying that they

19 don't know who testified.  And I don't know whether

20 the word "against" them is an appropriate

21 characterization of the testimony.

22                     All I'm saying is, in this civil

23 lawsuit that Joe Freebery has brought, I don't see

24 how questioning any witness about what they said

Corbett & Wilcox

Jennifer Farrell

Page 16

1 about Sherry Freebery or Tom Gordon before the Grand

2 Jury is relevant to this, and the only purpose that I

3 can see is a fishing expedition to benefit them.

4                    MR. LAWLESS:  Well, quite frankly,

5 I think it could go to show bias or prejudice by this

·6 witness --'

7                    MR. WIER:  Of what?

8                    MR. LAWLESS:  -- for or against Joe

9 Freebery, because, obviously, he does have a

10 relationship to one of the targets of that

11 investigation.  And I think I have every right to ask

12 her that question.

13                    MR. WIER:  Her testimony -- I mean,

14 you can state your theory.  I disagree with the

15 theory.  I can't conceive how that shows bias.

16                    MR. LAWLESS:  Well, first of all,

17 this is a discovery deposition.  So instructing a

18 witness not to testify on the grounds of relevance is

19 improper.

20                    MR. WIER:  No, it's on grounds --

21 I'm not saying relevance.  I'm saying until I have an

22 idea of whether she is permitted to testify, given

23 the prior ruling of the Chancery court, the potential

24 immunization potential, potential issues, I don't

Corbett & Wilcox

Jennifer Farrell

Page 22

1 and she's now testified under oath that she doesn't.

2                    MR. WIER:  Well, I don't think

3 that's true.  You didn't listen to her answers.

4 BY MR. LAWLESS:

5        Q    Jen, do you know anything about this

6 lawsuit?

7        A    Not that I know of.

8        Q    Do you know anything about Joe Freebery?

9                    MR. WIER:  Objection to the form of

10 the question.

11 BY MR. LAWLESS:

12       Q    Have you been told by anyone that you

13 have information about this lawsuit?

14       A    No.

15       Q    Have you been told by Mr. Wier that you

16 have information about this lawsuit, or Michelle

17 Allen?

18       A    No.

19       Q    Did you testify in front of the Grand

20 Jury?

21       A    Yes.

22       Q    Were you told by any judge in connection

23 with that proceeding that you were not permitted to

24 reveal what you testified to before the Grand Jury?

Corbett & Wilcox

Jennifer Farrell

Page 23

1                    MR. WIER:  Objection.  I'm going to

2 stop any questions about that until I have an

3 opportunity to talk and find out what happened.  It

4 may be -- it may be prophylactic, but I have a right

5 to represent her --

6                    MR. LAWLESS:  You're instructing

7 this witness not to answer the question?

8                    MR. WIER:  What I'm saying is I'm

9 instructing her -- I'm instructing her not to answer

10 any questions about the Grand Jury process,

11 because --

12                    MR. LAWLESS:  I'm not asking about

13 the Grand Jury process.  I'm asking her about what

14 she was asked and what she testified to.  It's very

15 specific, and that's prior sworn testify in

16 connection with her employment by New Castle County.

17                    MR. WIER:  I don't know what was

18 asked her, and that's the point of my inquiry.  So

19 I'm going to ask that we recess this, if you want to

20 pursue this line of questioning, and let me check

21 with Mr. Oberly --

22                    MR. LAWLESS:  Check with

23 Mr. Oberly, because if we pursue it, I'm going to

24 pursue it front of Judge Jordan and we're going to

Corbett & Wilcox

Jennifer Farrell

Page 30

1  and -- I have never --

2       Q    Were you active at all in politics --

3       A    No.

4       Q    -- for either the Democratic or

5  Republican party?

6       A    No.

7       Q    Your father was Nicholas Rich?

8       A    Uh-huh.

9       Q    Was he ever active in politics for either

10 the Democratic or Republican party?

11      A    No.

12                In Sherry's -- or Tom's first

13 campaign, I think my dad did do some campaign work.

14 So I take that back.  My dad did do campaign work

15 when I was still in college, '96, '95, somewhere

16 around there.  But no, the only campaign work I did

17 was phone calls.

18      Q    For whom?

19      A    I did phone calls for Bill Tansey and --

20 who was the other one?  Patty Powell, those two.

21      Q    When did you do phone calls?

22                MR. WIER:  Can we go off the record

23 for a second?

24                MR. LAWLESS:  Yeah.

Corbett & Wilcox

Jennifer Farrell

Page 31

1              (Discussion off the record.)

2 BY MR. LAWLESS:

3        Q    Did there ever come a point in time where

4 you observed Joe Freebery doing any sort of political

5 activity or political campaigning for any candidate?

6        A    No.   I saw him at Sherry's house when I

7 was there making phone calls.

8        Q    Okay.

9        A    I don't -- I was doing political work.  I

10 don't know if, at the time, he was.  But he was

11 there, and that was considered --

12       Q    Okay.  Were you ever at political

13 functions, such as debates, political campaign

14 appearances, for either Freebery or Coons when you

15 saw Joe Freebery?

16       A    No.

17       Q    And as far as the allegations in that

18 Complaint, with the exception of what you just told

19 us, do you have any knowledge or idea why Joe

20 Freebery was fired?

21       A    No.

22       Q    Did anybody in the Coons administration

23 ever tell you why Joe Freebery was fired?

24       A    No.

Corbett & Wilcox

Tracy Surles

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

JOSEPH J. FREEBERY,                    )
                                       )
          Plaintiffs,                  )    Civil Action No.
                                       )    05-748-KAJ
v.                                     )
                                       )
CHRISTOPHER COONS, in his              )
official capacity as County            )
Executive of New Castle County         )
and in his individual capacity;        )
and NEW CASTLE COUNTY, a               )
Municipal corporation; and             )
JOHN DOES 1-25,                        )
                                       )
          Defendants.                  )

          Deposition of TRACY Z. SURLES taken pursuant to
notice before Renee A. Meyers, Registered Professional
Reporter and Notary Public, in the offices of the
Department of Office of Law, 87 Read's Way, New Castle,
Delaware, on Wedesday, August 23, 2006, beginning at
approximately 10:05 a.m., there being present:

APPEARANCES:


          JOSEPH F. LAWLESS, ESQ.
           6 Harvey Lane
           Newtown Square, Pennsylavnia   19073
           for Plaintiff,




                    CORBETT & WILCOX
              Registered Professional Reporters
230 North Market Street      Wilmington, DE 19899
                    (302) 571-0510
              www.corbettreporting.com


Corbett & Wilcox

Tracy Surles

Page 2

 1 APPEARANCES (Continued):

 2
                RICHARD R. WIER, JR., P.A.
 3              RICHARD R. WIER, JR., ESQ.
                  Two Mill Road, Suite 200
 4                Wilmington, Delaware  19806
                  for Defendants Christopher Coons in his
 5                Official capacity as County Executive of New
                  Castle County, and New Castle County,
 6
                DEPARTMENT OF ADMINISTRATION OF LAW
 7              MICHELLE D. ALLEN, ESQ.
                  87 Read's Way
 8                New Castle, Delaware  19720
                  for Defendant New Castle County.
 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Corbett & Wilcox

Tracy Surles

Page 3

1                    TRACY Z. SURLES,

2          the witness herein, having first been

3          duly sworn on oath, was examined and

4          testified as fcllows:

5 BY MR. LAWLESS:

6          Q.    Would you state your full name, please, and

7 spell your last name for the court reporter?

8          A.    Tracy Zlock Surles, S, as in Sam, u-r-l-e-s.

9          Q.    And can I have your work address, please?

10         A.    187A Old Churchmans Road, New Castle, Delaware

11 19720.

12         Q.    What's your current employment situation?  Who

13 are you employed by and in what position?

14         A.    I am employed by New Castle County as a senior

15 manager for the Department of Special Services.

16         Q.    Have you ever given a deposition before?

17         A.    No.

18         Q.    Have you ever testified in any proceeding

19 before?

20         A.    No.

21         Q.    Never testified in court or testified in

22 deposition at all?

23         A.    No.

24         Q.    And am I correct, then, that you were not

Corbett & Wilcox

Tracy Surles

Page 4

1  subpoenaed before nor did you testify before the Grand

2  Jury that investigated New Castle County?

3       A.    Correct.

4       Q.    I understand you are a member of the Bar?

5       A.    Correct.

6       Q.    How long have you been a lawyer?

7       A.    Since '97.

8       Q.    Where did you go to law school?

9       A.    Georgetown.

10      Q.    Are you an active member of the Bar?

11      A.    Yes, I am.

12      Q.    Are you employed as a lawyer by New Castle

13 County?

14      A.    No, I am not.

15      Q.    Could you tell me what a senior manager in the

16 Department of Special Services does?

17      A.    Department of Special Services is divided into

18 four divisions.  The general manager oversees the entire

19 department.  There are two senior managers, and under

20 each senior manager is the responsibility of two

21 divisions.  I am responsible for the engineering and

22 environmental compliance division and also for the

23 administrative division.

24      Q.    What's the administrative division?

Corbett & Wilcox

Tracy Surles

1 had you ever -- by the way, do you think that the

2 "Impeach Coons" campaign or Joe Freebery instructing

3 somebody to make phone calls on County time, is that

4 against any County policy you are aware of?

5        A.   I don't know.

6        Q.   Is it illegal?

7              MR. WIER:   Objection.

8 BY MR. LAWLESS:

9        Q.   You can answer.  Is it illegal?

10       A.   I don't know.  I can give you my opinion.

11       Q.   What's your opinion?

12       A.   Yes, some of it, on County time, I believe

13 it's political activity under County time.

14       Q.   To whom did you report that ever other than

15 Joe Freebery?

16       A.   Other than Joe?

17       Q.   Yes.

18       A.   Nobody.  He worked for his sister.

19       Q.   Did he work for his sister after Mr. Coons got

20 elected?

21       A.   No.  But that was --

22       Q.   Did you ever report it to --

23             MR. WIER:   Objection.

24             THE WITNESS:   No.

Corbett & Wilcox

Tracy Surles

Page 48

1 BY MR. LAWLESS:

2      Q.   Did you ever report it to the U.S. Attorney?

3      A.   No.

4      Q.   Were you aware, when you were employed by the

5 Department of Special Services, that there was a Grand

6 Jury investigation going on of the Gordon Administration?

7      A.   Yes.

8      Q.   Were you aware that other people who worked in

9 the department were being subpoenaed?

10     A.   Yes.

11     Q.   Did you read newspaper articles that related

12 to that investigation?

13     A.   Yes.

14     Q.   Did you read newspaper articles that related

15 to phone banks to make phone calls on behalf of campaigns

16 of individuals running for County Council?

17     A.   Yes.

18              MR. WIER:  I am sorry.  Was there an

19 answer?

20              MR. LAWLESS:  Yes.  She nodded yes.

21 BY MR. LAWLESS:

22     Q.   Is it fair to say that what you read that was

23 reported was similar to what Tammy Ammerman came to you

24 and told you she was having a problem with what Joe

Corbett & Wilcox

Tracy Surles

Page 49

1 Freebery having told her to do?

2      A.    Yes.

3      Q.    And at that point, did you ever decide you
4 should go to the FBI or the police or the U.S. Attorney
5 and --

6      A.    The U.S. --

7      Q.    Let me finish my question -- and tell them
8 that you saw something similar to what they were
9 investigating that was going on in the Department of
10 Special Services?

11      A.    The FBI and the U.S. Attorney's Office did
12 contact me and talk to me.  I answered questions they
13 had, but I was never subpoenaed or followed up.  They did
14 not follow-up.

15      Q.    Did you tell them what you just told me about
16 Joe Freebery?

17      A.    I just wanted to ask --

18             MR. WIER:  Can we take a second?

19             (Discussion off the record.)

20             MR. WIER:  Let me state that I --
21 subject to my reviewing just the circumstances, which I
22 don't know what the circumstances are in terms of the
23 parameters of her discussions with the U.S. Attorney and
24 the FBI, I am going to instruct her not to answer.

Corbett & Wilcox

Tracy Surles

Page 50

1                    MR. LAWLESS:  Okay.

2                    MR. WIER:  And then if we determine

3 there is not a privilege -- I just don't have requisite

4 information to permit her to answer and I don't want to

5 have it -- and then if I determine the question is not

6 objectionable, then you can recall her.

7 BY MR. LAWLESS:

8      Q.   Let me ask you one question:  You did tell us

9 you didn't testify before the Grand Jury?

10     A.   I did not.

11     Q.   And that you just testified that you did --

12 you were interviewed by the FBI or the U.S. Attorney?

13     A.   Correct.

14     Q.   And that was not in the presence of a Grand

15 Jury?

16     A.   Correct.  I was not subpoenaed.

17     Q.   And was that pursuant to any kind of a plea

18 bargain or plea agreement for you?

19     A.   No.

20                    MR. LAWLESS:  What's your objection?

21                    MR. WIER:  I just object because I want

22 to evaluate the circumstances with my client of what was

23 said and what was not.  There is an ongoing

24 investigation.  There may be ongoing issues.  I don't

Corbett & Wilcox

Tracy Surles

Page 51

1 know what the parameters are in connection with the

2 circumstances of that investigation.

3                    So, right now, I am not comfortable

4 having her answer those kinds of questions because I am

5 not certain that that's likely to lead to the discovery

6 of admissible evidence in this case.

7                    MR. LAWLESS:  I know the next few

8 questions I wanted to ask her and I think it was --

9                    (Discussion off the record.)

10 BY MR. LAWLESS:

11     Q.   You told us that you were -- and just let me

12 kind of lay a foundation -- you told us that you were

13 interviewed by the FBI and the U.S. Attorney's Office;

14 correct?

15     A.   Correct.

16     Q.   Would I be correct that you were interviewed

17 by the FBI as opposed to the U.S. Attorney's Office?

18     A.   No.  I was interviewed by them jointly.

19     Q.   And was Mr. Connolly present at the interview?

20     A.   No.

21     Q.   It was another U.S. Attorney?

22     A.   Yes.

23                    (Discussion off the record.)

24 BY MR. LAWLESS:

Corbett & Wilcox

Tracy Surles

Page 52

1    Q.    Is it Ferris Wharton who was present at the

2 interview?

3    A.    Yes.

4    Q.    I will do it this way:  Were you represented

5 by counsel at that interview?

6              MS. ALLEN:  You can say it.

7              THE WITNESS:  No.

8 BY MR. LAWLESS:

9    Q.    Were there any promises or threats or anything

10 made prior to that interview or were you just asked

11 questions and you just answered the questions honestly as

12 best you could?

13    A.    The latter.  No threats or promises or

14 anything whatsoever.

15    Q.    Were you asked any questions regarding Joe

16 Freebery?

17    A.    Yes.

18    Q.    And what were those questions?

19              MR. WIER:  Objection.

20              MR. LAWLESS:  That's one question I am

21 going to ask.

22              MR. WIER:  Okay.

23 BY MR. LAWLESS:

24    Q.    I am going to ask you what those questions

Corbett & Wilcox

Tracy Surles

Page 53

1 were and what your answers were to those questions.

2     A.    All right.

3     Q.    And then I am going to ask you if -- the other

4 question would be if you repeated to the FBI and/or

5 Mr. Wharton, in that interview, anything that you just

6 told us today regarding your concerns with what Joe

7 Freebery was or was not doing on County time that may

8 have been either a violation of County policy or illegal?

9 And they are the questions I am going to ask her.

10              MR. WIER:  Okay.

11              MR. LAWLESS:  Quite frankly, I don't see

12 where they are objectionable.

13              MR. WIER:  They may not be.

14              MR. LAWLESS:  I understand your reason

15 for it, too.  I don't have anything more subject to

16 having you back for five minutes.

17 BY MR. WIER:

18     Q.    I just have a question.

19     A.    Sure.

20     Q.    When Joe Freebery called you and told you that

21 he had just been fired, I think you said he was laughing

22 and he said he knew it was coming; is that right?

23     A.    Mm-hmm.

24     Q.    Did he state whether he was advised why he was

Corbett & Wilcox

Tracy Surles

Page 54

1 being terminated?  Any reasons?  Such as responsiveness

2 or anything else?

3      A.   He did not convey reasons to me.

4      Q.   Did he say --

5      A.   That I can recall.

6      Q.   Did he say whether he was told that he was not

7 being responsive?

8      A.   I don't recall.

9      Q.   So, sitting here today, you don't know whether

10 he did or did not tell you the reasons?

11      A.   The part I specifically remember was him kind

12 of laughing and telling me it was a relief because he

13 knew it was happening and he didn't go into a lot of

14 detail.  And, frankly, I did not pry into that because I

15 felt a little bit uncomfortable.  I mean, it was just a

16 quick phone call.

17                MR. WIER:  Okay.  That's all I have

18 about that.

19 BY MR. LAWLESS:

20      Q.   In that conversation you just told us about,

21 did you think he was happy about being fired?

22                MR. WIER:  Objection.

23 BY MR. LAWLESS:

24      Q.   Or would it be fair to say he was trying just

Corbett & Wilcox

A-023

Jonathan Husband

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

JOSEPH J. FREEBERY,                    )
                                       )
        Plaintiffs,                    )   Civil Action No.
.v.                                    )   05-748-KAJ
                                       )
CHRISTOPHER COONS, in his              )
official capacity as County            )
Executive of New Castle County )
and in his individual capacity;)
and NEW CASTLE COUNTY, a               )
Municipal corporation; and             )
JOHN DOES 1-25,                        )
                                       )
        Defendants.                    )

        Deposition of JONATHAN W. HUSBAND taken
pursuant to notice before Renee A. Meyers, Registered
Professional Reporter and Notary Public, in the offices
of the Department of Office of Law, 87 Read's Way, New
Castle, Delaware, on Wedesday, August 23, 2006, beginning
at approximately 11:34 a.m., there being present:

APPEARANCES:

        JOSEPH F. LAWLESS, ESQ.
         6 Harvey Lane
         Newtown Square, Pennsylavnia  19073
         for Plaintiff,

                CORBETT & WILCOX
            Registered Professional Reporters
230 North Market Street        Wilmington, DE 19899
                (302) 571-0510
            www.corbettreporting.com

Jonathan Husband

Page 2

1  APPEARANCES (Continued):

2
        RICHARD R. WIER, JR., P.A.
3          RICHARD R. WIER, JR., ESQ.
          Two Mill Road, Suite 200
4            Wilmington, Delaware  19806
          for Defendants Christopher Coons in his
5            Official capacity as County Executive of New
          Castle County, and New Castle County,
6
        DEPARTMENT OF ADMINISTRATION OF LAW
7          MICHELLE D. ALLEN, ESQ.
          87 Read's Way
8            New Castle, Delaware  19720
          for Defendant New Castle County.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Corbett & Wilcox

Jonathan Husband

Page 56

1 where you were questioned about Joe Freebery?

2    A.   No.

3    Q.   Am I correct you didn't testify in front of

4 the Grand Jury in this case?

5    A.   You are correct.

6    Q.   Were you ever questioned or interviewed by the

7 FBI in connection with anything having to do with the

8 County investigation or with the investigation into the

9 County by the FBI?

10    A.   Yes.  I was asked by the FBI.

11    Q.   And how long ago was that, approximately?  Let

12 me see if I am giving you a time frame.  Was it prior to

13 Tom Gordon and Sherry Freebery being indicted?

14    A.   No.

15    Q.   It was after?

16    A.   Oh, yeah.

17    Q.   When was that?

18    A.   I am going to say it was last summer.

19    Q.   It was after the indictments?

20    A.   (Witness nods.)

21    Q.   Were you in any way questioned about Joe

22 Freebery in that interview?

23    A.   No.

24    Q.   You are not sure?

Jonathan Husband

Page 57

1    A.    Yeah.  It was a very short interview.

2    Q.    And it focused on specific things?

3    A.    Yes.

4    Q.    And none of them had anything to do with Joe
5 Freebery?

6    A.    No.  That's the last I heard.

7    Q.    Did they ever ask about Joe Freebery?

8    A.    No.  I don't think so.

9    Q.    Let me just check my notes.  Let me ask you a
10 question, Mr. Husband:  As it's currently run now, is the
11 department -- and this is just your opinion and I
12 understand that -- is the Department of Special Services
13 better, worse, or just different?

14    A.    I think it's better.

15    Q.    How?

16    A.    I think we have much more open lines of
17 communication.

18    Q.    Within the department?

19    A.    Within the department.

20    Q.    And when you say, "much more open lines of
21 communication," to what are you specifically referring?

22    A.    With the general manager.

23    Q.    And that's between you and the general
24 manager?

Corbett & Wilcox

A-027

Jonathan Husband

Page 2

1 APPEARANCES (Continued):

2

       RICHARD R. WIER, JR., P.A.
3        RICHARD R. WIER, JR., ESQ.
         Two Mill Road, Suite 200
4          Wilmington, Delaware  19806
         for Defendants Christopher Coons in his
5          Official capacity as County Executive of New
         Castle County, and New Castle County,

6

       DEPARTMENT OF ADMINISTRATION OF LAW
7        MICHELLE D. ALLEN, ESQ.
         87 Read's Way
8          New Castle, Delaware  19720
         for Defendant New Castle County.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Corbett & Wilcox

A-028

## CERTIFICATE OF SERVICE

I, Patricia C. Hannigan, hereby certify that on **October 27, 2006**, I electronically filed the foregoing **APPENDIX TO OPENING BRIEF IN SUPPORT OF UNITED STATES' MOTION TO INTERVENE, UNDER RULE 24 OF THE FEDERAL RULES OF CIVIL PROCEDURE, FOR THE PURPOSE OF SEEKING A STAY OF DISCOVERY** with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

**Barbara H. Stratton**
Knepper & Stratton
P.O. Box 1795
Wilmington, DE 19899
(302) 658-1717
bhs@knepperstratton.net

*ATTORNEY FOR Joseph Freebery*

**Richard R. Wier, Jr.**
Law Offices of Richard R. Wier, Jr., P.A.
Two Mill Road
Suite 200
Wilmington, DE 19806
(302) 888-3222
Fax: (302) 888-3225
rwier@wierlaw.com

**Gregg E. Wilson**
New Castle County Law Dept.
New Castle Corporate Commons
87 Reads Way
New Castle, DE 19720
(302) 395-5146
gewilson@co.new-castle.de.us

*ATTORNEYS FOR Christopher A. Coons, New Castle County & John & Jane Does*

COLM F. CONNOLLY
United States Attorney

By:/s/Patricia C. Hannigan
    Patricia C. Hannigan
    Assistant United States Attorney
    Delaware Bar I.D. No. 2145
    The Nemours Building
    1007 Orange Street, Suite 700
    P. O. Box 2046
    Wilmington, DE 19899-2046
    (302) 573-6277
    Patricia.Hannigan@usdoj.gov