# EXHIBIT "E"

Archive Search > Buy > Print

» New Search   » Pricing   » Help   » FAQ

Return to results   Printer Friendly

**Account Information**
You have purchased 2 articles, and you have 1 remaining before the subscription expires on 02/14/2008 9:37 PM.

January 21, 2008
Section: NEWS
Edition: Final
Page: A1, A2

## Political climate knotting up judicial nomination process
*SEAN O'SULLIVAN*
*Staff*

By SEAN O'SULLIVAN

The News Journal

WILMINGTON -- Nearly 300 plaintiffs who have filed civil claims in U.S. District Court here have been stuck in legal limbo for the past year, with hundreds more likely to join a logjam caused by partisan gridlock over a vacant judgeship.

The Delaware court has been without one of its four district judges since December 2006. Observers say they doubt the majority Democratic Senate would confirm a nominee from a Republican administration, since they have high hopes of electing a Democratic president in November who might make a different choice. Many expect the court won't get a replacement until the middle of 2009 at the earliest.

The result is a growing backlog of civil cases assigned to "vacant judgeship" and going nowhere. The issue is less acute with criminal cases, because they are being assigned to one of the three remaining judges.

But even those criminal cases are moving more slowly, with three judges carrying a workload normally handled by four at a time when a record number of criminal filings have flooded the court's docket this past year. The backlog of civil suits has resulted in delays and more early-morning and late-evening proceedings.

"This is the biggest problem with the courts I've ever experienced," said Wilmington attorney Jeffrey K. Martin. "It has really been a huge strain on our clients who are sitting there waiting for something to happen."

Chief District Judge Gregory M. Sleet declined comment on the vacancy.

The situation also affects the aspirations of U.S. Attorney Colm F. Connolly, who experts see as most likely to ascend to the post under the Bush administration.

Some fear that a prolonged vacancy on the federal bench will harm Delaware's lucrative reputation as a place where complicated business disputes, such as patent litigation, are handled quickly and efficiently.

One of Martin's clients, Nathaniel "Binky" Briddell, a poultry industry crew leader for chicken catchers, is one of the hundreds of plaintiffs with a case assigned to "vacant judgeship."

He and four co-workers filed a federal claim four years ago against Mountaire Farms Inc. involving overtime pay. The suit was tossed out on an early motion by the company but revived on appeal before the judge overseeing the case, Kent A. Jordan, was promoted to the U.S. 3rd Circuit Court of Appeals 13 months ago.

Since then, there has been no significant action in the case and one of the plaintiffs has had to leave his job because of a heart problem.

"This ties us up in a lot of different ways," Briddell said. "Some guys might stay with the company, some may want to move on."

Briddell, 58, who has worked on chicken farms all his life, said he could certainly use the money if the case were to end with a financial settlement or verdict in their favor.

"If I deserve this money, I should have had it," he said. "I don't know much about politics, but I think they should get it resolved as soon as they can."

Political complaints

Martin and other attorneys agree, making clear that their dissatisfaction is with the slow progress out of Washington, not with the court or the judges.

"I think the court is trying to take heroic measures to keep cases moving forward," said attorney Thomas Neuberger. But "justice delayed is justice denied. It tarnishes the reputation of [the] district of Delaware that a vacancy has been unfilled so long. Delaware has always been known as a place where cases move very quickly."

Edmund "Dan" Lyons, a former federal prosecutor and a longtime Wilmington defense attorney, said the situation is "ridiculous."

"It is not as if it takes a year to sort out talented candidates," he said. "I can only think that things are being slowed up by someone's political agenda, which is unfortunate. The public is the one who gets harmed."

U.S. Rep. Mike Castle, R-Del., submitted four names to the White House in March, with most signs pointing to Connolly as most likely to get the nod from Bush.

In August, other nominees on the list indicated they had been told by the White House that they were not selected and a background check was being started on the nominee. Connolly, then and now, declined comment.

The Bush administration declined comment last week, citing a longstanding policy on personnel matters, and Delaware's senators -- Democrats Joe Biden and Tom Carper -- said they do not have a "hold" on the process and were waiting for a nomination from the White House.

Jeff Dayton, state director for Castle, said he does not know why there has been no action on the vacancy. He said Castle hopes Bush will act on the nomination when the Senate returns to session on Jan. 22.

'Senate has cooled off'

Paul Light, a New York University professor who studies the appointment process and public service issues, said 160 to 200 Bush nominees for executive branch and judicial positions have been stalled in Congress because of the coming presidential elections and disputes between the White House and Senate.

Judicial appointments are essentially for life, Light said, which makes the Senate less likely to act on those vacancies.

"I'd cover all the furniture in sheets and make sure the office is locked," Light said. "The workload of these district and circuit courts has not been a priority for either the White House or the Senate."

Nominations expire at the end of a Congress. The second session of the 110th Congress is now beginning, so nominations that aren't approved by the end of this session will expire. A new president, regardless of the party, would have to submit new nominations.

No matter who the nominee is, Light said, "the Senate has cooled off and doesn't want to move ahead until the new administration."

Should the White House make a nomination, Light said, that candidate is going to be standing at the back of a long line.

The to-do list waiting for a new judge in Delaware includes high-profile cases such as:

• The wrongful-death lawsuit against Wilmington police by the family of Derek Hale. Hale was stunned, shot and killed by police in November 2006.

• An eight-year-old lawsuit against the Brandywine School District, filed by a former administrator.

• A gender discrimination claim filed by a former male bodyguard to Gov. Ruth Ann Minner.

• A free-speech action by a University of Delaware student suspended for what UD ruled were offensive and disruptive posts on his Web site.

Neuberger, who is handling both the Hale and the bodyguard lawsuits, said that by the time a new judge takes the bench and gets up to speed on the bodyguard case, it will be halfway into the term of Minner's successor.

Not every case assigned to the vacant judgeship's docket is dead in the water. Some cases have been able to get moving when both parties agreed to allow a federal magistrate judge to hear the matter.

Attorney David Finger, who is representing the UD student, said he expects that to happen in his case in the coming weeks. But both sides have to agree to such an arrangement, and Martin and Neuberger said if a defendant is intent on delay -- as many are -- all they have to do is simply refuse.

So far, statistics have not shown a loss of lawsuits from corporations, but some attorneys fear that will come if the backlog builds.

That's particularly true for large corporations that have flocked to Delaware to argue time-sensitive patent cases, bringing dozens of attorneys to town who fill up downtown hotels and restaurants during their visits. Some of those cases may go elsewhere if a firm can't count on a timely decision.

Professor Thomas Reed at Widener University School of Law said many patent cases are filed in Delaware because of the competence of federal judges here, and the district's reputation for a speedy docket.

"That reputation has been hurt," Reed said.

Attorney Richard K. Herrmann, who specializes in patent cases, said he has heard some express concern about the situation, but said it has not yet shown up in statistics.

In the last quarter of 2007, he said, 54 patent cases were filed, up from the same quarter in 2006 and 2005.

But, he said, no one can say if more cases would have been filed if the court was at full strength and attorneys were not concerned about delays.

Contact Sean O'Sullivan at 324-2777 or sosullivan@delawareonline.com.

A NEW JUDGE

The process to replace a district judge -- when it works efficiently -- takes six to eight months. A list of names is submitted to the White House by the senior congressman from the president's party. The president then selects a name -- which may or may not come from the list -- conducts a background check and forwards the name to the Senate. A hearing before the Senate Judiciary Committee is held, and if a majority support the nominee the name is sent to the full Senate for a vote.

Copyright (c) The News Journal. All rights reserved. Reproduced with the permission of Gannett Co., Inc. by NewsBank, inc.

Archive Search > Buy > Print

» New Search    » Pricing    » Help    » FAQ

Return to results    Printer Friendly

**Account Information**
You have purchased 1 articles, and you have 2 remaining before the subscription expires on 02/14/2008 9:37 PM.

December 3, 2007
Section: NEWS
Edition: Final
Page: A1, A8

## It wasn't a perfect year, but it was busy for U.S. attorney
SEAN O'SULLIVAN
*Staff*

By SEAN O'SULLIVAN

The News Journal

WILMINGTON -- The past year might not be fondly recalled by federal prosecutors due to the disappointing end to a five-year corruption investigation of three New Castle County officials, but it has turned out to be a record-setting year in terms of volume.

In the fiscal year that ended in September, the U.S. Attorney's Office in Delaware filed more criminal cases than ever before and brought in more than $11 million in fines, debts and seizures, almost three times the department's annual operating budget.

While the criminal prosecutions of former New Castle County Executive Tom Gordon and his aides Sherry L. Freebery and Janet Smith ended in pleas to misdemeanors for Smith and Gordon and a single felony for Freebery, U.S. Attorney Colm F. Connolly's office secured convictions in other high-profile cases. These included convictions of ex-DuPont researcher Gary Min in a $400 million corporate spying case, Igal Sharon Levy for $600,000 in wire and credit card fraud -- the largest such loss in the history of retailer Circuit City -- and a 55-year sentence for crack dealer Ivan Smith.

The number of criminal cases filed in fiscal year 2007 -- 156 -- is up 30 percent over last year and up 101 percent over 2001, the year before Connolly took over the top federal prosecutor's job in Delaware.

This year's jump was primarily due to increases in the number of immigration cases, child pornography prosecutions and cases related to the Fed-Up initiative to curb gun violence in Wilmington.

"We've been pushing productivity," said Connolly. "We are trying to give the taxpayers as much bang for the buck as we can. That has been a theme."

Critics have charged that Connolly "wasted" taxpayer money with the multiyear corruption investigation, but he noted his office took in far more money than it spent last year.

For fiscal year 2007, the office collected more than $11.1 million -- nearly half of which came from a settlement with medical device manufacturer NuMed, which failed to follow FDA regulations -- in criminal and civil fines and penalties and forfeited assets.

Administrative forfeitures -- where the government seizes property and ends up acquiring it without a court proceeding because the defendant does not contest it -- added about another $350,000.

Connolly said his office operated on a $3.8 million budget. "So we are generating almost $4 for every dollar we spend," he said.

Attorney Edmund "Dan" Lyons Jr., a former federal prosecutor who now defends clients in federal court, said it appears that Connolly is doing his job.

He said the office of the federal prosecutor in Delaware has grown from "a sleepy little office 20 years ago with just bank robbery cases" to an increasingly sophisticated and aggressive law enforcement organization.

Strains elsewhere

The increased productivity has had a ripple effect.

The Federal Public Defender for Delaware, Edson Bostic, said his office has seen a 90 percent to 100 percent increase in its caseload since last year.

The federal defender gets 75 percent to 85 percent of all the cases the prosecutors bring.

To compensate for the increase, Bostic said, his office recently added one full-time trial attorney and expects to add a second appellate attorney.

"There is no doubt about it, we have an aggressive prosecutor's office," Bostic said.

In the three types of cases responsible for making this a record-setting year for federal prosecutors -- immigration, child porn and weapons -- defendants are almost always denied release and are instead detained, making more work for the U.S. Marshals Service.

As of Nov. 27, 157 defendants are being held pending trial, up from 42 defendants in 2001, almost a fourfold increase, according to U.S. Marshal for Delaware David W. Thomas.

"It is the largest amount of federal detainees ever in Delaware," said Thomas.

This has put a strain on the marshal's staff, which is responsible for security in the courthouse and moving detainees to and from jail.

As a matter of policy, Thomas said he could not reveal his staff levels but noted he has one fewer person than he did five years ago, when he had far fewer detainees.

Thomas said his office sends defendants awaiting trial to federal facilities in New Jersey and Philadelphia, but has almost used up its space allotment. There are no federal detention facilities in Delaware.

The federal court in Wilmington also has been affected.

"We have noticed [the increase] and it requires us to handle more paperwork or electronic filing," said Clerk of the Court Peter T. Dalleo. "And there is more courtroom activity."

Dalleo said the courts have not been able to add anyone to the staff, and this past year the court has been short one full-time judge.

No one has been nominated to replace District Judge Kent A. Jordan, who was elevated to the U.S. 3rd Circuit Court of Appeals in December 2006.

Dalleo said the addition of a second magistrate judge, Leonard P. Stark, in August has helped ease the burden. Magistrate judges are limited in their authority and cannot fully replace a district judge.

Prosecution targets

Immigration and child pornography cases and gun prosecutions fueled the increase. Immigration cases jumped from 13 to 29 since 2006, and child pornography prosecutions increased from 2 to 17.

Connolly said targeting Internet predators has always been a priority but concedes the jump last year was largely due to a single case. In June, police broke up a child pornography ring in the Georgetown area that resulted in nine federal cases.

The increase in immigration cases was due to a new strategy. As part of a national effort called Operation Community Shield, Connolly's office changed its guidelines to start prosecuting illegal re-entry and similar cases.

"It is driven by our concerns about gangs and gang-related criminal activity," he said.

Federal Defender Bostic said one of the new attorneys he hired speaks Spanish so his office can deal with this dramatic increase in immigration cases.

Bostic said his chief concern is cases related to Operation Fed-Up, the program that takes all felons caught with a firearm in the city of Wilmington and charges them in federal court -- where prosecutors say they face stiffer penalties -- instead of state court. The joint effort is designed to reduce gun crimes in the city and take armed felons immediately off the streets.

Weapons cases, which have been a stated priority for Connolly since he took office, were up 55 percent, from 31 cases in 2006 to 48 cases in 2007.

Bostic said his apprehension comes from the fact that the program is based on geography -- limited to Wilmington -- when the federal prosecutor has statewide authority. So the perception, if not the impact of the program, "is disproportionate on the minority community," he said. "That being said, I'm not asking for more to be arrested."

Connolly said race was not a factor in launching Fed-Up. "Our concern was that Wilmington has a disproportionally high rate of shootings and therefore we decided to focus federal resources on Wilmington to address that problem," he said.

The new high water mark for federal prosecutors of 156 cases is less than 2 percent of the more than 9,000 felony cases filed by the Delaware Attorney General's office last year.

"We supplement the state in responding to violent crime," said Connolly, adding that his is one of the smallest U.S. Attorney's Offices in the country. "Therefore we focus on the most serious offenders and try to make the biggest impact we can."

Copyright (c) The News Journal. All rights reserved. Reproduced with the permission of Gannett Co., Inc. by NewsBank, inc.

Archive Search > Buy > Print

» New Search   » Pricing   » Help   » FAQ

Return to results   Printer Friendly

**Account Information**
You have purchased 3 articles, and you have 0 remaining before the subscription expires on 02/14/2008 9:37 PM.

September 16, 2007
**Section:** NEWS
**Edition:** Final
**Page:** A1, A2

### Gordon-Freebery case called a draw by many observers
*SEAN O'SULLIVAN*
*Staff*

By SEAN O'SULLIVAN

The News Journal

The case has concluded.

No more entries will be made on the docket for criminal action 05-541, The United States of America v. Thomas P. Gordon and Sherry L. Freebery.

"It is over," said U.S. Attorney Colm F. Connolly, and his office will not be filing any more appeals.

It was also clear from the reaction of both ex-New Castle County Executive Gordon and former top aide Freebery, the latter declaring vindication and flashing two thumbs up as she left the courthouse, that they will not be filing appeals, either.

So what will the verdict of history be?

Legal experts and political observers were divided. Some said the outcome was a loss for Connolly.

"I think the lasting legacy of this case is a great deal of money and effort was spent, and you didn't get much bang for the buck," said attorney and former New Castle County Chief Prosecutor Peter N. Letang.

Others said it was a win for the prosecutor.

Before the indictment, "Gordon was seen as someone who had a political future," said political observer Dennis Rochford, with all the expectations he would be a favorite for governor or other statewide office, he said. "And Freebery was seen as a strong leader. That is certainly not the case today."

Most called it a draw.

Filed in May 2004, the case started as a sprawling criminal indictment of two of the most powerful political figures in New Castle County, brought by one of the state's most revered prosecutors. Former police chief Gordon had swept to an easy re-election in 2000 without a Republican opponent, and Connolly was known as the prosecutor who won a conviction against millionaire Tom Capano for the murder of Anne Marie Fahey, even though her body was never found.

Big charges, small pleas

The indictment painted a picture of an abusive and corrupt county government that forced employees to work political phone banks in the basement of Freebery's home while still being paid by the taxpayers and police officers being pulled off investigations to hand out campaign fliers. The most serious charge alleged that Freebery accepted a $2.3 million "loan" from du Pont heiress and developer Lisa Dean Moseley at a time when Moseley was seeking approval for her Fieldstone golf course project.

All the allegations in the original indictment would later be dropped in a plea deal on the eve of a June trial. Freebery admitted to failing to disclose the $2.3 million loan on mortgage papers – a felony – and Gordon admitted only to two misdemeanor counts of failing to provide the government with proper tax information on employees who were working on political campaigns while they were being paid by taxpayers.

Neither served a minute in prison and both were assessed nominal fines of $250 last week.

"I'd have to say nobody won in this case, not that justice is ever measured by winning or losing," said former prosecutor Kathleen Jennings. "Tom and Sherry got convicted – that is certainly not good for them. Colm clearly didn't get the result he intended."

Then there's the public's perception of the case.

"It should have gone to court so all sides could have been heard," Letang said. "The net result is it leaves the public with a lot of questions."

Joseph A. Pika, a political science professor at the University of Delaware, said the case has the quality of an unfinished book, saying, "It leaves you hanging. There is an incompleteness about the story."

Outside the courthouse last week, Freebery attorney William W. Taylor III quipped the case was an example of the lopsided indictment process, where a prosecutor could secure charges against a "ham sandwich."

"That is what happened here," he said, adding that once a judge looked at the case, it began to fall apart.

He said it was an abuse of prosecutorial power. Freebery called it politics, with Connolly, a Republican, targeting her and Gordon because they were prominent Democrats, a notion Connolly called "silly."

But even critics of Connolly's decision not to go to trial said there was never a "witch hunt."

"There was no game playing that I know of by [prosecutors]," Letang said. He also dismissed the notion that the government made excuses just before trial in order to bail on an empty case.

"I think the government was pretty convinced they had evidence that could go to a jury," he said. Prosecutors just believed that because of the judge's rulings, they would not have been able to get that evidence to a jury, he said.

Many pointed to Senior District Judge John P. Fullam – not Connolly – as the culprit for the unsatisfactory ending.

Judge called 'clearly biased'

Lynda Maloney and Maria Rendina, sisters who sued Gordon accusing him of retaliating against them for cooperating with Connolly's investigation, laid all blame on Fullam. "We had a clearly biased judge who twisted the American justice system and decided to be [a] jury," they said in a joint statement.

Philadelphia-based judge Fullam ended up in the case when Delaware-based District Judge Kent A. Jordan stepped aside in early 2005 under pressure from Freebery's attorneys. From the beginning, Fullam expressed skepticism about the government's case and its "serious-sounding charges."

"We were dealing with a judge who was unfamiliar with the Delaware political scene," attorney David Finger said.

On two occasions, Fullam made rulings prosecutors said crippled their case.

In July 2005, Fullam tossed out three of the five criminal schemes alleged in the indictment, including the most serious charges related to Freebery's multi-million-dollar loan.

But the appeals court overruled Fullam and restored the corruption charge, describing Fullam's logic as "difficult to understand."

The second time was just before Freebery's June trial – when Fullam ruled the government could not present evidence that Freebery and Gordon created "an atmosphere of fear and intimidation" in county government.

Connolly said this was key to prosecutors' showing a jury how the pair were able to run county government as a criminal enterprise for their own personal and political benefit. So he decided to end the case in plea offers.

Attorney Joe Hurley, who represented executive assistant Janet Smith, a minor player in the investigation, said it wasn't a case of Connolly "chickening out" but instead was "a reality check. I think he realized ... it was time to move on." He said he believed the fatal blow to the government came when Connolly tried and failed to get Fullam removed from the case, turning an already bad relationship between prosecutors and the judge worse.

"I see no shame in what Colm did or what he got," Finger said. "A great hitter is not faulted, nor should he be faulted, because he doesn't get a home run every time."

In the end, Pika said, the point of the case had to do with the pursuit of good government.

"I think there were a whole range of excesses that were revealed," he said. "I do think county government has changed for the better and I think that is partly a product of the revelations through this court case."

Contact Sean O'Sullivan at 324-2777 or sosullivan@delawareonline.com.

Copyright (c) The News Journal. All rights reserved. Reproduced with the permission of Gannett Co., Inc. by NewsBank, inc.