## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

JOSEPH J. FREEBERY,                  :
                                     :
        Plaintiff,                   :
                                     :
    v.                               :        C.A. No. 05-748 PSD
                                     :
CHRISTOPHER COONS, in his official   :        JURY TRIAL DEMANDED
capacity as County Executive of New  :
Castle County and in his individual capacity; :
and NEW CASTLE COUNTY, a municipal   :
corporation; and JOHN DOES 1-25      :
                                     :
        Defendants.                  :


## DEFENDANTS' OPENING BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT


　　　/s/ Richard R. Wier, Jr.
Richard R. Wier, Jr. (#716)
Michele D. Allen (#4359)
Richard R. Wier, Jr., P.A.
Two Mill Road
Suite 200
Wilmington, DE 19806
(302) 888-3222
*Attorney for Defendants*

Dated: May 5, 2008

**TABLE OF CONTENTS**

I.    NATURE AND STAGE OF PROCEEDINGS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

II.   SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

III.  STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

      A.   Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3
      B.   History of New Castle County Policy Making Positions . . . . . . . . . . . . . . . . . . . . .  3
      C.   2004 Election For New Castle County Executive . . . . . . . . . . . . . . . . . . . . . . . . . . .  4
      D.   House Bill 29 Passed Nearly Unanimously . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5
      E.   Defendants Did Not Terminate Plaintiff For Any Unlawful Reasons . . . . . . . . . . . . . .  6
      F.   Plaintiff Cannot Provide Any Evidence That He Was Terminated By
           Defendants Because of His Alleged Association and Support Of His Sister . . . . . . . . . .  8

IV.   ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

      A.   Summary Judgment Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9
      B.   The Claims Against Coons In His Official Capacity Should Be Dismissed . . . . . . . . . .  10
      C.   Plaintiff Did Not Have a Constitutionally Protected Property Right . . . . . . . . . . . . . . .  10
           1.   The *Noerr-Pennington* Doctrine Bars Claims Relating to Lobbying
                The General Assembly . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12
           2.   Coons Is Protected by Qualified and Legislative Immunity . . . . . . . . . . . . . . .  13

      D.   Defendants Did Not Violate Plaintiff's Right to Political Association . . . . . . . . . . . . .  15
           1.   Political Affiliation as a Job Requirement . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16
           2.   Even Assuming That Plaintiff Has Engaged In Protected Activity, He
                Cannot Show That It Was A Motivating Factor In Any Alleged Retaliation . . .  18
           3.   Defendants Would Have Taken The Same Action Absent Plaintiff's
                Allegedly Protected Conduct . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18
           4.   Coons Is Entitled to Qualified Immunity . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

      E.   Plaintiff's Right To Intimate Association Was Not Violated . . . . . . . . . . . . . . . . . . . . .  19

      F.   Plaintiff's Free Speech Was Not Violated . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

           1.   Plaintiff Did Not Engage In Protected Activity . . . . . . . . . . . . . . . . . . . . . . . . .  22
           2.   Even Assuming Plaintiff's Speech Addressed A Matter
                of Public Concern,  He Cannot Show That It Was A Motivating
                Factor In Any Alleged Retaliation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23
           3.   Defendants Would Have Taken The Same Action Absent Plaintiff's
                Allegedly Protected Conduct . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23

      G.   Plaintiff's Liberty Interests Were Not Violated . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24
           1.   The Alleged Stigmatizing Statements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24
                a.   Democratic debate between Coons, Sherry Freebery and Richard
                     Korn prior to Coons Administration in January 2005 . . . . . . . .  24
                b.   Campaign Statements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25
                c.   WDEL Radio Show . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  26
                d.   New Journal Article . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  26

2.     Liberty interests that warrant protection under the
Fourteenth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

3.     Plaintiff's claims for deprivation of a liberty interest in his reputation
must fail . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

a.     Plaintiff cannot prove stigma . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

1.     The statements made by Coons are not stigmatizing . . 28
i.     Democratic debate . . . . . . . . . . . . . . . . . . . . . . 29
ii.     Campaign Statements . . . . . . . . . . . . . . . . . . . 30
iii.     WDEL Radio Show . . . . . . . . . . . . . . . . . . . 30
iv.     News Journal Article . . . . . . . . . . . . . . . . . . . 31

2.     Plaintiff is unable to prove the falsity of the statements . . . . . . . . . . . . . . . . . . . 31

3.     Plaintiff cannot prove publication of Coons' alleged statement about
wanting to run an administration free of corruption . . . . . . . . . . . . . . . . . . . . . . . 32

4.     The statements at issue did not impose a stigma that foreclosed plaintiff's
freedom to take advantage of other employment opportunities . . . . . . . . . . . . . 32

b.     Plaintiff failed to request a name clearing hearing . . . . . . . . . . . . . . . . . 33

H.     Plaintiff's Right To Vote Was Not Violated . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

I.     Plaintiff Did Not Have An Express or Implied Contract For Employment . . . . . . . . . . . 34

J.     Defendants Did Not Breach The Covenant of Good Faith and Fair Dealing . . . . . . . . . . 35

K.     Defendants Did Not Defame Plaintiff . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

L.     Plaintiff Has Failed To Provide Any Evidence Of A Civil Conspiracy . . . . . . . . . . . . . . 38

M.     Plaintiff Does Not Have A Civil Cause Of Action Under New Castle County
Code §26.01.018 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

N.     The Section 1983 Claim Against The County Must Be Dismissed As It Seeks
To Impose Liability Upon The County By Virtue Of *Respondeat Superior* . . . . . . . . . . 39

V.     Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

## Table of Authorities

Abbot v. Gordon and Freebery, C.A. No. 04C-09-055 PLM
    Memorandum Opinion dated March 27, 2008 (Del. Supr.) . . . . . . . . . . . . . . . . . . . . . . . 13, 38
Ambrose v. Township of Robinson, Pa., 303 F.3d 488, 493 (3d. Cir 2002) . . . . . . . . . . . . . . . 23
Anderson v. Celebrezze, 460 U.S. 780 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
Anderson v. Creighton, 483 U.S. 635 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
Armour v. County of Beaver, Pa., 271 F.3d 417, 429 (3rd Cir.2001) . . . . . . . . . . . . . . . . . . . . . 16
Baladassare v. State of New Jersey, 250 F.3d 188, 195 (3d Cir.2001) . . . . . . . . . . . . . . . . . 21, 22
Bi-Metallic Investment Co. v. State Board of Equalization of Colorado,
    239 U.S. 441, 445 (1915) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
Bishop v. Wood, 426 U.S. 341, 344 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 27
Blickling v. Kent General Hosp., Inc., 872 F. Supp. 1299 (D.Del. 1994) . . . . . . . . . . . . . . . . . . . 9
Board of Regents v. Roth, 408 U.S. 564, 577 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10,11, 28
Board of Directors of Rotary International v. Rotary Club of Duarte,
    481 U.S. 537 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
Board of Cty Commr's of Bryan County v. Brown, 520 U.S. 397, 405 (1997) . . . . . . . . . . . . . . 39
Bogan v. Scott-Harris, 523 U.S. 44, 49 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
Bowman v. Twp. of Pennsauken, 709 F.Supp. 1329, 1339 (D.N.J. 1989) . . . . . . . . . . . . . . . . . 10
Boy Scouts of Am. v. Dale, 530 U.S. 640, 648 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
Branti v. Finkel, 445 U.S. 507 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 17
Brooks-McCollum v. Shareef,
    2006 WL 3587246 *3 (Del. Super. Nov. 1, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38
Brown v. Trench, 787 F.2d 167, 169 (3d Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
Brownsville Golden Age Nursing Home, Inc. v. Wells,
    839 F.2d 155 (3r Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
Burns v. County of Cambria, 764 F. Supp. 1031, 1040 W.D. Pa. 1991) . . . . . . . . . . . . . . . . . . 11
Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
Codd v. Velger, 429 U.S. 624, 628 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
Connick v. Myers, 461 U.S. 138 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22
Couden v. Duffey, 446 F.3d 483 (3d. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
County Floors, Inc. v. Partnership Composed of Gepner and Ford
    930 F.2d 1056, 1061 (3rd Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
Curinga v. City of Clairton, 357 F.3d 305, 311 (3d. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . 17, 19
Czurlanis v. Albanes, 721 F.2d 98, 103 (3d Cir.1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
Dale v. Town of Elsmere, Del. Supr., 702 A.2d 1219, 1223 (1997) . . . . . . . . . . . . . . . . . . . . . . 38
DeRamus v. Redman, 1986 WL 13089 *2-3 (Del.Super.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
Downs v. Jacobs, 272 A.2d 706 (Del. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
Dungan v. Slater, 252 F.3d 670, 676 (3d. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
E.I. duPont de Nemours & Co. v. Pressman
    Del.Supr., 679 A.2d 436,441,444 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34, 36
Eastern Railroad Presidents Conference v. Noerr Motor Freight Inc.
    365 U.S. 127 (1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
Elmore v. Cleary, 399 F.3d 279, 282 (3rd Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
Elrod v. Burns, 427 U.S. 347 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16, 17
Ersek v. Township of Springfield, 102 F.3d 79, 83, n. 5 (3d. Cir. 1997) . . . . . . . . . . . . . . . . 27, 28
Fiat Motors of North America, Inc. v. Mayor and Council of the City of Wilmington,

498 A.2d 1062 (Del. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

Foster v. Shropshire, 375 A.2d 458, 461 (Del. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

Freeman v. McKellar, 795 F.Supp. 733, 739 E.D.Pa. 1992) . . . . . . . . . . . . . . . . . . . . . . . 28

Goodman v. Pennsylvania Turnpike Com'n, 293 F.3d 655,663 (3d Cir. 2002) . . . . . . . . . . . . 15

Graham v. City of Philadelphia, 402 F.3d, 139, 142 (3d Cir. 2005) . . . . . . . . . . . . . . . . . . 27

Greidinger v. Davis, 988 F.2d 1344 (4ᵗʰ Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Gunzl v. Spayd, 1995 WL 160352 (Del. Super. Mar. 28, 1995) . . . . . . . . . . . . . . . . . . . . . 38

Haney v. Laub, Del. Super., 312 A.2d 330, 332 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . 35

Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Heideck v. Kent General Hospital, Inc.,
    Del.Supr., 446 A.2d 1095 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

Hicks v. Mays, 1991 WL 113595 (Del. Super. June 7, 1991) . . . . . . . . . . . . . . . . . . . . . . 38

Hill v. Borough of Kutztown, 455 F.3d 225, 236 (3d. Cir. 2006) . . . . . . . . . . . . . . . . . . 27, 28

Holder v. City of Allentown, 987 F.2d 188, 195 (3d Cir.1993) . . . . . . . . . . . . . . . . . . . 21, 22

In Re Transamerica Airlines, Inc.
    2006 WL 587846 at *6 (Del. Ch. Feb. 28, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . 38

Industrial America, Inc. v. Fulton Indus., Inc.,
    Del.Supr., 285 A.2d 412, 415 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Kaluczky v. City of White Plains, 57 F.3d 202, 208 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . 17

Keddie v. Pennsylvania State University, 412 F. Supp. 1264, 1272 (M.D.Pa. 1976) . . . . . . . . . . 11

Kentucky v. Graham, 473 U.S. 159, 165 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Latessa v. New Jersey Racing Commission, 113 F.3d 1313, 1318 (3d Cir. 1997) . . . . . . . . . . . 10

Leeds v. First Allied Connecticut Corp.,
    Del. Ch. 521 A.2d 1095, 1101-02 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Lindsey v. M.A. Zeccola & Sons, Inc.,
    3d Cir., 26 F.3d 1236, 1239 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Lyng v. International Union, et al.; 485 U.S. 360, 365 (1988) . . . . . . . . . . . . . . . . . . . . . . 20

Manistee Town Ctr. v. City of Glendale, 227 f.3d 1090, 1093 9ᵗʰ Cir. 2000) . . . . . . . . . . . . . 13

Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp.
    475 U.S. 574, 587-88 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Maule v. Susquehanna, 2007 WL 2844587, *12-13 (E.D.Pa. 2007) . . . . . . . . . . . . . . . . 28, 31, 32

McKinley v. City of Eloy, 705 F.2d 1110, 1114 (9ᵗʰ Cir.1983) . . . . . . . . . . . . . . . . . . . 22, 23

McLaughlin v. Watson, 271 F.3d 566, 571 (3d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . 14

Merrill v. Crothall-American, Inc.,
    Del. Supr., 606 A.2d 96, 101-03 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

Monell v. Depart. of Social Services of the City of New York,
    436 U.S. 658, 690 n. 55 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 39

Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,
    429 U.S. 274, 287 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 19, 20, 23

Muir v. County of Sussex County, 393 F. Supp. 915 D.Del. 1975) . . . . . . . . . . . . . . . . . . . 15

Norse Petroleum A/S v. LVO International, Inc. Del.Super.,
    389 A.2d 771, 773 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

O'Connell v. County of Northampton, 79 F. Supp. 2d 529, 536 (E.D.Pa. 1999) . . . . . . . . . . . . 28

Packett v. Stenberg, 969 F.2d 721 (8th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Paul v. Davis, 424 U.S. 693, 708-709 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Peters v. Del. River Port Auth., 16 F.3d 1346, 1353 (3d Cir. 1994) . . . . . . . . . . . . . . . . . . 15

Pickering v. Board of Education, 391 U.S. 563 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Pi Lamba Fraternity, Inc. v. Univ. of Pittsburgh, 229 F.3d 435, 443 (3d Cir. 2000) . . . . . . . . . 19

Pulchaski v. School District of Springfield,
    161 F. Supp. 2d 395, 406 (E.D. Pa. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 28

Read v. Carpenter, 1995 WL 945544m *2 (Del, Super.) . . . . . . . . . . . . . . . . . . . . . . . . . 37

Roberts v. U.S. Jaycees, 468 U.S. 609, 622 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20
Robertson v. Fiore, 62 F.3d 596, 601 (3d Cir. 995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 16, 17
Rogin v. Bensalem Twp. 616 F.2d 680, 693 (3d Cir. 190) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
San Antonio Independent School Dist. v. Rodriguez, 411 U.S. 1 (1973) . . . . . . . . . . . . . . . . . . . . . . 33
Saucier v. Katz, 533 U.S. 194 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14
Schlichter v. Limerick Twp., 2005 WL 984197, *8 (E.D.Pa.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 28
Schneck v. Saucon Valley Sch. Dist., 340 F. Supp. 2d 558, 568 (E.D.Pa, 2004) . . . . . . . . . . . . . . 18, 23
Schueler v. Martin, 674 A.2d 882 (Del Super. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
Seigert v. Gilley, 500 U.S. 226, 233 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 30
Shaw v. Hunt, 517 U.S. 899 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
Stephens v. Kerrigan, 122 F.3d 171, 176 (3d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
Sykes v. City of Gentry, 114 F.3d 829 (8th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
Thomas v. Hammonton, 351 F.3d, 108, 113 (3d Cir. 203) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
United Mine Workers v. Pennington, 381 U.S. 657 (1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
Waters v. Churchill, 511 U.S. 661, 668 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
Williams v. City of Baton Rouge, 909 F.2d 151, 153 n.4 (6th Cir 1990) . . . . . . . . . . . . . . . . . . . . . . 17
Wojcik v. Massachusetts State Lottery Commission,
    300 F.3d 92, 103 (1st Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
Zemenco Inc. v. Developers Diversified Realty Corp.,
    No. Civ. A. 03-175, 2005 WL 2545303 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13


OTHER CITATIONS

9 Del.C. §1101 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
9 Del.C. §1116 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
9 Del.C. §1120 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 12
9 Del.C. §1341 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 17
10 Del.C. §4010 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36, 37
10 Del.C. §4011 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37, 38
10 Del.C. §4012 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36, 37
10 Del.C. §8119 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
42 U.S.C. §1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 10, 29, 39
Fed.R.Civ.P. 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
New Castle County Code §26.01.018 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

## I.     NATURE AND STAGE OF PROCEEDINGS

This case alleges various claims under 42 U.S.C. § 1983 and Delaware state law. Plaintiff, Joseph J. Freebery, filed this claim on October 26, 2005, alleging violations of his First, Fifth, Ninth and Fourteenth Amendment rights and state law claims of breach of contract and breach of the covenant of good faith and fair dealing. Plaintiff alleges in his Complaint that he was wrongfully terminated from his position of General Manager of the Department of Special Services for New Castle County, and that his wrongful termination violated both state and federal Law. In summary, Plaintiff alleges that he had a contract for employment, which gave him a vested property right and that he was denied his property right without due process of law. Plaintiff further alleges that his termination was a retaliatory action taken by Defendants because of his alleged political association and alleged public speech in support of his sister, Sherry L. Freebery.

Defendants submit that Plaintiff's allegations are wholly unsupported. Through discovery it has been made clear that there is no factual basis for Plaintiff's claims. County Executive Christopher Coons was looking for proactive policy-making managers who would step up and identify problems and come up with solutions. After careful evaluation, it was determined that Plaintiff was not performing the necessary tasks required for his high ranking policy-making position and therefore was terminated. There is no evidence which supports Plaintiff's allegations that he was terminated for anything other than lawful reasons. Moreover, Plaintiff did not have a contract or a property right in a policy making position. Therefore, Defendants move this Court to enter summary judgment in their favor against Plaintiff on all counts of the Complaint.

## II.    SUMMARY OF THE ARGUMENT

A.    The Claims Against Coons In His Official Capacity Should Be Dismissed.

B.    Plaintiff Did Not Have A Constitutionally Protected Property Right.

C.    Defendants Did Not Violate Plaintiff's Right To Political Association.

D.    Plaintiff's Right To Intimate Association Was Not Violated.

E.    Plaintiff's Right To Free Speech Was Not Violated.

F.    Plaintiff's Liberty Interests Were Not Violated.

G.    Plaintiff's Right To Vote Was Not Violated.

H.    Plaintiff Did Not Have An Express or Implied Contract For Employment.

I.    Defendants Did Not Breach The Covenant of Good Faith and Fair Dealing

J.    Defendants Did Not Defame Plaintiff.

K.    Plaintiff Has Failed To Provide Any Evidence of A Civil Conspiracy.

L.    Plaintiff Does Not Have A Civil Cause of Action Under New Castle County Code §26.01.018.

M.    Plaintiff Has Failed To Properly Allege A Violation of Section 1983 By The County.

N.    Defendant Coons Is Entitled To Qualified Immunity On All Counts Against Him Individually.

### III.     STATEMENT OF FACTS

#### A.     Parties:

Joseph J. Freebery ("Plaintiff"), began his employment with New Castle County ("the County") in 1984 as the Superintendent of Parks for New Castle County. *Complaint* ¶ 13. In 1997, Plaintiff was promoted to the position of General Manager ("GM")of the Department of Special Services. *Id.* at ¶ 32. The extensive duties and responsibilities of the GM of Special Services are set by state law and include, but are not limited to, the following: managing and developing plans for public facilities and infrastructure; preparing designs and specifications for all types of public facilities and infrastructures; managing, maintaining and operating public facilities, sewers, drainage systems, parks, managing and maintaining the County Fleet and operating central garages for the storage and maintenance of equipment. 9 *Del. C.* §1341.[1]

Christopher Coons (" Coons") is the County Executive of New Castle County.  He was sworn in as County Executive of the County and his new administration began on January 4, 2005.  His duties are prescribed by statute, 9 *Del. C.* §1116, as well as by various provisions of the County Code.

New Castle County is a political subdivision of the State of Delaware and its powers of are enumerated by statute, 9 *Del. C.* § 1101.

#### B.     History of New Castle County Policy Making Positions

The County Executive is the chief executive officer of the County and is "responsible to the people of the County for the executive and administrative work of the County." Act of May 26, 1965, ch. 85, §1111(a), 55 (Part I) Del. Laws 259.  Title 9 Section 1120(b) of the Delaware Code, originally gave authority to the County Executive to appoint, with the advice and consent of County Council, the Directors of the County Departments.   Act of May 26, 1965, ch. 85, §1120, 55 (Part I) Del. Laws 263.  In 1998, the state code was amended, ten County departments were merged into five departments and the new position of General Manager was created.  Complaint. ¶ 20.   The General Manager positions were created as

---

[1] Copies of the relevant provisions of the Delaware Code are attached hereto at Appendix 1.

classified positions within the County merit system and were to take the place of the Directors. *Id.* at 19, 21.

On June 25, 2003, House Bill 286 ("H.B.286"), passed in the House of Representatives but did not reach the Senate floor.[2]  HB 286 was an act that would have required the Directors of each County department to be appointed by the County Executive subject to the advice and consent of County Council. Coons actively supported and lobbied for H.B. 286.  Plaintiff admits that he was aware of this legislation and realized that the law could be changed to have the general managers serve at the pleasure of the County Executive. *Joseph Freebery Deposition* ("*J. Freebery Depo.*") at 54, 55[3].  Plaintiff in fact also went to Dover and lobbied in opposition to H.B. 286.  *Id.* at 62-63.  In 2003, it was clear to the general public, Plaintiff and the other general managers, that Coons supported the right of the County Executive, whomever it was, to be able to choose his own leadership/cabinet. *Christopher Coons Deposition* ("*Coons Depo.*") at 44.[4]

**C.    2004 Election For New Castle County Executive**

Prior to becoming County Executive, Coons served as County Council President for four years, from 2001 to 2005. *Coons Depo.* at 22.  While serving as County Council President, Coons announced that he would be running for New Castle County Executive.   In the New Castle County Democratic Primary, Coons opposed Sherry L. Freebery, the County's Chief Administrative Officer, and Richard Korn.  It is undisputed that during the primary election, Sherry L. Freebery was under Federal  investigation for corruption.  Coons was aware that Plaintiff modestly supported his opponent Sherry Freebery, but further stated that there was never any unpleasant interactions with Plaintiff.  *Id.* at 144-145.  Plaintiff also admits that he believed that he had a friendly relationship with Coons which continued through the election. *J. Freebery Depo.* at 85.  In  September 2004, Coons was elected by a large margin as the Democratic

---

[2] The of Legislative History of H.B. 286 is attached hereto at Appendix 2.
[3] Deposition excepts from Joseph Freebery's Deposition are attached hereto at Appendix 3.
[4] Deposition excerpts from Christopher Coons' are attached hereto at Appendix 4.

nominee for the upcoming County Executive race. In November 2004, Coons won the general election.

### D.     House Bill 29 Passed Nearly Unanimously.

On January 4, 2005, Coons took office as County Executive. At the time he took office, he was unable to appoint any department heads due to the fact that the law had previously been changed to place the General Managers in the merit system. Coons believed it was imperative to be able to have his own leadership team to assist him in running the government he was elected to lead. *Senate Floor Debate regarding H.B. 29* .[5] In fact, there were several members of the General Assembly who agreed and fully supported the right of the County Executive to be able to choose his own leadership/cabinet members.[6]

At the time H.B. 29 was introduced, only one of the current general managers had submitted their resignation letters.[7] On January 25, 2005, H.B. 29 was introduced in the House of Representatives[8]. The necessary rules were suspended in the House, without objection, and the bill passed 39 to 0 with two not voting. Appendix 6. On January 26, 2005, H.B. 29 was laid on the table in the Senate, and on January 27, 2005 it was lifted from the Senate table and all necessary rules were suspended, again without objection. *Id.* On January 27, 2005, Coons testified in support of H.B. 29 on the Senate floor and stated that the legislation would "enable [him] and subsequent County Executives to ensure that they have a cabinet that is aligned with their values and their policy vision, as does the Governor, the Mayor and the President and the Executive heads of other governments throughout the Country." *Appendix 5.* Coons further testified that he brought people in from outside County government to do a fresh analysis of the general managers because he had a lot of experience with the current general managers during his four years as President of County Council. *Id.* Additionally, Coons stated that each of the current general managers would be given a chance to work with him to see if they could find a common agenda and approach towards running County government. *Id.* H.B. 29 passed the Senate 20 to 0, with one not voting. January 27, 2005 was the last

---

[5] Excerpts from the Debate on H.B. 29 on the Senate floor on January 27, 2005 are attached hereto at Appendix 5.
[6] H.B. 29 vote is attached hereto at Appendix 6.
[7] Retirement Letters of County General Managers are attached hereto at Appendix 7.
[8] Bill Tracking Document for H.B. 29 is attached hereto at Appendix 8.

day of session for the General Assembly before it adjourned until March 15, 2005.[9] Due to the

overwhelming support for the legislation, it was unnecessary and impractical to hold H.B. 29 until March

15, 2005. The Governor signed H.B. 29 on February 9, 2005. *Appendix 8.*

Shortly after the passage of H.B. 29, Coons requested and received an opinion from the County

Law Department to determine whether or not there needed to be any action by County Council to

implement H.B. 29. Then Acting County Attorney, Dennis Siebold, by way of legal memorandum,

informed Coons that no action by County Council would be necessary to implement the mandate of H.B.

29.[10] He further concluded and advised that the provisions of H.B. 29 were automatic and, upon its

enactment into law, the incumbent General Managers would, by operation of State law, automatically

become unclassified service employees serving at the pleasure of the County Executive. *Id.* All of the

current general managers at the time were copied on the memorandum.

### E.     Defendants Did Not Terminate Plaintiff For Any Unlawful Reasons

Coons chose David Singleton ("Singleton") to serve as his Chief Administrative Officer ("CAO").

Singleton was a graduate of Swarthmore College and had decades of senior leadership experience in State

Government as Secretary of Finance, City Government as the Chief of Staff, and as the head of J.P.

Morgan Corporate global real estate. *David Singleton Deposition* ("Singleton Depo.") at 16-17.[11]

Additionally, Singleton was chosen for the position of CAO because he had virtually no involvement with

Coons' campaign and no prior history with the County. *Singleton Depo.* at 15-16; *Coons Depo.* at 139.

Coons had prior experience with and had formed impressions of the incumbent general managers due to his

position on County Council. *Id.* Therefore, he chose Singleton to ensure that all of the general managers

would be given a fair shot at employment with his administration. *Id.*

During Singleton's evaluation of the general managers it became apparent to Singleton that Plaintiff

---

[9] Legislative Calendar for General Assembly in 2005 is attached hereto at Appendix 9.

[10] Legal Memorandum dated January 27, 2005 regarding H.B. 29 is attached hereto at Appendix 10.

[11] David Singleton Deposition Excerpts are attached hereto as Appendix 11.

was not suited for the position of general manager. *Singleton Depo.* at 46.  Coons was looking for general

managers who were proactive, who would recognize problems and who would bring them to the forefront

with solutions. *Coons Depo.* at 136.  Moreover, Coons wanted general managers who were assertive team

players who would address and resolve outstanding issues. *Id.*  Plaintiff however, was of the mind set of

"tell us what to do and we'll do it."*Id.* at 233-234.  Plaintiff was very slow to respond to requests for

information, for recommendations, and for explanations, which clearly did not enhance the stature of the

administration. *Singleton Depo.* at 61.  Another incident in which Plaintiff's actions reflected poorly on the

County was his involvement with the Police Athletic League, which receives a significant subsidy from the

County. *Id.* at 62.  Plaintiff, while serving as a board member, had not recused himself during the hiring

process of his wife and did not recuse himself from voting on her vacation benefits. *Id.* at 72.  Singleton

believed that Plaintiff's actions were highly inappropriate and therefore he requested several times that

Plaintiff resign from the Board. *Id.* Plaintiff, however, did not resign. *Id.*  Singleton specifically recalled an

incident where Plaintiff was very slow in addressing a discipline issue with one of his employees. *Id.* at 66-

68.  When the issue was finally resolved, it was done without any input from the Department of Human

Resources. *Id.* at 66-68.  Ultimately, based on Plaintiff's poor performance and management style,

Singleton  recommended to Coons that Plaintiff be terminated due to his nonperformance,

nonresponsiveness and failure to follow through on a lot of things ranging from small to large. *Coons Depo.*

at 136; *David Singleton Depo.* at 46, 61.

Coons made the decision to terminate Plaintiff based on the recommendations of Singleton, his

prior observations of Plaintiff while he was on County Council and most importantly because Plaintiff did

not fit with what he was looking for in the County's senior team. *Coons Depo.* at 136.  Additionally, Coons

had been approached by two senior managers in Plaintiff's department who expressed serious concerns

regarding Plaintiff's ability to run the department. *Id.* at 155, 157-159, 182  These same concerns were also

expressed by Coons' transition team. *Id.* at *189-97*  Plaintiff was not showing a willingness to step up and

identify what the issues were in his department and therefore, he proposed no solutions. *Id.* at 167.  In

contrast, Charles Baker, another incumbent general manager who remains in his position with the County to date, submitted a policy memo which showed a thorough grasp of the issues in his department and continues to actively engage in tackling those challenges. *Id.* at 166, 236,237.

Unfortunately, after several months and attempts to work with Plaintiff, it became abundantly clear that he could not continue as the General Manager of Special Services. Plaintiff was unresponsive, he could not perform various tasks and he did not fit with the proactive engaged team approach Coons was seeking. *Id.* at 237-238. Therefore, on April 6, 2005, Plaintiff was brought to the Executive Office and was given three options: he could either resign, retire or be terminated. *Id.* at 136. Plaintiff did not want to resign or retire and therefore he was terminated. *Id.* at 196. Plaintiff did not request any type of hearing in connection with his termination and did not grieve on his termination because he admits he was not entitled to one as an at-will employee. *J. Freebery Depo.* at 309. Instead, Plaintiff filed for retirement.

**F.      Plaintiff Cannot Provide Any Evidence That He Was Terminated By Defendants Because of His Alleged Association and Support Of His Sister**

Plaintiff other than his mere speculation, cannot provide any evidence that he was terminated for any other reason than those provided by Coons. Plaintiff admits that there were no threats made that he would be fired after the passage of H.B. 29. *J. Freebery Depo.* at 122. In fact, Coons told Plaintiff and all of the general managers in June 2003 after H.B. 286 was defeated that even if the bill passed, that Plaintiff and the others would remain the general managers of their respective departments. *Id.* at 231. These are the same assurances that Coons gave to the general managers after the passage of H.B. 29. All of the incumbent general managers were told they would be evaluated to determine if their employment would be continued. *Id.* at 102. Plaintiff admits that Coons never said anything to indicate that he harbored any kind of ill will towards Plaintiff because of his relationship with Sherry Freebery. *Id.* at 89. After the passage of H.B. 29, Plaintiff admits that he continued to have a friendly relationship with Coons and Coons continued to approach him at functions and speak with him. *Id.* at 90-91. There is no evidence throughout the entire record that supports Plaintiff's allegation that he was wrongfully terminated for his association with and/or

8

support of his sister. Plaintiff may not simply rely on the fact that his sister was an opponent of Coons to support his claims. There must be more than mere speculation to overcome summary judgment.

## IV.    ARGUMENT

### A.    Summary Judgment Standard

Summary judgment should be entered for the County and Coons because all material facts have been presented, there is no genuine issue as to any material fact, and they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

On a motion for summary judgment, "the moving party bears the initial burden of showing – that is, point out to the court that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "The moving denial is not required to negate the non-movant's claim, but instead must only point out the lack of evidence supporting the non-movant's claim." *County Floors, Inc. v. Partnership Composed of Gepner and Ford*, 930 F.2d 1056, 1061 (3d Cir. 1991); *Blickling v. Kent General Hosp., Inc.*, 872 F. Supp. 1299 (D.Del. 1994).

Once the moving party meets their burden, the non-moving party "may not rest upon the mere allegations or denials of his pleading." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). The non-moving party instead "must set forth specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587. "The mere existence of some evidence in support of the nonmoving party will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonable to find for the non-moving party on that factual issue." *Anderson*, 477 U.S. at 249. Factual disputes that are irrelevant or unnecessary will not be counted. *Id.* at 248. The mere existence of a scintilla of evidence in support of the non-moving party will not prevent the grant of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the non-moving party on that issue. *Id.* at 249. Mere speculation or conjecture by the non-moving party clearly cannot preclude the granting of summary judgment. For the reasons set forth herein, when viewed in the light most favorable to

the Plaintiff, the undisputed facts establish that New Castle County and Coons are entitled to summary judgment.

**B.      The Claims Against Coons In His Official Capacity Should Be Dismissed**

As an initial matter, Plaintiff has brought suit against Coons in his individual and official capacities. The official capacity claims against him are duplicative of the municipal liability claims asserted against the County, as suits against government officials in their official capacities are equivalent to suits against the government entity itself. *Monell v. Dept. of Social Services of the City of New York*, 436 U.S. 658, 690 n. 55 (1978). *See also Kentucky v. Graham*, 473 U.S. 159, 165 (1985)("official capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent."). Therefore, the allegations against Defendant Coons in his official capacity should be dismissed.

**C.      Plaintiff Did Not Have a Constitutionally Protected Property Right.**

In order to establish a claim under § 1983 for deprivation of procedural due process, a Plaintiff must establish a property interest protected by the constitution, a deprivation of that interest by the government[12] and lack of process. In order to claim a violation of procedural due process based on employment discharge, a Plaintiff must first establish a property interest in his employment. *Board of Regents v. Roth,* 408 U.S. 564, 577 (1972). "To have a property interest in a job . . . a person must have more than a unilateral expectation of continued employment; rather, [he] must have a legitimate entitlement to such continued employment." *Elmore v. Cleary*, 399 F.3d 279, 282 (3d Cir. 2005) An abstract need, desire or unilateral expectation is not enough. *See Roth,* 408 U.S. at 577; *See also Dungan v. Slater*, 252 F. 3d 670, 676 (3d Cir. 2001)("There is generally not a property interest in continued public employment unless a claimant can demonstrate a legitimate claim of entitlement to it."); *Latessa v. New Jersey Racing Commission*, 113 F.3d 1313, 1318 (3d Cir.1997).

---

[12]Although the language guaranteeing due process is identical in the Fifth and Fourteenth Amendments, the Fifth Amendment applies to actions taken by the federal government, whereas the Fourteenth applies, on its face, to state action. *See Bowman v. Twp. of Pennsauken*, 709 F. Supp. 1329, 1339 (D.N.J. 1989).

A government employee has a constitutionally protected property interest in continued employment when the employee has a legitimate claim of entitlement to the job. *Roth,* 408 U.S. at 577. State law determines if a property interest exists. *Id. See also Bishop v. Wood*, 426 U.S. 341, 344 (1976); *Burns v. County of Cambria*, 764 F.Supp. 1031, 1040 (W.D.Pa. 1991); *Keddie v. Pennsylvania State University*, 412 F.Supp. 1264, 1272 (M.D.Pa.1976). However, a mere expectation that employment will continue does not create a property interest. *Id.*

Therefore, the first determination is whether Plaintiff had a property interest in his employment status as General Manager of Special Services on April 6, 2005. It is undisputed that On April 6, 2005 Plaintiff's position was at-will, and that he was serving at the pleasure of the County Executive. *See* H.B.29; *J. Freebery Depo.* at 309. An at-will employee does not posses a property interest in his continued employment. *Thomas v. Hammonton*, 351 F.3d 108, 113 (3d Cir. 2003)(citing *Robertson v. Fiore*, 62 F.3d 596, 601 (3d Cir. 1995)).

Prior to 1997, County Departments were headed by Directors who served at the pleasure of the County Executive. After 1997, the County Government was restructured by state law and the many County departments were merged after which each department was managed by a General Manager as opposed to a Director. Compl. ¶ 20. On July 1, 1997, Plaintiff was appointed General Manager of the Department Special Services, with direct input from his sister Sherry Freebery. *Sherry Freebery Depo.* at 79[13] Plaintiff erroneously alleges that by accepting this position, he obtained a property interest in continued employment and therefore he could not be removed from his position without due process of law. Complaint ¶ 36, 94. Plaintiff's allegation is without merit. Once H.B. 29 became law, Plaintiff automatically began serving at the pleasure of the County Executive and did not possess a "legitimate claim of entitlement" to his employment. Indeed, Plaintiff admits that he understood that state law could be changed to affect the status of the general managers. *J. Freebery Depo.* at 50, 54. On February 28, 2005,

---

[13] *Sherry Freebery Deposition excerpt* attached hereto as Appendix 12.

all general managers were notified that their positions had been removed from the Merit System and that

they now served at the "pleasure of the County Executive"  Complaint ¶ 72.

Plaintiff alleges that the enactment of H.B. 29 and Coons' support of that bill improperly interfered

with his established constitutional rights. Complaint ¶ 67.  Plaintiff is incorrect on several grounds.  On

February 9, 2005, through the enactment of  H.B. 29, Plaintiff immediately became an at-will employee

along with all the other general managers and served at the pleasure of the County Executive.  The

enactment of H.B. 29 eliminated any previously conferred property interest that Plaintiff may have had at

that time.  The protections afforded by procedural due process do not extend to legislative action.  *Rogin v.

Bensalem Twp.*, 616 F.2d 680, 693 (3d Cir. 1980). In *Bi-Metallic Investment Co. v. State Board of

Equalization of Colorado*, Justice Holmes wrote for an unanimous Court:

> General statutes within the state power are passed that affect the person or property
> of individuals, sometimes to the point of ruin, without giving them a chance to be heard.  Their
> rights are protected in the only way that they can be in a complex society, by their power,
> immediate or remote, over those who make the rule. . . There must be a limit to individual
> argument in such matters if government is to go on.  239 U.S. 441, 445 (1915).

Beginning on January 27, 2005, State law was amended by H.B. 29 and the General Managers

began to serve at the pleasure of the County Executive. *See* H.B.  29; 9 *Del. C.* § 1120.  At that time,

Plaintiff became an at-will employee and served at the pleasure of the County Executive, and had no

property interest in his job.  The state, through the enactment of H.B. 29, eliminated any previous conferred

property interest that Plaintiff may have had.  Therefore, when he was terminated on April 6, 2005, he was

not entitled to due process. *See Sykes v City of Gentry,* 114 F.3d 829 (8th Cir. 1997); and *Packett v.

Stenberg,* 969 F.2d 721 (8th Cir. 1992) ( "The legislature that creates a statutory entitlement (or other

property interest) is not precluded from altering or terminating the entitlement by a later enactment.")

1.        **The *Noerr-Pennington* Doctrine Bars Claims Relating to Lobbying the
          General Assembly**

To the extent that Plaintiff is attempting to allege that Coons is responsible for violating his

constitutional right to due process by lobbying the General Assembly in support of HB 29, Plaintiff's claim is

12

barred by the *Noerr-Pennington* Doctrine. The genesis of the *Noerr-Pennington* Doctrine arises in the cases

of *Eastern Railroad Presidents Conference v. Noerr Motor Freight Inc.,* 365 U.S. 127 (1961) and *United*

*Mine Workers v. Pennington,* 381 U.S. 657 (1965). The doctrine protects Coons' efforts to lobby the

General Assembly to pass HB 29. "Liability cannot be imposed for damage caused by inducing,

administrative or judicial action" *Brownsville Golden Age Nursing Home, Inc. v Wells,* 839 F.2d 155 (3d

Cir. 1988). As a politician, Coons has a right to "intercede, lobby, and generate publicity to advance [his]

constituents' goals, both expressed and perceived." *Abbott v. Gordon and Freebery,* C.A. No. 04C-09-055

PLA Memorandum Opinion dated March 27, 2008 (Del. Supr.) (*citing*) *Manistee Town Ctr. v. City of*

*Glendale,* 227 F.3d 1090, 1093 (9th Cir. 2000)). The doctrine allows "parties [to] petition the government

for official action favorable to their interests without fear of suit, even if the result of the petition, if granted,

might harm the interests of others."[14] Therefore, Coons can not be held liable for any efforts he undertook

to lobby for the passage of H.B. 29.

### 2. Coons Is Protected by Qualified and Legislative Immunity.

Coons is also entitled to qualified immunity in his individual capacity. As the Supreme Court

remarked in one of its early decisions when crafting the doctrine, "[g]overnment officials performing

discretionary functions generally are shielded from liability for civil damages insofar as their conduct *does not*

*violate clearly established statutory or constitutional rights of which a reasonable person would have*

*known."* *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982) (emphasis. added). As more recently enunciated

by the Supreme Court in *Saucier v. Katz,* 533 U.S. 194 (2001), there is a two-part test for determining

whether qualified immunity applies. A court first must determine whether the facts, when taken in a light

most favorable to the plaintiff, are sufficient to show that the individual government defendant violated a

---

[14]    *Zemenco Inc. v. Developers Diversified Realty Corp.,* No. Civ.A. 03-175, 2005 WL 2545303, at
*9 (W.D. Pa. Oct. 7, 2005). It should be noted that the Delaware Constitution provides a similar petitioning
right. *See* Del. Const. Art. I § 16§§ ("citizens have a right in an orderly manner to meet together, and to apply
to persons entrusted with the powers of government, for redress of grievances or other proper purposes, by
petition, remonstrance or address.

constitutional right; second, even if a constitutional violation can be made out, nonetheless qualified immunity still protects the individual defendants unless the right allegedly violated was "clearly established" at the time the defendant acted, such that a reasonable official would have known it. 533 U.S. at 201. "Clearly established rights" in this sense "are those with contours sufficiently clear that a reasonable official would understand that what he is doing violates that right." *McLaughlin v. Watson*, 271 F.3d 566, 571 (3d Cir. 2001).

Assuming *arguendo* that the Court concludes that Plaintiff was terminated in violation of the Fourteenth Amendment or that he had a property interest and was terminated without due process, qualified immunity must still be granted based upon prong two of *Saucier*, which requires that the actions of the individual defendant violate a "<u>clearly established</u>" constitutional right of the Plaintiff. In reviewing such conduct, the Court must look at both the law and the facts and determine not only whether the legal principle was clearly established, but also whether the defendant's conduct, given the particular facts and circumstances, was plainly proscribed by the established principles. *Anderson v. Creighton*, 483 U.S. 635 (1987).

In the instant case, there was insufficient precedent at the time Coons terminated Plaintiff when he served in an at-will position at the pleasure of Coons to put him on notice that his conduct was constitutionally prohibited. At the time Coons terminated Plaintiff, HB 29 carried, as it continues to carry, the presumption of constitutionality. *Downs v. Jacobs*, 272 A.2d 706 (Del. 1970). Coons relied upon the constitutionally of HB 29. "Citizens and public officials have a right to accept the law as it is written until it is repealed or judicially condemned." *Id.* Therefore, it can not be concluded that at the time Coons terminated Plaintiff that he was at all aware that Plaintiff had a property right which entitled him to due process. Moreover, the January 27, 2005 Legal Memorandum from Acting Attorney Siebold to Coons provided that, ". . . the provisions of H.B. 29 are automatic and, upon its enactment into law the incumbent General Managers who are enumerated in the text will, by operation of State law, automatically become unclassified service employees serving at the pleasure of the County Executive. Coons' reasonable reliance

14

on the advice of counsel supports his defense of qualified immunity. *Coons Depo.* at 251, 252. *Muir v. County of Sussex County,* 393 F.Supp. 915 (D.Del 1975)(council members who dismissed employee without hearing in reliance on advice of attorney were entitled to qualified immunity.). Additionally, Coons is entitled to legislative immunity because, "state and regional legislators are entitled to absolute immunity from liability under § 1983 for their legislative activities." *Bogan v. Scott-Harris,* 523 U.S. 44, 49 (1998). Courts have also recognized that "officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions" *Id* at 55. Therefore, Coons is entitled to legislative and qualified immunity for any actions he took in regards to H.B. 29.

### D. <u>Defendants Did Not Violate Plaintiff's Right To Political Association</u>

Plaintiff alleges throughout his Complaint that he publicly and privately supported his sister, Sherry Freebery, as the political opponent of Coons in the Democratic primary for County Executive in 2004 and that he was terminated because of his political support of his sister. Complaint, ¶ 43, 53, 118.

The Supreme Court has rendered two decisions which govern political association cases. In *Elrod v. Burns,* 427 U.S. 347 (1976), and in *Branti v. Finkel,* 445 U.S. 507 (1980), the Supreme Court generally ruled that public agencies may not constitutionally discharge employees based on their political affiliation when those employees' positions are neither policymaking nor advisory. *See also Stephens v. Kerrigan,* 122 F.3d 171, 176 (3d Cir.1997). In applying these decisions, the Court of Appeals has closely followed the Supreme Court's reasoning that an employee's First Amendment right outweighs the government's interest in maintaining a system of political patronage. *Goodman v. Pennsylvania Turnpike Com'n,* 293 F.3d 655, 663 (3d Cir.2002).

However, *Branti* and *Elrod* did carve out an exception for positions that are classified as policymaking or advisory. *Branti,* 445 U.S. at 518; *Elrod,* 427 U.S. at 368; *see also Peters v. Del. River Port Auth.,* 16 F.3d 1346, 1353 (3d Cir.l994) Based upon the general principles, the Third Circuit Court of Appeals "has developed a three-prong test in political patronage discrimination cases." *Goodman,* 293 F.3d at 663. To make out a prima facie case of political discrimination, a plaintiff must first show that he worked for

a public agency in a position that does not require a political affiliation. *See Robertson v. Fiore*, 62 F.3d 596, 599 (3d Cir.1995). Second, he must show that he engaged in constitutionally protected conduct.[15] *Id.* Lastly, plaintiff must prove that his conduct was a substantial or motivating factor in the government's employment decision. Once the plaintiff has satisfied the foregoing criteria, the defendant may defeat plaintiff's claim by proving, by a preponderance of the evidence, that the same employment action would have been taken even in the absence of the protected activity. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).

### 1.   Political Affiliation as a Job Requirement

Under the first prong of the test, the burden is on the plaintiff to prove that he is employed in a position that did not require political affiliation. *Elrod,* 427 U.S. at 368. Plaintiff cannot prove that he worked in a job that did not require such affiliation under the following analysis.

In *Brown v. Trench*, 787 F.2d 167, 169 (3d Cir.1986) 787 F.2d 167, 169 (3d Cir.1986)the Third Circuit set forth several factors that should be considered when determining whether political affiliation is an appropriate precondition for a government position. . These factors include whether the employee had duties that were non-discretionary or non-technical, participated in discussions or other meetings, prepared budgets, possessed the authority to hire and fire other employees, had a high salary, retained power over others, and could speak in the name of policymakers. *Id.* In fact, the Third Circuit determined that the "key factor seems to be not whether the employee was a supervisor or had a great deal of responsibility[,] but whether she has meaningful input into decision-making concerning the nature and scope of a major [ ] program." *Armour v. County of Beaver, Pa.,* 271 F.3d 417, 429 (3d Cir.2001) (citations and quotations omitted).

In the instant case, Plaintiff is unable to satisfy his obligations under this prong. As the general manager of Special Services, Plaintiff's minimum duties and responsibilities are extensive and are set forth

---

[15] Plaintiff's minimal involvement in opposition to Coons may be considered protected activity at summary judgment stage.

in 9 Del. C. §1341. Moreover, Plaintiffs self-proclaimed responsibilities included: coordinating workforces of up to 475 men including union and non-union employees; managing an operating budget of approximately $70,000,000.00; managing a six year capital budget of $500,000,000.00; negotiating and securing contracts with client companies, union locals, engineering and construction firms; performing and supervising all building construction projects, paving, storm and sanitary sewers, excavation and landscaping for his department. *See* Complaint ¶ 41; *J. Freebery Depo.* at 257.

In addition, Plaintiff admits that he recommended policy to the Coons Administration. *J. Freebery Depo. a*t 255. He testified before County Council on behalf of the Department of Special Services, he recommended discipline for the employees in his department, and put together packages regarding County ordinances. *Id.* at 337-339 At the time he left County employment Plaintiff was paid at the highest salary of any County employee or official at a pay grade 40, step 10, which equated to a salary of $138,946.999. *J. Freebery Depo.* at 310.

It should be noted that the above criteria apply with equal force to identical party affiliation such as that asserted in the instant matter. In *Curinga v. City of Clairton*, the Court observed that "identical party affiliation does not necessarily ensure the subordinate's loyal adherence to the superior's policies." 357 F3d 305, 311 (3d Cir. 2004). Indeed, the Court noted that "[p]rimary election fights can be famously brutal, sometimes more so than contests in the general election, and animosity between candidates is likely to result." *Id. (citing Robertson v. Fiore,* 62 F.3d 596, 600 (3d Cir.1995)). The Court noted that other courts of appeals, recognizing the animosity that can develop during primary elections, have broadened the definition of "political affiliation" to include commonality of political purpose, partisan activity, and political support. *Id. (citing Kaluczky v. City of White Plains,* 57 F.3d 202, 208 (2d Cir.1995); and *Williams v. City of River Rouge,* 909 F.2d 151, 153 n. 4 (6th Cir.1990)(cases where courts upheld terminations under *Elrod-Branti* of policymaking employees who openly supported campaigns against their current or subsequently elected employer).

Based upon the above, it is evident that Freebery had significant authority in managing the Department of Special Services and contributed to policy development. Therefore, his job was a policymaking position for which a political affiliation requirement was appropriate. Singleton, for the reasons stated *supra* at p. 7, 8 further stated that while he supervised Plaintiff, several of the actions he took reflected poorly on the Coons Administration. *Singleton Depo.* at 62, 66-68. Moreover, Patricia Lutz-DiIenno, former general manager of the Department of Human Resources, stated that in General Manager meetings, Plaintiff seemed to be acting contrary to the polices of the Coons Administration because he was not as active a manager as he used to be under the former Administration. *DiIenno Depo.* at 51-54.[16] As a consequence, Plaintiff is unable to satisfy his burden under the first prong of the test, and his claim should be dismissed.

### 2. Even Assuming That Plaintiff Has Engaged In Protected Activity, He Cannot Show That It Was A Motivating Factor In Any Alleged Retaliation

To get beyond the summary judgment stage, Plaintiff must produce enough evidence for a reasonable jury to conclude that his association with and support of his sister, to the extent it is protected under the First Amendment, was a motivating factor in the decision to terminate his employment. Assuming *arguendo* that Plaintiff engaged in protected activity, a determination of whether that protected activity was a substantial or motivating factor in the alleged retaliatory action involves "two distinct inquiries: 'did the defendants take an action adverse to the public employee, and, if so, was the motivation for the action to retaliate against the employee for the protected activity.'" *Schneck v. Saucon Valley Sch. Dist.*, 340 F. Supp. 2d 558, 568 (E.D. Pa. 2004)(*citation omitted*). As stated *supra,* at 7, 8. Plaintiff cannot show any facts that support his termination was motivated because of his association with Sherry Freebery.

### 3. Defendants would have taken the same action absent Plaintiff's allegedly protected conduct

Summary judgment may be granted to Defendants if they can show "by a preponderance of the evidence that [they] would have reached the same decision even in the absence of the [alleged] protected

---

[16] Patricia Lutz DiIenno Deposition excerpts are attached hereto as Appendix 13.

conduct." *Mt. Healthy,* 429 U.S. at 287. In this case, the Defendants would have terminated the employment of Plaintiff based on the reasons stated, *supra* at 7, 8, which are wholly unrelated to the alleged political support and association of his sister.

### 4. Coons Is Entitled to Qualified Immunity.

Coons is entitled to qualified immunity in his individual capacity. Even if the Court were to conclude that Plaintiff was not a policy maker then clearly Coons is still entitled qualified immunity because there was no clearly established precedent that an employee in a high ranking position, such as Plaintiff, with the multitude of responsibilities that he held was not a policy maker. As Coons has stated numerous times over many years, he believed the general managers to be on the County Executive's senior level team, equivalent to cabinet secretaries. As noted by the Curinga Court, it may be difficult to determine where the efficient functioning of the government workplace ends and the employees's loyalty and ability to implement an employer's policies begins. *Curinga,* 357 F.3d at 312. Therefore, Coons is entitled to qualified immunity.

### E. Plaintiff's Right To Intimate Association Was Not Violated

The First Amendment protects two types of association: expressive association and intimate association. Expressive association protects the ability of individuals to gather for the purpose of pursuing "political, social, economic, educational, religious, and cultural ends." *Roberts v. U.S. Jaycees,* 468 U.S. 609, 622 (1984); *see also Pi Lambda Fraternity, Inc. v. Univ. of Pittsburgh,* 229 F.3d 435, 443 (3d Cir.2000). To invoke the right, a plaintiff "must engage in some form of expression, whether it be public or private" beyond that which is "merely incidental" to the plaintiff's everyday activity. *Boy Scouts of Am. v. Dale,* 530 U.S. 640, 648 (2000); *Pi Lambda,* 229 F.3d at 443-44. Mere social relationships receive no protection, and plaintiffs asserting the right of expressive association must be involved in "expressive activity that could be impaired in order to be entitled to protection." *Dale,* 530 U.S. at 655.

The right however, should not be read too broadly. Employees who claim that adverse employment action was taken against them based upon the exercise of their associational rights must show that they were

19

engaged in constitutionally protected conduct, which conduct was a "substantial" or "motivating factor" in the government employer's decision. *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. at 287.

Although "[f]amily relationships, by their nature, involve deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctly personal aspects of one's life." *Roberts* 468 U.S. at 619-20, not all family relationships are likely to be of similar character. Thus, in determining whether a particular association is sufficiently personal or private to warrant constitutional protection, factors such as size, purpose, selectivity, and the exclusion of others from the critical aspects of the relationship are to be considered. *Board of Directors of Rotary International v. Rotary Club of Duarte,* 481 U.S. 537 (1987). Only relationships "distinguished by such attributes as relative smallness, a high degree of selectivity in decisions to begin and maintain the affiliation, and seclusion from others in critical aspects of the relationship" are likely to implicate protection. *Roberts,* 468 U.S. at 620.

There is no case on point in the Third Circuit that directly protects the relationship between a brother and a sister for purposes of the instant motion. Assuming arguendo that it is protected, Plaintiff's claim fails nonetheless because neither the Complaint nor the evidence supports that Plaintiff's termination in any way interfered with, or placed an undue burden on, his intimate association with his sister. In order to demonstrate a violation of his right to associate with his sister, Plaintiff must show that his termination prevented him from or at least interfered with, continuing his relationship with his sister. *Lyng v. International Union, et. al.,* 485 U.S. 360, 365 (1988). Plaintiff has failed to meet this burden and therefore this claim must also fail. Moreover, after Coons became County Executive there were at least two other relatives working for the County who were never terminated. Plaintiff's daughter Kristen worked in the County Law Department until she resigned and Plaintiff's other sister Jan Eckstein, who is also Sherry Freebery's sister, is currently still employed at the County. *J. Freebery Depo.* at 293, 343. Therefore, Plaintiff clearly cannot show that his termination was a substantial or motivating factor in his termination.

To the extent the Court finds that Plaintiff's constitutional right to intimate association was violated, Coons is entitled to qualified immunity as there is no clearly established law in the Third Circuit that protected the relationship between a brother and sister. Moreover, it was not clearly established that Plaintiff's termination would have interfered with his relationship with his sister.

**F.    Plaintiff's Free Speech Was Not Violated**

Plaintiff has also alleged that the Defendants violated his right to free speech. The Supreme Court has called for a different, though related, inquiry where a government employer takes adverse action on account of an employees right of free speech. In those instances, a Court must apply the balancing test from *Pickering v. Board of Education,* 391 U.S. 563 (1968).

To properly allege an action for retaliation based on the First Amendment speech, a public employee must satisfy three elements: (1) the speech was protected and involved a matter of public concern, *Connick v. Myers,* 461 U.S. 138 (1983); (2) the plaintiff's interest in the speech outweighs the state's interest in "promoting the efficiency of the public service it performs," *id.* at 142(citing *Pickering)*; and (3) the protected speech was a substantial or motivating factor in the retaliation. *Czurlanis v. Albanes,* 721 F.2d 98, 103 (3d Cir.1983). The public employer can rebut the claim by demonstrating the same decision would be reached even in the absence of the protected speech. *Id.* at 102.

"A public employee's speech involves a matter of public concern if it can be 'fairly considered as relating to any matter of political, social or other concern to the community.' " *Baldassare v. State of New Jersey,* 250 F.3d 188, 195 (3d Cir.2001). Such an inquiry requires the court to consider the content, form, and context of the speech. *Id.* "The content of the speech may involve a matter of public concern if it attempts 'to bring to light actual or potential wrongdoing or breach of public trust on the part of government officials.' " *Id.* (quoting *Holder v. City of Allentown,* 987 F.2d 188, 195 (3d Cir.1993)).

In the instant case, Plaintiff has failed to present evidence regarding the content, form, or context of the speech. Plaintiff admits that he can not give any specific dates, times or context or say to whom any of the

alleged public statements were made. *J. Freebery Depo.* at 163. At best, Plaintiff alleges that his speech related to private statements regarding his sister's innocence to people who asked him about his sister. *J. Freebery Depo.* at 149, 163, 167, 168.

### 1.     Plaintiff did not Engage in Protected Activity

Speech is a protected activity only if it relates to a matter of public concern. *Connick v. Myers*, 461 U.S. 138, 146–47 (1983) (holding that a matter of public concern is "any matter of political, social or other concern to the community"); *Baldassare v. New Jersey*, 250 F.3d 188, 195 (3d Cir. 2001). The determination of whether speech addresses a matter of public concern is an issue for the Court to decide. *See Waters v. Churchill*, 511 U.S. 661, 668 (1994). The *Connick* Court emphasized that courts should look at the "content, form, and context of a given statement, as revealed by the whole record" to determine whether a public employee's speech constitutes a matter of public concern. *Connick* at 147-149. In *Holder v. City of Allentown*, 987 F.2d 188 (3d Cir.1993), the Third Circuit explained:

> The content of the speech may help to characterize it as relating to a matter of social or political concern of the community if, for example, the speaker seeks to 'bring to light actual or potential wrongdoing or breach of public trust' on the part of government officials. The form and context of the speech may help to characterize it as relating to a matter of social or political concern to the community if, for example, the forum where the speech activity takes place is not confined merely to the public office where the speaker is employed.

*Id.* at 195 (citations omitted).

As stated, *supra*, Plaintiff has failed to provide the content, form, or context of the speech and therefore, it should not even be considered because it is impossible to evaluate. However, Plaintiff does allege that he stated privately to people that his sister was innocent. That statement fails to rise to the level of public concern. "Speech by public employees may be characterized as not of 'public concern' when it is clear that such speech deals with individual personnel disputes and grievances and that the information would be of no relevance to the public's evaluation of the performance of governmental agencies." *McKinley v.*

22

*City of Eloy*, 705 F.2d 1110, 1114 (9th Cir.1983). Clearly, Plaintiff's personal beliefs regarding his sister's innocence are not a matter of public concern.

### 2. Even Assuming Plaintiff's Speech Addressed A Matter of Public Concern, He Cannot Show That It Was A Motivating Factor In Any Alleged Retaliation

To get beyond the summary judgment stage, Plaintiff must produce enough evidence for a reasonable jury to conclude that his speech, to the extent it is protected under the First Amendment, was a motivating factor in the decision to terminate him. Even if the Court were to find that Plaintiff engaged in protected activity, a determination of whether that protected activity was a substantial or motivating factor in the alleged retaliatory action involves "two distinct inquiries: 'did the defendants take an action adverse to the public employee, and, if so, was the motivation for the action to retaliate against the employee for the protected activity.'" *Schneck v. Saucon Valley Sch. Dist.*, 340 F. Supp. 2d 558, 568 (E.D. Pa. 2004)(*citation omitted*). Plaintiff cannot show that Defendants acted because of anything Plaintiff said in defense or support of his sister. For all of the reasons stated, *supra,* Plaintiff's termination had nothing to do with any alleged statements he may have made regarding his sister's innocence.

"[F]or protected conduct to be a substantial or motivating factor in a decision, the decision makers must be aware of the protected conduct." *Ambrose v. Township of Robinson, Pa.*, 303 F.3d 488, 493 (3d. Cir. 2002). There is no evidence that Coons ever heard or was aware that Plaintiff stated that his sister was innocent and disagreed with the government's theory of liability. Therefore, since there is no evidence to support that Coons was aware of Plaintiff's alleged protected conduct, it cannot be a substantial or motivating factor in his decision to terminate Freebery.

### 3. Defendants would have taken the same action absent Plaintiff's allegedly protected conduct.

Summary judgment may be granted to Defendants if they can show "by a preponderance of the evidence that [they] would have reached the same decision even in the absence of the [alleged] protected conduct." *Mt. Healthy*, 429 U.S. at 287. As stated, *supra,* at p. 7, 8. Plaintiff would have been terminated

23

regardless of any speech protected or not, in favor of Sherry Freebery. Moreover, to the extent that the Court finds a violation of Plaintiff's constitutional rights, Coons is entitled to qualified immunity because it was not clearly established that a personal opinion of innocence regarding a sibling was a matter of public concern.

### G.    Plaintiff's Liberty Interests Were Not Violated.

Plaintiff asserts that "[t]he combination of the defendants' adverse employment action in wrongfully firing [him] and the stigma they intentionally imposed upon him by the manner in which such action was taken constitutes a violation of [plaintiff's] constitutionally protected liberty interest." Complaint, ¶ 134. In support of this claim, Plaintiff contends that before and after his election and after he took office, Coons and other unknown individual defendants made false public and private statements about Plaintiff that stated or implied that he was incompetent and/or dishonest and/or corrupt. Complaint, ¶¶ 129, 130. Plaintiff alleges that these statements "placed upon him a continuing stigma and disability which "foreclose[d]…[his] freedom to take advantage of other employment opportunities and were intended to block him from pursuing employment in his chosen fields of interest." Complaint, ¶ 132.

### 1.    The alleged stigmatizing statements

In an attempt to establish stigma, Plaintiff points to a few statements over a period of years. The content of these statements is outlined in the Complaint and in Plaintiff's discovery responses, and is summarized below.

#### a.    Democratic debate between Coons, Sherry Freebery and Richard Korn prior to Coons Administration in January 2005

Plaintiff claims that he was defamed by Coons during the democratic debate with Plaintiff's sister, Sherry Freebery. Freebery Interrogatory Response # 9. The date of this debate is unclear, but it arguably occurred prior to Coons assuming office in January 2005. *Coons Depo.* 37. In that debate, Coons allegedly stated "How would you like to have Sherry's brother, Joe Freebery, as General Manager of the Department of Special Services, the largest department in the County." *Id.*; *Freebery Depo.* 99, 229.

24

However, Plaintiff takes some liberties with the record in this regard. When read in context, this statement can only be read to express Coons' vision in terms of employees who could carry forward the policy agenda of the newly elected County Executive. The exact quote is as follows:

> I'll speak brief [sic] to the comments Ms. Freebery made and try and set the record straight on this. We got two different versions for how the top management layer of New Castle County Government ought to operate. And the legislation that I supported and members of the general Assembly put in was not, as she put it, crafted by a developer and snuck through in the dead of night. But, obviously, we've got differing views on quite a few different things and how quite a few different things have come to happen legislatively recently and a year ago and, frankly, throughout my entire term of serve in County government. *The current law and the current situation would produce a situation where the next County Executive, whether any of the three of us before you, would have Ms. Freebery's brother running the largest department in New Castle County.* If Mr. Bush were to have as his Attorney General from the Clinton administration, or the Secretary of Defense from the Clinton administration, or the Secretary of Education from the Clinton administration, you'd say, I suspect, that that prevents the president from carrying forward the policy agenda on which he was elected. What I was simply trying to accomplish was to restore what has historically been the case, which was that the County Executive has the freedom to put above the General Managers political appointees who are directors who could carry the forward policy agenda of the newly elected County Executive. We disagree, of course, as to the history and intended purpose of that legislation.

*Coons Depo.* 42-45 (emphasis added).

### b.    Campaign statements

Plaintiff also alleges that at some point during Coons' campaign for County Executive, that Coons and/or his authorized agents or representatives stated that "Coons intended to run an administration 'free of corruption,'" and that "there would be 'no room' for 'someone like [plaintiff]' in any Coons administration." Complaint, ¶ 57. However, during his deposition, Plaintiff admitted that Coons in fact did not make any allegation that linked him with an administration that was "free of corruption." *Freebery Depo.* 207-208. Rather, Plaintiff simply inferred that "free of corruption" was a statement that Coons used to describe his administration going forward, and the fact that Plaintiff was separated conveyed to him in his mind that he was corrupt. *Freebery Depo.* 208.

c.    **WDEL Radio Show**

In his Complaint, Plaintiff also alleges that Coons stated that "there would be 'no room' for [Plaintiff] in his administration" during the primary and general election campaigns. Complaint ¶ 56. However, at his deposition, Plaintiff admitted that these remarks were not in fact made by Coons, but were made by former Communications Director, Allison Taylor Levine ("Levine"). *Freebery Depo.* p. 200-203. Plaintiff further admitted that these statements were not made during the primary and general campaigns, but rather, during a radio show that was broadcasted subsequent to Plaintiff's termination. *Freebery Depo.* p. 200-203, 227-228. In an attempt to show that Levine made a stigmatizing statement, Plaintiff provided an audio recording of this alleged statement. However, the recording is inaudible such that proof of this statement cannot be confirmed. These inconsistent alleged statements by Levine, a non-party, are clearly insufficient to defeat summary judgment.

d.    **News Journal Article**

Plaintiff further contends that defamatory statements were made by Coons in the news article attached at Appendix 14. Freebery Interrogatory Response #9. Although the article is undated, a review of the article indicates that it was likely printed subsequent to Plaintiff's termination. In this article, Coons is quoted four separate times as follows:

> "The statute is clear as a bell, the position serves at the pleasure of the executive regardless of any previous circumstances."

> "It is time for a change. I want a team that shares my vision, priorities and values."

> "I am not going to go through all of the e-mails, phone calls and meetings," Coons said. "But if [Freebery's] expectation is that it is ok to sit in his office and wait for me to come over and do a checklist evaluation, that is a perfect example of what I am talking about."

> "When asked or ordered to do something, he certainly did. But I look for more from someone who is running one of the largest departments. I expect initiative and communication – in short, a different style, particularly when this department came with a long list of inherited problems…."

*Id.*

2.     **Liberty interests that warrant protection under the Fourteenth Amendment**

It is well established that injury to reputation alone is not a "liberty" interest protected under the Fourteenth Amendment. *Seigert v. Gilley*, 500 U.S. 226, 233 (1991)(*citing Paul v. Davis*, 424 U.S. 693, 708-709 (1976)). Rather, in order to make out a cognizable claim for deprivation of a liberty interest in reputation, "a plaintiff must show a stigma to his reputation *plus* deprivation of some right or interest." *Hill v. Borough of Kutztown*, 455 F.3d 225, 236 (3d Cir. 2006)(*citing Davis*, 424 U.S. at 701). This is referred to as the "stigma-plus" test. *Id.* (*citing Graham v. City of Philadelphia*, 402 F3d. 139, 142 (3d Cir. 2005); *Ersek v. Township of Springfield*, 102 F.3d 79, 83, n. 5 (3d Cir. 1997)). When this type of deprivation occurs, "the right accorded is that of procedural due process or more specifically the right to an opportunity to refute the charges and clear one's name." *Schlichter v. Limerick Twp.*, 2005 WL 984197, *8 (E.D.Pa.)(*citing Pulchaski v. School District of Springfield*, 161 F.Supp. 2d 395, 406 (E.D.Pa. 2001)(citations omitted). Accordingly, "a federal constitutional claim arises not from the defamatory or stigmatization conduct *per se*, but from the denial of a name clearing hearing. *Id. See also, Davis*, 424 U.S. at 712(damage to reputation alone is best vindicated with a state defamation claim).

"In the public employment context, the 'stigma-plus' test has been applied to mean that when an employer 'creates and disseminates a false and defamatory impression about the employee in connection with his termination,' it deprives the employee of a protected liberty interest." *Hill*, 455 F.3d at 236 (*citing Codd v. Velger*, 429 U.S. 624, 628 (1977)). Thus, "[t]he creation and dissemination of a false and defamatory impression is the 'stigma,' and the termination is the 'plus.'" *Id.* To satisfy the "stigma" prong of the test, a plaintiff must allege that the purportedly stigmatizing statement(s) were made publicly. *Bishop v. Wood*, 426 U.S. 341, 348, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). A plaintiff must also allege that such statements were false. *Codd*, 429 U.S. at 627-629. In order to satisfy the "plus" portion of "stigma-plus" claims, the additional right or interest may be job termination, even if, as is asserted in the instant matter (Argument C, *supra*) as a matter of state law, an employee did not have a protected property interest in such job. *Hill*, 455 F.3d at 238.

27

The final hurdle a plaintiff must face in order to state a viable claim for deprivation of a liberty interest is that he or she must plead and prove that they timely requested a name-clearing hearing to refute charges against them and that the request for the name hearing clearing was denied by the governmental body. *See Pulchaski v. School District of Springfield*, 161 F.Supp2d 395, 406 (E.D.Pa. 2001); *O'Connell v. County of Northampton*, 79 F. Supp. 2d 529, 536 (E.D.Pa. 1999); *Freeman v. McKellar*, 795 F.Supp. 733, 739 (E.D.Pa. 1992); *Schlichter*, 2005 WL 984197 at *8; *Maule v. Susquehanna*, 2007 WL 2844587, *12-13 (E.D. Pa. 2007). *But see, Hill*, 455 F.3d at 239, n. 19; *Ersek v. Township of Springfield*, 102 F.3d 79, 84, n.8 (3d Cir. 1996).

### 3. Plaintiff's claim for deprivation of a liberty interest in his reputation must fail

For the reasons that follow, even assuming that Coons made these statements for purposes of summary judgment, Plaintiff fails to state a claim for deprivation of a protected liberty interest.

#### a. Plaintiff cannot prove stigma

##### 1) The statements made by Coons are not stigmatizing

This claim should be dismissed as the statements made by Coons are not stigmatizing or sufficiently damaging to implicate a liberty interest. In *Board of Regents v. Roth*, the Court indicated that for purposes of this type of claim, an employment action implicates a Fourteenth Amendment liberty interest only if it (1) is based on a "charge against [the individual] that might seriously damage his standing and associations in the community ..., for example, that he had been guilty of dishonesty, or immorality" or (2) "impose[s] on him a stigma or other disability that forecloses his freedom to take advantage of other employment opportunities." 408 U.S. 564, 573 (1972). In an attempt to support this claim, plaintiff asserts that Coons and other unknown individual defendants made false public and private statements about plaintiff that stated or implied that he was incompetent and/or dishonest and/or corrupt. Complaint, ¶¶ 129, 130. The statements at issue in this matter simply do not rise to the level of culpability suggested in *Roth*. The statements do not suggest that Plaintiff was immoral or dishonest, nor are they based on charges that might seriously damage his

standing and associations in the community. In fact, some of the statements do not even refer to Plaintiff. Moreover, to the extent that these statements can be said to address Plaintiff's competency in the performance of his duties, such statements are not actionable. Finally, these statements do not impose any stigma or other disability that foreclosed Plaintiff's freedom to take advantage of any employment opportunities.

### i)     Democratic debate

In order to prevail on a claim under Section 1983, a Plaintiff must establish (1) the violation of a federally protected constitutional or statutory right, (2) by state action or action under color of law.  42 U.S.C. § 1983.  Any statements Coons may have made while he was a candidate for County Executive are not actionable because he was not acting under color of law.

Even if he were acting under color of law, the statements were not stigmatizing to Plaintiff.  Plaintiff was used as an example of how the current law could produce a situation where persons in general manager positions in prior County administrations such as plaintiff could remain in a new administration, and could impact carrying forward the policy agenda on which an incumbent was elected.  Coons used other examples besides Plaintiff in this context, such as the scenario that could occur where President Bush were to have as his Attorney General, the Attorney general from the Clinton Administration or the Secretary of Education from the Clinton Administration.  Appendix 15.  Coons simply made the comparison between cabinet members in these positions and Plaintiff's position as a general manager in an incoming administration. Coons elaborated on his thoughts on this point at his deposition:

> [W]hat I was conveying in that debate, which is what I conveyed in a number of different
> settings, was a different vision than my opponent had about how County Government ought
> to be structured going forward. . . .If you look at City, County, State or Federal
> Government, when there is an election and transition  in the chief executive, there is also a
> transition in often most of the senior policy team.  There are instances where, from one
> administration to another, they will keep secretaries or directors or heads of departments.
> But the law in the instance of the County had been changed. . .so that the County Executive
> could no longer appoint anything other than  -- the CAO -- and executive assistants.  By the
> senior management, the people who were on top of each of the departments and responsible
> for the leadership and the policy formation, the execution of operations of each of the major

> departments of County Government, were no longer folks who were -- who served at the pleasure of the County Executive. So, I mean, I think that is a fairly accurate summary of what Ms. Freebery and I were disagreeing about in the debate.

*Coons Depo.* 48. When read in context, these clearly are not statements that maligned or stigmatized Plaintiff in any way. Moreover, these statements are not actionable because they were not made in the course of Plaintiff's termination. *See Siegert*, 500 U.S. at 233 (in order to implicate a liberty interest under the Fourteenth Amendment, the stigmatizing statement must be made in the course of termination). These statements were made months prior to Plaintiff's termination, before Coons even took office. At that time, Plaintiff was still General Manager of the Department of Special Services. Therefore, the allegedly stigmatizing statement cannot be said to have occurred in the course of his termination.

### ii)    Campaign Statements

Once again, these alleged statements are not actionable because Coons was not acting under color of law at the time they were made. Assuming *arguendo* that Plaintiff could somehow overcome this impediment, he has not produced any evidence that Coons in fact made this statement. Plaintiff speculates that Coons was actually referring to him when he made this statement during his campaign for County Executive, months and possibly years before Plaintiff's termination. Such speculation is not enough to enable this claim to survive summary judgment. Even assuming for purposes of summary judgment that this statement was made, it fails to mention Plaintiff in any way, nor does it imply that Plaintiff is the subject of any corruption. Moreover, this argument stretches the facts to the point of absurdity. A stigmatizing statement has to be *about* the Plaintiff, yet this statement fails to mention Plaintiff, or imply that it is targeted at him. Finally, similar to the statements made at the Democratic Debate, this statement cannot be said to have been made in the course of terminating Plaintiff's employment.

### iii)    WDEL Radio Show

Aside from the inaudibility of the tape provided by Plaintiff, there is no evidence that Levine had the authority to make any such statements on Coons' behalf or that these statements indeed came from Coons.

In fact, plaintiff has never even talked to Levine regarding this lawsuit, and there is no evidence that Coons gave any instructions with respect to the radio broadcast. *Freebery Depo.* 354-355. Plaintiff's failure to link Coons to Levine's alleged statement, coupled with his failure to provide an audible recording or transcript in which to review this statement or determine whether it was in fact made, mandates dismissal of this claim.

<div align="center">

**iv)    News Journal Article**

</div>

Finally, the statements in <u>The News Journal</u> article also fail to impose a stigma upon Plaintiff. Rather, these statements once again focused on the change Coons desired during his administration, and his need for a team that shared his vision, priorities and values.  Appendix 14.  Coons again gave the example of how it is typical for new a administration to appoint new cabinet level managers soon after taking office, and how state law was clear that the general manager position served at the pleasure of the executive. *Id.* Coons did speak briefly of Plaintiff's work performance, but in no way made comments that were stigmatizing to Plaintiff.  Coons simply referred to Plaintiff's management style, which differed from Coon's expectations in terms of initiative and communication. *Id.* Coons never stated or implied that Plaintiff was dishonest, corrupt, or incompetent.  Complaint ¶ 129.  Even if he had, however, statements that merely relate to inadequate performance, incompetence or neglect of duty are not actionable.  *Maule*, 2007 WL 2844587 at *12 (*quoting Wojcik v. Massachusetts State Lottery Commission*, 300 F.3d 92, 103 (1st Cir. 2002)).

<div align="center">

**2)    Plaintiff is unable to prove the falsity of the statements**

</div>

Plaintiff is also unable to prove the falsity of the above statements.  This is so because they are not statements in which the veracity thereof can be measured.  Rather, they are statements that either have nothing to do with Plaintiff , are generic to Coons' vision for his administration if he were to be elected, or are statements of illustration or comparison of a possible scenario once a new County Executive took office. While theoretically Plaintiff may be able to prove the falsity of the statements Coons made to the <u>News Journal</u> relative to Plaintiff's job performance, such statements are not stigmatizing according to *Maule*. *Id.*

<div align="center">

31

</div>

     **3)**      **Plaintiff cannot prove publication of Coons' alleged statement about wanting to run an administration free of corruption**

There is no evidence in the record that Coons made the statement about wanting to run an administration free of corruption, or that this statement was published. Absent publication of this statement, this claim cannot survive.

     **4)**      **The statements at issue did not impose a stigma that foreclosed plaintiff's freedom to take advantage of other employment opportunities.**

Plaintiff claims, without any supporting evidence, that the statements indicated above foreclosed his freedom to take advantage of other employment opportunities. Complaint, ¶132. Despite requests for same, Plaintiff has produced no evidence containing any details about where he's looked for work or why he was denied employment. The only statements that can arguably be related to Plaintiff's termination such that they could possibly affect future employment prospects are those that were made by Coons (and those allegedly made by Levine) shortly after his termination. However, even if these statements were deemed to relate to any inadequate performance or incompetence, they are not actionable. *Maule*, 2007 WL 2844587 at *12 (citation omitted). Indeed, due to the generalized nature of the statements at issue, a causal connection between the statements and Plaintiff's inability to obtain employment cannot be established. Moreover, Plaintiff concedes that knew he didn't have a chance to get certain positions, not because of any statements that may have been made in connection with his termination, but because of actions he took in his position of General Manager of the Department of Land Use. *Freebery Depo.* 324. For example, there were companies that he ruled against as General Manager involving certain contracts – rulings which apparently cost these companies "thousands and thousands of dollars in settlement." *Freebery Depo.* 324. Plaintiff also testified that he foreclosed certain job possibilities himself because "didn't want to put anybody in a situation of losing contracts because [he] was working for them." *Id.* at 330. Plaintiff has simply failed to establish any evidence of a foreclosure of employment opportunities amounting to a deprivation of liberty.

### 3.    Plaintiff failed to request a name clearing hearing

As indicated above, Defendants did not make any statements which were stigmatizing such that a liberty interest would be implicated and a hearing would be required.  However, even when viewing the facts most favorable to Plaintiff, this claim must fail because assuming Plaintiff meets the stigma prong, he has not alleged nor requested a name hearing.  *Freebery Depo.* 309-310.  As Plaintiff made no request to refute the allegedly stigmatizing statements to clear his name, he cannot maintain his claim that he was deprived of a liberty interest.  *See* Arg. (G), *supra.*

For the reasons stated above, since there are no facts from which a reasonable fact finder could conclude that Coons' conduct in any way violated the Plaintiff's constitutionally protected liberty interest, the Court should grant summary judgment and dismiss this claim.  In the alternative, as it was therefore objectively reasonable for Coons to believe that his actions did not violate a clearly established constitutional right, he should be afforded qualified immunity.

### H.    Plaintiff's Right To Vote Was Not Violated.

Plaintiff has alleged that the Defendants have infringed upon his fundamental right to vote.  However, Plaintiff has apparently misapprehended the protections associated with the right of suffrage.  Essentially the right to vote includes the right to participate in elections on an equal basis with other citizens in the jurisdiction, *San Antonio Independent School Dist. v. Rodriguez*, 411 U.S. 1 (1973); the right to cast an effective vote, *Anderson v. Celebrezze*, 460 U.S. 780 (1983); and the right to cast a ballot equal among voters. *Shaw v. Hunt*, 517 U.S. 899 (1996).  Additionally, the right to vote includes the right to be free from restrictions that deny the franchise or those which make it so difficult and inconvenient as to amount to the denial of the right to vote.  *Greidinger v. Davis*, 988 F.2d 1344 (4th Cir. 1993).

In Count V of the Complaint, Plaintiff alleged that he voted for and politically supported his sister, Sherry Freebery, who ran against Defendant Coons for the position of New Castle County Executive.

Moreover, Plaintiff has not alleged that the Defendants actually knew for a fact who he voted for in the election. To the extent that Plaintiff alleges an actionable claim based upon his support of a political rival of Defendant Coons, the analysis contained *supra* regarding Plaintiff's political association claim also applies to any claim associated with his right to vote and for the reasons set forth in that section, Plaintiff's claim should be dismissed. For the above reasons Coons is also entitled to qualified immunity because he would not have been aware that he was violating a clearly established right.

### I.  Plaintiff Did Not Have An Express or Implied Contract For Employment.

Plaintiff has alleged that he had an express and/or an implied contract for employment with New Castle County as a result of representations that were made to him at the time he accepted the position of General Manager of the Department of Special Services and that those contractual conditions were reaffirmed in writing in November, 2003. Specifically, Plaintiff claims that by terminating his employment with the County, the Defendants breached this employment contract.

Generally, a contract is a legally binding agreement between two or more parties which requires that each party perform according to the agreement's terms. *Leeds v. First Allied Connecticut Corp.*, Del. Ch., 521 A.2d 1095, 1101-02 (1986); *Norse Petroleum A/S v. LVO International, Inc.*, Del. Super., 389 A.2d 771, 773 (1978). For a legally binding contract to exist, there must be:1) an offer of a contract by one party; 2) an acceptance of that offer by the other party; 3) consideration for the offer and acceptance; and 4) sufficiently specific terms that determine the obligations of each party. *Industrial America, Inc. v. Fulton Indus., Inc.*, Del. Supr., 285 A.2d 412, 415 (1971)(manifestation of intent must be overt, not subjective).With respect to employment contracts, generally, a contract for employment is at will. Employment at will means that either party may terminate the contract at any time without providing a reason or cause. *E.I. duPont de Nemours & Co. v. Pressman*, Del. Supr., 679 A.2d 436, 441, 444 (1996) With respect to a written employment contract, the writing must identify, with some moderate degree of precision, such items as subject matter, duration, job description, and hours of employment. *Lindsey v. M.A. Zeccola & Sons, Inc.,* 3d Cir., 26 F.3d 1236, 1239 (1994).

Plaintiff attempts to rely on the representations set forth in the November 2003 memorandum from his sister to form the basis of his contract claim. However, this memorandum was curiously issued at least five years after he accepted the position of General Manager. Appendix 16. At best, it creates an employment contract that was terminable at will by either party since the writing failed to identify with any precision the duration, the job description, hours or salary. It is well-settled Delaware law that "[a] hiring for an indeterminate period is a hiring at will and, consequently, is terminable at the will of either party with or without cause." *Haney v. Laub,* Del.Super., 312 A.2d 330, 332 (1973); *Heideck v. Kent General Hospital, Inc.,* Del.Supr., 446 A.2d 1095 (1982). Moreover, the document does not create a contract for employment, but only re-iterates that at the time of the memorandum that the general managers were in the merit system. The memorandum clearly sets forth what the protections and expectations were on November 2003, while the General Managers were in the merit system. However, the memorandum further states and places all General Mangers on notice that the state law could be changed and therefore the General Managers may not have the same protections as they held at that time. As stated, *supra,* at p. 5 the status of the General Managers was lawfully changed to an at-will status with the passage of H.B. 29.

Plaintiff did not have a specific or implied contract for employment with New Castle County on April 6, 2005 when he was terminated, other than as an at - will employment contact. Plaintiff was therefore justifiably terminated on April 6, 2005.

### J.  Defendants Did Not Breach The Covenant of Good Faith And Fair Dealing

The Delaware Supreme Court has recognized four very narrow exceptions to that at-will doctrine through the implied covenant of good faith and fair dealing, which include (1) the termination violated public policy; (2) the employer misrepresented an important fact and the employee relied "thereon either to accept a new position or remain in a present one"; (3) the employer used its superior bargaining power to deprive an employee of clearly identifiable compensation related to the employee's past service: or (4) the

35

employer falsified or manipulated a record to create fictitious grounds to terminate the employee. *E.I. duPont de Nemours & Co. v. Pressman*, Del. Supr., 679 A.2d 436, 441, 444 (1996); *Merrill v. Crothall-American, Inc.*, Del. Supr., 606 A.2d 96, 101-03 (1992). These limitations, should not however be construed "as limiting am employer's freedom to terminate an at-will employment contract for its own legitimate business, or even highly subjective reasons." *Merrill*, 606 A.2d at 103.

Plaintiff has failed to allege or provide any factual basis to support his claim that Defendants breached the covenant of good faith and fair dealing. It is undisputed that on April 6, 2005 Plaintiff was an at-will employee and Plaintiff has failed to allege any facts to support his assertion that Defendants' actions fall within the narrow exceptions of the at-will doctrine. Plaintiff was terminated for the reasons stated, *supra* at p. 7, 8. Therefore, Plaintiff's alleged claim for breach of the covenant of good faith and fair dealing must fail as there is no support in the record to show that Defendants' actions fall within any of the narrow exceptions.

**K.**     **Defendants Did Not Defame Plaintiff**

In Count VII of the Complaint, Plaintiff asserts a state law claim for defamation against Coons and/or his authorized agents. The alleged statements at issue are set forth in *supra*. Even assuming *arguendo* that these statements were made, let alone defamatory, Delaware's County and Municipal Tort Claims Act, as contained in 10 *Del. C.* § 4010, *et seq.*, provides immunity from these claims.

Pursuant to 10 *Del. C.* § 4012, a governmental entity shall be exposed to liability for negligent acts or omissions causing property damage, bodily injury or death only in certain circumstances. None of the exceptions are applicable in the instant matter, such as of the ownership of motor vehicles, public buildings, and the discharge of certain liquids or gasses. *See* 10 *Del. C.* § 4012 (1)-(3). Appendix 1.

The County and Defendant Coons, while acting in his official capacity,[17] are immune from suit unless an exception in 10 *Del. C.* § 4012 can be found. *Fiat Motors of North America, Inc. v. Mayor and Council of the City of Wilmington,* 498 A.2d 1062 (Del. 1985); *Schueler v. Martin,* 674 A.2d 882 (Del. Super. 1996). As none of the exceptions in 10 *Del. C.* § 4012 exist in this matter, the County and the Defendant Coons, while acting in his official capacity, are immune from this claim. Similarly, Coons has a conditional privilege for such statements.[18] *See DeRamus v. Redman,* 1986 WL 13089, *2-3 (Del. Super)(conditional privilege granted for communications made by government officials in the course of their duties to local newspaper).

Also, pursuant to 10 *Del. C.* § 4011(c), Defendant Coons cannot be held liable in his individual capacity because Plaintiff cannot establish that Defendant Coons' acts were "not within the scope of [his] employment" or were performed "with wanton negligence or willful or malicious intent" sufficient to impose liability under 10 *Del. C.* § 4011(c). Plaintiff has not alleged that Coons was not acting within the scope of his employment. Moreover, the conduct of Defendant Coons does not rise to the level of culpability required by 10 *Del. C.* § 4011(c). Even when viewing the facts in the light most favorable to Plaintiff, the statements made by Defendant Coons' cannot be considered malicious or willful. In Delaware, conduct is "wanton" only where it reflects a "'conscious indifference'" or an "I-don't-care attitude." *Couden v. Duffy,* 446 F.3d 483 (3d. Cir. 2006)(*citing Foster v. Shropshire,* 375 A.2d 458, 461 (Del. 1977)). Such conduct cannot be inferred in this case. For the reasons stated, *supra,* any statements made by Defendant Coons either make no mention of Plaintiff, or the statements generally address the reasons for his termination.[19] These

---

[17] Defendant Coons, in his official capacity, would be considered a County employee. *See* 10 *Del. C.* § 4010(1), Appendix 1.

[18] Although Plaintiff has not met his burden of proof with respect to any alleged statements that were made by Allison Taylor Levine, she would nevertheless enjoy the same immunity provided by 10 *Del. C.* § 4012. Moreover, as a lower echelon employee of the executive branch of County government, she would also enjoy a conditional privilege. *See DeRamus,* 1986 WL 13089 at 2-3 (discussing the extension of this conditional privilege to such employees).

[19] To the extent that Plaintiff alleges that Coons made defamatory statements during his campaign, Plaintiff, without providing a date for these alleged statements, has failed to show that they are within the two year statute of limitations for defamation claims. 10 *Del. C.* § 8119. Similarly, for the reasons stated *supra,* these statements do not meet the requirements for defamation, namely, a defamatory communication, publication, or a communication that refers to Plaintiff. *See Read v. Carpenter,* 1995 WL 945544, *2 (Del. Super.)(elements of defamation action

statements, when viewed in the light most favorable to Plaintiff, fail to establish the elements required for defamation. Finally, Defendant Coons is similarly immune under 10 *Del. C.* § 4011(c) as Plaintiff has not alleged that he suffered property damage,[20] bodily injury, or death. *See Gunzl v. Spayd*, 1995 WL 160352 (Del.Super. Mar. 28, 1995); *Hicks v. Mays*, 1991 WL 113595 (Del.Super. June 7, 1991).

As Defendants' immunity effectively bars this claim, it must be dismissed.

### L.    Plaintiff Has Failed To Provide Any Evidence Of A Civil Conspiracy

Under Delaware law, a civil conspiracy is "the combination of *two* or more persons or entities either for an unlawful purpose, or for the accomplishment of a lawful purpose by unlawful means, resulting in damage." *Brooks-McCollum v. Shareef*, 2006 WL 3587246, at *3 (Del. Super. Ct. Nov. 1, 2006). Delaware courts have held that a corporation cannot conspire with its agents or subsidiaries. *In re Transamerica Airlines, Inc.* 2006 WL 587846, at *6 (Del. Ch. Feb. 28, 2006). Plaintiff has not amended the complaint to include any other John Does nor produced any evidence to support a claim for conspiracy.

### M.    Plaintiff Does Not Have A Civil Cause Of Action Under New Castle County Code § 26.01.018[21]

Section 26.01.018 of the New Castle County Code, entitled Prohibitions and Penalties, provides that certain actions are prohibited under the County's Merit System. Section 26.01.018(A) is a criminal statute. "A private cause of action based on a statute is only available if the legislature intended a private remedy, even if a statute is violated and a person is harmed." *Abbott v. Gordon, et. al.,* Memorandum Opinion Dated March 27, 2008 *47 (Del. Supr.) As such, it cannot be enforced by Plaintiff in the instant action. Accordingly, this claim must be dismissed.

---

are: (1) a defamatory communication; (2) publication; (3) the communication refers to Plaintiff; (4) a third party's understanding of the defamatory character; and (5) injury). Finally, even assuming that Coons made statements about public corruption or other matters of public concern during his campaign, such speech is protected by the First Amendment.

[20] To the extent that Freebery has alleged economic harm, that "does not constitute 'property damage' as that term is used in the Act." *Dale v. Town of Elsmere*, Del.Supr., 702 A.2d 1219, 1223 (1997)

[21] Copy of New Castle County Code provisions attached hereto at Appendix 17.

N.   **The Section 1983 Claim Against The County Must Be Dismissed As It Seeks To Impose Liability Upon The County By Virtue Of *Respondeat Superior.***

Plaintiff's Complaint alleges that the County should be liable under 42 U.S.C. § 1983 for the alleged constitutional torts of its employee, Coons. A municipality such as New Castle County, however, cannot be held liable under § 1983 on *respondeat superior* theories for the alleged unconstitutional acts of its employees. *Monell v. Dept. of Social Services of the City of New York*, 436 U.S. 658, 690 n. 55 (1978). Rather, a municipality can only be held responsible when an official policy or custom of the municipality itself, whether made by lawmakers or those whose acts can fairly be said to represent official policy, causes a Plaintiff's injury. *Id.* The Supreme Court has reaffirmed that "rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of the employee." *Board of Cty. Commr's of Bryan County v. Brown*, 520 U.S. 397, 405 (1997).

Plaintiff has not alleged, nor does the record indicate, any evidence of an official County policy or custom that caused any injury to Plaintiff. Without more, the County cannot be liable.

39

## V.    <u>CONCLUSION</u>

For the aforementioned reasons, the County and Christopher A. Coons, in his individual and official capacities, respectfully request that Plaintiff's claims against them be dismissed. Moreover, Coons is entitled to immunity on all individual claims asserted against him.

<div style="margin-left:40%">

<u>/s/ Richard R. Wier, Jr.</u>
Richard R. Wier, Jr. (#716)
Michele D. Allen (#4359)
Richard R. Wier, Jr., P.A.
Two Mill Road
Suite 200
Wilmington, DE 19806
(302) 888-3222
*Attorneys for Defendants*

</div>

40

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

JOSEPH J. FREEBERY,         :
                                    :
        Plaintiff,        :
                                    :
      v.                    :     C.A. No. 05-748 PSD
                                    :
CHRISTOPHER COONS, in his official  :     JURY TRIAL DEMANDED
capacity as County Executive of New  :
Castle County and NEW CASTLE    :
COUNTY, a municipal corporation; and :
JANE AND JOHN DOES 1-25     :
                                    :
        Defendants.

## ORDER

    AND NOW this        day of          , 2008 it is hereby ORDERED AND

DECREED that Defendants' Motion For Summary Judgment is hereby GRANTED.

                                      _____

                                    THE HONORABLE  PAUL S. DIAMOND