# APPENDIX

# 18

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY

RICHARD L. ABBOTT,

|                                                      |     |                        |
| ---------------------------------------------------- | --- | ---------------------- |
|                              Plaintiff,              | )   |                        |
|                                                      | )   |                        |
|                                                      | )   | C.A. No. 04C-09-055 PLA |
|                        v.                            | )   |                        |
|                                                      | )   |                        |
| THOMAS P. GORDON, individually                       | )   |                        |
| and as County Executive of New                       | )   |                        |
| Castle County, SHERRY L.                             | )   |                        |
| FREEBERY, individually and as                        | )   |                        |
| Chief Administrative Officer of New                  | )   |                        |
| Castle County, and NEW CASTLE                        | )   |                        |
| COUNTY, a political subdivision of                   | )   |                        |
| the State of Delaware,                               | )   |                        |
|                                                      | )   |                        |
|                           Defendants.                | )   |                        |

Submitted: February 1, 2008
Decided: March 27, 2008

UPON DEFENDANTS' MOTIONS TO DISMISS
**GRANTED**

Richard L. Abbott, Esquire, Hockessin, Delaware, *Pro Se.*

Charles E. Butler, Esquire, Wilmington, Delaware, Attorney for Defendants Thomas P. Gordon & Sherry L. Freebery.

Collins J. Seitz, Jr., Esquire, and Matthew F. Boyer, Esquire, CONNOLLY BOVE LODGE & HUTZ LLP, Wilmington, Delaware, Attorneys for Defendant New Castle County .

**ABLEMAN, JUDGE**

## I. Nature and Stage of the Proceedings

After losing his bid for reelection to the New Castle County Council in the 2002 Republican Primary on September 7, 2002, Plaintiff Richard L. Abbott, Esquire ("Abbott") filed a complaint on September 7, 2004 against (1) Thomas P. Gordon ("Gordon"), the then-New Castle County Executive; (2) Sherry L. Freebery ("Freebery"), the Chief Administrative Officer of New Castle County; and (3) New Castle County (the "County") (collectively, "Defendants"). In his Complaint, Abbott alleges that he has a right to hold office under the United States and Delaware Constitutions, which right was denied by virtue of the actions of his political opponents who defeated his initiatives and opposed his candidacy. He asserts claims for deprivation of his civil rights under 42 U.S.C. § 1983, based on alleged violations of his First Amendment and Equal Protection rights, a civil conspiracy claim, and a claim of libel and slander.[1] Abbott seeks damages consisting of the salary and benefits he would have received had he won the primary and the general election in 2002, on the theory that Defendants' conduct cost him victory in the primary, which allegedly would have been "tantamount to victory" in the general election.

Shortly after the filing of the Complaint, Defendants moved to stay this action pending the resolution of criminal proceedings against Gordon and Freebery in Federal District Court. The stay was granted by the Superior Court until the criminal actions were concluded. On September 10, 2007, the United States District Court for the Eastern

---

[1] Abbott included a fourth count (the "State civil RICO claim") in which he alleged that Gordon and Freebery engaged in a pattern of civil racketeering in violation of 11 *Del. C.* §§ 1501-11. Docket 1, ¶¶ 61-66. In his Motion to Amend the Complaint and his Answering Brief, however, Abbott sought to withdraw the State civil RICO claim because he acknowledged that "the Civil RICO claim is not viable." Docket 31, at 40. Accordingly, the Court will only address the three remaining counts.

District of Pennsylvania entered a final judgment sentencing Freebery to time served and a fine of $250.00, based on her guilty plea to the felony of making a false statement to a federally insured bank. The following day, the same court sentenced Gordon to probation and a fine of $250.00, based on his guilty plea to two tax record-keeping misdemeanors. The Court dismissed all other criminal counts against the individual defendants, including counts upon which Abbott relied in this Complaint.

Now before the Court are Defendants' Motions to Dismiss the Complaint. After reviewing Abbott's Complaint and the extensive briefing in this matter, the Court concludes that Abbott has not stated a single claim for which this Court may grant him relief. Not only are his counts poorly pleaded, but Abbott fails to support any of his claims with any case law, no has he distinguished contradictory case law or offered any legal basis in support of the relief he seeks. For reasons explained more fully hereafter, Defendants' Motion to Dismiss is granted.

## II. Statement of Facts

### A. History

Abbott served as an elected member of the New Castle County Council for a single term that began on November 10, 1998 and expired on November 6, 2004. He alleges that, during his term, he took positions that "placed him at odds" with Gordon and Freebery (the "individual defendants").[2] According to Abbott, Gordon and Freebery had "no tolerance for dissent or disagreement" and planned to control both the Executive and Legislative Branches of the County government to benefit themselves rather than the

---

[2] Docket 1 (Complaint), ¶ 8.

County citizens.[3]  Under Abbott's view of the facts, the individual defendants retaliated against him by, *inter alia*, conspiring to vote against him.[4]  They did not similarly attack other County Council members who enacted laws that supposedly benefited them.[5]

### B. Allegations Regarding the September 7, 2002 Republican Primary

Abbott asserts in his *pro se* Complaint that, while serving his term as a Council member, he earned a reputation as an "honest, hardworking, dedicated Councilman" who was "recognized as . . . supporting community and nearby residents' positions. . . ."[6]  By the time that campaigning began in earnest for the 2002 Republican primary, according to Abbott, Gordon and Freebery were determined "to try to force Abbott to resign from office or harm Abbott's ability to be re-elected."[7]  He alleges that Gordon and Freebery committed a myriad of actions in opposition to his candidacy including the following:

(1) using County resources to recruit candidates to run against him "beginning in or about the year 2001," and continuing into the year 2002;[8]

(2) developing discriminatory legislation – later dropped – with another Councilwoman that would prohibit Abbott from serving as a Councilman based on his status as an attorney in private practice;[9]

---

[3] *Id.*, ¶ 8; Docket 31 (Ans. Br.), at 4.

[4] Docket 1, ¶ 11.

[5] *Id.*, ¶ 20.

[6] *Id.*, ¶ 21.

[7] *Id.*, ¶ 23.

[8] *Id.*, ¶¶ 23-28.

[9] Docket 1, ¶¶ 24-27.

(3) using County resources to release false information relating to Abbott's representation of a developer;[10]

(4) orchestrating a meeting at the County Executive room on July 11, 2002, at which Abbott was attacked by unidentified real estate developers, allegedly for associating with an unidentified client;[11]

(5) pressuring other unidentified members of the Council to hold a special meeting in August of 2002 to "publicize further attacks" on Abbott, nearer to the primary election;[12]

(6) using the August 2002 meeting to "manufacture" attacks on Abbott and bolster the support of their "hand-picked candidate";[13] and

(7) requiring employees, including law enforcement officers to campaign for their choice candidate by "falsely and maliciously alleg[ing]" that Abbott unethically represented developers.[14]

On September 7, 2002, Abbott lost the Republican primary for reelection to County Council. He claims that the loss is a direct result of the individual defendants' actions and manipulations of County government.

---

[10] *Id.*, ¶¶ 30-31.

[11] *Id.*, ¶¶ 32-33.

[12] *Id.*, ¶ 35.

[13] *Id.*, ¶ 36.

[14] *Id.*, ¶¶ 37-40. According to Abbott, Gordon and Freebery "publicly admitted" that at least eight employees engaged in this conduct. Docket 1, ¶ 38. One police officer involved in the campaigning pleaded guilty to criminal conduct in this regard. *Id.*, ¶ 37. Federal criminal charges related to this conduct against the individual defendants, however, have since been dismissed. Docket 6, Ex. A.

### C. The Counts of Abbott's Complaint

Abbott filed his complaint against Defendants on September 7, 2004, exactly two years after he lost the Republican primary election in his bid for reelection as the Third District Representative of the New Castle County Council.

Count I alleges that the individual defendants are liable for damages under 42 U.S.C. § 1983 for the denial of Abbott's First Amendment speech and association rights and his Fourteenth Amendment rights under the Equal Protection Clause.  Gordon and Freebery allegedly used the County government to retaliate against Abbott and to discriminate against him because he opposed, criticized, and challenged their positions, and refused to be a "rubber-stamp" to actions by the Council.[15]  The County is allegedly liable to Abbott under the doctrine of *respondeat superior* or under a "custom or policy" theory.[16]

Count II asserts that Gordon and Freebery entered into a civil conspiracy.  Abbott alleges that Gordon and Freebery: (1) violated Article I, Section 3 of the Delaware Constitution by using County resources to illegally steal the election from Abbott;[17] (2) violated 9 *Del. C.* § 1183 by using County resources to discriminate against Abbott

---

[15] Docket 1, ¶¶ 15, 21, 44.

[16] *Id.*, ¶ 47.  Abbott seeks to amend this count by stating that the County is not liable under the doctrine of *respondeat superior* but is liable "on the grounds that the scheme concocted by Gordon and Freebery constituted a 'custom and policy' of the County through their conduct, actions and directive and based upon their legal authority as County Executive and Chief Administrative Officer to establish County policy." Docket 31, Ex. A (Motion to Amend Complaint), ¶ 47.  Even if the Court allowed the amendments, the Court would reach the same result, as explained herein.

[17] Docket 1, ¶ 50.

because of his differing political views;[18] (3) violated the Delaware Campaign Financing and Disclosure Act (the "Campaign Act") by using County resources to support the campaign of Abbott's opponent;[19] (4) violated New Castle County Code Sections 2.03.103 and 2.03.104 by using County resources to promote Abbott's opponent and by attacking Abbott "in retribution" for exercising his rights;[20] and (5) violated Abbott's First Amendment Right to Free Speech under the U.S. and Delaware Constitutions, as well as his Fourteenth Amendment Right to Equal Protection under the U.S. Constitution.[21]  According to Abbott, had Gordon and Freebery not conspired against him, he would have won the primary.  Because of his incumbency and the substantial Republican voter registration advantage in the Third County Council District, Abbott submits that primary success was "tantamount to election."[22]

The remaining Count of the Complaint alleges that Gordon and Freebery libeled and slandered Abbott by maliciously making false statements about him, causing him to lose the Republican primary.  Specifically, Abbott submits in Count III that Gordon and Freebery falsely and maliciously accused him of engaging in unethical conduct by representing a well-known developer on a land use project.[23]  Abbott seeks the salary and

---

[18] Id., ¶ 51.

[19] Id., ¶ 52.

[20] Id., ¶¶ 53-55.

[21] Docket 30, ¶ 56. Abbott seeks to add this allegation in his Amended Complaint.  For purposes of this motion, the Court will consider the allegation as part of the Complaint.

[22] Docket 1, ¶ 56.

[23] Id., ¶ 59.  In support of these allegations, Abbott does not identify a single allegedly false statement.

benefits that he would have received as a County Councilman had he been elected, as well as damages resulting from the harm to his reputation and for the loss of the opportunity to continue as a County Council member.[24]

### III. Defendants' Contentions in Support of the Motions to Dismiss

### A. New Castle County's Arguments

The County has raised numerous arguments in support of dismissal of the Complaint. As to Count I, the County argues that Abbott has failed to state a claim under 42 U.S.C. § 1983 ("Section 1983") because: (1) his claim is barred by the applicable statute of limitations; (2) he has no constitutional right to hold public office; (3) he has no First Amendment right to avoid partisan politics; (4) his Equal Protection Clause claim merely restates his First Amendment claim without supporting allegations; (5) the County cannot be held liable under the doctrine of *respondeat superior* or a "custom or policy" theory; and (6) any claims related to the petitioning of the County Council or the County Ethics Commission are barred by the *Noerr-Pennington* doctrine.[25]

With respect to Count II, it is argued that Abbott's civil conspiracy claim is also subject to dismissal for several reasons. First, Abbott has not alleged an underlying tort supporting his civil conspiracy claim. Second, noting the contradiction in having a municipality and its officials conspire with itself, the County argues that it cannot form the requisite intent for a civil conspiracy. Third, the County contends that Abbott cannot prove actual damages because any damages claimed for a lost election are too

---

[24] *Id.*, ¶¶ 57-60.

[25] The *Noerr-Pennington* doctrine is based on two U.S. Supreme Court cases: *Eastern Railroad Presidents Conference v. Noerr Motor Freight Inc.*, 365 U.S. 127 (1961), and *United Mine Workers v. Pennington*, 381 U.S. 657 (1965).

speculative. Finally, the County argues that the allegedly unlawful acts it committed are not actionable under the four bases cited in Abbott's complaint. Specifically, the County contends that (1) it is not alleged that the Republican primary was not "free" or "equal" under Article I, Section 3 of the Delaware Constitution; (2) Section 1183 of Title 9 of the Delaware Code is a criminal statute and does not provide a civil remedy for the loss of a primary; (3) any claim under the Campaign Act is barred because Abbott failed to appeal the administrative ruling, and the Court of Chancery has exclusive jurisdiction over claims under that act; and (4) the County Ethics Code does not provide a civil remedy, barring a private action for enforcement.

With regard to Count III, the libel/slander claim, the County asserts that Abbott fails to set forth any specific statement which could support a defamation claim. The County further contends that any such claim would be barred by the applicable two-year statute of limitations. Further, it is argued that the Complaint fails to plead facts that would satisfy the elements of a defamation claim.

### B. The Individual Defendants' Arguments

Although the individual defendants adopt and endorse all of the arguments made by the County, Gordon and Freebery maintain that, even if the County were found liable under 42 U.S.C. § 1983, they cannot be individually liable because they have qualified immunity. As to Abbott's other claims, Gordon and Freebery argue that they are immune from suit under the doctrine of legislative immunity. Like the County, Gordon and Freebery assert that they cannot be liable under any set of circumstances and ask this Court to dismiss Abbott's complaint.

8

## IV. Standard of Review

When judging a motion to dismiss a complaint for failure to state a claim pursuant to Superior Court Civil Rule 12(b)(6), the Court must "accept as true all of the well-pleaded allegations of fact and draw reasonable inferences in the plaintiff's favor.[26] For purposes of a motion to dismiss, "even vague allegations are 'well-pleaded' if they give the opposing party notice of the claim."[27] The Court will not, however, accept as true conclusory allegations "without specific supporting factual allegations."[28] The Court will also refuse "to accept every strained interpretation of the allegations proposed by the plaintiff."[29] The Court must determine "whether a plaintiff may recover under any reasonably conceivable set of circumstances susceptible of proof under the complaint."[30] Where a plaintiff may recover, the Court must deny the motion to dismiss.[31]

## V. Analysis

### Overview

Abbott's Complaint is a last-ditch effort, by a disillusioned and defeated candidate for re-election, to vindicate himself through the judicial process, long after his failure to achieve his goals politically. Notwithstanding a long line of state and federal authorities to the contrary, Abbott attempts to characterize his timeworn dispute with the individual

---

[26] In re *Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del. 2006).

[27] *Id.*

[28] *Id.* (citing In re *Santa Fe Pac. Corp. S'holder Litig.*, 669 A.2d 59, 65-66 (Del. 1995); *Solomon v. Pathe Commc'ns Corp.*, 672 A.2d 35, 38 (Del. 1996)).

[29] *Id.* (quoting *Malpiede v. Townson*, 780 A.2d 1075, 1083 (Del. 2001)).

[30] *Spence v. Funk*, 396 A.2d 967, 968 (Del. 1978).

[31] *Id.*

defendants as a violation of his constitutional right to re-election – a right for which he provides no legal or constitutional support – in order to collect damages that he allegedly sustained by his loss of a primary election almost six years ago.

In order to challenge the results of his 2002 bid for county governmental office in a primary election, Abbott complains of all sorts of corrupt schemes, plots and retaliatory actions on the part of his political opponents, Tom Gordon and Sherry Freebery, to oust him from an office which he claims he had an unfettered constitutional entitlement to hold, citing a myriad of legal theories, but no state or federal case law, as support. To assure that the damages he seeks can be paid from a far deeper pocket, Abbott has also sued New Castle County, relying on various theories of liability which he attempts to frame under the First Amendment and the Equal Protection Clause of the United States Constitution, as well as the common law of civil conspiracy. All of these claims, both against the individual defendants and against the County, fail as a matter of law for a whole host of reasons, not the least of which is the extensive body of case law precluding precisely what Abbott is endeavoring to accomplish in this litigation – that is, a judicial review of the actions of his political opponents in a campaign that took place over six years ago, in order to gain monetary compensation. Considering the long-standing nature of this dispute and the lengthy period of time that has elapsed since the challenged primary election, Abbott appears to be an individual who will stop at nothing to justify the loss of his county council seat.

What is perhaps most troubling about this case is the enormous amount of money, effort and time that the defendants have had to expend to defend against Abbott's meritless claims. At a time when New Castle County is contemplating tax hikes to

finance the basic and essential services that it must provide to its citizens, it has

retain a prominent Wilmington law firm to defend these unprecedented claims.

secret that multimillion dollar budget cuts in the past several years have not eliminated

the County's spending deficit, which is threatening to exhaust the cash reserves and

bankrupt the County by 2012. Yet, this lawsuit has further challenged the County's

resources, as well as those of the Court, and is especially unseemly because it was filed

by an experienced member of the Delaware Bar. Even more problematic is that Abbott's

contentions, in large part, are not substantiated by case precedent from this or any

jurisdiction. In fact, none of the only twelve cases he has cited in his brief provide any

support for his right to relief. And, nowhere in Abbott's self-absorbed, rambling, and at

times intemperate, brief does he even attempt to distinguish any of the myriad of

decisions that plainly establish that damages are not available to defeated candidates as a

means of post-election relief.                                   ———

Abbott is hardly the first politician to lose his incumbency because of an

opponent's negative tactics or mudslinging campaign. In the last decade or so vilification

and disparaging attacks on one's political opponent have become the rule rather than the

exception. Those who enter the political domain must be impervious to such criticism.

Unable to accept defeat in a dispassionate and sportsmanly manner, Abbott has filed this

lawsuit as a vehicle to rehash the reasons for his loss of the primary election. Quite apart

from the inappropriateness of allowing a judge or jury to undertake the task of monitoring

the vagaries and nuances of the political process, the instant litigation risks the more

serious potential of intrusion of political partisanship into the courtroom, where it clearly

has no place. Disputes such as these belong in the political arena, where they have

rightly been placed. In essence, Abbott's lawsuit seeks to substitute the civil jury for the larger more representative electorate, which is an unsuitable means of supervising the political process. In a very real sense, this case illustrates just how irrationally and emotionally invested one can become in the quest to maintain political power.

It is against this backdrop that the Court is called upon to review the voluminous pleadings and briefs filed in this case. I now turn to the specific arguments advanced by the Defendants in support of their motions to dismiss.

## I. The Complaint Fails to State a Claim Under 42 U.S.C. § 1983 Against the County or the Individual Defendants

### A. The 42 U.S.C. § 1983 Claim Against the Individual Defendants

Abbott's first claim is that Gordon and Freebery, using the County as their tool, violated his rights to Equal Protection under 42 U.S.C. § 1983 ("Section 1983") because they treated him differently from other County Council members. Section 1983 states, in pertinent part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, . . . subjects . . . any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action . . . .[32] To state a Section 1983 claim, a plaintiff must allege "the violation of a right secured by the Constitution or laws of the United States and must show that the alleged deprivation was committed by a person acting

---

[32] 42 U.S.C. § 1983.

12

under color of state law."[33]  "Acting under color of state law" requires that the defendant be "clothed with the authority of state law."[34]

Accepting Abbott's well-pleaded allegations, the Court agrees that the defendants were acting under "color of state law."  Defendants argue, however, that Abbott has failed to allege a violation of a Constitutional right.  The rights that Abbott claims were abridged are a right to seek and serve in public office that was deprived through illegal government interference, a right to freedom of speech and association under the First Amendment, and a right to Equal Protection of the laws under the Fourteenth Amendment by the individual defendants' decision to treat Abbott differently from other Council members (the "class of one" claim).  The Court will address each claimed right separately.

### 1. Defendants did not Violate Any Constitutional Right to Seek and Serve in Public Office

Despite Abbott's claim that he has a Constitutional right to "seek and serve in public office," he has not offered a single statute or case establishing this right.  That may be so because so many other courts, including the United States Supreme Court, have specifically held that there is no fundamental right to serve in public office,[35] and that there is no fundamental constitutional right to win an election.[36]

---

[33] *Cullom v. Boeing, Inc.*, 2007 WL 1732097, at *5 (D. Del. Jun. 24, 2007) (quoting *West v. Atkins,* 487 U.S. 42, 48 (1988)).

[34] *Id.* (citing *West*, 487 U.S. at 49).

[35] *See, e.g., Grimes v. Miller*, 448 F. Supp. 2d 664, 673 (D. Md. 2006) (holding that the plaintiff had no "constitutionally protected interest in life, liberty, or property . . . in her elected office"); *Velez v. Levy*, 401 F.3d 75, 87 (2d Cir. 2005) (echoing other cases that a plaintiff "lacks a constitutionally cognizable property interest in her employment as an elected official"); *Guzman Flores v. College of Optometrists*, 106 F. Supp. 2d 212, 215

The fact of the matter is that it was the decision of the electorate, not Defendants, that caused Abbott to lose the election. Thus, even if the right to hold and seek office were deemed fundamental, Defendants did not violate that right. In *Flinn v. Gordon*, the Eleventh Circuit Court of Appeals rejected a Section 1983 claim on the same grounds:

> Flinn was not removed from office during the term to which he was elected, but was voted out of office during the 1980 Florida elections. Although he certainly had a constitutional right to run for office and to hold office once elected, he had no constitutional right to win an election. This was a political decision for the Florida electorate. *See Gordon v. Leatherman*, 450 F.2d 562, 567 (5th Cir. 1971). "[T]here is a fundamental difference between the expulsion or removal of a public official by the state and that same activity by the voters. . . . Any governmental body is required to act fairly, but that is not true as to a voter. Insofar as the United States Constitution is concerned, an elector may vote for a good reason, a bad reason, or for no reason whatsoever." . . . In summary, Flinn has failed to allege any act for which he would be entitled to relief under § 1983. Consequently, he cannot show the violation of any clearly established constitutional or statutory right.[37]

Likewise, Abbott has no Constitutional right to win an election. Nothing in Abbott's Complaint suggests that the Defendants barred him from seeking or holding office. Abbott does not argue, nor can he, that he was denied a spot on the Republican primary ballot or that Defendants expelled him from his position. Even if the electorate

---

(D. Puerto Rico 2000) (finding that "the right to be a candidate for elective office is not a fundamental right"); *Taylor and Marshall v. Beckham*, 178 U.S. 548, 577 (1900) (noting that "[t]he nature of the relation of a public officer to the public is inconsistent with either a property or a contract right."); *Parks v. City of Horseshoe Bend, Arkansas*, 480 F.3d 837, 840 (8th Cir. 2007) ("There is no constitutional right to be elected to a particular office.").

[36] *See, e.g., Biener v. Calio*, 361 F.3d 206, 216 (3d Cir. 2004) (finding that restrictions on the right to run for state political office do not violate the Due Process Clause); *Snowden v. Hughes*, 321 U.S. 1, 7 (1944) (reaffirming that "an unlawful denial by state action of a right to state political office is not a denial of a right of property or of liberty secured by the due process clause"). Notably, the *Biener* case addressed the right to run for state political office in Delaware.

[37] *Flinn*, 775 F.2d at 1554.

voted against him as a result of statements or actions of Defendants, the electorate can refuse to reelect Abbott "for a good reason, a bad reason, or for no reason whatsoever."[38] Thus, any right to seek and hold public office cannot form the basis of Abbott's Section 1983 claim.

### 2. The Complaint Fails to Establish a Violation of Abbott's Constitutional Rights to Freedom of Speech and Association

Abbott next alleges that Gordon and Freebery's retaliatory actions violated his First Amendment right to freedom of speech and association. Although Abbott cannot claim that he was prohibited from speaking, or that his speech was limited, he submits that Gordon and Freebery interfered with his right to free speech in retribution for his statements. Abbott seems to suggest that Gordon and Freebery, through the use of County resources, violated his First Amendment rights by damaging his reputation, acting in a retaliatory manner, and unlawfully interfering with his right to free speech.

#### i. Damage to Abbott's Reputation is Not Actionable

The United States Supreme Court has held that damage to one's reputation alone cannot rise to the level of a Constitutional deprivation of any fundamental right subject to Section 1983.[39] To state a valid claim under Section 1983 for damage to one's reputation, a plaintiff must allege both damage to one's reputation *and* the distinct alteration or extinguishment of a recognized state or federal right, such as continued government employment.[40]

---

[38] *Id.*

[39] *Paul v. Davis*, 424 U.S. 693, 705-07 (1976).

[40] *Id.* at 710-12.

Abbott's claim is remarkably similar to the *Flinn*[41] case quoted above. There, two of Flinn's legislative aides complained that Flinn had sexually harassed them. After conducting a full investigation, the Florida House of Representatives voted to publicly reprimand him. Flinn then lost the 1980 election. Flinn filed a complaint against the former legislative aides and other representatives alleging that they violated Section 1983 because they "(1) damaged his personal and political reputation, (2) diminished his personal and family privacy, and (3) deprived him of his position as a state legislator."[42] Finding no basis for an action under Section 1983, the Eleventh Circuit dismissed Flinn's complaint:

> After an examination of the complaint and applicable law, we find that none of these injuries constitute the loss of a federal right and, consequently, that no relief is available under § 1983. . . . The claim for damage to his reputation is precluded by the decision of the Supreme Court in *Paul v. Davis*, 424 U.S. 693, 96 S. Ct. 1155, 47 L. Ed. 2d 405 (1976), that injury to reputation alone is not actionable under § 1983. The Court indicated that injury to reputation coupled with the loss of another interest, such as continued government employment, might be actionable under § 1983. 424 U.S. at 705-07, 96 S. Ct. at 1162-63, 47 L. Ed. 2d at 416-17. The facts as alleged do not present such a situation here. [Appellee] may have injured Flinn's reputation, but she did not remove him from his legislative office. That decision was made by Flinn's constituents during the 1980 elections. . . .[43]

Here, Abbott has similarly failed to identify the loss of any Constitutional right that might form a viable action under Section 1983. Although he has alleged that Gordon and Freebery defamed him, he cannot maintain that they prohibited him from speaking, or that they deprived him of his position as a County Council member. Rather, as in the

---

[41] 775 F.2d 1551 (11th Cir. 1985).

[42] *Flinn*, 775 F.2d at 1553.

[43] *Id.* at 1553-54.

*Flinn* case, Abbott's loss of the 2002 Republican primary was the direct result of the New Castle County voters' decision to endorse another candidate. Since the Defendants did not deprive him of any federally or state recognized right, such as continuing government employment, any harm to Abbott's reputation is not actionable.

### ii. Retaliation is Not Actionable

Abbott's next argument in support of his Section 1983 claim is that he has a right to be free from retaliatory actions by Gordon and Freebery. To state a violation of the First Amendment through retaliatory action, a plaintiff must state: "(1) that [the plaintiff] engaged in protected activity; (2) that the government responded with retaliation; and (3) that the protected activity was the cause of the retaliation."[44] Plaintiff must show that the defendants' retaliation impaired his Constitutional rights.[45]

Although Abbott might arguably meet all three prongs of the foregoing test, his status as an elected official during this period precludes a retaliatory action claim under the First Amendment. As an example, in *Footit v. Van De Hey*,[46] a member of the County Board of Supervisors brought a claim under Section 1983 for retaliatory action in violation of the First Amendment. Footit alleged that two other board members retaliated

---

[44] *Estate of Smith v. Marasco*, 318 F.3d 497, 512 (3d Cir. 2003).

[45] *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). Abbott also relies on *Blankenship v. Manchin*, 471 F.3d 523 (4th Cir. 2006), in which the Court held that a public official may not use his power to retaliate against an individual for exercising a Constitutional right. *Blankenship*, 471 F.3d at 533. That case, however, addressed a public official's retaliation against a *private* citizen in which the official threatened administrative retaliatory action. The *Blankenship* case did not address "retaliation" in the political arena, in which *both* figures were public officials and in which the First Amendment right to free speech does not operate to limit discourse between politicians. The *Blankenship* holding is thus inapposite.

[46] 2005 WL 1563334 (E.D. Wisc. Jun. 25, 2005).

against him after he spoke against funding a wetland preserve. Footit claimed that they

accused him of criminal activity as a result of "the position he took on a matter of public

interest."[47]  In dismissing his Section 1983 claim, the District Court emphasized that

Footit had no First Amendment right to be free from criticism by his political opponents:

> Politics, in its less refined sense, is about winning and maintaining control
> over government. Merriam-Webster's Collegiate Dictionary 901 (10th Ed.
> 1999).  In a democratic republic, such as ours, politicians get elected by
> convincing voters that they and the policies they support are better for
> their constituents than their opponents and the policies they support. They
> do this in large part by criticizing their opponents and their policies. As
> long as the criticism is not defamatory and made with malice, the law
> affords no protection to the person targeted. On the contrary, it is the right
> of the person criticizing a public official that is protected by the
> Constitution. *See New York Times Co. v. Sullivan*, 376 U.S. 254, 269-70,
> 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964).  Even a false charge of criminal
> conduct against an official or candidate is constitutionally protected unless
> it is made with knowledge of its falsehood or with reckless disregard of
> whether it was false or not. *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 277
> (1971).[48]

Importantly, while the Court recognized that a politician does not forego his First

Amendment rights when he becomes an elected official, the Court noted that the First

Amendment can still be limited:

> This is not to say that Footit has forfeited his First Amendment right to
> speak out on issues of public concern.  As the Supreme Court observed
> almost forty years ago, "[t]he manifest function of the First Amendment in
> a representative government requires that legislators be given the widest
> latitude to express their views on issues of policy." *Bond v. Floyd*, 385
> U.S. 116, 135-36, 87 S. Ct. 339, 17 L. Ed. 2d 235 (1966). But as a policy-
> making official, Footit's vindication against his opponents, absent proof of
> libel or slander, must be found in the ballot box, not the courts.  For this
> reason, his claim must be dismissed.[49]

---

[47] *Footit*, 2005 WL 1563334 at *4.

[48] *Id.*

[49] *Id.* at *5. *See also Romero-Barcelo v. Hernandez-Agosto*, 75 F.3d 23, 34 (1st Cir.
1996) (finding that a politician who lost his reelection bid for governor of Puerto Rico
had no claim under Section 1983 for violations of the First Amendment because there is

The Eighth Circuit Court of Appeals dismissed an analogous Section 1983 claim filed by a former recorder/treasurer of the City of Horseshoe Bend after she lost her bid for reelection. In *Parks v. City of Horseshoe Bend, Arkansas*,[50] Parks alleged a civil conspiracy under Section 1983 against the City of Horseshoe Bend, Arkansas, its mayor, and other city council members, claiming that the defendants violated her constitutional rights "by conspiring to prevent her re-election in retaliation for her vocal opposition to [the mayor]."[51] In affirming the district court's decision to dismiss Parks's claim, the Eighth Circuit Court of Appeals echoed the *Footit* Court in confirming that the Constitution does not protect the right to hold office.[52] The Court further recognized that the defendants could not be liable under Section 1983 for retaliatory action:

> Further, while retaliation against an individual based upon the exercise of her First Amendment rights can form the basis of § 1983 liability, such a claim requires adverse action by a government official that causes an injury to the plaintiff. . . . Parks fails to put forth evidence establishing a link between the alleged actions taken by the defendants and her electoral defeat. Because the decision not to re-elect Parks as recorder/treasurer was made by the voters of Horseshoe Bend, the defendants cannot be said to have *caused* Parks's alleged injury. Thus, even if we assume Parks's speech opposing the mayor in policy disputes was protected by the First Amendment and the defendants acted in some way against Parks because

---

"no First Amendment protection for 'a politician whose rights to freedom of speech, freedom of association, and freedom to disassociate [oneself] from unpopular views have been injured by other politicians seeking to undermine his credibility within his own party and with the electorate.'"); *Camacho v. Brandon*, 317 F.3d 153, 161-62 (2d Cir. 2003) (holding that a policy-maker plaintiff has no claim for a violation of the First Amendment because "to hold otherwise would subject to litigation all manners and degrees of politically motivated, retaliatory conduct directed at public officials.").

[50] 480 F.3d 837 (8th Cir. 2007).

[51] *Parks*, 480 F.3d at 839.

[52] *Id.* at 840.

of those statements, the defendants' actions did not cause Parks to suffer a deprivation of a constitutional right.[53]

Just as in *Footit* and *Parks*, Abbott's retaliatory claim under the First Amendment is futile. As a politician, Abbott should have expected to endure criticism and incrimination for his positions. Abbott cannot claim that Gordon and Freebery's decision to vote and speak against him, because he voted for matters "on the merits" and took positions opposing them, constitutes a violation of the First Amendment sufficient to support a Section 1983 claim. Rather, as recognized in *Parks*, even if Gordon and Freebery spoke out against him, he has not established any direct nexus between his defeat and the statements attributed to Gordon and Freebery.[54] Since a Section 1983 claim cannot be based on defamation[55] in the political setting relating to an election loss, Abbott's Section 1983 claim is not actionable.[56]

---

[53] *Id.* (citations omitted).

[54] The Court cannot envision any set of circumstances in which Abbott could prove a causal link. Abbott would, in effect, have to obtain testimony from all of the voters in the 2002 Republican Primary, including those who have moved, are now deceased, or do not remember their motivation for voting for or against him almost six years ago, and offer proof that their decisions were made because of the statements and conduct of Gordon and Freebery. Not only are the Courts ill-equipped to handle such burdensome evidence, but they refuse to rehash political elections.

[55] Abbott's tort defamation claims will be addressed *infra*.

[56] *See Emanuele v. Town of Greenville*, 143 F. Supp. 2d 341, 345 (W.D.N.Y. 2006) ("Courts have not allowed claims for defamation under [Section] 1983 when the allegation is loss of an election due to allegedly defamatory statements. *See Kaylor v. Fields*, 661 F.2d 1177 (8th Cir. 1981); *Lahaza v. Azeff*, 790 F. Supp. 88 (E.D. Pa. 1992); *Flinn v. Gordon*, 775 F.2d 1551 (11th Cir. 1985).").

### iii. Any Unlawful Interference by Defendants is Not Actionable

Abbott next argues that he has a First Amendment right to "be free from unlawful government interference with the exercise of First Amendment rights."[57]  A remedy under these sections for a violation of the First Amendment for private conduct requires such "a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself."[58]  Private conduct may constitute state action, and therefore be the basis for an action under the Fourteenth Amendment or Section 1983, if:

> (1) the private entity exercises powers that are traditionally exclusively reserved to the State (the public function test);
> (2) the State exercised such coercive power that the private actor was compelled to act as it did (the state compulsion test); or
> (3) the State is intimately involved in the challenged private conduct so as to be a joint participant (the symbiotic relationship test).[59]

Even assuming that the actions of Gordon and Freebery make them subject to suit under the symbiotic relationship test, the main (though not only) problem with Abbott's claim of a right to be free from unlawful government interference under the First

---

[57] Docket 31, at 24.

[58] *Carson v. Springfield Coll.*, 2006 WL 2242732, at *1 (Del. Super. Ct. Aug. 4, 2006) (citing *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) (citations omitted)).

[59] *Id.* (citations omitted).  The *Carson* Court noted:

> The Third Circuit Court of Appeals, as well as the District Court for the District of Delaware, have recognized and applied these tests for the purposes of determining whether private action may be treated as that of the State. *See Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250 (3rd Cir. 1994); *Thompson v. Cmty. Action of Greater Wilmington, Inc.*, 567 F.Supp. 1159 (D. Del. 1983).

*Id.* at *2 n.13.

Amendment is that at no time does he articulate how the individual defendants or the County violated his First Amendment right to free speech through their unlawful conduct. Stated differently, Abbott lacks standing to bring this claim. Establishing standing requires that the plaintiff: (1) demonstrate an "injury in fact," which is "concrete," "distinct and palpable," and "actual or imminent"; (2) establish a causal connection between the injury and the conduct complained of; and (3) show a "substantial likelihood" that the requested relief will remedy the alleged injury.[60]

Abbott has failed to show any causal connection between the individual defendants' unlawful use of County resources and any First Amendment violation. To be sure, had the County prevented him from speaking or barred him from County meetings, he might have a viable claim under the First Amendment. Abbott, however, does not allege that he was denied the right to speak, or that he was ejected from County meetings, or anything that would suggest his right to speech was limited. He merely contends that Gordon and Freebery crafted a conspiratorial scheme to use County resources to harm his chances for reelection. While these actions may constitute criminal conduct or violations of other rights of Abbott, none of them establish a causal connection to a violation of Abbott's First Amendment rights under either Section 1983 or the Fourteenth Amendment.[61]

---

[60] *McConnel v. Fed. Election Comm'n*, 540 U.S. 93, 224-25 (2003) (citations omitted).

[61] *See, e.g., Page v. Baker*, 2007 WL 432980, at *2 (D. N.J. 2007) (citing *Mckee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006) ("Under the second requirement for establishing a First Amendment retaliation claim, a plaintiff must establish that 'the alleged retaliatory conduct was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights.'"); *see also Colson v. Grohman*, 174 F.3d 498, 512 (5th Cir. 1999) ("[Plaintiff] has alleged only that she was the victim of criticism, an investigation (or an

### 3. The Complaint Fails to State an Equal Protection Clause Claim

Lastly, Abbott asserts that Defendants' alleged discrimination against him in violation of the Equal Protection Clause of the Fourteenth Amendment supports his Section 1983 claim.  Alleging a "class of one" theory, he submits that Gordon and Freebery created an election issue against him personally, while treating other Council members with no similar animosity.  Abbott also contends that the individual defendants used County resources to attack him in his bid for reelection, but did not similarly use resources against any other candidate.

To allege a violation of the Equal Protection Clause of the Fourteenth Amendment under a "class of one" theory, a plaintiff must allege that he has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."[62]  Other courts have noted that, to be similarly situated, the plaintiff must make a showing that the other individuals who were not subject to discrimination are "*prima facie* identical in all relevant respects."[63]

Courts have dismissed Equal Protection claims under Section 1983 where they are merely a restatement of the plaintiff's First Amendment claims.[64]  Abbott's Equal

---

attempt to start one), and false accusations: all harms that, while they may chill speech, are not actionable under our First Amendment retaliation jurisprudence.").

[62] *Hill v. Borough of* Kutztown, 455 F.3d 225, 239 (3d Cir. 2006) (citing *Village of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000) (per curiam)).

[63] *Purze v. Village of Winthrop Harbor*, 286 F.3d 452, 455 (7th Cir. 2002).

[64] *See, e.g., Morales-Santiago v. Hernandez-Perez*, 488 F.3d 465, 471 (1st Cir. 2007); *Ruiz-Casillas v. Camacho-Morales,* 415 F.3d 127, 134 (1st Cir. 2005); *Nestor Colon Medina & Sucesores, Inc. v. Custodio,* 964 F.2d 32, 45 (1st Cir. 1992); *see also Sizemore v. City of Dallas,* 443 F. Supp. 2d 1201, 1204-05 (D. Or. 2006) (citing decisions from the First, Second, Sixth, Seventh, Ninth and Tenth Circuit Court of Appeals precluding a

Protection claim in this case merely restates his First Amendment claim that Gordon and Freebery retaliated against him for not being "on the team" and for speaking out against them. The Court has already determined that Abbott has failed to allege a First Amendment violation or retaliatory action supporting a Section 1983 claim. Moreover, although Abbott has alleged that Gordon and Freebery intentionally treated him differently from other Council members, he has failed to establish that he was *prima facie* identical to them in all relevant respects.

To illustrate, the Seventh Circuit Court of Appeals in *Ciechon v. City of Chicago*[65] found a *prima facie* case of a violation of Equal Protection between two paramedics where only one paramedic was disciplined after the death of a patient, even though both paramedics had experienced the same circumstances and were equally responsible for the patient's care.[66] In a different circumstance, the same Circuit found that three different developers were not similarly situated because they "requested different variances than the [Plaintiffs] requested; submitted their plats during different time periods; and had their plat requests granted by different and previous Boards."[67]

In this instance, Abbott was not similarly situated with the other Council members. Abbott was a Republican making a bid for reelection to the County Council in

---

Section 1983 action based on the Equal Protection Clause because such actions must be based on a First Amendment violation or retaliatory acts).

[65] 686 F.2d 511, 522-24 (7th Cir. 1982).

[66] *Ciechon*, 686 F.2d at 522-24.

[67] *Purze*, 286 F.3d at 455; *see also Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 618 (7th Cir. 2000) (holding that "[d]ifferent employment decisions, concerning different employees, made by different supervisors, are seldom sufficiently comparable to establish a prima facie case of discrimination for the simple reason that different supervisors may exercise their discretion differently").

a Republican primary. He does not allege that the other Council members, whom Gordon and Freebery allegedly treated differently, were of the same or different political parties, or were even seeking reelection. These relevant circumstances, which would illuminate Gordon and Freebery's treatment of Abbott, are not mentioned in either his Complaint or his Answering Brief. In fact, the only inference the Court can draw from the Complaint is that the other members were not running for reelection at that time. Abbott's failure to allege that the other members were similarly situated is fatal to his Equal Protection claim.

What should be obvious from this analysis is that the gist of this case is that the political process did not work in Abbott's favor. In making his reelection bid, Abbott, a politician, should have expected to be treated differently from other candidates. Indeed, a politician's goal in any campaign is to differentiate himself from other candidates so as to convince the electorate to vote for him. Every politician should expect attacks by opponents to lessen one's chances of victory. In essence, then, Abbott has failed to state a violation of his Equal Protection rights under a "class of one" theory to support a Section 1983 action.

### B. Abbott's 42 U.S.C. § 1983 Claim Against the County

Although Abbott's Section 1983 claims against the individual defendants cannot survive a motion to dismiss, he also asserts a Section 1983 claim against the County because its "execution of a policy or custom . . . inflict[ed] the injury."[68] A plaintiff must

---

[68] *Watson v. Abbington Twp.*, 478 F.3d 144, 155 (3d Cir. 2007) (citing *Monell v. New York City Department of Social Services*, 436 U.S. 658, 694 (1978)). Abbott, recognizing that the County cannot be liable for a violation of Section 1983 under a theory of *respondeat superior*, sought to amend his complaint to remove the "respondeat superior" language and replace it with the language of "policy or custom" that is required. *See*

offer evidence that "the government unit itself supported a violation of constitutional rights."[69] Specifically, "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom."[70]

In this case, Abbott's claim against the County fails for a variety of reasons. First, and most importantly, as explained *supra*, Abbott has failed to allege a Constitutional violation of his rights under Section 1983.[71] Second, Abbott has failed to allege any "policy or custom" in which the County engaged. He has not alleged any "affirmative proclamation" made by the County to limit or chill the exercise of his Constitutional rights. Nor has he demonstrated the County's "acquiescence in a well-settled custom." Although he complains that Gordon and Freebery manipulated the County and its resources to vote consistently against his positions, he fails to allege that the entire Council or other members were in agreement with Gordon and Freebery. He does not even allege that Gordon and Freebery, as County Executive and Chief Administrative Officer, were the sole decision-makers for the County. The allegation that Gordon and Freebery voted against him because he refused to "rubber-stamp" their decisions does not alone establish a custom or policy of the County. Accordingly, the claim against the County must also be dismissed.

---

*Murphy v. Correctional Med. Servs., Inc.*, 2005 WL 2155226, at *5 (Del. Super. Ct. Aug. 19, 2005).

[69] *Watson*, 478 F.3d at 155.

[70] *Id.* (citing *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).

[71] *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (holding that a city could not be liable to a plaintiff for actions of one of its officers where the plaintiff suffered no constitutional harm).

26

### C. The Individual Defendants' and County's Defenses

Defendants raise five additional arguments in favor of dismissal. Specifically, Defendants argue: (1) that the Section 1983 claims are barred by the applicable statute of limitations; (2) that the Section 1983 claims are barred by the *Noerr-Pennington* doctrine; (3) that the Section 1983 claims do not, in any event, warrant monetary relief; (4) that Gordon and Freebery are entitled to qualified immunity from suit; and (5) that Gordon and Freebery are entitled to legislative immunity from suit. The Court will address each argument briefly hereafter.

### 1. The Statute of Limitations Bars Abbott's Section 1983 Claim

As recognized by Delaware and Federal courts, Section 1983 is subject to a two-year statute of limitations.[72] Defendants argue that all of the allegations in Abbott's complaint occurred *before* the Republican primary on September 7, 2004, meaning that the latest date that he could have filed this action was September 6, 2004. In response, Abbott argues that he has alleged conduct through September 7, 2002. In the alternative, Abbott argues that the statute of limitations period was tolled under either the "continuing wrong" exception or the "date of discovery" exception.

Generally speaking, a cause of action accrues on the date that the action could first be brought.[73] For purposes of computing the statute of limitations period, the Court

---

[72] *See Parker v. Gadow*, 893 A.2d 964, 968 (Del. 2006) ("[T]he only remedy available to Parker was under § 1983. That statute provides for a two-year statute of limitations."); *Moody v. Kearny*, 380 F. Supp. 2d 393, 397 (D. Del. 2005). Although Abbott claims that the applicable statute of limitations is three years because his claim is an action for "injurious conspiracy . . . without force" under 10 *Del. C.* § 8106, the Supreme Court's explicit recognition in *Parker* that any claim under Section 1983 is subject to a two-year limitations period is directly contradictory.

[73] *Carr v. Dewey Beach*, 730 F. Supp. 591, 603 (D. Del. 1990).

does not include the day of the act but begins the running on the next day.[74] Interestingly, while Defendants' conduct allegedly caused him to lose the 2002 Republican primary election, nowhere does Abbott allege that the Defendants did anything on the *actual date* of the election.[75] At the latest, then, the conduct giving rise to Abbott's claim occurred on September 6, 2002. Any conduct that occurred before September 7, 2002 would be barred.

In this case, all of the conduct Abbott describes, including retaliation against him for his speech, disparate treatment for his refusal to "rubber stamp" the individual defendants' decisions, a scheme to end his service in office, and use of County resources to campaign against him, would necessarily have occurred before the primary. Therefore, under Superior Court Civil Rule 6(a), the limitations period would begin on September 7, 2002 – the next day – and would expire on *September 6, 2004*, exactly two years after the alleged violations. Since none of the alleged conduct occurred *on or after* September 7, 2002, the claims are only viable if the statute of limitations is tolled.

Abbott's first argument, that the "continuing wrong" exception tolled the statute of limitations, is not availing. With respect to Section 1983 violations, federal law applies the time of injury rule. That is, the period begins to run when the plaintiff

---

[74] *See* Super. Ct. Civ. R. 6(a) ("In computing any period of time prescribed or allowed by these Rules, by order of court, or by statute, the day of the act, event or default after which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included . . . ."). *But see Acierno v. Goldstein*, 2005 WL 3111993, at *5 (Del. Ch. Nov. 16, 2005) (holding that an action that began to accrue on December 31, 1997 was "presumptively time barred" on December 31, 2000 under the applicable three year statute of limitations).

[75] Interestingly, Abbott sought to amend his Complaint by asserting that he was not aware that police officers campaigned against him until he saw them on September 7, 2002, the date of the Republican primary. For reasons discussed hereinafter, even if the Court were to accept this amendment, his Complaint still fails to state upon which the Court may grant relief.

"knows or has reason to know" of the injury that is the basis of his action.[76] However, a plaintiff may bring an action after the statute of limitations has expired if the acts complained of constitute a continuing wrong. The concept of a continuing wrong is only applicable when the alleged wrongful acts are "so inexorably intertwined that there is . . . *one continuing wrong.*"[77] If the plaintiff can support the allegation of a continuing wrong with facts in the record, the statute of limitations will run from the date of the last negligent act.[78]

Delaware courts have applied this exception narrowly and only in unusual situations.[79] The "continuing wrong" exception has not been applied to Section 1983 actions,[80] nor does it apply where "numerous repeated wrongs of similar, if not the same, character over an extended period" are alleged.[81] Where the harms can be segmented, the continuing wrong exception is inapplicable, and the statute of limitations will apply to

---

[76] *Kerns v. Dukes*, 2004 WL 766529, at *4 (Del. Ch. Apr. 9, 2004) (citing *Marker v. Talley*, 502 A.2d 972, 975 (Del. Super. Ct. 1985))

[77] *Desimone v. Barrows*, 924 A.2d 908, 925 (Del. Ch. 2007) (citing *Ewing*, 520 A.2d at 662).

[78] *Ewing*, 520 A.2d at 662.

[79] *Desimone v. Barrows*, 924 A.2d 908, 924-25 (Del. Ch. 2007).

[80] *See, e.g., Ewing v. Beck*, 520 A.2d 653 (Del. 1987) (discussing the continuing wrong exception in the context of continuing medical negligence); *Desimone v. Barrows*, 924 A.2d 908, 924-25 (Del. Ch. 2007) (noting that "[t]his court's written decisions, though, do suggest that the doctrine is a narrow one that typically is applied only in unusual situations, such as where a plaintiff acquires his stock after a particular transaction has begun but before it is completed"); *Kahn v. Seaboard Corp.*, 625 A.2d 269 (Del. Ch. 1993) (discussing the continuing wrong exception in the context of a shareholder derivative action).

[81] *Desimone*, 924 A.2d at 925 n.39 (citing *Price v. Wilmington Trust Co.*, 1995 WL 317017, at *2 (Del. Ch. May 19, 1995)).

each allegation of wrongdoing rather than to the course of wrongful acts as a whole.[82] Significantly, where the plaintiff knows, or in the exercise of reasonable diligence could have discovered that a cause of action exists, but fails to notify the defendant to correct the wrong, courts have been hesitant to apply the exception.[83]

In the context of alleged violations of one's First Amendment rights, the Third Circuit Court of Appeals has held:

> First Amendment retaliation claims are always individually actionable, even when relatively minor. The statute of limitations, therefore, begins to run when an alleged retaliatory act occurs. . . . Discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.[84]

All of the actions which Abbott identifies to support his Complaint can be segmented into separate occurrences such that the statute of limitations would run upon the occurrence of each act. Obviously, any retaliation against him for speech occurred prior to the primary election. Similarly, any attempts by Defendants to violate Abbott's Equal Protection rights occurred while he was still a Councilman. It is also undisputed that Abbott knew of these violations well before the primary. In fact, all of the allegations in the Complaint suggest a course of conduct that Abbott knew was occurring

---

[82] *Price*, 1995 WL 317017 at *3 (citing *Ewing*, 520 A.2d at 664).

[83] *See Ewing*, 520 A.2d at 663 ("A more difficult question is raised by a situation, like the present case, where the patient knows or in the exercise of reasonable diligence could have discovered that a cause of action exists for continuing negligent medical treatment and thereafter permits the physician to treat him anyway. As we observed, persuasive arguments have been made that it is only fair to give a physician an opportunity to take corrective action.").

[84] *Myers v. County of Somerset*, 515 F. Supp. 2d 492, 501 (D. N.J. 2007) (citing *O'Connor v. City of Newark*, 440 F.3d 125, 127-28 (3d Cir. 2006).

at the time he served as Councilman and throughout the campaign.[85]   The continuing wrong exception is plainly inapplicable in these circumstances.

Abbott's second basis to toll the statute of limitations, the "date of discovery" exception, is equally unavailing.   Under that theory, the statute of limitations may be tolled where there are no observable factors that would provide notice to a layman of a problem,[86] and the statute begins to run "when the defect is, or should have been, discovered."[87]   As is evident from the Court's discussion with regard to the continuing wrong exception, Abbott was aware of the defendant's alleged misconduct at the time that Gordon and Freebery spoke out against him, voted against him, and campaigned against him.   Although he claims he did not know that Gordon and Freebery used County resources for this purpose until he read about it in a newspaper report after September 7, 2002, he was certainly cognizant that they were campaigning against him well before he lost his election.   Abbott even acknowledges in his Complaint that Gordon and Freebery used County resources "[b]eginning in or about the year 2001."[88]   He also asserts that Gordon and Freebery developed legislation to attack his reputation while he was a Councilman and used County employees to distribute campaign materials against his

---

[85] Abbott, in fact, argues that "the Complaint alleges a multi-year course of conduct undertaken by Defendants to disparage Abbott as part of their overarching plot to harm his reputation in retaliation for his exercise of legal rights." Docket 31, at 38.   As is evidenced by his Complaint, Abbott was clearly aware of this conduct prior to September 7, 2002.

[86] *Boerger v. Heiman*, 2007 WL 3378667, at *5 (Del. Super. Ct. Oct. 31, 2007) (citations omitted).

[87] *Id.*

[88] Docket 31, at 8.

candidacy.[89] These allegations demonstrate that there were observable factors that should have placed a reasonable person on notice of a claim that arose prior to September 7, 2002. Therefore, the "date of discovery" exception does not apply here.

Since Abbott filed his claim on September 7, 2004, Defendants' conduct, to be actionable, must have occurred on or after September 7, 2002. Although he has raised in his Complaint a multitude of wrongful acts by Gordon, Freebery, and the County, Abbott has not alleged a single act that occurred on or after the specific date of September 7, 2002. In other words, he has not shown how Defendants' conduct – which, in any event, did not violate any of his Constitutional rights to support a Section 1983 action – caused his loss of the Republican primary election on September 7, 2002. Thus, his Section 1983 claim is barred by the statute of limitations.

### 2. The *Noerr-Pennington* Doctrine Bars Claims Relating to Petitioning the County Council or the Ethics Commission

Defendants argue that the *Noerr-Pennington* doctrine bars many of Abbott's claims relating to their efforts to defeat his policies,[90] remove him from leadership positions,[91] file an ethics complaint against him,[92] illegally seek legislation that would remove him from office,[93] and introduce legislation that might harm his interests.[94] In

---

[89] *Id.*, at 8-9.

[90] Docket 1, ¶¶ 14-17.

[91] *Id.*, ¶ 15.

[92] *Id.*, ¶ 19.

[93] *Id.*, ¶¶ 25-27.

[94] *Id.*, ¶ 36.

response, Abbott argues that the unethical petitioning by the Defendants and their illegal actions to harm his interests are not protected by the *Noerr-Pennington* doctrine.

The *Noerr-Pennington* doctrine had its genesis in the cases of *Eastern Railroad Presidents Conference v. Noerr Motor Freight Inc.*[95] and *United Mine Workers v. Pennington.*[96] In general terms, it disallows a plaintiff from bringing a cause of action for business torts based on allegations "predicated upon mere attempts to influence the Legislative Branch for the passage of laws or the Executive Branch for their enforcement."[97] This holding was premised on the following two principles:

> In the first place . . . [i]n a representative democracy such as this, these branches of government act on behalf of the people and, to a very large extent, the whole concept of representation depends upon the ability of the people to make their wishes known to their representatives. To hold that the government retains the power to act in this representative capacity and yet hold, at the same time, that the people cannot freely inform the government of their wishes would impute to the Sherman Act a purpose to regulate, not business activity, but political activity, a purpose which would have no basis whatever in the legislative history of that Act. . . . Secondly, and of at least equal significance, . . . [t]he right of petition is one of the freedoms protected by the Bill of Rights, and we cannot, of course, lightly impute to Congress an intent to invade these freedoms.[98]

Although there may be times when an alleged conspiracy is "a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business

---

[95] 365 U.S. 127 (1961).

[96] 381 U.S. 657 (1965).

[97] *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972); *see also Arthrocare Corp. v. Smith & Nephew Corp.*, 2004 WL 896002, at *3 (D. Del. March 10, 2004) ("Although originally developed in the antitrust context, courts have applied this doctrine universally to business torts.").

[98] *Noerr Motor Freight Inc.*, 365 U.S. at 137-38.

relationships of a competitor,"[99] the Supreme Court has exercised extreme caution in realm of political conduct, even where those activities are deemed unethical. Moreover, the doctrine "shields . . . a concerted effort to influence public officials regardless of intent or purpose."[101]

All of Abbott's allegations are against Defendants in their political capacity. The doctrine shields Defendants' efforts to influence other officials to agree with their policies, regardless of their intent or purpose. Defendants have a right as politicians to "intercede, lobby, and generate publicity to advance their constituents' goals, both expressed and perceived."[102] Abbott's allegations do not establish that Defendants' conduct was a "sham" to harm him, nor does he claim the absence of a legitimate basis for opposing him.[103] Notably, Defendants' alleged conduct, while perhaps unethical, did not prevent him from acting as a Council member, nor bar him from running for reelection, nor preclude him from speaking, nor punish him for his representation of certain land developers. Although the conduct may be deemed a concerted effort to

---

[99] *Cal. Motor Transp. Co*, 404 U.S. at 511 (citing *Noerr Motor Freight Inc.*, 365 U.S. at 144).

[100] *Id.* at 512 (citing *Noerr Motor Freight Inc.*, 365 U.S. at 141).

[101] *Pennington*, 381 U.S. at 670.

[102] *Manistee Town Ctr. v. City of Glendale*, 227 F.3d 1090, 1093 (9th Cir. 2000).

[103] *See Salem Church (Delaware) Associates v. New Castle County*, 2006 WL 2873745, at *13 n.116 (Del. Ch. Oct. 06, 2006) (finding no substantive due process violation by a municipality where "it has been shown that there was at least some legitimate purpose" for its conduct).

convince other Council members to take positions different from Abbott's, the doctrine is intended to shield precisely this type of conduct in the political realm.[104]

### 3. Abbott Cannot Recover Monetary Damages

In his Complaint, Abbott requests damages for violations of Section 1983 in the form of "lost salary and benefits attendant to the position of County Councilman, as well as the personal harm and damages resulting from [injury] to his reputation and the opportunity to continue to undertake his chosen avocation of public service."[105] Even if Abbott had presented a viable claim under Section 1983, his complaint still fails because the Court cannot award him the relief he seeks. As explained by the Fourth Circuit Court of Appeals in *Hutchinson v. Miller*:

> In short, the general attitude of courts asked to consider election disputes, whatever the relief sought, has been one of great caution. Intervention has come only in rare and extraordinary circumstances, for courts have recognized and respected the delegation of such disputes to other authorities. Such intervention, moreover, has never included the grant to defeated candidates of monetary compensation. Because such compensation is fundamentally inappropriate, we hold that it is unavailable as a form of post-election relief.[106]

The Fourth Circuit's analysis applies equally to the case at bar. Awarding Abbott monetary damages for his injuries is clearly inappropriate. The Court is unable to identify any decision from any Court that has ever awarded monetary relief to a defeated

---

[104] The Court notes that, even if it accepted that Abbott has established that Gordon and Freebery engaged in a sham to harm his reputation, all of the actions he has alleged occurred after the statute of limitations had lapsed, as explained *supra*. Thus, regardless of whether the *Noerr-Pennington* doctrine applied, he would still be unable to establish a violation of his rights.

[105] Docket 1, ¶ 48.

[106] 797 F.2d 1279, 1287-88 (4th Cir. 1986).

candidate. Because Abbott has not sought any other relief in his Complaint, for that reason alone, the Complaint must be dismissed.[107]

### 4. Gordon and Freebery are Not Entitled to Qualified Immunity, but They are Protected by Legislative Immunity

In the event that Abbott's Section 1983 claim is recognized, Gordon and Freebery argue that they are immune from liability under the doctrines of qualified immunity and legislative immunity. Under the qualified immunity doctrine, public officials are immune from Section 1983 liability for performing discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[108] This immunity may be defeated if the official "*knew or reasonably should have known* that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff], *or if* he took action *with the malicious intention* to cause a deprivation of constitutional rights or other injury".[109]

In this case, Abbott has alleged that Gordon and Freebery violated various County, State, and Federal laws by utilizing county resources, defaming him in public, and attempting his removal on government committees, with the malicious intent to harm

---

[107] *See Hutchinson,* 797 F.2d at 1288 (affirming the dismissal of plaintiffs' claims for Section 1983 violations and a civil conspiracy after they lost an election because they failed to request remedies other than monetary compensation, which could not be awarded as post-election relief). As set forth more fully herein, this same analysis bars any civil conspiracy claim Abbott has asserted because he cannot recover monetary relief, the only relief he is seeking.

[108] *Postell v. Eggers,* 2008 WL 134830, at *4 (Del. Super. Ct. Jan. 15, 2008) (citing *Hall v. McGuigan,* 743 A.2d 1197, 1206 (Del. Super. Ct. 1999).

[109] *Ferguson v. Town of Dewey Beach,* 2006 WL 1174017, at *5 (Del. Super. Ct. Apr. 25, 2006) (citing *Harlow,* 457 U.S. at 815).

36

both his reputation and his chances for reelection. Taking his allegations as true, an elected official would know or reasonably should have known that such actions violated Delaware law. Accordingly, Defendants are not entitled to qualified immunity.[110]

Notwithstanding the fact that qualified immunity is not applicable to them, Gordon and Freebery are entitled to legislative immunity for certain actions in which they engaged during their terms. These actions include inducing a County employee to refrain from attending a public meeting to protest Abbott,[111] gathering votes to defeat an Abbott-sponsored ordinance,[112] pressuring County members to remove Abbott from a committee,[113] threatening Abbott in connection with one of his votes,[114] and developing legislation to interfere with Abbott's private law practice.[115]

Under the doctrine of legislative immunity, "state and regional legislators are entitled to absolute immunity from liability under § 1983 for their legislative activities."[116] Where duties are ministerial or mandatory, rather than discretionary,

---

[110] Although this Court concludes that qualified immunity is inappropriate at this stage of the litigation, Abbott has failed to allege a Constitutional deprivation and has asked for damages that this Court cannot award. As a result, Count I would be dismissed against the individual defendants and the County regardless of whether qualified immunity applied.

[111] Docket 1, ¶ 13.

[112] *Id.*, ¶ 14.

[113] *Id.*, ¶ 15.

[114] *Id.*, ¶ 17.

[115] *Id.*, ¶ 25.

[116] *Bogan v. Scott-Harris*, 523 U.S. 44, 49 (1998).

legislative immunity is inapplicable.[117]    Whether an act is legislative depends on the nature of the act at issue, rather than upon the motive or intent of the official performing it.[118]  Courts have also explicitly recognized that "officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions."[119]

Although Gordon and Freebery were technically executives, all of the actions regarding the individual defendants' attempt to pass legislation, to remove Abbott from committees, to gather votes, to pressure people not to vote, or to threaten Abbott for a vote he cast, are legislative in nature, as well as discretionary.  If Gordon and Freebery singled out Abbott in their legislative actions, they are immune from liability under legislative immunity.  Thus, the allegations of individual defendants' improper legislative conduct – specifically, the allegations in paragraphs 13, 14, 15, 17, and 25 of Abbott's Complaint – cannot form the basis for Section 1983 liability.[120]

For all of the foregoing reasons, not only has Abbott failed to state a claim under Section 1983, but his cause of action cannot survive because the statute of limitations has expired, and Defendants are not liable to Abbott under the *Noerr-Pennington* doctrine. Gordon and Freebery are also entitled to legislative immunity for the legislative actions that Abbott asserts in his Section 1983 claim.  Accordingly, Count I of the Complaint is hereby dismissed.

---

[117] *Id.* at 51.

[118] *Id.* at 54.

[119] *Id.* at 55 (citing *Supreme Court of Va. v. Consumers Union of United States, Inc.,* 446 U.S. 719, 731-734 (1980)).

[120] *See id.* at 54 ("Local legislators are entitled to absolute immunity from § 1983 liability for their legislative activities.").

## II. The Complaint Fails to State a Civil Conspiracy Claim
## Against the County

The second count of Abbott's Complaint alleges that the individual defendants and the County engaged in a civil conspiracy with other County employees. Under Delaware law, a civil conspiracy is "the combination of two or more persons or entities either for an unlawful purpose, or for the accomplishment of a lawful purpose by unlawful means, resulting in damage."[121] To maintain a civil conspiracy claim, the plaintiff must allege an underlying actionable tort by each defendant.[122] "It is not the conspiracy itself, but rather the underlying wrong that must be actionable, even without the alleged conspiracy."[123]

In response to the civil conspiracy claim, the County raises three defenses. First, it argues that, as an entity, the County cannot conspire with its agents or form the requisite intent to participate in a conspiracy. Second, Abbott cannot, as a matter of law, claim actual damages for the loss of a general election for which he never qualified. Finally, Abbott's civil conspiracy claim cannot be grounded on the "Free and Equal" Elections Provision of the Delaware Constitution,[124] the County Employment Anti-Discrimination Provision,[125] the Campaign Financing and Disclosure Act,[126] or the County Ethics Code.[127] The Court will address each defense separately.

---

[121] *Brooks-McCollum v. Shareef*, 2006 WL 3587246, at *3 (Del. Super. Ct. Nov. 1, 2006).

[122] *Id.* (citations omitted).

[123] *Id.*

[124] DEL. CONST. art. I, § 3.

[125] 9 *Del. C.* § 1183.

**A. Abbott Cannot Establish that the County Conspired with its Agents or Formed the Intent Necessary for a Civil Conspiracy**

The County first argues that, as a municipal entity, it cannot form the requisite intent because a municipality and its officials are one entity that cannot conspire with itself. In an analogous situation, Delaware courts have held that a corporation cannot conspire with its agents or subsidiaries.[128] However, where the corporation's officers or agents act pursuant to personal, rather than corporate, motives, a corporation may be able to conspire with its agents.[129] To establish liability, however, the plaintiff must demonstrate that the parties had the specific intent to engage in the alleged conspiracy or knowingly participated in it.[130] In *DiBenedetto v. City of Reading*,[131] the District Court for the Eastern District of Pennsylvania determined that a municipality could not form the intent required for a civil conspiracy because such an entity may only act through its agents and cannot conspire with itself.[132] The *DiBenedetto* Court did hold, however, that

---

[126] 15 *Del. C.* §§ 8001-46.

[127] New Castle County Code §§ 2.03.103, 2.03.104.

[128] *In re Transamerica Airlines, Inc.*, 2006 WL 587846, at *6 (Del. Ch. Feb. 28, 2006).

[129] *Id.*

[130] *Anderson v. Airco, Inc.*, 2004 WL 2827887, at *4 (Del. Super. Ct. Nov. 30, 2004) (citing *In re Asbestos Litig.*, 509 A.2d 1116, 1120 (Del. Super. Ct. 1986)).

[131] 1998 WL 474145 (E.D. Pa. July 16, 1998).

[132] *DiBenedetto*, 1998 WL 474145 at *11; *see also Doherty v. Haverford Twp.*, 513 F. Supp. 2d 399, 409 (E.D. Pa. 2007) (holding that "a municipality and its officials are considered a single entity that cannot conspire with itself" for purposes of a federal civil conspiracy claim); *Aardvark Childcare and Learning Center, Inc. v. Township of Concord*, 401 F. Supp. 2d 427, 450 (E.D. Pa. 2005) ("[A] public entity and its officials are a single entity, and thus, incapable of conspiracy.").

a municipality may be liable for civil conspiracy if the plaintiff can establish that the government entity took actions "pursuant to an established policy, practice or custom."[133]

Although discussing federal law, this holding is in accord with Delaware case law which requires a plaintiff to establish that an entity, such as a municipality, had the specific intent to engage in a conspiracy. A plaintiff may establish a municipality's specific intent through evidence of an established policy, practice, or custom, even though a municipality is generally unable to conspire with its agents. This analysis is similar to the analysis that Delaware courts use to determine whether a corporation may conspire with its agents. Adopting that framework, Abbott's Complaint cannot survive dismissal.

Although Abbott alleges illegal conduct by Gordon and Freebery motivated by personal desires, he has not alleged that the County engaged or knowingly participated in a civil conspiracy with specific intent to commit an unlawful act. Abbott has also failed to establish that the individual defendants' illegal conduct was the established practice, policy, or custom of the County.[134] Because a municipality cannot conspire with its own employees, Abbott's claim fails on that basis alone. Once again, Abbott cites no case or statutory law – from Delaware or any other jurisdiction – to support his claim that a municipality can be liable for a conspiracy with its own officials and employees. Because he cannot demonstrate that the County's established practice, policy, or custom involved knowing participation in a conspiracy with Gordon and Freebery, his civil conspiracy claim against the County fails as a matter of law.

---

[133] *DiBenedetto*, 1998 WL 474145 at *10.

[134] *See* Part V.I.B.

## 2. Abbott's Damages Theory Fails as a Matter of Law

Defendants next argue that Abbott's claim fails as a matter of law because he can never prove actual damages. As explained above, to state a claim for civil conspiracy, plaintiff must prove a confederation or combination of two or more persons, an unlawful act done in furtherance of the conspiracy, and actual damage.[135]  Damages for a lost election are considered "too speculative and conjectural" and thus cannot be awarded by a court.[136]  While the salary for the position of County Council member is certainly a fixed amount, the fact of the matter is that Abbott can never prove that the actions of Gordon, Freebery, or the County caused his loss of the primary election. As the Fourth Circuit Court of Appeals in *Hutchinson, supra*, so aptly reasoned:

> The unique nature of this case convinces us that the requested intervention is inappropriate under any circumstances, for plaintiffs' suit for damages strikes us as an inapt means of overseeing the political process. It would provide not so much a correction of electoral ills as a potential windfall to plaintiffs and political advantage through publicity . . . . Those who enter the political fray know the potential risks of their enterprise. If they are defeated by trickery or fraud, they can and should expect the established mechanisms of review – both civil and criminal – to address their grievances, and to take action to insure legitimate electoral results. In this way, they advance the fundamental goal of the electoral process – to determine the will of the people – while also protecting their own interest in the electoral result.  A suit for damages, by contrast, may result

---

[135] *Nicolet, Inc. v. Nutt*, 525 A.2d 146, 149-50 (Del. 1987).

[136] *Southwestern Publ'g Co. v. Horsey*, 230 F.2d 319, 322-23 (9th Cir. 1956) (holding that "the loss of an election is not compensable in damages in a libel action, being too uncertain and too speculative"); *see also Chrysler Corp. v. Todorovich*, 580 P.2d 1123, 1134 (Wyo. 1978) (finding that damages resulting from a lost election in the amount of the lost salary in public office is "remote, uncertain and conjectural or speculative damages"); *Aycock v. Padgett*, 516 S.E.2d 907, 910 (N.C. App. 1999) ("This is, in essence, a suit to recover damages for a lost election. We do not consider it the place of this Court to engage in a post-election analysis of the decisions made by the voters of Black Mountain in this or any other election."); *Beverly v. Observer Pub. Co.*, 77 S.E.2d 80, 81 (Ga. Ct. App. 1953) (holding that special damages for the loss of a public office in an election are "too remote and speculative to be recoverable").

> principally in financial gain for the candidate. We can imagine no
> scenario in which this gain is the appropriate result of the decision to
> pursue elected office, and we can find no other case in which a defeated
> candidate has won such compensation. Nor do we believe, in light of the
> multitude of alternative remedies, that such a remedy is necessary either to
> deter misconduct or to provide incentives for enforcement of election
> laws.[137]

To be sure, it would be impossible to prove that Defendants' actions caused

Abbott's defeat. To prove such a claim, Abbott would have to call every citizen who

voted in the 2002 Republican Primary, determine their motivations, and prove to a jury's

satisfaction that those votes were based on the unlawful conduct of the Defendants. That

scenario would present an insurmountable obstacle for this, or any, court to address. As

explained by the Ninth Circuit Court of Appeals:

> There may be not less than a thousand factors which enter into the
> vagaries of an election . . . . The net result of such an exploration into the
> uncertainties of an election can only lead to confusion. It is submitted that
> this character of evidence has been historically rejected and wisely so.[138]

Because there are "a thousand factors which enter into the vagaries of an

election," it is impossible for Abbott to establish that Defendants' conspiracy caused his

defeat, and he therefore can never prove actual damages.

### 3. The Underlying Conduct for Abbott's Civil Conspiracy Claim is Not Actionable

Defendants further argue that none of the foundations for Abbott's civil

conspiracy claim – the "Free and Equal" Elections Provision of the Delaware

Constitution,[139] the County Employment Anti-Discrimination Provision,[140] the Campaign

---

[137] *Hutchinson*, 797 F.2d at 1287.

[138] *Southwestern Publ'g Co.*, 230 F.3d at 322-23.

[139] DEL. CONST. art. I, § 3.

Financing and Disclosure Act,[141] and the County Ethics Code[142] – are actionable under a civil conspiracy claim.[143] The Court will address all four briefly.

## A. The "Free and Equal" Elections Provision of the Delaware Constitution

Defendants first submit that the "Free and Equal" Elections Provision of the Delaware Constitution cannot be a basis for Abbott's civil conspiracy claim because he has not alleged any facts that suggest that the 2002 Republican Primary was not "free" or "equal." Article I, Section 3 of the Delaware Constitution states: "All elections shall be free and equal."[144] While there is a dearth of case law addressing Section 3, the limited case law that does exist indicates that this section's purpose is to ensure that the right of citizens to vote in an election is unfettered.[145] Specifically, the section safeguards the

---

[140] 9 *Del. C.* § 1183.

[141] 15 *Del. C.* §§ 8001-46.

[142] New Castle County Code §§ 2.03.103, 2.03.104.

[143] Abbott seeks to amend his Complaint to add a fifth basis for a civil conspiracy claim. Specifically, Abbott argues that he may maintain a claim under Article I, Section 5 of the Delaware Constitution, which states, in pertinent part: "The free communication of thoughts and opinions is one of the invaluable rights of man." Del. Const. art. I, § 5. Abbott cites no law in support of the argument that he may maintain a civil conspiracy claim under this provision. The provision – which addresses the freedom of the press – has the same scope and application as the First Amendment of the U.S. Constitution. *See Gannett Co., Inc. v. State*, 571 A.2d 735, 741 n.9 (Del. 1989). Because this Court has already determined that Abbott has failed to state any viable claim of a violation of his First Amendment rights, *see* Part I.A., this Court will not permit Abbott to amend his Complaint to add a futile claim. *See Denardo v. Rodriguez*, 1993 WL 81319, at *4 (Del. Super. Ct. Feb. 12, 1993) (citing *Massarsky v. Gen. Motors Corp.*, 706 F.2d 111 (3d Cir. 1983), *cert. denied,* 464 U.S. 937 (1983)) ("Where a complaint as amended would not withstand a motion to dismiss, the motion to amend should be denied as futile.").

[144] Del. Const. art I, § 3.

[145] *See State ex rel. James v. Battersby*, 56 A.2d 527, 532 (Del. Super. Ct. 1947).

people's right to elect officials of their choosing, but does not serve to protect a candidate for public office who may have been undermined by his political opponents.[146] Similarly, the purpose of election laws is to protect the right of citizens, not candidates, to have free and equal access to the polls:

> The purpose of this title is to assure the people's right to free and equal elections, as guaranteed by our state Constitution.  To that end, the full exercise of that right demands that the people be afforded the means to form political parties, nominate candidates and cast ballots for whomever they choose.[147]

Abbott has not alleged that Delaware citizens were disenfranchised.  Nor has he asserted that their access to the polls was disturbed, that the process by which ballots were accepted and counted was flawed, or that Defendants somehow tainted the election results.  Significantly, there are no allegations in the complaint that the individual defendants' use of County resources interfered with the people's rights "to form political parties, nominate candidates and cast ballots for whomever they choose."[148]  While Gordon and Freebery may have violated various election laws and thus affected the *decisions* of the County electorate, there is no basis to conclude that the County electorate's *ability* to vote or *access* to the 2002 Republican primary was in any way affected so as not to be free and equal.  Thus, the Court rejects the "Free and Equal" Elections Provision of Article I, Section 3 of the Delaware Constitution as a basis for a civil conspiracy claim.

---

[146] *State v. McCoy*, 43 A. 270, 273 (Del. Super. Ct. 1897).

[147] 15 *Del. C.* § 101A.

[148] *Id.*

### B.  The County Employment Anti-Discrimination Provision

Defendants next maintain that 9 *Del. C.* § 1183 ("Section 1183") cannot support a civil conspiracy claim against Gordon and Freebery because this section is inapplicable to County members, such as Abbott, who are denied an additional political term.  They further argue that Section 1183 is penal in nature and cannot form the basis for a civil remedy.  Section 1183 states, in pertinent part: "No person shall be appointed to, or removed from, or in any way favored or discriminated against with respect to, any county position, or appointive county administrative office, because of race, or color, or national origin, or political, or religious opinions or affiliations."[149]  The section was actually intended to apply to county employees and appointed officials, not elected officers.  Abbott was elected, not appointed.[150]

If the Court were to adopt Abbott's interpretation of Section 1183, any incumbent Council member who lost her bid for reelection after the citizens freely voted could recover damages if her political opponents had maligned or criticized her political views.  As discussed above, Abbott has no right to recover damages for a lost election.  Because his removal from office was the will of people, he cannot rely on Section 1183 as a basis for a civil conspiracy claim.

Moreover, Section 1183 is a criminal statute which does not confer a private right of action.  A private cause of action based on a statute is only available if the legislature

---

[149] 9 *Del. C.* § 1183(a)(1).  To the extent that Abbott is arguing that the County conspired with Gordon and Freebery to "discriminate against" his political views while he was in office, that argument has previously been rejected.  *See* Part I.A.3; *see also* Part I.C.2 ("Although their [Defendants'] conduct may be deemed a concerted effort to convince other Council members to take positions different from Abbott's, the [*Noerr-Pennington*] doctrine shields precisely this type of conduct in the political realm.").

[150] *See* 9 *Del. C.* §§ 1141-69.

intended a private remedy, even if a statute is violated and a person is harmed.[151] "[W]here a statute was obviously enacted for the protection of a designated class of individuals," the Court may infer that a private right of action exists.[152]    In contrast, where a statute establishes general prohibitions to protect the public at large, the Court will not infer a private cause of action on behalf of an individual.[153]

The language of Section 1183 suggests that the penalties are not applicable to a designated class of individuals, but rather to the public at large:

> Any person who by himself or with others willfully or corruptly violates this section shall be fined not more than $500, or imprisoned for not more than 1 year, or both.  Any person convicted under this section shall be ineligible, for a period of 5 years thereafter, to hold any county office or position and, if he is an officer or employee of the County, he shall immediately forfeit his office or position.  The Superior Court shall have exclusive original jurisdiction over offenses under this section.[154]

Since the statute proposes criminal fines and the possibility of imprisonment, it is penal in nature, and the absence of any designated class of citizens in the statute suggests that it is intended to protect the public at large.[155]  There is no language to indicate a legislative intent to include a private right of action, and Abbott has offered no authority to support his claim to a private right of action under Section 1183.

---

[151] *Brett v. Berkowitz*, 706 A.2d 509, 512 (Del. 1998) (citing *Thompson v. Thompson*, 484 U.S. 174, 179 (1988) and *Cannon v. Univ. of Chicago*, 441 U.S. 677, 688 (1979)).

[152] *See id.* at 513 n.8 (discussing various statutes).

[153] *Id.* at 512-13.

[154] 9 *Del. C.* § 1183(b).

[155] *See Brett*, 706 A.2d at 513 n.9 (citing *Callaway v. N.B. Downing Co.*, 172 A.2d 260, 262 (Del. Super. Ct. 1961) ("[A] statute wholly penal in nature will not support a civil remedy.").

## C. The Campaign Financing and Disclosure Act

Defendants further argue that any claim by Abbott under the Delaware Campaign Financing and Disclosure Act of 1990 (the "Campaign Act")[156] is barred because Abbott failed to appeal the Election Commissioner's ruling under the Campaign Act. Even if he had properly appealed, the Court of Chancery has exclusive jurisdiction over violations of the Campaign Act. In response, Abbott submits that the Defendants' violations of the Campaign Act establish a violation of his constitutional rights, thereby giving rise to a civil conspiracy claim. Abbott submits that an Election Commissioner's decision is merely advisory, not binding, and since his claim is specifically for civil conspiracy, rather than for violations of the Campaign Act, this Court has jurisdiction.

Under 15 *Del. C.* § 8041(2), the State Election Commissioner or his designee shall, "[a]t the request of any person, make a ruling that applies this chapter to a set of facts specified by the person."[157] On November 3, 2004, Abbott specifically requested that the Election Commissioner make a ruling as to whether New Castle County employees were permitted to work on a political campaign during business hours.[158] The Commissioner issued a ruling with which Abbott disagreed. Rather than file an appropriate appeal, Abbott sought a writ of mandamus pursuant to 29 *Del. C.* § 10143.[159]

---

[156] 15 *Del. C.* §§ 8001-46.

[157] 15 *Del. C.* § 8041(2); *see also id.* § 8002(5) ("'Commissioner' means the State Election Commissioner, or the designee of the Commissioner.").

[158] *State ex rel. Abbott v. Calio*, 860 A.2d 811, at *1 (Del. 2004) (Table).

[159] 29 *Del. C.* § 10143 states: "Any person aggrieved by the failure of an agency to take action required of it, by law, may bring an action in the Court for an appropriate writ of mandamus." A person may instead choose to appeal the ruling. *See* 29 *Del. C.* § 10142(a), (b) (permitting a party to appeal an agency decision within thirty days).

Ultimately, the Supreme Court affirmed the Superior Court's decision denying Abbott's request for a writ of mandamus.[160]  Since Abbott failed to perfect an appeal of the Election Commissioner's decision within the time permitted, the Commissioner's ruling became final, thereby divesting this Court of jurisdiction to decide the appeal.[161]  To the extent that Abbott bases his civil conspiracy claim on alleged violations of the Campaign Act, the Court will not now provide Abbott with what essentially amounts to a second opportunity to challenge the Commissioner's rulings.

Moreover, the proper forum for any claims related to the Campaign Act is the Court of Chancery, where jurisdiction is vested by 15 *Del. C.* § 8042.  Abbott's attempt to bring a cause of action under the Campaign Act as a civil conspiracy claim in this Court is improper because he cannot recover monetary damages for any proven violation.[162]  The Superior Court's jurisdiction is limited to imposing criminal sanctions upon those who violate the act.[163]

### D.  The County Ethics Code

Defendants next argue that Abbott cannot assert a civil conspiracy claim based on alleged violations of the New Castle County Ethics Code (the "Ethics Code") because the Ethics Code does not permit a civil remedy to a private plaintiff, and that this Court

---

[160] *Calio*, 860 A.2d 811 at *2.

[161] *Griffin v. Daimler Chrysler*, 2000 WL 33309877, at *2 (Del. Super. Ct. Apr. 27, 2000) (holding that a party's failure to exhaust all administrative remedies precludes the Superior Court from considering the merits of the claim).

[162] *Id.*

[163] *See also id.* § 8043 (granting the Superior Court jurisdiction only to criminally punish any violators of the Campaign Act).

cannot address the merits of Abbott's claim because he has failed to exhaust the administrative remedies available to him under the Ethics Code.

Abbott argues, without support, that New Castle County Code Sections 2.03.103A.1 and 2.03.104A can form the basis of a civil conspiracy claim against the Defendants.[164] The Ethics Commission, and the Ethics Commission alone, has authority to:

> [i]ssue findings, reports and orders relating to investigations initiated pursuant to Section 2.04.103 which set forth the alleged violation, findings of fact and conclusions of law. An order may include recommendations to law enforcement officials.[165]

If the conduct of Gordon and Freebery violated the County Ethics Code, Abbott should have filed his complaint with the Ethics Commission in the first instance. The Code establishes a procedure by which an individual may initiate an action under the Ethics Code:

> An employee who alleges he or she has suffered an adverse personnel action for reporting a violation or suspected violation of law or regulation to an elected public official may bring a civil action for appropriate injunctive relief, actual damages, or both, within ninety (90) days after the occurrence of the alleged violation, as set forth in 29 *Del. C.* Section 5115 or its successor.[166]

---

[164] Section 2.03.103A.1 states, in pertinent part: "No County employee or official knowingly or willfully shall use the authority of his or her office . . . for the personal or private benefit of himself or herself . . . ." New Castle County, Delaware, New Castle County Code art. 2, § 2.03.103A.1 (2000). Section 2.03.104A also precludes a County official from engaging in conduct that "undermines the public confidence in the impartiality of a governmental body with which the County employee or County official is or has been associated by creating an appearance that the decisions or actions of the County employee, County official or governmental body are influenced by factors other than the merits." *Id.* art. 2, § 2.03.104A.

[165] *Id.* art. 2, § 2.04.102K.

[166] *Id.* art. 2, § 2.03.305.

Abbott has not alleged that he has suffered an "adverse personnel action" which would form the basis of a civil action. He did not file this action until at least two years after any wrong occurred, long after the ninety-day period had elapsed. Abbott's failure to comply with the Ethics Code divests this Court of jurisdiction to hear any claim premised on sections of that code.

Similarly, Abbott cannot base a civil conspiracy claim on violations of the Ethics Code because jurisdiction is vested in the Ethics Commission, not in the Superior Court. Failing to avail himself of this administrative remedy in the first instance precludes this Court's consideration of any claims related to the County Code.[167] On this basis alone, Abbott may not maintain a civil conspiracy claim under the Ethics Code.

### III. The Complaint Fails to State a Libel/Slander Claim Against the Defendants

Abbott's third, and now final, count of his Complaint is a defamation claim in which he alleges that Gordon and Freebery made numerous false and malicious statements against him in an effort to gut his campaign for reelection.[168] Abbott concedes that he cannot assert a defamation claim against the County.[169] He contends, however, that he can assert a defamation action individually against Gordon and Freebery. The individual defendants ask the Court to dismiss Abbott's defamation claims because the

---

[167] *Griffin*, 2000 WL 33309877 at *2.

[168] Docket 1, ¶¶ 57-60.

[169] Docket 31, at 38.

51

claims are barred by the statute of limitations, and the Complaint fails to state a defamation claim as a matter of law.[170]  The Court will address each argument in turn.

### A. The Two-Year Statute of Limitations Bars Abbott's Defamation Claims

The statute of limitations for a defamation action in Delaware is two years.[171] The two-year statute begins to run from the date the alleged defamatory statement is communicated to the third party.[172]  Because Abbott filed his Complaint on September 7, 2004, the allegedly defamatory statements must have been made on or after September 7, 2002 to be within the limitations period.

All of Abbott's allegations of defamation concern statements made before the September 7, 2002 Republican primary.  For example, he alleges that "partially false" information was printed in a newspaper in "late 2000."[173]  He further avers that false accusations were made "prior to and at" a meeting in the County Executive conference room on July 11, 2002.[174]  Nowhere in the Complaint is there an allegation that Gordon or Freebery made any slanderous or libelous statements on or after September 7, 2004.

Although Abbott argues the "continuing wrong" exception to the statute of limitations based on a "multi-year course of conduct," that exception is inapplicable to these claims.  Accepting that Gordon and Freebery made slanderous and libelous

---

[170] The County also argued that it was immune from a suit of defamation under the Municipal Tort Claims Act.  Because Abbott concedes that the County is not liable for defamation, and the Act would not serve as a basis for dismissal because Abbott alleges that the individual made the statements maliciously, the Court will not address it.

[171] 10 *Del. C.* § 8119; *DeMoss v. News-Journal Co.*, 408 A.2d 944, 945 (Del. 1979).

[172] *Williams v. Howe*, 2004 WL 2828058, at *3 (Del. Super. Ct. May 3, 2004).

[173] Docket 1, ¶ 18.

[174] *Id.*, ¶¶ 32-33, 59.

statements, every single defamatory statement would be individually actionable at the time it was made. Abbott's Complaint, while unclear, suggests that the statements were made at different times about different issues, all related to Abbott. While the subject matter of the defamation – Abbott – would be the same, Abbott has not demonstrated that each statement was so "inexorably intertwined" that the statements could be considered to be one continuing wrong. As a result, the statute of limitations bars Abbott's defamation claims.

### B. Abbott's Defamation Claims Fail as a Matter of Law

Defendants' last challenge to Abbott's defamation claims is more fundamental. In essence, they assert that Abbott has failed to plead an adequate defamation claim under Delaware law. The Court agrees.

To state a defamation claim under Delaware law, a public figure[175] must plead and prove that: (1) the defendant made a defamatory statement; (2) concerning the plaintiff; (3) the statement was published; (4) a third party would appreciate that the communication was defamatory; (5) the statement was false; and (6) defendant made the statement with actual malice.[176] Where a statement involves libel, proof of damages is

---

[175] A public figure refers to "[t]hose individuals who have assumed roles of special prominence in the affairs of society, who occupy positions of persuasive power and influence, are considered to be public figures for all purposes." *Re v. Gannett Co., Inc.*, 480 A.2d 662, 665 (Del. Super. Ct. 1984) (citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974)). This definition also includes individuals who "voluntarily thrust themselves to the forefront of a particular public controversy in order to influence the outcome of issues of public interest[.]" *Id.* In this case, because Abbott was a County Council member who occupied a position of persuasive power and influence and held a position of special prominence in the affairs of the County, there is no dispute that he was a public figure.

[176] *Doe v. Cahill*, 884 A.2d 451, 463 (Del. 2005) (citations omitted).

not required for the plaintiff to recover any nominal or compensatory damages.[177]

Whether or not a statement is defamatory is a question of law.[178]

The Delaware Supreme Court in *Doe v. Cahill*[179] established that a public figure alleging defamation must plead those six elements and offer *prima facie* proof of each to create a genuine issue of material fact requiring trial. When evaluating the first two elements, "[t]he judge will have before him the allegedly defamatory statements and can determine whether they are defamatory based on the words and the context in which they were published."[180] As explained by the Supreme Court:

> In cases where it is not facially apparent, to satisfy this element the plaintiff can, by affidavit or verified complaint, offer particular facts that establish that the statement refers to him. For example, additional factual averments might be necessary when the allegedly defamatory statement refers to the plaintiff by a nickname. . . . The plaintiff should also have easy access to proof that the statement was published. He can produce a computer print-out of the statements made over the internet or simply direct the court to the specific website where the statements were made should they still be available.[181]

Nonetheless, the Court noted that "even silly or trivial libel claims can easily survive a motion to dismiss where the plaintiff pleads *facts* that put the defendant on notice of his claim, however vague or lacking in detail these allegations may be."[182] As long as the

---

[177] *Id.*

[178] *Id.*

[179] *Id.* at 464.

[180] *Id.* at 463.

[181] *Id.* at 463-64.

[182] *Cahill*, 884 A.2d at 459 (emphasis added).

opposing party has notice of the claim brought against it, the allegation is well-pleaded.[183]

The Court has thoroughly reviewed the entire Complaint. Nowhere in it does Abbott even mention the substance of any defamatory statements. Although he alleges in general terms that Defendants, "through spoken and written word, made and published numerous false statements of fact regarding Abbott" and "falsely accused Abbott of unethical conduct" in "telephone calls and mass mailings,"[184] Abbott provides no specifics enabling either the Court or Defendants to determine whether the statements were defamatory to Abbott, whether they were actually published, whether the public would understand them as defamatory, or whether they were false. Abbott's failure to include the statements in his Complaint – either in an affidavit or as factual averments – also precludes any determination of whether a trial may be necessary. This error is fatal because Abbott, as the public figure plaintiff, had to have had access to the statements and could have easily included them in his Complaint.

Although Abbott correctly states that the summary judgment standard discussed in *Doe v. Cahill* only applies where the plaintiff seeks to obtain the identity of an anonymous defendant through the compulsory discovery process,[185] all of the elements necessary for a defamation claim must still be pleaded. Abbott cannot avoid a motion to dismiss by conclusively stating that he was defamed, without offering *prima facie*

---

[183] *Id.*

[184] Docket 1, ¶¶ 58-59.

[185] *See Cahill*, 884 A.2d at 457.

evidence of the six elements.[186]  While Defendants are on notice that Abbott is vaguely asserting a defamation claim, they have no knowledge as to what statements were made or when they were made, effectively precluding them from preparing a defense.  In this case Abbott's failure to offer any *facts* is fatal to his defamation claim.  His general conclusion that Gordon and Freebery defamed him cannot establish a *prima facie* case.

For all the above reasons, Abbott's defamation claim fails as a matter of law. Count III is therefore dismissed.

## VI. Conclusion

Having addressed the substance of the claims and defenses concerning the Motion to Dismiss, the Court cannot avoid commenting upon the nature of this lawsuit and the unnecessary and heavy burdens it has placed upon the County, the individual defendants, and the Court.  Under any reasonable view of the facts and the law, the filing of this action by Abbott was nothing short of a baseless effort to vindicate the loss of his County Council Seat and to seek redress against his former political opponents.

Black's Law Dictionary defines a "frivolous lawsuit" as one "having no legal basis, often filed to harass or extort money from the defendant."[187]  The term "frivolous" is generally used to characterize claims filed by non-lawyer *pro se* litigants who feel unjustifiably wronged but are unable to appreciate that Courts are not available to redress every perceived injustice.  Rarely are they the work product of an experienced attorney who has been a member of the Delaware Bar for almost twenty years.

---

[186] *See Ramunno v. Cawley*, 705 A.2d 1029, 1034 (Del. 1998) (citations omitted) ("We accept all well-pleaded allegations as true, but we ignore conclusory allegations that lack specific supporting factual allegations.").

[187] BLACK'S LAW DICTIONARY 678 (7th Ed. 1999).

The unfounded claims raised by Abbott pervade this litigation. The expenditure of time and resources required to address them would be wasteful and unfortunate if they were asserted by an individual who was not legally trained or skilled in the law. Officers of this Court have a clear responsibility not to raise frivolous claims for the purpose of delaying litigation or making it more costly. Superior Court Rule 11(b) recognizes this duty, stating:

> By representing to the Court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.[188]

In the Court's judgment, the foregoing provisions are equally applicable to Abbott whether he serves as an attorney representing a client or chooses to pursue his case *pro se*, no matter how emotionally or passionately invested in the outcome he is. As a litigant or as an advocate, Abbott's duty is one of reasonableness under the circumstances, and a subjective good faith belief in the legitimacy of the claim or even an overzealous desire to repair manifest injustice does not alone satisfy the requirements of Rule 11.

---

[188] Super. Ct. Civ. R. 11(b).

57

This case is replete with examples of undeveloped, unresearched and frivolous arguments. In many instances Abbott has completely ignored controlling Delaware Supreme Court case law that is directly contrary to the arguments he asserts, without any attempt made to acknowledge or distinguish them. For example, while Abbott may not have known or thoroughly researched that the statute of limitations for a Section 1983 claim in Delaware is two years, once Defendants filed their Opening Brief he was put on actual notice of that fact, and of the Delaware case directly on point.[189] Instead of making an effort to distinguish the decision, Abbott persisted in misstating the applicable statute of limitations as found under 10 *Del. C.* § 8106, in direct contradiction to Delaware's decisional and statutory law.

As this lengthy Opinion shows, the bulk of the claims and legal contentions asserted by Abbott have no foundation in existing law nor are they supported by a nonfrivolous argument for reversal or modification of existing law, in direct violation of Rule 11. Even in those instances where Abbott withdrew portions of his Complaint, such as those founded upon the RICO statute, the harm that Rule 11 is intended to avoid has already occurred.

All of the unsupported and frivolous claims asserted by Abbott have in the end imposed unnecessary expense on the County, have wasted valuable Court resources, and have done little to advance this court's ability to render swift justice. Defendants have refrained from requesting sanctions or a fee-shifting award in this case and, as such, the Court will not impose any. But, Abbott is an Officer of the Court and it at least bears

---

[189] *See* Docket 27 (New Castle County's Opening Br. in Supp. of Defs.' Mot. to Dismiss), at 12 (citing *Parker v. Gadow*, 893 A.2d 964, 968 (Del. 2006)).

mention that he has failed in his responsibility under Rule 11 and under the Delaware Rules of Professional Responsibility.[190]

*   *   *

For all of the foregoing reasons, the Motions to Dismiss are hereby **GRANTED.**

**IT IS SO ORDERED.**

*Peggy L Ableman*
_____
**Peggy L. Ableman, Judge**

Original to Prothonotary

---

[190] The Delaware Rules of Professional Conduct expressly preclude a lawyer from misstating the law to a Court. *See* Del. Lawyers' Rules of Prof'l Conduct R.3.3(a)(1) ("A lawyer shall not knowingly . . . . make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer[.])."