## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

JOSEPH J. FREEBERY,                    :
                                       :
       Plaintiff,              :
                                       :
    v.                            :         C.A. No. 05-748 PSD
                                       :
CHRISTOPHER COONS, in his official     :         JURY TRIAL DEMANDED
capacity as County Executive of New    :
Castle County and in his individual capacity;:
and NEW CASTLE COUNTY, a municipal     :
corporation; and JOHN DOES 1-25        :
                                       :
       Defendants.             :


## DEFENDANTS' REPLY BRIEF IN SUPPORT OF ITS
## MOTION FOR SUMMARY JUDGMENT


   /s/ Richard R. Wier, Jr.
Richard R. Wier, Jr. (#716)
Michele D. Allen (#4359)
Richard R. Wier, Jr., P.A.
Two Mill Road
Suite 200
Wilmington, DE 19806
(302) 888-3222
*Attorney for Defendants*

Dated: June 9, 2008

## TABLE OF CONTENTS

I.   Introduction ................................................................................................ 2

II.  Argument ..................................................................................................... 3

    A.   Plaintiff Did Not Have a Constitutionally Protected Property Right ............... 3

        1.   Coons Is Protected By Qualified Immunity ........................................... 6

    B.   Plaintiff Did Not Have An Express or Implied Contract For Employment ....... 7

        1.   The November 24, 2004, Memorandum or The Alleged Prior Promises
             Did Not Create A Binding Employment Contract .................................. 8

    C.   Defendant Did Not Breach The Covenant Of Good Faith And Fair Dealing ...... 12

    D.   Defendant Did Not Violate Plaintiff's Right To Political Association ............... 14

        1.   Plaintiff Was In A Policymaking Position; Therefore, His Termination
             Must Be Upheld. ........................................................................ 15

        2.   Plaintiff Can Not Show That His Association Was A Motivating Factor In
             His Termination............................................................................ 17

             a.  Inadmissible Statements of State Senator Karen Peterson ................... 18

             b.  Inadmissible unsupported opinion testimony from Patty Powell......... 18

             c.  Inadmissible unsupported testimony from William Tansey ............... 19

             d.  Inadmissible unsupported opinion testimony from Robert Woods...... 19

             e.  Coons' statement during the Democratic Primary ............................. 20

             f.  Coons Statement to Reporter Claudia Cohen is immaterial.................. 20

        3.   Plaintiff Has Failed To Provide Any Evidence To Refute That Defendants
             Would Have Taken The Same Action With Respect To Plaintiff
             Regardless of His Association....................................................... 21

    E.   Coons Is Entitled To Qualified Immunity ............................................. 21

i

F.      New Castle County Must Be Dismissed As Plaintiff Has Failed To Cite To Any Official Policy Which Caused His Injury.................................................22

G.      The Claims Against Coons In His Official Capacity Should Be Dismissed As The Defense Is Undisputed...........................................................................24

V       Conclusion .................................................................................................24

## **Table of Authorities**

**Cases**                                                              **Page (s)**

*Blackburn v. United Parcel Serv., Inc.* 179 F.3d 81, 95 (3d Cir. 1999)................................ 3

*Arnold Pontiac-GMC v. Budd Baer, Inc.,* 826 F.2d 1335, 1339) (3d Cir. 1987)................3, 5

*Laymon v. Lobby House, Inc.,* 2008 WL 1733354 (D. Del.)...................................3, 5,18

*Sosa v. Chertoff,* 2008 WL 800691, \*3 (D.N.J. March 21, 2008)..............................3, 5

*Thomas v. Hammonton,* 351 F.3d 108, 113 (3d Cir. 2003)....................................4

*Robertson v. Fiore,* 62 F.3d 596, 601 (3d Cir. 1995)........................................4

*Sykes v City of Gentry,* 114 F.3d 829 (8th Cir. 1997)........................................4

*Packett v. Stenberg,* 969 F.2d 721 (8th Cir. 1992).........................................4

*New Castle County Council v. State* 688 A2d 888, 893 (Del. 1997)..........................4

Collison v. State, 2 A2d 97, 100.........................................................4

*Patton v. Ventresca,* 90C-JA-29, Herlihy, J. (Del. Super. 1992.............................5

*Evans v. State,* No. 67, 2004 (Del. 2004)   .............................................5

*Hudson Farms, Inc. v. McGrellis,* 620 A.2d 215, 218-20 (Del. 1993)........................5

*Downs v. Jacobs,* 272 A.2d 706 (Del. 1970).............................................6

*Muir v. County of Sussex County,* 393 F.Supp. 915 (D.Del 1975)..........................7

*Leeds v. First Allied Connecticut Corp.*, Del. Ch., 521 A.2d 1095, 1101-02  (1986)...........8

*Norse Petroleum A/S v. LVO International, Inc.*, Del. Super., 389 A.2d 771, 773 (1978)....8

*E.I. duPont de Nemours & Co. v. Pressman*, Del. Supr., 679 A.2d 436, 441, 444 (1996)....9
.........................................................................12, 13

*Lindsey v. M.A. Zeccola & Sons, Inc.,* 26 F.3d 1236, 1239 (3d Cir.1994)...................9

*Rawlins v. Levy Court of Kent County*, 235 A.2d 840 (Del. 1967)......................9

<u>Cases</u>                                                                      <u>Page (s)</u>

*Korn v. New Castle County*, 2005 WL 396341 (Del. Ch.)..................................10

*Collison v. State Ex. Rel. Green*, 2 A.2d 97 (Del. 1938)................................10

*Dale v. Town of Elsmere*, 702 A.2d 1219............................................11

*Hartman v. Buckson*, Del. Ch., 467 A.2d 694(1983)................................11

*Heideck v. Kent General Hospital, Inc*, Del.Supr., 446 A.2d 1095 (1982)..........................12

*Layfield v. BeBe Medical Center, Inc.*, 1997 Del. Supr., LEXIS 496........................13, 14

*Branti v. Finkel*, 445 U.S. 507, 518 (1980); *Elrod v. Burns*, 427 U.S. 347, 368 (1976)................14

*Peters v. Del. River Port Auth.*, 16 F.3d 1346, 1353 (3d Cir.l994)........................14

*Goodman v Pennsylvania Turnpike Com'n*, 293 F.3d 655, 663 3d Cir. 2002)..................................14

*Robertson v. Fiore*, 62 F.3d 596, 599 (3d Cir.1995).....................................14

*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).......................15

*Ness v. Marshall*, 660 F.2d 517, (3rd Cir. 1981)........................................16

*Biggs v. Best, Best & Krieger*, 189 F.3d 989 (9th Cir. 1999)...............................16

*Soderstrum v. Town of Grand Isle*, 925 F.2d 135, 136, 140-41 (5th Cir. 1991).......................16

*Clark v. Brown*, 861 F.2d 66, 68 (4th Cir. 1988)..........................................17

*Soderbeck v. Burnett County*, F.2d 285, 288 (7th Cir. 1985) .............................17

*Ballas v. City of Reading*, 2001 U.S. Dist. LEXIS 10733 *11.......................................17

*Lyng v. International Union, et. al.*; 485 U.S. 360, 365 (1988).....................................17

*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (emphasis. added)...............................21

*Saucier v. Katz*, 533 U.S. 194 (2001)....................................................21

*McLaughlin v. Watson*, 271 F.3d 566, 571 (3d Cir. 2001)................................22

*Shulski-Matthew v. McGill*, 2005 WL 3508626 (E.D.P.A)......................................22

iv

**Cases**          **Page (s)**

*City of St. Louis v. Praprotnik,* 485 U.S. 112, 116 (1988)...................................................................22

*Monell v. New York City Dept. Of Social Services,* 436 U.S. 658, 690 (1978)......................................22

*Pembaur Cincinnati,* 475 U.S. 469 (1986).................................................................................22, 23

*Grove v. City of York*, 342 F. Supp. 2d 291*311(E.D. Pa. 2004)..........................................................*23*

*Beck v. City of Pittsburgh,* 89 F.3d 966, 971 (3d Cir. 1996)...............................................................23

*Bd of County Comm'rs, Bryan County v. Brown,* 520 U.S. 397, 407.....................................................23


**Statutes**

29, 9 Del. C. § 1120..................................................................................................... 4, 10

75, Del. Laws c. 9........................................................................................................ 5, 6

 9, Del. C. 1158 (a).........................................................................................................10

Del. Const. 1897 Art. II.................................................................................................10

NCC Code Section 2-29.5..............................................................................................11

42 U.S.C § 1983..........................................................................................................22

## SUMMARY OF ARGUMENT

A.    **Plaintiff Did Not Have a Constitutionally Protected Property Right In His At-Will Employment**

B.    **Plaintiff Did Not Have An Expressed or Implied Contract For Employment**

C.    **Defendants Did Not Breach The Covenant Of Good Faith and Fair Dealing**

D.    **Defendants Did Not Violate Plaintiff's Right To Political or Familial Association**

E.    **Plaintiff Was In a Policymaking Position**

F.    **Defendant Coons Is Entitled to Qualified Immunity**

## I.     INTRODUCTION

Plaintiff in his Answering Brief has conceded many of his claims.[1] Disregarding Plaintiff's conceded claims and arguments and witness conjecture, rather than facts, the remaining issues in this case are whether the Plaintiff had a legally-defensible contract for life-time government employment by his sister, whether the Plaintiff had a protected property interest right in his employment, whether Plaintiff's termination was in violation of his First Amendment right to political and familial association, whether Defendants violated the covenant of good faith and fair dealing when dealing with Plaintiff. In reply, Defendants Christopher Coons ("Coons") and New Castle County ("the County") narrow their responses to the remaining issues, which undoubtedly can be resolved by way of summary judgment. In an attempt to create an issue of fact, Plaintiff has inappropriately offered mere speculation and conjecture of witnesses who fail to offer any material facts to support his claim. When taking the facts in the light most favorable to the Plaintiff he has failed to provide a scintilla of admissible evidence to support his position and therefore, Defendants are entitled to summary judgment.

Plaintiff's Answering Brief is full of facts which are wholly unsupported by the record. Plaintiff, in his counter-statement of facts, includes everything but the facts. The counter-statement of facts cited by Plaintiff contains wildly unsupported accusations, speculation and argument, all of which are improperly set forth in the facts section of Plaintiff's Answering Brief. Plaintiff cannot point to any evidence that would cause a reasonable fact finder to believe that Plaintiff was wrongfully terminated. Statements of material fact in support or opposition to a motion for summary judgment must include references to the record. *See,* D. Del. L.R 7.1.3 (E). Therefore, Plaintiff's failure to cite to the record and offering mere argument instead of substance should deem the material facts presented by Defendants admitted.

---

[1]   Plaintiff is not pursuing his claims for violation of his liberty interest, violation of his right to vote, his civil conspiracy claim, his defamation claim and his claim under the *New Castle County Code.*

2

Plaintiff is not pursuing his claims for violation of his liberty interest, violation of his right to vote, his civil conspiracy claim, his defamation claim and his claim under the *New Castle County Code*.

Moreover, Plaintiff heavily relies upon statements from people who base their opinions on speculation and alleged unsupported hearsay of unknown persons. On a motion for summary judgment, the evidence is limited to that which would be admissible at trial. *Blackburn v. United Parcel Serv., Inc.* 179 F.3d 81, 95 (3d Cir. 1999). "Summary Judgment of course, looks only to admissible evidence." (*citing Arnold Pontiac-GMC v. Budd Baer, Inc.,* 826 F.2d 1335, 1339) (3d Cir. 1987). "Hearsay statements that are inadmissible at trial should not be considered when determining whether Plaintiff has established a triable issue of fact." *Layman v. Lobby House, Inc.,* 2008 WL 1733354 (D. Del.) (*citing Sosa v. Chertoff,* 2008 WL 800691, *3 (D.N.J. March 21, 2008)) (citations omitted). "The very mission of the summary judgement procedure is to pierce the pleadings and to assess *the proof* in order to see whether there is a genuine need for trial" (emphasis added) *Laymon,* 2008 WL 1733354, FN 44, (*quoting* the Advisory Committee Notes to the changes made to Rule 56 in 1963). When the Court, therefore, views only the supported material facts it is undisputed that there is no genuine issue for trial because a jury presented only with the admissible facts would not reasonably find for the Plaintiff (non-moving party), therefore, Defendants must be granted summary judgment.

## II.    ARGUMENT

### A    Plaintiff Did Not Have a Constitutionally Protected Property Right.

Plaintiff argues, in direct contradiction to state law, that he held a protected property right and could only be terminated for just cause. At the time that Plaintiff was terminated, he was an at-will-employee. Plaintiff failed to cite any authority that an at-will-employee has a protected property right. Authority which holds that classified employees under the Delaware State Merit System are entitled to due process protections is irrelevant. Plaintiff's Answering Br. at 20., as stated, *supra,* and in

Defendants' Opening Brief. At the time of Plaintiff's termination he was not a classified employee and was not part of the merit system. Therefore, Plaintiff's authority is unpersuasive.

On April 6, 2005, Plaintiff's position was at-will, and he was serving at the pleasure of the County Executive. *See* H.B.29; *J. Freebery Depo.* at 309. An at-will employee does not possess a property interest in his continued employment. *Thomas v. Hammonton*, 351 F.3d 108, 113 (3d Cir. 2003)(*citing Robertson v. Fiore*, 62 F.3d 596, 601 (3d Cir. 1995)). Beginning on January 27, 2005, State law was amended by H.B. 29 and the General Managers began to serve at the pleasure of the County Executive. *See* H.B. 29; 9 *Del. C.* § 1120. At that time, Plaintiff became an at-will employee and served at the pleasure of the County Executive, and had no property interest in his job. The State Legislature and the Governor through the enactment of H.B. 29, eliminated any previously conferred property interest that Plaintiff may have had. Therefore, when he was terminated on April 6, 2005, he was not entitled to due process. *See Sykes v City of Gentry,* 114 F.3d 829 (8th Cir. 1997); and *Packett v. Stenberg,* 969 F.2d 721 (8th Cir. 1992) ( "The legislature that creates a statutory entitlement (or other property interest) is not precluded from altering or terminating the entitlement by a later enactment.") The position of General Manager of Special Services is a statutory creation of the state legislature. *9 Del. C 1120.* As such, it is clear under Delaware law that the position may be created, abolished, or its term altered at will by the state legislature.

> "The result then is that offices of statutory creation in Delaware are left in the sole discretion of the legislature in respect to the term or duration of their incumbency, unaffected by any constitutional limitation, other than this--that the legislature can in no case extend the tenure beyond good behavior". Within the limits defined by good behavior, the legislature is free to make the term of an office created by it long or short according as it sees fit in the exercise of its discretion."

*New Castle County Council v. State* 688 A2d 888, 893 (Del. 1997)(*citing* Collison v. State, 2 A2d 97, 100)

Plaintiff attempts to state several irrelevant and immaterial facts regarding the introduction

4

and passage of H.B. 29. See Plaintiff's Answering Br. at 33. Although, the legislation was considered in the last week of a legislative session, it was passed nearly unanimously after consideration by both houses following testimony and debate on the floor of the Senate. However, as admitted by Plaintiff on numerous occasions, there is no claim against the Delaware General Assembly and the Defendants are not being sued for lobbying the legislature. *Id.* at 32. Therefore, the manner in which the legislation passed and became enacted is wholly irrelevant to any claims against Defendants.

Moreover, Plaintiff cites to unsupported hearsay in an attempt to show some ill intention or motive behind the enactment of H.B. 29. Plaintiff attempts to rely on an alleged statement by Senator Blevins to Senator Peterson during the debate on H.B. 29 on the Senate floor, which Senator Peterson testified to during her deposition. The alleged statement should not be considered in the motion for summary judgment because it is inadmissible hearsay. *Laymon v. Lobby House, Inc.,* 2008 WL 1733354 (D. Del.). Moreover, there is not a scintilla of evidence to which the statement can in any way be attributed to Coons. Therefore, any reference to the alleged hearsay statement made to Senator Peterson must not be considered. "Summary Judgment of course, looks only to admissible evidence." *Arnold Pontiac-GMC v. Budd Baer, Inc.,* 826 F.2d 1335, 1339 (3d Cir. 1987). "Hearsay statements that are inadmissible at trial should not be considered when determining whether Plaintiff has established a triable issue of fact." *Laymon v. Lobby House, Inc.,* 2008 WL 1733354 (D. Del.), citing *Sosa v. Chertoff,* 2008 WL 800691, *3 (D.N.J. March 21, 2008) (citations omitted)

One alleged statement from a Legislator can not be inferred to be the legislative intent. The fundamental rule in applying a statute is to ascertain and give effect to the intent of the legislature. Where the intent of the legislature is clearly reflected in unambiguous language in the *statute*, the statute itself clearly controls. *Patton v. Ventresca,* 90C-JA-29, Herlihy, J. (Del. Super. 1992). "This Court has always looked to the language of any statute when interpreting provisions." *Evans v. State,* No. 67, 2004 (Del. 2004) quoting *Hudson Farms, Inc. v. McGrellis,* 620 A.2d 215, 218-20 (Del. 1993). The General

Assembly in 75 Del. Laws c. 9 (February 9, 2005) adopted 9 *Del. C.* Section 1120(b) stating clearly and in part: "The County Executive, with the advice and consent of the County Council, shall appoint...the General Manager of Special Services..." Section 1120(c) stated: "Notwithstanding any other provision of State or county law, upon the effective date of this Section, any persons then serving in any of the positions enumerated in this Section shall cease to be classified service members of the New Castle County Merit System, but may thereafter continue to serve at the pleasure of the County Executive." There is no ambiguity to interpret. Even if there were ambiguity in the statute itself, intent may be ascertained in House Bill 29, encoded in 75 Del. Laws. c. 9, which stated in a whereas clause that "present and future County Executives, subject to the advice and consent of County Council, should be empowered to select heads of County departments as former New Castle County Executives were empowered."

1.    **Coons Is Protected by Qualified Immunity.**

Coons is also entitled to qualified immunity in his individual capacity.  Plaintiff concedes the standard for qualified immunity and cannot cite to any authority to show that Coons should have known that terminating an at-will employee required due process.  In fact the only law that Plaintiff cites in arguing that Coons is not entitled to qualified immunity is law regarding terminations "for cause".  For the reasons stated, *supra,* Plaintiff was an at-will employee at the time he was terminated and Plaintiff cannot show that Coons violated a clearly established constitutional right when he terminated Plaintiff.

In the instant case, there was no precedent at the time Coons terminated Plaintiff when he served in an at-will position at the pleasure of Coons to put him on notice that his conduct was constitutionally prohibited.  At the time Coons terminated Plaintiff, HB 29 carried, as it continues to carry, the presumption of constitutionality. *Downs v. Jacobs*, 272 A.2d 706 (Del. 1970).  Coons relied upon the constitutionally of HB 29.  "Citizens and public officials have a right to accept the law as it is written until it is repealed or judicially condemned." *Id.*  Therefore, it cannot be concluded that at the time Coons

terminated Plaintiff that he was at all aware that Plaintiff had a property right which entitled him to due process. Moreover, the January 27, 2005 Legal Memorandum from Acting Attorney Siebold to Coons provided that, ". . . the provisions of H.B. 29 are automatic and, upon its enactment into law the incumbent General Managers who are enumerated in the text will, by operation of State law, automatically become unclassified service employees serving at the pleasure of the County Executive. Coons' reasonable reliance on the advice of counsel supports his defense of qualified immunity. *Coons Depo.* at 251, 252. *Muir v. County of Sussex County*, 393 F.Supp. 915 (D.Del 1975)(council members who dismissed employee without hearing in reliance on advice of attorney were entitled to qualified immunity.).

B.      **Plaintiff Did Not Have An Express or Implied Contract For Employment.**

Plaintiff purports to allege that he had a contractual protected property right, which is baseless. Plaintiff's Answering Br. at 22. Plaintiff first argued that he had a protected property right which entitled him to due process because he was a classified employee of the merit system, prior to being terminated. In contradiction to that claim it is undisputed that Plaintiff did not file a grievance or pursue any remedy under the merit system. As stated, *supra,* Plaintiff's argument must fail because the law was changed and at the time Plaintiff was terminated he was an at-will employee outside of the merit system. Now Plaintiff separately argues that he had a contract for employment with the County for which he could only be terminated for cause.

Plaintiff's allegation that he was given an express oral and written promise to always be afforded the merit system protections is contrary to the admissible evidence produced. Moreover, Plaintiff's statement that the promises that were made neither related to or were contingent upon statutory classification is wholly unsupported and contradicted by Plaintiff's own evidence. The oral and written statements that Plaintiff now claims to be relying upon to give him a protected property right are recited in the November 24, 2004 Memorandum. Interestingly, when Plaintiff recites almost the entire

7

memorandum in his answering brief he fails to leave out the critical clause which completely contradicts his theory, such as: "*Of course, someone could change state law. . .*" (emphasis added)  The position of general manager was created as a merit system position through a change in state law and it was made abundantly clear to all of the general managers that "of course, someone could change state law." Therefore, Plaintiff cannot now argue those statements were neither related to or contingent upon statutory classification, when in fact it was only because of a statutory change that the positions of merit system general manager ever came to exist.  It is clear that Plaintiff has always been on notice that State law could change the status of general manager.

      1.       **The November 24, 2004 Memorandum or The Alleged Prior Promises Did Not Create A Binding Employment Contract Between Plaintiff and Defendants.**

      Plaintiff proclaims that he had an independent employment contract for life from the prior County Executive Thomas Gordon ("Gordon"), which was separate from any statutory position that he held. Plaintiff's argument is completely void of any support either legally or factually.  First and foremost if the County Executive was able to offer the general managers separate independent contracts for life which would have been binding on all of his successors, it is presumed that he would have sought to do that instead of taking efforts to change the state law.  Therefore, logic dictates that this was not a contract.

      For purposes of summary judgement, it is undisputed that Gordon made certain statements to the acting general managers which were reiterated in the November 24, 2004 memorandum.  However, it is abundantly clear that those statements did not create a contract under Delaware law.

      Generally, a contract is a legally binding agreement between two or more parties which requires that each party perform according to the agreement's terms. *Leeds v. First Allied Connecticut Corp.*, Del. Ch., 521 A.2d 1095, 1101-02  (1986); *Norse Petroleum A/S v. LVO International, Inc.*, Del. Super., 389 A.2d 771, 773 (1978).  With respect to employment contracts, generally, a contract for employment is at will. Employment at will means that either party may terminate the contract at any time without providing

a reason for cause. *E.I. duPont de Nemours & Co. v. Pressman*, Del. Supr., 679 A.2d 436, 441, 444

(1996) With respect to a written employment contract, the writing must identify, with some moderate

degree of precision, such items as subject matter, duration, job description, and hours of employment.

*Lindsey v. M.A. Zeccola & Sons, Inc.*, 26 F.3d 1236, 1239 (3d Cir.1994).

Public contracts requiring the expenditures of public funds differ from private contracts.

It is undisputed that the County Executive signs public contracts on behalf of the County, but only when

he has followed the legal and procedural requirements in place to ensure public contracts are legal and

binding. The County Executive does not have unilateral authority to bind the public and all successors of

County government. Office holders, such as the County Executive, have been unsuccessful through the

years in attempting to bind their successors. *In Re Rawlins v. Levy Court of Kent County,* 235 A.2d 840

(Del. 1967), was a case in which Rawlins, the plaintiff, was appointed the Director of Civil Defense

pursuant to statutory authority. The statute did not prescribe a term of office for the Director and he

served at the pleasure of the Levy Court. At the end of the Levy Court term, they appointed the Director

to a term of two years. When the newly elected Levy Court took office they by resolution terminated the

Director and replaced him with someone else. Rawlins argued that in accordance with a specific statute

he could only be removed for cause. The Delaware Supreme Court, however, held that Rawlins was

properly removed. "The general rule is that a governmental body may not, in the exercise of its powers,

appoint an individual to a term extending beyond the term of office of the governmental body." *Id.* citing

Annotation, 149 A.L.R 342; 43 Am. Jur., Public Officers, § 160; 37 Am.Jur.. Municipal Corporations, §

237. The *Rawlins*, Court held that the appointment on the eve of the expiration of the Levy Court was

"an illegal attempt to deprive its successor of its power to direct and control the office of Director of

Civil Defense." *Id.* The principal theory cited in *Rawlins*, directly applies to the instant case and

illustrates the position that the Court disfavors office holders binding or attempting to bind their

successors. Therefore, Gordon clearly lacked the authority to bind future County Executives with

9

lifetime appointments/contracts of the then existing general managers. Moreover, Gordon acknowledged his inability to bind such successors by stating in the November 24, 2004 memorandum that, "of course, someone could change state law." In *Korn v. New Castle County,* 2005 WL 396341 (Del. Ch.), the Court of Chancery was highly critical of former County Executive Gordon when he attempted to divert funds into specific designated accounts without legislative action.

> The fact is that the County Executive, through unilateral action, diverted surplus money into executive designations, avoiding the strictures of 9 Del. C. 1158 (a) that requires the use of available surpluses to balance the budget. Those acts had real and legal consequences and could only be valid if they were the objects of legislative action. Similarly, defendants cannot cure this defect by asserting that the Council had knowledge of the surplus funds and the practice of executive designations. The County Council does not exist to be a rubber stamp of the Executive. The Council has an independent, co-equal and indispensable role as designated by New Castle County's charter. As stewards of the public trust, this role cannot be abdicated. Acquiescence in the fact of executive abuses cannot elevate those abuses to the dignity of law.

*Korn v. New Castle County,* 2005 WL 396341 (Del. Ch.). Likewise, Gordon and Plaintiff's sister's unilateral attempt to provide Plaintiff with a lifetime appointment through a promise or a memo was *ultra vires* and invalid.

The County Executive may not circumvent the General Assembly's legislative actions and powers with an attempt to change state law through the creation of a contract for life. *See Del. Const.* 1897 Art. II  The status and classification of the mangers of the County are codified in 9 Del. C. § 1120 and cannot, therefore, be amended or changed by the County Executive. *See Collison v. State Ex. Rel. Green,* 2 A.2d 97 (Del. 1938). (Holding that offices of statutory creation in Delaware are left in the sole discretion of the Legislature in respect of the term or duration of their incumbency, unaffected by any constitutional limitation, other than that the Legislature can in no case extend the tenure beyond good behavior). The General Assembly holds and creates the term of the general managers of the County and has changed it throughout time. Initially, in 1965, the Directors served at the pleasure of the County Executive. See Opening Br. at 3-4. Then in 1997, the law changed and created the position of general

10

managers and placed them in the classified merit system. *Id.* In 2005, the law was changed again and the

general managers began serving at the pleasure of the County Executive. *Id.* An office which is created

by the legislature "may be modified, abridged, or abolished as the legislature may see fit" unless there is

a constitutional limitation. *State ex. Rel. McVey v. Burris,* Del.Supr., 49 A. 930 931 (1901). Therefore,

Plaintiff's assertion that his alleged contractual claim stands separate and apart from the change in state

law is wholly unsupported and is contrary to the law in Delaware.

Plaintiff also attempts to rely on the representations set forth in the November 24, 2004

memorandum from his sister to form the basis of his contract claim. However, this memorandum was

curiously issued at least five years after he accepted the position of General Manager. Neither the

alleged promises or the November 24, 2004 memorandum create a legally binding contract. The

Delaware Courts have previously ruled that not every promise of an elected official made is enforceable.

*See Dale v. Town of Elsmere,* 702 A.2d 1219; *Hartman v. Buckson,* Del. Ch., 467 A.2d 694(1983) (court

held that the agreement between Town of Camden and a developer regarding a plot plan was not a

contract but was nothing more than a private agreement, and that the Town did not have the authority to

contract to a create a particular zoning district)

Aside from the conflict with State Law, Plaintiff has also failed to show that the County

Executive had the authority under County Code to unilaterally enter into a contract with Plaintiff. There

are procedural safeguards in place to ensure the County Executive is not acting unilaterally and is

entering into expenditures that are in the best interest of the public. At the time Plaintiff alleges to have

entered into this contract, the County there were specific provisions regarding contract approval and

formation. Up until 1998, contracts in excess of ten thousand dollars ($10,000) that were not

competitively bid required Council approval. NCC Code Section 2-29.5 at Reply Appendix 1. After

1998, the *New Castle County Code* was amended to increase the amount of the contracts that required

Council approval from ten thousand ($10,000) to fifty thousand ($50,000) dollars. In 2004, Section

11

2.02.004 of the *New Castle County Code* was again amended and required that all contracts involving the expenditure of funds by the County in excess of ten thousand ($10,000) which are not competitively bid required Council approval.  Plaintiff alleges that he had an evergreen contract for an annual amount well exceeding the minimum requirements and there is no evidence that any of these alleged contracts were approved or voted upon by Council.  The lack of Council approval only further supports Defendants position that there was no contract and that any discussions between Plaintiff and Gordon were simply discussions regarding what the protections would be once in the merit system.  The discussions did not create a binding and enforceable contract.

In *Heideck v. Kent General Hospital, Inc*, Del.Supr., 446 A.2d 1095 (1982), the Court affirmed that the employee was an at-will employee and in making such a determination focused on the facts that Plaintiff was not hired on the basis of a written contract that set the terms, conditions or duration of her employment and that there was not an oral promise of employment for a definite length of time. *Id.*  Likewise, Plaintiff cannot show a written contract which sets forth the terms, conditions or duration of his employment and there was no oral promise for a definite period of time.  Plaintiff did not have a specific or implied contract for employment with New Castle County on April 6, 2005 when he was terminated.  Plaintiff, therefore, did not have a contract for employment nor a protected property right entitling him to due process on  April 6, 2005.

C.        **Defendants Did Not Breach The Covenant of Good Faith And Fair Dealing**

In his Answering Brief, Plaintiff specifically now alleges that Defendants have breached the covenant of good faith and fair dealing by creating a fictitious ground to terminate him. Plaintiff's mere disagreement with the reasons for which he was terminated do not equate to a breach of the covenant of good faith and fair dealing.  The Supreme Court has made it clear that the employment-at-will doctrine is broad, while the implied covenant  is and should remain extremely narrow. *See E.I. Dupont de Nemours & Co. v. Pressman,* Del. Supr., 679 A.2d 436 (1996).  Nothing in the covenant of good faith and fair

12

dealing is to be construed as "limiting an employer's freedom to terminate an at-will employment contract for its own legitimate business, or even highly subjective reasons." *Layfield v. BeBe Medical Center, Inc.,* 1997 Del. Supr., LEXIS 496 quoting *Pressman* 679 A.2d at 444. "Dislike, hatred or ill will, alone, cannot be the basis for a cause of action for termination of an at-will employment." *Id.* In order for there to be a breach of the implied covenant, " the conduct of the employer must constitute 'an aspect of fraud, deceit, or misrepresentation.'" *Id.* citing *Merrill v. Crothall-American Inc.,* Del. Supr., 606 A.2d 96, 101.

When taking the facts in the light most favorable to the Plaintiff, he still fails to show that the Defendants falsified or manipulated his employment record. Plaintiff presents no evidence that his employment record or file was in any way altered, destroyed of falsified. In fact, Plaintiff relies heavily on the fact that there was no written record or evaluation by Defendants in supporting his claim. Plaintiff asserts that the Chief Administrative Officer ("CAO") was required to give Plaintiff a written evaluation, however, Plaintiff cites to no authority to support this proposition. Defendants are not aware of any requirement that the CAO perform written evaluations of policymaking employees. Plaintiff has not cited any legal authority that cabinet level officials must receive written evaluations. Moreover, Plaintiff cites to his employment evaluations during the time in which Plaintiff worked for and was evaluated by his sister. It is not surprising that Plaintiff would receive an excellent evaluation from his sister. Additionally, Plaintiff relies upon evaluations of his performance under the Gordon Administration, which is irrelevant to how Plaintiff performed for Defendants. It has always been Defendants position that Plaintiff performed differently for the Gordon Administration then for Defendants. Pat Lutz DiIenno, former general manager of the department of Human Resources, stated that Plaintiff seemed to be acting contrary to the policies of the Coons Administration because he was not as active a manager as he used to be under the former Administration. *DiIenno Depo.* at 51-54. Moreover, "[a]n employer can decide who to believe where there are conflicting stories concerning an

13

incident, and an employer's acceptance of another employee's version cannot give rise to a claim for a breach of the implied covenant" *Layfield v. BeBe Medical Center, Inc.,* 1997 Del. Supr., LEXIS 496*17. Therefore, simply because Coons relied upon the recommendations and observations of Plaintiff's direct supervisor, CAO Singleton, as opposed to the opinions of Councilman Tansey or other subordinate employees of Plaintiff does not give rise to a claim for breach of the implied covenant. Plaintiff has failed to provide any evidence that Defendants created fictitious grounds to terminate Plaintiff, or that they acted fraudulently or deceitfully. Moreover, there are no facts to establish that Defendants created a false record. Therefore, the Plaintiff has failed to establish an exception to the employment -at-will doctrine.

### D.    Defendants Did Not Violate Plaintiff's Right To Political/Familial Association

Plaintiff alleges throughout his Complaint that he publicly and privately supported his sister, Sherry Freebery, as the political opponent of Coons in the Democratic primary for County Executive in 2004 and that he was terminated because of his political support of his sister. Complaint, ¶ 43, 53, 118.

*Branti* and *Elrod* did carve out an exception for positions that are classified as policymaking or advisory. *Brant v. Finkel,* 445 U.S. 507, 518 (1980); *Elrod v. Burns,* 427 U.S. 347, 368 (1976); *see also Peters v. Del. River Port Auth.,* 16 F.3d 1346, 1353 (3d Cir.1994) Based upon the general principles, the Third Circuit Court of Appeals "has developed a three-prong test in political patronage discrimination cases." *Goodman v Pennsylvania Turnpike Com'n,* 293 F.3d 655, 663 3d Cir. 2002). To make out a prima facie case of political discrimination, a plaintiff must first show that he worked for a public agency in a position that does not require a political affiliation. *See Robertson v. Fiore,* 62 F.3d 596, 599 (3d Cir.1995). Second, he must show that he engaged in constitutionally protected conduct.[2] *Id.* Lastly, plaintiff must prove that his conduct was a substantial or motivating factor in the government's

---

[2] Plaintiff's minimal involvement in opposition to Coons may be considered protected activity at summary judgment stage.

employment decision.  Once the plaintiff has satisfied the foregoing criteria, the defendant may defeat

plaintiff's claim by proving, by a preponderance of the evidence, that the same employment action would

have been taken even in the absence of the protected activity. *See Mt. Healthy City Sch. Dist. Bd. of*

*Educ. v. Doyle*, 429 U.S. 274, 287 (1977).

      **1.**      **Plaintiff Was In A Policymaking Position; Therefore His Termination Must Be Upheld.**

     Plaintiff concedes the fact he was in a policymaking position at the time he was terminated.

Plaintiff's Answering Br. at 39-41.  Plaintiff does, however, attempt to create his own unsupported

exception to the policymaking requirement by reiterating the fact that he alleges to have had a contract

right with the County and therefore the policymaking exception would not apply. *Id.*  Plaintiff's theory is

wholly unsupported and illogical because Plaintiff concedes in his Answering Brief that he held a

"policymaker" type position. *Id.*  The Court, therefore, should reject Plaintiff's argument.  Defendants

continue to assert as they did in their Opening Brief, which is now undisputed that Plaintiff was in a

policy making position when he was terminated. Opening Br. at 15-16.  Plaintiff cites no authority for his

proposition that the policymaking exception created in *Elrod-Branti* should not apply and Defendants are

unaware of any authority.  Moreover, the fact that the County Executive could have hired Directors above

the general managers is irrelevant to this issue.  Coons stated in his deposition that the cost to the

taxpayers would have been over one million dollars to hire Directors above all of the general managers

and that essentially they would have been doing the same job. *Coons Depo.* at 172-173.  Therefore, it is

undisputed that at the time Plaintiff was terminated he held the highest ranking position in the Department

of Special Services, which by Plaintiff's own concession was a "policy maker" type position.  The Court,

therefore, must conclude that Plaintiff was in a policymaking position.  Based upon the above, it is

evident that Plaintiff had significant authority in managing the Department of Special Services and

contributed to policy development.  Therefore, Plaintiff was in a policymaking position for which a

political affiliation requirement was appropriate. Opening Br. at 7, 8. Furthermore, Defendants' cited actions of Plaintiff which interfered or were contrary to the Coons administration. Opening Brief at 7, 8 and 18.    As a consequence, Plaintiff is unable to satisfy his burden under the first prong of the test, and his claim should be dismissed.

The *Elrod-Branti* exception is applicable to association claims, especially in this case where plaintiff alleges repeatedly throughout his complaint that he publicly and privately supported his sister as the political opponent of Coons in the Democratic primary. The reasoning behind the *Elrod-Branti* exception is to allow the government the ability to move forward after an election and to ensure that employees in high level policymaking positions support the goals of the new administration and do not have the ability to impede its policies and vision. In *Ness v. Marshall*, 660 F.2d 517, (3rd Cir. 1981), the Third Circuit applied the *Elrod-Branti* exception to association claims brought by assistant city solicitors who were terminated following an election. The Court approved the dismissals of all the plaintiffs pursuant to the *Elrod-Branti* exception including Ness who was of the same political party as the new mayor, a Democrat, but who had supported his brother as an unsuccessful Republican candidate for city council. The *Elrod-Branti* exception is appropriate  in this case because the family member was the opponent so the political association can not be separated from the familial association claim because they are so intertwined.

In *Biggs v. Best, Best & Krieger,* 189 F.3d 989 (9th Cir. 1999), Plaintiff was terminated because of her family's involvement in politics which were adverse to her employers' municipal client.  The Court in *Biggs* upheld her termination because of her policymaking position and concluded that several circuits have held that individuals in policymaking positions may be removed from their positions because of their and their families' political activities.  See *Soderstrum v. Town of Grand Isle,* 925 F.2d 135, 136, 140-41 (5th Cir. 1991) (holding that it was permissible to not reappoint a secretary who was the wife of the outgoing police chief's nephew because the outgoing police chief was a political opponent of the

incoming police chief); *Clark v. Brown,* 861 F.2d 66, 68 (4th Cir. 1988) ("There is some authority for the proposition that dismissal of an employee because of a relative's political activities does not violate the employee's first amendment rights."); *Soderbeck v. Burnett County,* F.2d 285, 288 (7th Cir. 1985) (noting that, in theory, a sheriff's confidential secretary, who was the wife of a political opponent of the sheriff, could be terminated for that reason). *Id.* In *Ballas v. City of Reading,* 2001 U.S. Dist. LEXIS 10733 *11 the Court confirmed that "the nature and extent of the right to be free of retaliation based on familial association is 'hardly clear,'" in the Third Circuit. Defendants continue to assert that Plaintiff has failed to support a claim for a retaliation in violation of his intimate association in accordance with the standard in *Lyng v. International Union, et. al.*; 485 U.S. 360, 365 (1988), which requires Plaintiff to show that his termination in anyway interfered with his relationship with his sister. Moreover, Plaintiff has failed to provide any authority that holds that his right to familial association should be separately analyzed under another standard.

2.    **Plaintiff Cannot Show That His Association Was A Motivating Factor In His Termination.**

Assuming *arguendo* that Plaintiff is not classified as a policymaker, his claim must still fail because he cannot provide any material facts to show that Plaintiff's political and/or familial association was a motivating factor in his termination. To get beyond the summary judgment stage, Plaintiff must produce enough evidence for a reasonable jury to conclude that his association with and support of his sister, to the extent it is protected under the First Amendment, was a motivating factor in the decision to terminate his employment. Plaintiff cannot show any facts that support his termination was motivated because of his association with Sherry Freebery.

In an effort to support that his political and familial association was a motivating factor in his termination, Plaintiff cites to mere speculation and opinion testimony which would be inadmissible at trial and, therefore, is equally inadmissible to refute Defendants' motion for summary judgment.

17

### a.     Inadmissible Statements of State Senator Karen Peterson

The statements which Plaintiff intends to rely upon from State Senator Peterson should not be considered by the Court as it is unsupported hearsay and speculation and completely unattributable to Defendants.   Senator Peterson alleges that Plaintiff was terminated because he was Sherry Freebery's brother and because there was great animosity between Sherry Freebery and Coons.  Plaintiff's Answering Br. at 42,43.   However, Senator Peterson when specifically asked the basis for her opinion could not state any support for her opinion other than that she believed Coons held animosity towards Sherry and Senator Peterson extended that to include all of the Freeberys.  *Id.*  Senator Peterson could not provide any specific comments in either a news article, debate or any venue in which Coons showed any animosity towards Plaintiff.  *Id.*  In fact by Plaintiff's own admission, he stated that he and Coons continued to have a friendly relationship.  *J. Freebery Depo* at  89.  Moreover, Plaintiff attempts to rely upon unsupported hearsay statements by unidentified county employees to Senator Peterson to support his claim.  These statements are clearly inadmissible.   *Laymon v. Lobby House, Inc.,* 2008 WL 1733354 (D. Del.).  The other inadmissible hearsay statement which Plaintiff attempts to rely upon, which must be excluded, is an alleged statement from State Senator Blevins to Senator Peterson regarding H.B. 29.  *Id.* As stated, *supra,* this statement must be excluded as inadmissible hearsay.  Plaintiff cannot cite to any exception to the hearsay rule that would permit this statement at trial and, therefore, it can not be considered in support of Plaintiff's attempt to defeat summary judgment.  Moreover, State Senator Blevins does not recall making any such statement. *Blevins Depo.* at 22; Appendix Tab 2*.*  She further stated that it does not sound like something she would say. *Id.*

### b.     Inadmissible unsupported opinion testimony from Patty Powell

Plaintiff also relies upon the unsupported opinion testimony from Patty Powell that it is her opinion he was fired because his last name was Freebery. For the reasons stated, *supra,* this opinion is irrelevant, immaterial and inadmissible for summary judgment as it is wholly unsupported. Moreover, Patty Powell's assumption and mere belief that Plaintiff was terminated because of his last name is contrary to her statement that, it was her belief that all of the general managers would have been fired if they did not retire. *Powell Depo.* at 48; Appendix Tab 3. However, Patty Powell's opinion is again contradicted by the direct evidence that, Charles Baker, general manager of the Department of Land Use worked under the Gordon/Freebery Administration and continues to serve in the same position under the Coons administration. Additionally, Powell admitted that she was aware that Jan Eckstein, Sherry's sister, and Kristen Freebery, Sherry's niece and Plaintiff's daughter, all were retained by Coons. *Id.* at 43-44. Therefore, these wholly unsupported, speculative and self contradicting statements by Powell must not be considered.

### c.    Inadmissible unsupported opinion testimony from William Tansey

Plaintiff, as stated, *supra,* again attempts to use this unsupported speculative opinion from Tansey to support his position. However, as with the other above referenced opinions, they are inadmissible. When Tansey was specifically questioned regarding the support for his opinion it becomes clear that Tansey believed that Coons would want his own people in that position because it was a very contentious primary and one would want people in there who were loyal. *Tansey Depo.* at 60; Tab 4. Additionally, Tansey admits that nothing was said by Coons or anyone else why Plaintiff was terminated, it was just his opinion. *Id.* at 61.

### d.    Inadmissible unsupported opinion testimony from Robert Woods

Plaintiff includes an opinion from Woods that Plaintiff was "engaged and knowledgeable". This statement is irrelevant because what Plaintiff fails to point out is that Woods was no longer a member of

19

County Council at the time when Plaintiff served as general manager under the Coons administration and therefore any prior performance observations are irrelevant as to how he performed for Defendants.

**e.    Coons' statement during the Democratic Primary**

Plaintiff has continually pointed to the following statement as the "smoking gun" to prove that Plaintiff was wrongfully terminated.  The actual statement made is marginally different then the statement alleged in the Complaint.  The quote was, "The current law and current situation would produce a situation where the next County Executive, whether any of the three of us before you, would have Ms. Freebery's brother running the largest department in New Castle County government." Plaintiff's Answering Br. at 46.   That quote was, at the time made, an undeniable fact.  It shows no motive or intent or even animosity against Plaintiff.  It certainly does not imply the complete speculative leap Plaintiff would have it mean.   It shows nothing more than the continued position of Coons that he should have some choice in appointing his policymaking employees.

**f.    Coons Statement to Reporter Claudia Cohen is immaterial.**

Plaintiff's reliance on this one out of context quote is again immaterial.  When the article is read in its entirety there is no suggestion that establishes that Coons had any intent on removing Plaintiff from his position of general manager.  Therefore, this statement is immaterial to defend summary judgment.

The above referenced facts are the facts upon which Plaintiff relies to support his claim that he was terminated due to his political association and or familial association with his sister.  For those reasons, Plaintiff has failed to show a genuine issue for trial as there are no **material** factual disputes. The facts referenced by Plaintiff are either inadmissible or immaterial; therefore, Plaintiff has failed to show that his alleged political or familial association was a motivating factor in his termination. Additionally, Plaintiff has failed to show that absent that alleged activity Defendants would not have taken the same actions.  Moreover, Plaintiff was in a policymaking position at the time he was terminated

and, therefore, even if Plaintiff was terminated for his political or familial association, his rights were not violated because of the *Elrod-Branti* exception.

3.    **Plaintiff Has Failed To Provide Any Evidence To Refute That Defendants Would Have Taken The Same Action With Respect To Plaintiff Regardless Of His Association.**

In Plaintiff's Opening Brief at pages 7-8, 18-19, Defendants asserted by a preponderance of the evidence that they would have taken the same action absent any of the alleged protected conduct asserted by Plaintiff. Plaintiff in his Answering Brief failed to provide any evidence to refute these reasons. Specifically, Plaintiff fails to address the undisputed fact that after Coons became County Executive at least two other relatives continued to work for the County even though they were Sherry Freebery's sister Jan Eckstein, and her niece, Kristen Freebery. Presumptively they also worked on Sherry Freebery's campaign. Therefore, Plaintiff clearly cannot show that his political or familial association was a substantial or motivating factor in his termination nor that the Defendants would not have taken the same action absent his alleged conduct. Therefore, Defendants are entitled to summary judgment.

E.    **Coons Is Entitled To Qualified Immunity**

Coons is also entitled to qualified immunity in his individual capacity. As the Supreme Court remarked in one of its early decisions when crafting the doctrine, "[g]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct *does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.*" *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (emphasis. added). As more recently enunciated by the Supreme Court in *Saucier v. Katz*, 533 U.S. 194 (2001), there is a two-part test for determining whether qualified immunity applies. A court first must determine whether the facts, when taken in a light most favorable to the plaintiff, are sufficient to show that the individual government defendant violated a constitutional right; second, even if a constitutional violation can be made out, nonetheless qualified immunity still protects the individual defendants unless the right allegedly violated

was "clearly established" at the time the defendant acted, such that a reasonable official would have known it. 533 U.S. at 201. "Clearly established rights" in this sense "are those with contours sufficiently clear that a reasonable official would understand that what he is doing violates that right." *McLaughlin v. Watson*, 271 F.3d 566, 571 (3d Cir. 2001).

At the time that Plaintiff was terminated, it was not well established that a person in Plaintiff's position had First Amendment protection. In *Shulski-Matthew v. McGill,* 2005 WL 3508626 (E.D.P.A), a legislative assistant for a State Representative alleged that she was fired because she supported her sister's candidacy and the State Representative told her that her support was affecting his ability to be an effective State Representative. The Court held that "The decision whether a government employee may exercise her First Amendment rights is so intensely fact-specific that there are nearly as many articulated *Elrod/Branti* tests in the Third Circuit as there are *Elrod/Branti* cases and, therefore, the Court could not conclude that the legislative assistant's rights were so clear that the State Representative would have known that if he fired her for political reasons that he was violating her rights.

Clearly, Plaintiff's rights were not so clearly established that a reasonable official, such as Coons, would have necessarily understood that terminating Plaintiff violated his rights. No reasonable official in Coon's position presented with the facts in which Coons used to make his determination would have thought that they did not have the right to act in the same manner. Therefore, Coons is entitled to qualified immunity.

## F.    New Castle County Must Be Dismissed As Plaintiff Has Failed To Cite To Any Official Policy Which Caused His Injury

It is undisputed that a municipality such as New Castle county is a person within 42 U.S.C.§ 1983. However, New Castle County may only be sued directly if it is alleged to have caused a constitutional tort through a "policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *City of St. Louis v. Praprotnik,* 485 U.S. 112, 116 (1988), citing *Monell v. New York City Dept. Of Social Services,* 436 U.S. 658, 690 (1978). The Supreme Court in

22

*Pembaur Cincinnati,* 475 U.S. 469 (1986), more precisely defined when a decision on a single occasion may establish an unconstitutional municipal policy and suggested four principals to consider. First, municipals should only be held liable for acts which "the municipality officially sanctioned or ordered. 475 U.S. at 480. Second, only those municipal officials who have "final policymaking authority" may by their actions subject the government to § 1983 liability. *Id.* at 483. Third, "final policymaking authority" is a question of law. *Id.* Fourth, the action being challenged must have been taken pursuant to a policy which was adopted by the official or officials responsible under state law for making the policy in that area. *Id.* at 482-483.

"Policy is made when a decision maker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict. A course of conduct is considered to be a custom when, though not authorized by law, such practices of state official are so permanent and well-settled as to virtually constitute law." *Grove v. City of York*, 342 F. Supp. 2d 291*311(E.D. Pa. 2004) *Beck v. City of Pittsburgh,* 89 F.3d 966, 971 (3d Cir. 1996). The Court in *Grove* held that Plaintiff had failed to show any evidence that suggested that the Mayor or the Chief of Police who were determined to be final policy makers took any actions that created a policy or custom on the part of the City. *Id.* Further the Court held that the Mayor's failure to investigate on this one particular occasion was insufficient to create municipal policy and custom. *Id.* Moreover, the Court stated that the Plaintiff could not hold the City liable under the theory that the actions of the individual defendants, although final policy makers, created policy to bind the City. *Id. (citing Bd of County Comm'rs, Bryan County v. Brown,* 520 U.S. 397, 407. New Castle County cannot be held liable under §1983 because Plaintiff has failed to prove or plead the existence of any unconstitutional municipal policy. Christopher Coons ("Coons") did not promulgate or articulate any municipal policy when he terminated Plaintiff.

To the extent that Plaintiff is alleging that the passage of H.B. 29 was the unconstitutional policy designated to retaliate against him, that argument must additionally fail. As stated in Defendant's

23

opening brief, the passage of H.B. 29, that established the personnel policy of having the general managers serve at the pleasure of the County Executive was enacted by the General Assembly. Therefore, to the extent that the enactment of H.B. 29 is the policy to which Plaintiff claims to have caused his injury, Coons did not posses final policymaking authority for the enactment of H.B. 29 and, therefore, New Castle County can not be held liable.

G.    **The Claims Against Coons In His Official Capacity Should Be Dismissed As The Defense Is Undisputed.**

Defendants argued in their Answering Brief that the claims against Coons in his official capacity should be dismissed.  Plaintiff failed to address this argument and, therefore, concedes that Defendant Coons in his official capacity should be dismissed.

V.    **CONCLUSION**

For the aforementioned reasons, the County and Christopher A. Coons, in his  individual and official capacities, respectfully request that Plaintiff's claims against them be dismissed. Moreover, Coons is entitled to immunity on all individual claims asserted against him.

/s/ Richard R. Wier, Jr.
Richard R. Wier, Jr. (#716)
Michele D. Allen (#4359)
Richard R. Wier, Jr., P.A.
Two Mill Road
Suite 200
Wilmington, DE 19806
(302) 888-3222
*Attorneys for Defendants*

24

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

JOSEPH J. FREEBERY,                     :
                                        :
            Plaintiff,                  :
                                        :
    v.                                  :        C.A. No. 05-748 PSD
                                        :
CHRISTOPHER COONS, in his official      :        JURY TRIAL DEMANDED
capacity as County Executive of New     :
Castle County and in his individual capacity;:
and NEW CASTLE COUNTY, a municipal :
corporation; and JOHN DOES 1-25         :
                                        :
            Defendants.                 :


## ORDER

    AND NOW,   this             day of             , 2008, upon consideration of

Defendant's Motion for Summary Judgement, it is hereby ORDERED AND DECREED that said

motion is **GRANTED.**


_____

The Honorable Paul S. Diamond