## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

JOSEPH J. FREEBERY,                    :
                                       :
          Plaintiff,                   :
                                       :
     v.                                :        C.A. No. 05-748 PSD
                                       :
CHRISTOPHER COONS, in his official     :        JURY TRIAL DEMANDED
capacity as County Executive of New    :
Castle County and in his individual capacity;:
and NEW CASTLE COUNTY, a municipal     :
corporation; and JOHN DOES 1-25        :
                                       :
          Defendants.                  :


## APPENDIX IN SUPPORT OF

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT


                         /s/ Richard R. Wier, Jr.
                         Richard R. Wier, Jr. (#716)
                         Michele D. Allen (#4359)
                         Richard R. Wier, Jr., P.A.
                         Two Mill Road
                         Suite 200
                         Wilmington, DE 19806
                         (302) 888-3222
                         *Attorney for Defendants*

Dated: June 9, 2008

# APPENDIX

# 1

*1982 to 1995 Edition of NCC Code*

§ 2-29.5                              ADMINISTRATION                              § 2-29.5

## Sec. 2-29.5. Approval of contracts by county council.

No contract which requires the approval of county council shall be executed nor shall any work be started thereunder until approved by resolution of the county council. The following contracts shall require the approval of county council:

(1) All contracts involving the expenditure of funds by New Castle County in excess of ten thousand dollars ($10,000.00) which are not competitively bid pursuant to section 2-58 or 2-66.1 of the New Castle County Code;

(2) All contracts for professional services involving the expenditure of funds by New Castle County in excess of ten thousand dollars ($10,000.00) which are not subject to the requirements of section 2-58(d) of the New Castle County Code; and

(3) All contracts which require the consent of county council pursuant to state law.

Copies of all contracts shall be made available to the equal opportunity officer pursuant to section 6A-3 of the New Castle County Code. This restriction shall not apply where a valid public emergency exists and the health, safety and public welfare would be detrimentally affected. (Ord. No. 80-123, § 1, 5-27-80; Ord. No. 88-241, § 1, 11-29-88; Ord. No. 90-191, § 1, 7-24-90)

*1995 to 2000 Edition of NCC Code*

ADMINISTRATION

§ 2-75

### Sec. 2-32. Trips by County Council members outside of county.

Travel expenses of County Council members for travel outside the county shall be paid in accordance with the rules of the County Council, adopted pursuant to 9 Del. C. § 1150(b). (Code 1983, § 2-8)

### Sec. 2-33. Salaries of council members, council president and County Executive.

(a) Each member of the County Council representing councilmanic districts 1 through 6 shall receive a salary of $27,500.00 per year.

(b) The president of the County Council shall receive a salary of $30,000.00 per year.

(c) The county executive shall receive a nine percent salary increase over the $67,000.00 currently earned by the county executive, beginning January 2, 2001, with consecutive increases of nine percent on January 2, 2002, 2003, and 2004, bringing him a total salary of $94,576.00 on January 2, 2004.

(d) Notwithstanding any other subsection of this section, council members' salaries shall not exceed the then-current salaries of the members of the state general assembly. For purposes of this section, the annual expense allowance of the members of the general assembly shall be considered salary.

(e) The president of the council's salary shall be limited to the same percentage of increase as council members' salaries as provided for otherwise in this Code.
(Code 1983, § 2-8.1; Ord. No. 93-105, § 2, 5-23-93; Ord. No. 96-233, § 1, 12-27-96)

### Sec. 2-34. Approval of contracts by County Council.

(a) No contract which requires the approval of the County Council shall be executed nor shall any work be started thereunder until approved by resolution of the County Council. The following contracts shall require the approval of the County Council:

(1) All contracts involving the expenditure of funds by the county in excess of $10,000.00 which are not competitively bid pursuant to section 2-608 or 2-748 of this Code;

(2) All contracts for professional services involving the expenditure of funds by the county in excess of $10,000.00 which are not subject to the requirements of section 2-608(d) of this Code; and

(3) All contracts which require the consent of the County Council pursuant to state law.

(b) Copies of all contracts shall be made available to the equal opportunity officer pursuant to section 2-803 of this Code.

(c) These restrictions shall not apply where a valid public emergency exists and the health, safety and public welfare would be detrimentally affected.
(Code 1983, § 2-29.5)

### Secs. 2-35—2-55. Reserved.

### DIVISION 2. RULES OF PROCEDURE*

### Sec. 2-56. Maintaining copies of rules.

The clerk of the County Council shall maintain copies of the rules of the County Council which shall incorporate in their proper places all amendments to the rules. The date of latest revision shall be shown at the bottom of every page.
(Code 1983, § 2-9)

### Secs. 2-57—2-75. Reserved,

*Editor's note—Ord. No. 75-80, § 1, enacted May 13, 1975, amended division 2 by deleting the rules of procedure of the County Council as formerly set out in such division. Section 2 of such Ord. No. 75-80 provided that the deletion of the rules of procedure from the county Code would not invalidate them as the rules of the council.
    State law reference—Rules of procedure of County Council, 9 Del. C. § 1150.

# APPENDIX

# 2

Senator Patricia M. Blevins

Page 22

1    listened to the tape and tried to remember a conversation

2    with her.  I have no recollection of having had or

3    what --

4           Q.    And just so we're clear when you say no

5    recollection, you just don't recall?

6           A.    I do not recall any content of any

7    conversation.  Karen and I talked during the Senate

8    debates often.  I do not recall having said that.

9           Q.    Well, I guess, then, until you got to that

10   last phrase, I understood what you were saying.

11              My experience when somebody says they

12   don't recall, that either means, I might have said it, I

13   might not have said it, I just don't remember.

14              Are you saying, I don't recall saying

15   it, therefore, I didn't say it, or I just don't recall if

16   I did or didn't say it?

17          A.    I don't recall the content of our conversation

18   that day at all.  It does not sound like me.  But I do

19   not recall the content of our conversation.

20              So, I guess, what I'm saying to you is,

21   I would be surprised if I said that.  But I cannot say

22   that I didn't because I have no recollection of our

23   conversation.

24          Q.    I just want to make sure it's so we don't have

# APPENDIX

# 3

Patty A. Powell

Page 48

1          Q.    And I believe you stated that you know who you

2    supported in the primary election between Coons and

3    Freebery?

4          A.    Yes.

5          Q.    And I think we all know, but can you state for

6    the record who you supported?

7          A.    I supported Sherry Freebery.

8          Q.    Do you think if the other general managers --

9    and I think Mr. Lawless went through them, Mr. Sapp,

10   Ms. Dienno, Ms. Diane Baker, and Ron Morris, do you

11   believe that had they not retired that they all would

12   have been fired as well?

13         A.    Yes.

14         Q.    And they don't hold the last name of Freebery;

15   correct?

16         A.    Not that I'm aware of.

17         Q.    And at the time Mr. Freebery was terminated,

18   what is your understanding of his status with the county?

19   Was he merit or appointed?

20         A.    Well, that was after the law was changed.  So

21   I don't know if you would want to say -- he was in the

22   merit and he came out of the merit.  So I don't know if

23   he was appointed, if that reverted back to an appointed

24   position or not.

# APPENDIX

# 4

William J. Tansey

Page 60

1    During this period of time when Mr. Coons said Joe

2    Freebery wasn't showing him anything, was he working

3    on a $17 million flood project?  Do you recall whether

4    that was going on at that time?

5         A.        Oh, sure.  It was in the department.

6    Exactly.

7         Q.        And that was being run by the

8    Department of Special Services?

9         A.        Yes.

10        Q.        You don't know if that showed

11   Mr. Coons what he was looking for?

12                  MS. ALLEN:  Objection.

13   BY MS. ALLEN:

14        Q.        Just to follow up on that, what leads

15   you to make that conclusion of connecting the dots for

16   the reasons for Joe Freebery's termination?

17        A.        Well, okay.  In a political

18   environment, when you work on someone's campaign

19   against someone else and, you know, you have the call

20   and you want to, you know, set the table straight, you

21   want your people in there rather than someone that,

22   you know -- who was just got through a very

23   contentious primary working for you.  The thing you

24   would do would have that -- you know, do something

William J. Tansey

Page 61

1    with that person, not have them, you know -- like, you

2    look at your staff.  You know, you are sitting around

3    the table.  You look at your staff.  They all better

4    be loyal people.

5                   And I don't know.  Maybe -- you know,

6    if I were in Chris's position, would I -- you know,

7    would I question Joe's loyalty after what I just went

8    through?  Probably not.  And so, you know, that would

9    be my assumption.  I don't know whether I would have

10   fired the person, but I would have, you know,

11   neutralized him.

12                  You know, again, politics, that's the

13   way politics is.  You know, you live it and you die

14   it.

15        Q.        But you don't have -- nothing was said

16   to you --

17        A.        By who?

18        Q.        -- from Chris Coons or anybody that

19   these were the reasons why Joe was terminated?

20        A.        No, no.  I have no -- you know, I

21   don't know.  No.  No one said to me --

22        Q.        It is just your speculation, your

23   opinion?

24        A.        That's right.  Exactly.  It is totally