IN THE UNITED STATED DISTRICT COURT
FOR THE EASTERN DISTRICT OF DELAWARE

| | |
|---|---|
| JOSEPH J. FREEBERY<br>Plaintiff<br><br>v.<br><br>CHRISTOPHER COONS, in his official capacity as County Executive of New Castle County and in his individual capacity; and NEW CASTLE COUNTY, a municipal corporation; and JOHN DOES 1-25<br>Defendants | C.A. No. 05-748-PSD |

PLAINTIFF'S RESPONSE TO DEFENDANTS' REPLY BRIEF

OF COUNSEL:
Joseph F. Lawless, Esq.
PA Id. No. 23691
843 Mt. Moro Road
Villanova, Pennsylvania 19083
484.380.3760
jlaw6@comcast.net
Counsel for Joseph J. Freebery

Date: May 27, 2008

KNEPPER & STRATTON
Barbara H. Stratton, Esq.
P.O. Box 1795
1228 North King Street
Wilmington, Delaware 19801
302.658.1717
Delaware Bar ID # 2785
bhs@knepperstratton.net
Counsel for Joseph J. Freebery

## TABLE OF CONTENTS

Introduction................................................................................... 1

Defendants Counter-Statement of Facts
Complies With D. Del. L.R. 7.1.3(E)............................................ 1

Defendants' Description of Plaintiff's Claim
Is a Mischaracterization and Nothing More Than
An Effort to Improperly Prejudice the Court..................................1

Plaintiff Had a Constitutionally Protected Property Right...................3

Neither the NCCo Code Nor the Cases Cited by
Defendants Preclude the County Executive
From Entering Into This Contract.....................................................7

Circumstantial Evidence Supports the Conclusion that
Plaintiff Was Fired For Retaliatory Purposes................................10

Conclusion...................................................................................12

## TABLE OF AUTHORITIES

*Bellanca Corp. v. Bellanca*, 53 Del. 378, 169 A.2d 620, 623 (1961)..........................6

*Collison v. State ex rel Green*, 2 A.2d 97 (Del 1938)..........................................8, 9

*Industrial America Inc. v. Fulton Ind., Inc.*, Del. Super., 285 A.2d 412
(1971)...........................................................................................................4

*In re Rawlins v Levy Court of Kent County*, 235 A.2d 840,
1967 Del. LEXIS 264 (Del. 1967)................................................................8,.9

*Jordan v. Stanziola*, 2002 U.S. Dist. LEIS 27334, *18 (M.D. Pa. 2002)....................3

*Lawrence v DiBiase*, Del. Super., 2001 Del. Super. LEXIS 368, *20
(2001)...........................................................................................................5

*Leeds v. First Allied Connecticut Corp.*, Del. Ch., 521 A.2d 1095 (1986)..................4

*Linan-Faye Const. Co., Inc. v. Housing Authority of Camden*,
49 F.3d 915 (3d Cir. 1995)..............................................................................3

*Norse Petroleum A/S v. International, Inc.*, Del. Super., 389 A.3d 771 (1978)...........4

*Perry v. Sniderman*, 408 U.S. 593, 601 (1972)...................................................3

*State ex Rel. McVey v. Burris*, 49 A. 930 (Del. 1901).

*Trincia v. Testardi*, 30 Del. Ch. 182, 57 A.2d 638, 642 (1948)...............................5

*Unger v. National Residents Matching Program*, 928 F.2d 1392 (3d Cir. 1991)..........3

Introduction

Defendants' Reply Brief in Support of Its Motion for Summary Judgment is, for the most part, a reiteration of its Opening Brief. *See, e.g.* Defendants' Reply Brief pp. 3-10. It is not Plaintiff's intention to reargue his opposition to summary judgment and he does not waive the arguments made in his Answering Brief by not repeating them here. It is plaintiff's intention to "reply" only to those points raised by defendants which warrant a brief response.

**Defendants Counter-Statement of Facts Complies With D. Del. L.R. 7.1.3(E)**

Defendants argue that Plaintiff's Counter-Statement of Facts fails to include references to the record, in supposed violation of D. Del. L.R. 7.1.3 (E) and that the Court should therefore, "…deem the material facts presented by Defendants admitted." Reply Brief p. 2. This is simply incorrect. Plaintiff's Counter-Statement of Facts contains dozens of references to the record facts developed during discovery. *See* Plaintiff's Answering Brief pp. 3, 5, 6, 7, 8, 9, 10.

**Defendants' Description of Plaintiff's Claim Is a Mischaracterization and Nothing More Than An Effort to Improperly Prejudice the Court.**

Defendants characterize one of the issues in this case in terms such as "…whether the Plaintiff had a legally-defensible contract for lift-time government employment from his sister"; and "Plaintiff proclaims that he had an independent employment contract for life from the prior County Executive…" *See, e.g.,* Defendants' Reply Brief pp. 2 & 8.

Plaintiff makes no such claim. The procedural safeguards of the merit system do not guarantee anyone "an employment contract for life." An employee can be disciplined and/or discharged for numerous reasons, including, *inter alia,* commission of a crime; insubordination; excessive tardiness; inefficiency and incompetence; absence without

leave; abuse of county property; violation of federal, state or local statutes, county ordinances, administrative regulations or departmental rules; substance abuse; conduct or behavior which reflects unfavorably on the county as an employee; acceptance of gratuities, and on many other grounds. It permits termination, but the termination must be for cause. *See* Plaintiff's Appendix in Support of Plaintiff's Answering Brief, Tab 22, NCCo Merit System Manual, § 26.03.1003. If an employee is afforded the protections of the merit system procedures, he or she is *required* to do their job properly or face discipline and/or dismissal. Plaintiff, or anyone protected by merit system procedures, hardly had a job for life.

Contrary to the inference of defendants' argument, Plaintiff was not appointed to the job by his sister. Plaintiff worked in the administration of several County Executives prior to the Coons and Gordon administrations and was one of several applicants who was tested and deemed qualified for the GM position through the merit system process. *See* Plaintiff's Appendix in Support of Plaintiff's Answering Brief, Tab 23, DiIenno Dep. p. 42; Tab 5, S. Freebery Dep. p. 83.

Moreover, the record is clear in this case that, contrary to Defendants' assertion, Defendant Coons was not precluded from politically appointing a Director to run the Department of Special Services over Plaintiff in order to have his own "team" in place. He could also simply removed Plaintiff from the position of General Manager while keeping him as a county employee in that department or elsewhere. Plaintiff's Appendix in Support of Plaintiff's Answering Brief, Tab 9, Except from Democratic Candidates' Debate; Tab 5, S. Freebery Dep. p. 77; 81; Tab 6, Gordon Dep. pp. 16; 30. He simply chose not to do so in order to justify firing Plaintiff.

### Plaintiff Had a Constitutionally Protected Property Right

Defendants' Reply Brief asserts that Plaintiff did not have a constitutionally protected property right, essentially regurgitating the argument made in their opening brief. Reply Brief pp. 3-6. As set forth in more detail in Plaintiff's Answering Brief, a property interest in employment can be created expressly by state statute or regulation, arise from government policy, or arise from an implied agreement between and employer and employee. *Perry v. Sniderman,* 408 U.S. 593, 601 (1972), *cited in Jordan v. Stanziola*, 2002 U.S. Dist. LEIS 27334, *18 (M.D. Pa. 2002). Such a right can also arise from contract. Plaintiff's Answering Brief pp.18- 36. Plaintiff's argument in support of his position on this point is set forth in detail in his Answering Brief and will not be repeated here. One or two misstatements in Defendants' Reply Brief, however, warrant clarification.

A contract with a state entity can give rise to a property right protected under the Fourteenth Amendment. *Unger v. National Residents Matching Program,* 928 F.2d 1392 (3d Cir. 1991), cited in. *Linan-Faye Const. Co., Inc. v. Housing Authority of Camden,* 49 F.3d 915 (3d Cir. 1995). Such interest arises where the contract confers a protected status, or permanence in the case or tenure, or where the contract itself includes a provision that the state entity can terminate only for cause. *Unger, supra.*

In *Perry v. Snyderman,* 408 U.S. 593 (1972), the Supreme Court held that a teacher might have a legitimate entitlement to continued employment, even in the absence of a formal tenure program, where a general understanding prevailed at his employing institution would no be terminated without just cause. In this case, Plaintiff had far more than just a "general understanding". He had express oral and written

promise by NCCo that he would be *always* be afforded the merit system protections. The promises were neither related to or contingent upon the statutory classification of the positions under the law.

For a binding contract to exist under Delaware law, there must be 1) an offer by one party; 2) an acceptance of that offer by the other party; 3) consideration for the offer and acceptance; 4) sufficiently specific terms that determine each party's obligation. *Leeds v. First Allied Connecticut Corp.*, Del. Ch., 521 A.2d 1095, 1101-02 (1986); *Norse Petroleum A/S v. International, Inc.*, Del. Super., 389 A.3d 771, 773 (1978); *Industrial America Inc. v. Fulton Ind., Inc.*, Del. Super., 285 A.2d 412, 415 (1971). Under Delaware law, "[I]t is elementary that he determination of the question of whether a contract has been formed essentially turns upon a determination whether the parties to an alleged contract intended to bind themselves contractually" *Leeds, supra*, 521 A.2d at 1096. "The only intent of the parties to a contract which is essential is intent to say the word or do the acts which constitute their manifestation of assent". *Id.* at 1011. The Court's inquiry is an objective one: whether a reasonable man would, based upon the objective manifestation of assent and all of the surrounding circumstances conclude that the parties intended to be bound by contract. *Id. See also Industrial America, supra*, 285 A.2d at 415.

The express promises made by County Executive Gordon and re-iterated by CAO Sherry Freebery to all the potential General Managers in order to induce them to accept the new positions are stated in detail in Plaintiff's Answering Brief. Plaintiff's Answering Brief pp. 5-7; 50-52; Appendix, Tab 5, S. Freebery Deposition; Appendix, Tab 6, Gordon Deposition.

New Castle County's promise that the GM positions would be protected by the merit system rules was clear and unequivocal. There was a contract of employment and that contract promised the GM's the protections of the merit system. This contract was binding, regardless of the legal status of the GM's under the Merit System laws. *The County Executive testified that the promise was intended to covey a property right and to induce the incoming GM's to rely on that promise and accept the positions. There could be no clearer meeting of the minds.*

The evidence referenced in Plaintiff's Answering Brief also supports the conclusion that the parties had an implied-in-fact contract under Delaware law. An implied in fact contract is legally equivalent to an express contract; the only difference between the two is the proof by which the contract is established. *Lawrence v DiBiase*, Del. Super., 2001 Del. Super. LEXIS 368, *20 (2001). An express agreement is arrived at by words, while an implied agreement is arrived at by acts. *Id.; see also Trincia v. Testardi,* 30 Del. Ch. 182, 57 A.2d 638, 642 (1948).

The inquiry in both instances is whether the parties have indicated assent to the contract. In other words, to prevail on a theory of implied in fact contract, the plaintiff must establish that the parties, through their actions, "demonstrated a meeting of the minds on all essential terms of the contract, including price. *Lawrence, supra.* The facts established in discovery and discussed herein make it eminently clear that there was both and express and implied contract, particularly since the plaintiff's course of conduct in accepting the position, pay rate and performing and outstanding job as GM for eight years confirmed their mutual assent, including the terms of the contract. One of those

terms included termination for cause only, under the merit system. Accordingly, under this analysis, a constitutionally cognizable property right was conferred.

In addition to the express and implied contract established by the evidence in this case, under Delaware law quasi-contractual relationships are imposed by law in order to work justice and without reference to the actual intention of the parties. Quasi-contracts correct unjust enrichment; they are designed to remedy the "retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience. *Lawrence, supra*, at \*22.

To prove a quasi-contract, plaintiff must establish 1) that he performed his services with an expectation that he would receive the benefits offered by the county (merit system protection/discharge for "just cause" only); 2) that the services were performed under circumstances which should have put NCCo on notice that he expected that benefit; and 3) that NCCo obtained the benefit of his services. *Id.*; *see also Bellanca Corp. v. Bellanca*, 53 Del. 378, 169 A.2d 620, 623 (1961). Joe Freebery accepted NCCo's representation that he would be protected by the procedures of the Merit System and provided outstanding service to the County for eight years in the role of GM. The County should not now be permitted to and should be estopped from claiming that no contract existed. An employment contract did exist, conferred a constitutionally protected property interest, which interest was violated and contract breached when NCCo, through Defendant County Executive Chris Coons, fired Joe Freebery without notice, opportunity to be heard or just cause.

**Neither the NCCo Code Nor the Cases Cited by Defendants Preclude the County Executive From Entering Into This Contract**

Defendants argue that the New Castle County Code precluded County Executive Gordon from entering into an employment contract with plaintiff and the other general managers. In support of this position, Defendants cite § 2-29.5 and successor § 2.02.004 of the NCCo Code. These code sections from the "Administration" Article of the NCCo Code, provided to the Court without context, state that contracts over a certain amount had to be approved by County Council. Defendants' Appendix in Support of Defendants' Reply Brief at 1. Elsewhere in Article 2, however, "contract" is given the following definition:

> *Contract* means an agreement or arrangement for the acquisition, use or disposal by the County of consulting or other services or of supplies, materials, equipment, land or other personal or real property. "Contract" shall *not* mean an agreement or arrangement between the County as one (1) party and a County official or employee as the other party concerning his or her expense, reimbursement, salary, wage, retirement or other benefit, tenure or other matters in consideration of his or her current public employment with the County.

NCC Code § 2.03.102 (emphasis supplied).[1] While the County Code is less than the picture of clarity, it appears from § 2.03.102 in the Ethics Division of Article 2 (the same article cited by Defendants) that the reference to "contracts" relied upon by defendants is intended to be limited to contracts for outside services or vendors. Section 2.03.102, however, also supports the conclusion that contracts such as the one here at issue *are* permissible and are not subject to County Council approval. Indeed, *state* statute expressly provides that, among the powers and duties of the New Castle County Executive is the power to "Sign all contracts, bonds or other instruments requiring the assent of the county, except those which other officers are authorized by this title or by

---

[1] Counsel understands that these definitions were in effect at the times relevant to this case.

the County Council under this title to sign. Plaintiff's Appendix in Support of Plaintiff's Answering Brief, Tab 21, 9 Del Code § 1116 (9). Defendant Coons testified that he had such authority. Plaintiff's Appendix in Support of Plaintiff's Answering Brief, Tab 8, Coons Dep. p. 28. There is nothing in the NCCo County Code County Executive was not precluded by the County Code from entering into the contract here at issue.

The Defendants cite three cases in support of their argument that the County Executive lacked the authority to enter into the contract here at issue: *In re Rawlins v Levy Court of Kent County*, 235 A.2d 840, 1967 Del. LEXIS 264 (Del. 1967); *Collison v. State ex rel Green*, 2 A.2d 97 (Del 1938); *State ex Rel. McVey v. Burris,* 49 A. 930 (Del. 1901). All three cases are inapposite and easily distinguishable.

In *Rawlins,* the Court considered whether the Kent County Levy Court appointment of Rawlins as Director of Civil Defense, on December 27, 1966 was permissible, since the new Levy Court took office on January 1, 1967. The position of Director of Civil Defense was an office with a term not prescribed by statute,. The newly elected Levy Court took office January 1, 1967 and promptly terminated Rawlins January 3, 1967. The Delaware Supreme Court found that since there was no term prescribed by statute, the Civil Defense Director's term was co-terminus with the appointing, outgoing Levy Court upheld the dismissal. *In re Rawlins, supra,* 1967 Del. LEXIS at *3.

In this case, Plaintiff was not appointed to a position with an indefinite term. He was among several applicants who were tested, deemed qualified and appointed under the merit system process to a position, the term of which was subject to the limitations and restrictions placed upon all merit system employees in terms of performance, competence and qualification. Moreover, in this case, the GMs were induced to accept the positions

by express promised on behalf of the County that they would always be protected by the merit system processes and they accepted their positions on that basis, thus receiving a contractually conferred, constitutionally protected property interest which could not be taken away by the County without due process, regardless of what the legislature might have done. The actions by the legislature, at the request of the County Executive, which request could have had no purpose other than to remove plaintiff from his constitutionally protected position, could not undercut impact the commitment made by the County to induce the GMs to accept the position. *Rawlins* is not applicable here.

In *Collision,* three individuals were appointed to the Industrial Accident Board by the Governor. The positions were for fixed, six year terms. The statute setting that term also provided that they served in their positions at the pleasure of the Governor and that they could be removed from their position by the Governor without cause at any time. When the governor subsequently removed and replaced them, litigation followed and the Court held that where an office is created by the legislature, the legislature has the power to control the term or duration of the incumbent in the position.

In this case, Plaintiff was not a political appointee to the position of General Manager but rather competitively qualified for the position under the provisions of the merit system. He accepted the position based upon the representations that his position with the County would remain protected by the merit system procedures. While the legislature could arguably change the status of the position under the merit system law, it could not change or alter the County's binding commitment that the GM's would remain protected by merit system procedures.

Finally, Defendants cite *State ex rel. McVey v. Burris*, 49 A. 930 (Del. Super. 1931) for the proposition that an office which is created by the legislature "may be modified, abridged or abolished as the legislature may see fit" unless there is a constitutional limitation. *McVey* does not address Plaintiff's argument that, while the legislature may act to change the legal status of the position, it cannot legislatively undercut the County's contractual commitment, which commitment conferred a constitutionally protected property interest. .

The cases cited by Defendants on this point do not address the County's contractual commitment to the GMs and nothing in those cases addresses that point.

**Circumstantial Evidence Supports the Conclusion that Plaintiff Was Fired For Retaliatory Purposes**

Defendants argue that Plaintiff cannot show that his familial or political association was a substantial or motivating factor in his dismissal from County service. Plaintiff will not restate the arguments made in his Answering Brief, however there is one more item of circumstantial evidence which supports the conclusion that Plaintiff was fired for a wrongful, retaliatory purpose. At her deposition, the Director of Human Resources, Dr. Patricia Lutz DiIenno testified as follows.

> Q. It would be helpful if you could explain this to me, too.
> 
> As general manager of a department -- well, would it have been possible under the merit system where the general managers were protected by the merit system for someone to be told by the county executive, You're no longer the general manager of the department. You're now working in a department. I'm going to appoint someone else general manager. Can that be done?

A. Yes.

Q. Could it be done without the agreement of the person who was the general manager at that point?

A. Are you saying that they're still employed?

Q. Yes. I'll give you an example. It will be a hypothetical.

But could Chris Coons have come to Joe Freebery and said, Joe, I want my own person running the department. I'm going to appoint Michele Allen, for example, the General Manager of the Department of Special Services. You are no longer the manager.

Would Joe Freebery or anybody in that position have any basis to object to that as long as they were still employed or classified employee within the merit system?

A. No.
Q. That could be done?
A. Yes.
Q. Do you know why that wasn't done in this case?
A. I don't know.

Deposition of Patricia Lutz DiIenno, pp. 37-38, attached hereto as Appendix "A".

Defendants could have simply removed Plaintiff to another position, continued to take advantage of his more than twenty years of experience outstanding service and appointed someone else to head the department. Their decision not to do so and to take the course

of action they took strongly supports the argument that Plaintiff was fired for retaliatory purposes.

## CONCLUSION

For the reasons set forth herein and in Plaintiff's Answering Brief, defendants' motion for summary judgment should be denied.

KNEPPER & STRATTON

s/Barbara H. Stratton

Barbara H. Stratton

**Of Counsel:**

Joseph F. Lawless
PA Bar Id. 23691
Law Offices of Joseph F. Lawless
843 Mt. Moro Road
Villanova, Pennsylvania 19083
484.380.3760

P.O. Box 1795
1228 N. King Street
Wilmington, DE  19899
(302) 658-1717
Delaware Bar ID # 2785
bhs@knepperstratton.net
Attorney for Plaintiff Joseph J. Freebery

# APPENDIX A

Patricia Lutz DiIenno, Ed.D.

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

JOSEPH J. FREEBERY,           :
    Plaintiff,                 :
                               :
    v.                         :  Civil Action No. 05-748 KAJ
                               :
CHRISTOPHER A. COONS,          :
in his official capacity       :
as County Executive of         :
New Castle County and in       :
his individual capacity,       :
and NEW CASTLE COUNTY, a       :
municipal corporation,         :
and JOHN DOES 1-25,            :
    Defendants.                :

         Deposition of PATRICIA LUTZ DiIENNO,
Ed.D., taken pursuant to notice before Gloria M. D'Amore,
Registered Professional Reporter, in the New Castle
County Law Offices, 87 Reads Way, New Castle, Delaware,
on Wednesday, April 2, 2008, beginning at approximately
9:50 a.m., there being present:

APPEARANCES:

                JOSEPH F. LAWLESS, ESQUIRE
                   843 Mt. Morrow Road
                   Villanova, P.A. 19085
                Attorney for Plaintiff
                   CORBETT & WILCOX
             Registered Professional Reporters
      230 N. Market Street    Wilmington, DE 19801
                     (302) 571-0510
             Corbett & Wilcox is not affiliated
           with Wilcox & Fetzer, Court Reporters

Patricia Lutz DiIenno, Ed.D.

Page 37

1            As someone who has been in the field of
2 human resources, why would that be important to the
3 person being let gone?
4      A.    Well, generally if someone has a lot of time
5 and is working toward a pension, it's done to allow them
6 to take a position that they can continue to work toward
7 the pension that they originally wanted to do from when
8 they were hired.
9      Q.    So, for example, if someone had been working
10 for the County for, say, 24 or 25 years, and they were
11 working toward a 30-year pension, there would be an
12 effort to allow them to take another position within the
13 government so they could continue interrupted toward that
14 position they were aiming for?
15      A.    Yes. But more so, I've seen it actually done
16 when people were closer to maybe two years, or something
17 like that, where it has been allowed to go and finish out
18 your time and collect your pension.
19      Q.    It would be helpful if you could explain this
20 to me, too.
21            As general manager of a department --
22 well, would it have been possible under the merit system
23 where the general managers were protected by the merit
24 system for someone to be told by the county executive,

1   You're no longer the general manager of the department.
2   You're now working in a department. I'm going to appoint
3   someone else general manager. Can that be done?
4        A.   Yes.
5        Q.   Could it be done without the agreement of the
6   person who was the general manager at that point?
7        A.   Are you saying that they're still employed?
8        Q.   Yes. I'll give you an example. It will be a
9   hypothetical.
10            But could Chris Coons have come to Joe
11  Freebery and said, Joe, I want my own person running the
12  department. I'm going to appoint Michele Allen, for
13  example, the General Manager of the Department of Special
14  Services. You are no longer the manager.
15            Would Joe Freebery or anybody in that
16  position have any basis to object to that as long as they
17  were still employed or classified employee within the
18  merit system?
19       A.   No.
20       Q.   That could be done?
21       A.   Yes.
22       Q.   Do you know why that wasn't done in this case?
23       A.   I don't know.
24       Q.   Am I correct that there came a point in time

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JOSEPH J FREEBERY, | : |
| | : |
| Plaintiff, | : |
| | : CA. No. 05-748-KAJ |
| v. | : |
| | : |
| CHRISTOPHER COONS, in his official | : |
| capacity as County Executive of New Castl | : |
| County and in his Individual capacity; and | : |
| NEW CASTLE COUNTY, a municipal | : |
| corporation; and JOHN DOES 1-25 | : |
| Defendants. | : |

### CERTIFICATE OF SERVICE

I, Barbara H. Stratton, hereby certify that on June 18, 2008, two copies of the Plaintiff's Response to Defendants' Reply Brief were served electronically and by regular mail upon counsel set forth below.

| | |
|---|---|
| Richard R. Wier, Jr., Esquire<br>Michelle Allen, Esquire<br>Two Mill Road, Suite 200<br>Wilmington, DE 19806 | Gregg E. Wilson, Esquire<br>87 Reads Way<br>New Castle, DE 19720 |
| | KNEPPER & STRATTON<br>s/Barbara H. Stratton |
| **OF COUNSEL:**<br>Joseph F. Lawless<br>PA Id. No. 23691<br>6 Harvey Lane<br>Newtown Square, PA 19083<br>610.356.0875<br>Jlaw6@comcast.net<br>Counsel for Joseph J. Freebery | Barbara H. Stratton<br>P.O. Box 1795<br>1228 North King Street<br>Wilmington, Delaware 19801<br>302.658.1717<br>Delaware Bar ID # 2785<br>bhs@knepperstratton.net<br>Attorney for Plaintiff |